**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE _____

ISABELLE M. MURPHY, )
DAVID R. MURPHY, )
LYNN GAY, )
DAVID M. WAKEFIELD, and )
JANET WAKEFIELD, )
)
Individually and on behalf of all others )
similarly situated, )
                    Plaintiffs, )
)
v. )    CIVIL ACTION NO.
)
AMERIQUEST MORTGAGE COMPANY, )
                    Defendant.

**04 12651 RWZ**

**NOTICE OF REMOVAL**

Defendant Ameriquest Mortgage Company ("defendant" or Ameriquest") hereby

provides notice that it is removing this action from the Superior Court, Norfolk County,

Massachusetts, in which court the cause is currently pending, to the United States District Court

for the District of Massachusetts. In support thereof, Ameriquest states as follows:

1.    Ameriquest exercises its rights under the provisions of 28 U.S.C. §§ 1441, et seq.,

to remove this case from the Superior Court, Norfolk County, Massachusetts. The case is now

pending under the name and style of Isabelle M. Murphy, David R. Murphy, Lynn Gay, David

Wakefield, and Janet Wakefield, individually and on behalf of all others similarly situated v.

Ameriquest Mortgage Company, Civil Action No. 04-1898.

2.    U.S.C. Section 1441(a) provides:

Except as otherwise expressly provided by Act of Congress, any civil
action brought in a State Court of which the District Courts of the United
States have original jurisdiction, may be removed by the defendant or
defendants, to a District Court of the United States for the District and
Division embracing the place where such action is pending.

3.     This is a civil action that was instituted in the Superior Court, Norfolk County, and has not been tried. Plaintiffs filed their Complaint on or about November 3, 2004. A true and correct copy of the Complaint is attached hereto as Exhibit A. Ameriquest first received the initial pleading setting forth the claims for relief upon which this action is based and the Summons on November 17, 2004 when its registered agent, National Registered Agents, Inc. was served by a Special Process Server. A true and correct copy of the Summons is attached hereto as Exhibit B. A true and correct copy of Plaintiffs' Certification of Service of Documents related to the Plaintiffs' Motion for Preliminary Injunction which included a copy of the Summons and Complaint is attached hereto as Exhibit C.

4.     The District Court of the United States has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the matter in controversy as set forth in the Complaint exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

**Diversity Jurisdiction**

5.     In determining whether complete diversity exists, the Court considers the citizenship of all properly joined parties. 28 U.S.C. § 1441(b). The Complaint identifies the named plaintiffs as residents of the Commonwealth of Massachusetts. For purposes of diversity of citizenship under 28 U.S.C. § 1332, plaintiffs are citizens of the Commonwealth of Massachusetts.

6.     Ameriquest Mortgage Company is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of California. For purposes of diversity of citizenship under 28 U.S.C. § 1332, Ameriquest is not a citizen of the

Commonwealth of Massachusetts. Hence, there is complete diversity of citizenship for purposes of federal jurisdiction under 28 U.S.C. § 1332.

7.    The amount in controversy requirement of 28 U.S.C. § 1332 is satisfied in that the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

8.    The Complaint alleges that plaintiffs Isabelle and David Murphy (the "Murphys"), Lynn Gay ("Gay"), David and Janet Wakefield (the "Wakefields"), and the class of individuals they seek to represent entered into mortgage loan agreements with Ameriquest fully secured by equity in their residences. In connection with these mortgage loans, plaintiffs allege that Ameriquest purportedly engaged in deceptive acts in connection with their mortgage transactions.

9.    Plaintiffs David M. and Janet Wakefield entered into a thirty-year adjustable rate mortgage with Ameriquest Mortgage Company with a principal amount owed by the Wakefields of $238,000.00. The Wakefields' loan note has an initial interest rate of 11.99%, which is also the minimum rate. The Wakefields' loan note calls for monthly payments of $2,446.27 beginning March 1, 2004. Over the scheduled life of the loan, the Wakefields would make 359 payments of $2,446.27 and a final payment of $2,432.71. The total finance charge payable on the note if all payments are made as scheduled (in addition to the principal amount) is $645,328.26. In the Complaint, the Wakefields state that their property has a current fair market value of $315,000. See Complaint, ¶ 87.

10.    Plaintiff Lynn Gay entered into a thirty-year adjustable rate mortgage with Ameriquest Mortgage Company with a principal amount owed by Gay of $297,000.00. Gay's loan note has an initial interest rate of 8.5%, which is also the minimum rate. Gay's loan note calls for monthly payments of $2,283.68 beginning November 1, 2003. Over the scheduled life

of the loan, the Wakefields would make 359 payments of $2,283.68 and a final payment of $2,272.20. The total finance charge payable on the note if all payments are made as scheduled (in addition to the principal amount) is $540,143.84. In the Complaint, Gay states that the Gay property has a current fair market value of $380,000. See Complaint, ¶ 38.

11.     Plaintiffs Isabelle and David Murphy entered into a thirty-year adjustable rate mortgage with Ameriquest Mortgage Company with a principal amount owed by the Murphys of $256,680.00. The Murphys' loan note has an initial interest rate of 5.75%, which is also the minimum rate. The Murphys' loan note calls for monthly payments of $1,497.92 beginning June 1, 2004. Over the scheduled life of the loan, the Murphys would make 24 initial monthly payments of $1,497.92, then 335 monthly payments of 1,576.70, and a final payment of $1,576.35. The total finance charge payable on the note if all payments are made as scheduled (in addition to the principal amount) is $318,883.99. In the Complaint, the Murphys state that their property has a current fair market value of at least $286,000. See Complaint, ¶ 17.

12.     On October 27, 2004 and November 1, 2004, respectively, Plaintiff Gay and Plaintiffs Wakefield notified Ameriquest that they were rescinding their mortgage transactions. See Complaint at ¶ 225, citing to plaintiffs' Notices of Rescission attached as Exhibits K and AA of the Complaint.

13.     Plaintiffs' Complaint includes counts for rescission or reformation based on alleged illegality or unconscionability (Count I and II), breach of contract (Counts III and IV), intentional misrepresentation (Count V), and unjust enrichment (Count VI). Plaintiffs also seek declaratory and injunctive relief to address the following: Ameriquest's practices relating to the refinancing of home mortgage loans (Counts VII and VIII), the alleged failure to comply with

- 4 -

the requirements of the CCCDA and the right to rescind (Count IX), and to enforce rescission on behalf of plaintiffs' Gay and the Wakefields (Count X).

14.    The jurisdictional amount in controversy requirement is satisfied in at least two ways. First, plaintiffs seek on behalf of each of them and the members of the putative class a declaration of right to rescind their loans. See Complaint, Count I, pp. 24-25; Count IX, pp. 30-31. Additionally, plaintiffs Wakefield and Gay, seek among other things a declaration that their rescission was valid, a declaration that their mortgages are void as a result of the rescission, and a declaration that they are not liable for any finance or other finance charge associated with the rescinded loans. See Complaint, Count X, pp. 31-32 and Prayer For Relief, ¶¶ r, s, and t. Likewise, individually and on behalf of the proposed putative class, plaintiffs seek, among other things, "damages and equitable remedies for unjust enrichment including, without limitation, restitution and reformation of contract." See Complaint at ¶ 204.

15.    The jurisdictional amount in controversy requirement is satisfied by plaintiffs' attempts to rescind and obtain a declaration of right to rescind their loans and those of the putative class. "Courts have repeatedly held that the value of the matter in controversy is measured not by the monetary judgment which the plaintiff may recover but by the judgment's pecuniary consequences to those involved in the litigation." Richard C. Young & Co., LTD. v. Leventhal, D.D.S., M.S., 389 F.3d 1, (1st Cir. 2004); Hunt v. Washington State Apple Advt'g Comm'n, 432 U.S. 333, 347-48, 97 S.Ct. 2434, 2443 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy [for purposes of diversity jurisdiction] is measured by the value of the object of the litigation"). Plaintiffs put the entire value of their mortgage loans at issue where they seek declaratory and injunctive relief against the enforcement of their mortgage contracts. See Ericsson GE Mobile Communications v.

- 5 -

Motorola Communications & Electronics, Inc., 120 F.3d 216, 220 (11th Cir. 1997) ("plaintiff's claim for monetary damages need not, by itself, exceed the requisite statutory amount because the immediate financial consequences of the litigation to the plaintiff—in that case, the financial benefit of not having to pay the interest contracted to be charged may also be considered in calculating the amount in controversy"); see also Rosen v. Chrysler Corp., 205 F.3d 918, 921 (6th Cir. 2000) ("in cases where a plaintiff seeks to rescind a contract, the contract's entire value, without offset, is the amount in controversy") (citing numerous cases). Because, with respect to the plaintiffs David and Janet Wakefield and Lynn Gay, the principal and the finance charges payable, whether considered independently or in the aggregate, exceed the jurisdictional amount in controversy minimum of $75,000, the amount in controversy requirement is satisfied.

16.    Second, the jurisdictional amount in controversy requirement is also satisfied by plaintiffs' petitions to enjoin foreclosure. Plaintiffs have denominated their action, among other things, as one for injunctive relief to prevent foreclosure. Complaint, caption p. 1; Count VIII, pp. 29-30. In addition, plaintiffs Wakefield and plaintiff Gay filed an emergency motion for preliminary injunction asking the court to prevent Ameriquest from foreclosing on their homes, to preserve the status quo, and to obtain a determination of their statutory rights under the Consumer Credit Cost Disclosure Act, Mass. Gen. Laws ch. 140D, § 10 ("CCCDA"). In that motion, plaintiffs assert that rescission of their mortgage loans is a defense to foreclosure. A true and correct copy of plaintiffs' Emergency Motion for Preliminary Injunction is attached hereto as Exhibit D. On November 23, 2004, the Superior Court, Norfolk County, entered a Consent Order preserving the status quo pending further proceedings, without making any findings as to the merits of the action, and stayed foreclosure proceedings. A true and correct copy of the

Superior Court, Norfolk County's November 23, 2004 Consent Order is attached hereto as Exhibit E.

17.    Plaintiffs put the entire value of their property at issue where they seek to enjoin foreclosure on properties, as here, with mortgage loans and fair market values each in excess of $75,000.  See Garfinkle v. Wells Fargo Bank, 483 F.2d 1074, 1076 (9th Cir. 1973) (finding jurisdiction where fair market value of property subject to California foreclosure procedure exceeded jurisdictional amount in controversy requirement); Gatter v. Cleland, 87 F.R.D. 66, 68-69 (E.D. Pa. 1980) (finding that fair market value of plaintiffs' homes exceeded jurisdictional minimum in action where plaintiff sought to enjoin lenders from foreclosing their mortgages, where "the property right sought to be protected is the right to peaceful possession and enjoyment of the homes, not merely the right to the equity owned therein"); Bailey v. First Federal Savings & Loan Ass'n of Ottawa, 467 F. Supp. 1139, 1141 (C.D. Ill. 1979) (finding federal jurisdiction where the value of the promissory notes substantially exceeds the amount in controversy minimum, and plaintiff sought injunction against foreclosure).  As set forth above with respect to each of the named plaintiffs, both the fair market value of the subject properties and the value of the subject promissory notes secured by mortgage on the subject properties substantially exceed the jurisdictional amount in controversy minimum of $75,000.

18.    Because the jurisdictional amount is satisfied as to the representative parties, the Court should exercise supplemental jurisdiction over the claims of the putative class pursuant to 28 U.S.C. § 1367.  See Allapattah Services, Inc. v. Exxon Corp., 333 F.3d 1248, 1256 (11th Cir. 2003) (affirming district court's exercise of supplemental jurisdiction over class claims pursuant to 28 U.S.C § 1367 where court had original jurisdiction over the claims of at least one of the class representatives); Rosmer v. Pfizer Inc., 263 F.3d 110, 114 (4th Cir. 2001) (same), cert.

denied, 536 U.S. 979, 123 S.Ct. 14 (2002); Gibson v. Chrysler Corp., 261 F.3d 927, 934 (9th Cir.

2001), cert. denied, 534 U.S. 1104, 122 S.Ct. 903 (2002). Here, the Court has original

jurisdiction over each of the named plaintiffs, and thus the Court has supplemental jurisdiction

over the claims of the putative class.

### Procedural Compliance

19.    In accordance with the requirements of 28 U.S.C. § 1446(b), this Notice of

Removal is filed within thirty (30) days after the receipt by Ameriquest, of a copy of the

Summons and the initial pleadings setting forth the claim for relief on which this removal is

based.

20.    Pursuant to 28 U.S.C. § 1441, *et. seq.*, the right exists to remove this cause from

the Superior Court, Norfolk County, Massachusetts, which embraces the place where the action

is pending, to the United States District Court for the District of Massachusetts.

21.    Pursuant to the provisions of 28 U.S.C. § 1446(a), attached hereto are copies of

the Complaint bearing case number C.A. No. 04-1898, filed in the Superior Court, Norfolk

County, Massachusetts (attached hereto as Exhibit A), the Summons issued in this case to

Ameriquest (attached hereto as Exhibit B), Plaintiffs' Certification of Service of Documents

related to the Plaintiffs' Motion for Preliminary Injunction which included a copy of the

Summons and Complaint (attached hereto as Exhibit C), Plaintiffs' Emergency Motion for

Preliminary Injunction (including Order to issue returnable on November 23, 2004) (attached

hereto as Exhibit D), Consent Order dated November 23, 2004 on Plaintiffs' Emergency Motion

for Preliminary Injunction (attached hereto as Exhibit E), and Order Allowing Motion for Special

Appointment to Serve Process (attached hereto as Exhibit F).

- 8 -

22.    Written notice of the filing of this Notice of Removal will be served upon counsel for plaintiffs as required by law.

23.    A true and correct copy of this Notice of Removal will be filed with the clerk of the Superior Court, Norfolk County, Massachusetts, as required by law, and served upon counsel for plaintiffs.

**WHEREFORE**, defendant Ameriquest Mortgage Company hereby removes this case from the Superior Court, Norfolk County, Massachusetts where it is now pending to this Court, that this Court accept jurisdiction of this action, and henceforth that this action be placed upon the docket of this Court for further proceedings, same as though this case had originally been instituted in this Court.

AMERIQUEST MORTGAGE COMPANY, INC.,

By its attorneys,

R. Bruce Allensworth (BBO #015820)
ballensworth@kl.com
Phoebe S. Winder (BBO #567103)
pwinder@kl.com
Brian M. Forbes (BBO #644787)
bforbes@kl.com
KIRKPATRICK & LOCKHART LLP
75 State Street
Boston, MA 02109
617-261-3100
617-261-3175 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2004, I served a true copy of the foregoing document by first-class mail, postage prepaid, upon the following:

Gary Klein, Esq.
John Roddy, Esq.
Elizabeth Ryan, Esq.
Shennan Kavanagh, Esq.
Roddy, Klein & Ryan
727 Atlantic Ave., 2nd Floor
Boston, MA 02111

R. Bruce Allensworth

## COMMONWEALTH OF MASSACHUSETTS

Norfolk, SS.                                    SUPERIOR COURT
                                               C.A. NO. 04-1898

ISABELLE M. MURPHY,                            )
DAVID R. MURPHY,                               )     A SERIES OF TRUE COURT ATTEST
LYNN GAY,                                      )
DAVID M. WAKEFIELD, and                        )     [illegible signature]
JANET WAKEFIELD                                )
                                               )
Individually and on behalf of all others       )     COURT APPOINTED PROCESS SERVER
Similarly situated                             )
                                               )
                                               )     COMPLAINT
                                               )     SEEKING DAMAGES
           Plaintiffs,                         )     AND EQUITABLE RELIEF
                                               )     INCLUDING INJUNCTIVE
      v.                                       )     RELIEF TO PREVENT
                                               )     FORECLOSURE
AMERIQUEST MORTGAGE                            )
COMPANY                                        )
                                               )
           Defendant.                          )
                                               )

## I. PRELIMINARY STATEMENT

1.      This is an action brought by Massachusetts homeowners against a lender,

Ameriquest Mortgage Company ("Ameriquest"). Ameriquest used a pattern of deceit,

misrepresentation and other stratagems to induce the Plaintiffs to enter into residential

mortgage loans with unfair financial benefits to Ameriquest and hidden costs to the

Plaintiffs. In doing so, Ameriquest violated the consumer protection statute G.L. c. 93A

(hereinafter "c. 93A"), together with that law's implementing regulations, including 940

C.M.R. § 3.01 *et seq.*, 6.01 *et seq.*, 8.01 *et seq.*, and the common law.

1

2.      Each of the Plaintiffs entered into a loan with Ameriquest that is fully secured by equity in their residences. The loans are characterized by high points and fees or high interest rates. In each transaction, Ameriquest engaged in bait and switch tactics or similar deception, by which Ameriquest misrepresented or failed to fully disclose important aspects of the loan terms until closing. Each Plaintiff ultimately received a loan which, to their surprise, contained one or more of the following disadvantageous terms:

- A confusing variable interest rate structure in which the original note rate could only increase, but not decrease;

- A large number of "discount points" constituting thousands of dollars added to the principal of the loan even though Ameriquest provided no "discount" in the transactions;

- A prepayment penalty in the maximum amount allowed by law, thereby discouraging the Plaintiffs from refinancing on better terms with other lenders; and

- Other duplicative costs and closing fees in amounts designed to penalize borrowers who sought refinancing from Ameriquest or others on better terms.

3.      When Plaintiffs inquired about why they were not receiving their loans on promised terms, they were uniformly promised early refinancing on more favorable terms.

4.      The consequence of Ameriquest's practices, taken as a whole, is to allow Ameriquest to profit by leaving borrowers with a three-way Hobson's choice. Either the borrower can 1) choose to remain in a loan with unacceptable terms, 2) find another lender offering better terms and pay Ameriquest a substantial and unjustified prepayment penalty, or 3) refinance with Ameriquest and thereby provide Ameriquest with an

opportunity to capitalize the points and closing costs from the first loan while charging another set of points and/or closing costs in an equal or larger loan amount.

5.    In addition, Ameriquest violated Massachusetts' truth in lending act, the Consumer Credit Cost Disclosure Act (hereinafter "CCCDA"), G.L. c. 140D together with that law's implementing regulations, 209 C.M.R. § 32.1 *et seq* by failing to give Plaintiffs and others information required by G.L. c. 140D, §10 concerning the right to cancel a refinanced loan.

6.    Plaintiffs seek monetary, declaratory and injunctive relief on their own behalf and for a class of similarly situated Massachusetts homeowners.

## II. JURISDICTION AND VENUE

7.    This court has jurisdiction over this matter and this Defendant pursuant to G.L. c. 223A, §3, c. 212, §4 and c. 214, §1.

8.    Venue lies in this county pursuant to G.L. c. 223, § 8.

## III. PARTIES

9.    Plaintiffs Isabelle M. Murphy and David R. Murphy ("the Murphys") are individuals who reside at 13 Crescent Street, Plympton, MA 02367 (the "Plympton residence").

10.    Plaintiff Lynn Gay ("Ms. Gay") is an individual who resides at 43 Oak Street, Bridgewater, MA 02324 (the "Bridgewater residence").

11.    Plaintiffs David M. Wakefield and Janet Wakefield ("the Wakefields") are individuals who reside at 303 Marion Road, Wareham, MA 02571 (the "Wareham residence").

12.    Defendant Ameriquest Mortgage Company ("Ameriquest") is a Delaware corporation whose principal place of business is at 1100 Town & Country Road, Orange, CA 92000.

13.    Ameriquest does business from various locations in Massachusetts, including, without limitation, 25 Braintree Hill Park, Suite 304, Braintree, MA 02184 in Norfolk County.

14.    Ameriquest's business includes making and refinancing consumer loans secured by residential property.

15.    At all times relevant to this complaint, Ameriquest regularly extended consumer credit payable by written agreement in more than four installments or for which a finance charge is imposed.

## IV.    FACTUAL ALLEGATIONS

### Facts Applicable to the Murphys' Loan Transaction

16.    The Murphys are unsophisticated consumers with little experience in mortgage financing.  They own a home at 13 Crescent Street, Plympton, MA 02367.

17.    The Murphys purchased their home in July 2003 for two hundred forty-two thousand dollars ($242,000) and live there with their 3 children, ages 8 months, 8 and 8. The Plympton residence has a current fair market value of at least two hundred eighty-six thousand dollars ($286,000).

18.    The Murphys' initial home mortgage loan was a 30-year, 5% fixed-rate loan with Wells Fargo (the "Wells Fargo" loan). The Murphys considered the Wells Fargo loan to be on advantageous terms.  They made all of the payments required by the Wells Fargo loan.

19.    The Murphys applied to Ameriquest to refinance the Wells Fargo loan in order to consolidate some of their other debts. Based on their discussions with Ameriquest, the Murphys understood that they were applying for a 5.75 % fixed rate loan with no points.

20.    When the Murphys asked their loan officer, Jason Kerr, why the estimated closing costs were so high, and, specifically, what the "loan discount fee" of over $8,000.00 represented, he assured them it was "just to make the numbers work."

21.    The final CCCDA disclosures given to the Murphys at the April 22, 2004 loan closing stated that the Annual Percentage Rate applicable to the loan would be 6.529% and that the monthly payments would be $1,497.92 for the first two years and $1,576.70 for the remaining 28 years.

22.    A true and correct copy of the CCCDA disclosures made to the Murphys in connection with the April 22, 2004 refinancing is attached hereto and labeled Exhibit A.

23.    The Murphys were unaware that the loan closing was to take place until they received a call from Mr. Kerr telling Ms. Murphy that he and an attorney, Nicholas Barrett, were on their way to the Plympton residence.

24.    The closing was completed in less than one hour.

25.    A true and correct copy of the Settlement Statement provided to the Murphys in connection with the April 22, 2004 refinancing is attached hereto and labeled Exhibit B.

26.    A true and correct copy of the loan note in the transaction is attached hereto and labeled Exhibit C.

27.    At the closing, the Murphys expressed concern over the fact that the loan was an adjustable rate loan rather than a fixed rate loan, and that the loan terms included a prepayment penalty.

28.    Mr. Kerr then assured the Murphys that they could refinance within four to six months of the closing and obtain a lower, fixed-rate mortgage. Mr. Kerr also stated that if

the Murphys refinanced with Ameriquest, they would not be subject to a prepayment penalty.

29.    Although the loan closing took place on April 22, 2004, the Settlement Statement indicates a closing date of April 29, 2004.

30.    The April 22, 2004 loan Settlement Statement shows that a "loan discount fee" of 3.326% ($8,537.18) was paid to Ameriquest Mortgage Company. [*See* Exhibit B: Line 802]

31.    The Murphys believe and therefore aver that they were not provided with a "discount" of any kind on the rate in the transaction.

32.    The Murphys were never offered an alternative loan with a higher rate that did not involve payment of discount points. Therefore, they had no opportunity to evaluate whether the "discount" would be advantageous to them.

33.    The loan contains a "one-way" variable rate provision under which the rate in the transaction could increase from the initial rate disclosed in the loan note, but could not decrease below that rate.

34.    The Murphys were not given sufficient information to understand the variable rate associated with their loan and did not understand the complex provisions for a variable rate until many months after their transaction.

35.    The Murphys are having significant problems affording the payments on April 22, 2004 loan. The Murphys would like to refinance with another lender on better terms, but have not explored that option because of the prepayment penalty associated with the Ameriquest loan.

36.    The Murphys also now understand that the thousands of dollars in points and closing costs that they paid in connection with the loan would act as an additional *de facto* prepayment penalty if they refinance early, even if that refinancing is with

6

Ameriquest. Since the points and closing costs are treated as earned when the loan is made, they drive up the effective rate on the original loan if the loan is repaid in a shorter period than its expected term. In addition, by refinancing the points, the Murphys would be required to pay interest on the points in connection with the refinanced loan.

*Facts Applicable to Lynn Gay's Loan Transactions*

37.    Lynn Gay is an unsophisticated consumer with little experience in mortgage financing. She owns a home at 43 Oak Street, Bridgewater, MA 02324.

38.    Ms. Gay purchased her home in October 1999 for one hundred seventy-five thousand dollars ($175,000) and lives there with her husband and their four daughters, ages 9, 12, 15 and 15. She has refinanced her home mortgage loan twice and has made numerous repairs and improvements to the property. A recent appraisal indicates that the Bridgewater residence has a current fair market value of approximately three hundred eighty thousand dollars ($380,000).

39.    On March 14, 2003, Ms. Gay refinanced her home mortgage loan with Ameriquest. The Bridgewater residence was collateral for this loan ("March 14, 2003 loan").

40.    Ms. Gay completed the application for the March 14, 2003 loan over the phone.

41.    Based on her discussions with Ameriquest, Ms. Gay understood that she was applying for a loan with a rate of 7.5%.

42.    The final CCCDA disclosures given to Ms. Gay at the March 14, 2003 closing stated that the Annual Percentage Rate applicable to the loan would be 9.259% and that the monthly payments would be $2,058.80.

43.    A true and correct copy of the CCCDA disclosures provided to Ms. Gay in connection with the March 14, 2003 loan is attached hereto and labeled Exhibit D.

44.    The March 14, 2003 closing took place at Ms. Gay's workplace during business hours. Ms. Gay and a closing agent were present.

45.    The closing was completed in less than one hour.

46.    A true and correct copy of the Settlement Statement provided to Ms. Gay in connection with the March 14, 2003 refinancing is attached hereto and labeled Exhibit E.

47.    A true and correct copy of the loan note in the March 14, 2003 loan is attached hereto and labeled Exhibit F.

48.    At closing, Ms. Gay expressed concern regarding the change in terms from the preliminary discussions; the APR and monthly payment amount had both increased and the settlement charges had doubled.

49.    Ms. Gay was told by the closing agent that he was not a representative of Ameriquest and that he therefore could not answer questions about the loan terms.

50.    Although the loan closing took place on March 14, 2004, the Settlement Statement indicates a closing date of March 21, 2003.

51.    The March 14, 2003 loan Settlement Statement shows a loan discount fee of 3.800% ($9,944.60) to Ameriquest Mortgage Company. [See Exhibit E: Line 802]

52.    Ms. Gay believes and therefore avers that she was not provided with a "discount" of any kind on the rate in the transaction.

53.    Ms. Gay was never offered an alternative loan with a higher rate that did not involve payment of discount points. Therefore, she had no opportunity to evaluate whether the "discount" would be advantageous to her.

54.    The March 14, 2003 loan contains a "one-way" variable rate provision under which the rate in the transaction could increase from the initial rate disclosed in the loan note, but could not decrease below that rate.

55.    Ms. Gay was not given sufficient information to understand the variable rate associated with her loan and did not understand the complex provisions for a variable rate until many months after her transaction.

56.    Following consummation of the March 14, 2003 loan, Ms. Gay received a telephone call from an Ameriquest loan officer, during which he offered to refinance her home mortgage at a lower rate.

57.    Ms. Gay refinanced her home mortgage loan with Ameriquest again on September 2, 2003 ("September 2, 2003 loan").

58.    By refinancing with Ameriquest, Ms. Gay suffered significant hidden financial harm, including capitalization of points and closing costs and exposure to substantial new and additional closing costs. These hidden costs of refinancing were well known and highly profitable to Ameriquest.

59.    Ms. Gay completed the loan application for the September 2, 2003 loan over the phone. Based on her discussions with Ameriquest's loan officer, Ms. Gay understood that her refinancing loan would be at a rate of 7.25%.

60.    The final CCCDA disclosures given to Ms. Gay at the September 2, 2003 closing stated that the Annual Percentage Rate applicable to the loan would be 9.012% and that the monthly payments would be $2,283.68.

61.    A true and correct copy of the CCCDA disclosures provided to Ms. Gay in connection with the September 2, 2003 refinancing is attached hereto and labeled Exhibit G.

62.    The September 2, 2003 closing took place at Ms. Gay's workplace during business hours. Ms. Gay and a closing agent were present.

63.    The closing was completed in less than one hour.

64.    A true and correct copy of the Settlement Statement provided to Ms. Gay in connection with the September 2, 2003 refinancing is attached hereto and labeled Exhibit H.

65.    A true and correct copy of the loan note in the September 2, 2003 loan is attached hereto and labeled Exhibit I.

66.    At closing, Ms. Gay once again expressed concern, this time calling her Ameriquest loan officer, regarding the fact that the APR was greater than that orally disclosed prior to closing.

67.    Although the loan closing took place on September 2, 2003, the Settlement Statement indicates a closing date of September 9, 2003.

68.    The September 2, 2003 loan Settlement Statement shows a loan discount fee of 3.900% ($11,583.00) to Ameriquest Mortgage Company. [*See* Exhibit H: Line 802]

69.    Ms. Gay believes and therefore avers that she was not provided with a "discount" of any kind on the rate in the transaction.

70.    Ms. Gay was never offered an alternative loan with a higher rate that did not involve payment of discount points. Therefore, she had no opportunity to determine whether the "discount" would be advantageous to her.

71.    The September 2, 2003 loan contains a "one-way" variable rate provision under which the rate in the transaction could increase from the initial rate disclosed in the loan note, but could not decrease below that rate.

72.    Ms. Gay did not understand the complex provisions for a variable rate until many months after the September 2, 2003 loan transaction.

73.    The September 2, 2003 loan Settlement Statement shows that disbursements to Ameriquest were made to pay off the March 14, 2003 Ameriquest loan in the amounts of $16,774.61 and $150,000.00, respectively. [*See* Exhibit H: Lines 1501 and 1511]

74.    Ms. Gay is having significant problems affording the payments on the September 2, 2003 loan.

75.    At the time this complaint was filed, Ms. Gay was five months in arrears on her monthly mortgage payments to Ameriquest.

76.    Ms. Gay believes and therefore avers that acceleration of the debt and foreclosure to recover the amounts now due are imminent.

77.    The CCCDA requires creditors to provide borrowers with accurate information regarding the effects of rescinding a loan transaction. G.L. c. 140D § 10; 209 C.M.R. 32.23(2). Since canceling an initial transaction and canceling a refinancing transaction have different effects, the creditor must provide the borrower with notice that accurately reflects that difference. Specifically, a creditor must provide the borrower with a notice that conforms with the model forms provided in Appendix H to 12 C.F.R. § 226.23, or substantially similar notice. G.L. c. 140D §§ 10, 18; 209 C.M.R. 32.23(2)(b).

78.    Since Ms. Gay was refinancing an Ameriquest loan with Ameriquest in the September 2, 2003 transaction, she should have received a disclosure that described the effects of canceling a refinance transaction. See 12 C.F.R. § 226.23(b)(2), Appendix H, Model Form H-9.

79.    Instead Ameriquest provided Ms. Gay with a form that explained her right to cancel an initial transaction. *See* 12 C.F.R. § 226.23(b)(2), Appendix H, Model Form H-8.

80.    A true and correct copy of the Notice of Right to Cancel provided to Ms. Gay in connection with the September 2, 2003 refinancing is attached hereto and labeled Exhibit I.

81.    As a result, Ameriquest failed to accurately disclose to Ms. Gay the effect that canceling the refinance transaction would have on her home mortgage.

82.    On November 1, 2004 Ms. Gay rescinded the refinance loan as was her right pursuant to G.L. c. 140D, §10 and the regulation promulgated thereunder, 209 C.M.R. 32.23.

83.    A true and correct copy of Ms. Gay's November 1, 2004 notice of rescission related to the refinance loan is attached hereto and labeled Exhibit K.

84.    Ms. Gay would like to refinance with another lender on better terms, but has not fully explored that option because of the prepayment penalty associated with her Ameriquest loan.

11

85.     Ms. Gay also now understands that the thousands of dollars in points and closing

costs that she paid in connection with each loan has acted or could act as an additional *de*

*facto* prepayment penalty.  She understands that since the points and closing costs are

treated as earned when the loan is made, they drive up the effective rate on the original

loan if the loan is repaid in a shorter period than its expected term.  In addition, by

refinancing the points on a previous occasion, Ms. Gay has been required to pay interest

on the points in connection with the refinanced loan.

### Facts Applicable to the Wakefields' Loan Transactions

86.     The Wakefields are unsophisticated consumers with little experience in mortgage

financing. They own a home at 303 Marion Road, Wareham, MA 02571.

87.     The Wakefields purchased their Wareham residence in June 1999 for an initial

purchase price of approximately one hundred ten thousand dollars ($110,000). Since

then, they have refinanced several times and have made numerous repairs and

improvements to the property. A recent appraisal indicates that the Wareham residence

has a current fair market value of approximately three hundred fifteen thousand dollars

($315,000).

88.     On April 17, 2003, the Wakefields refinanced their home mortgage loan with an

entity known as Argent Mortgage Company ("Argent loan").

89.     A true and correct copy of the Settlement Statement provided to the Wakefields in

connection with the Argent loan is attached hereto and labeled Exhibit L.

90.     On information and belief, Argent is the sister company of Ameriquest, both of

which are subsidiaries of Ameriquest Capital Corporation.

91.     Under the terms of the Argent loan, the Wakefields paid a loan origination fee of

2.00% ($3,825.00). [*See* Exhibit L: Line 801]

92.     On January 15, 2004, the Wakefields refinanced their Argent loan with a loan from Ameriquest. The Wareham residence was collateral for this loan ("January 15, 2004 loan").

93.     By refinancing with Ameriquest, the Wakefields suffered significant hidden financial harm, including capitalization of points and closing costs and exposure to substantial new and additional closing costs. These costs of refinancing were well known and highly profitable to Ameriquest.

94.     The preliminary CCCDA disclosures given to the Wakefields and dated January 2, 2004, stated that the Annual Percentage Rate applicable to the loan would be 9.736% and that the monthly payments would be $1,809.89.

95.     A true and correct copy of the CCCDA preliminary disclosures made to the Wakefields in connection with the January 15, 2004 refinancing is attached hereto and labeled Exhibit M.

96.     Based on the preliminary disclosures, the Wakefields believed they were to receive a loan on those terms.

97.     The final CCCDA disclosures given to the Wakefields at the January 15, 2004 closing stated that the Annual Percentage Rate to the applicable loan would be 12.102% and that the monthly payments would be $2,446.27.

98.     A true and correct copy of the CCCDA final disclosures made to the Wakefields in connection with the January 15, 2004 refinancing is attached hereto and labeled Exhibit N.

99.     Upon learning of the change in terms, the Wakefields told their loan officer that they could not afford a $2,446.27 monthly payment.

100.    The loan officer assured them that they would only have to make one $2,446.27 payment on March 1, 2003, after which they could refinance at a lower rate to lower their monthly payments. The loan officer also stated that by refinancing with Ameriquest, the Wakefields would avoid paying a prepayment penalty.

13

101.    A true and correct copy of the Wakefield's February 23, 2004 payment of $2,446.27 is attached hereto and labeled Exhibit O.

102.    The January 15, 2004 loan closing took place at the Wakefields' home with the Wakefields and a closing agent present. The entire loan closing was completed in less than one hour.

103.    A true and correct copy of the Settlement Statement provided to the Wakefields in connection with the January 15, 2004 refinancing is attached hereto and labeled Exhibit P.

104.    A true and correct copy of the loan note in the January 15, 2004 loan is attached hereto and labeled Exhibit Q.

105.    Although the Wakefields closed the loan on January 15, 2004, the Settlement Statement indicates a closing date of January 23, 2004.

106.    The January 15, 2004 loan contains a one-way variable rate provision under which the rate in the transaction could increase from the initial rate disclosed in the loan note, but could not decrease below that rate.

107.    The Wakefields were not given sufficient information to understand the variable rate associated with their loan and did not understand the complex provisions for a variable rate until many months after their transaction.

108.    The January 15, 2004 loan Settlement Statement shows that a $192,555.96 disbursement was made to Ameriquest to pay off the Wakefield's prior loan. [See Exhibit P: Line 1501]

109.    On April 2, 2004, the Wakefields refinanced their January 15, 2004 Ameriquest loan with Ameriquest. The Wareham residence was collateral for this loan ("April 2, 2004 loan").

110.    The Wakefields completed the application for the April 2, 2004 loan by phone.

14

111. The preliminary CCCDA disclosures given to the Wakefields and dated February 24, 2004, stated that the Annual Percentage Rate applicable to the loan would be 8.860% and that the monthly payments would be $1,637.96.

112. A true and correct copy of the CCCDA preliminary disclosures made to the Wakefields in connection with the April 2, 2004 refinancing is attached hereto and labeled Exhibit R.

113. The final CCCDA disclosures given to the Wakefields at the April 2, 2004 closing stated that the Annual Percentage Rate to the applicable loan would be 8.75% and that the monthly payments would be $1,966.82.

114. A true and correct copy of the CCCDA final disclosures made to the Wakefields in connection with the April 2, 2004 refinancing is attached hereto and labeled Exhibit S.

115. The April 2, 2004 loan closing took place at the Wakefield's home with the Wakefields and a closing agent present. The loan closing was completed less in than one hour.

116. A true and correct copy of the Settlement Statement provided to the Wakefields in connection with the April 2, 2004 refinancing is attached hereto and labeled Exhibit T.

117. A true and correct copy of the loan note in the April 2, 2004 loan is attached hereto and labeled Exhibit U.

118. Although the Wakefields closed the loan on April 2, 2004, the HUD-1 Settlement Statement indicates a closing date of April 9, 2004.

119. The April 2, 2004 loan Settlement Statement shows that a loan discount fee of 3.990% ($10,445.82) was paid to Ameriquest Mortgage Company. [*See* Exhibit T: Line 802]

120. The Wakefields believe and therefore aver that they were not provided with a discount of any kind on the rate in the transaction.

121.    The Wakefields were never offered an alternative loan with a higher rate that did not involve payment of discount points. Therefore, they never had an opportunity to evaluate whether the discount would be advantageous to them.

122.    The April 2, 2004 loan contains a one-way variable rate provision under which the rate in the transaction could increase from the initial rate disclosed in the loan note, but could not decrease below that rate.

123.    The April 2, 2004 loan Settlement Statement shows that a $242,057.42 disbursement was to be made to Ameriquest to pay off the January 15, 2004 Ameriquest loan. [*See* Exhibit T: Line 1501].

124.    Following the loan closing, on April 15, 2004, Ameriquest sent the Wakefields a "Statement of Credit Denial," which stated : "We do not grant credit to any applicant on the terms and conditions you have requested."

125.    A true and correct copy of the Statement of Credit Denial that Ameriquest sent to Wakefields on April 15, 2004 is attached hereto and labeled Exhibit V.

126.    Upon receiving the "Statement of Credit Denial," Mr. Wakefield called his loan officer to inquire about the status of the April 2, 2004 loan. During that call, the loan officer told Mr. Wakefied that the April 2, 2004 loan had been cancelled because there had been "fraud in the application and the appraisal."

127.    The information that the Wakefields submitted by telephone in connection with their April 2, 2004 loan application was accurate.

128.    Following his conversation with the loan officer regarding the cancellation of the April 15, 2004 loan, the Wakefields retained an attorney, Lee Berger, to represent them in the matter of Ameriquest's cancellation of the April 2, 2004 loan.

129.    In an August 13, 2004 letter to Mr. Berger, a representative of Ameriquest, Donald Larkin, wrote that the January 15, 2004 loan had been cancelled due to "what [Ameriquest] perceived to be, false income information that was submitted in connection with the subject loan information. Consequently, Ameriquest Loan Number 0066656760

16

[the January 15, 2004 loan] is still in effect and the terms, obligations and duties related thereto remain unchanged."

130.    A true and correct copy of the August 13, 2004 letter from Ameriquest representative, Donald Larkin, to the Wakefields' attorney Lee M. Berger confirming Ameriquest's cancellation of the April 2, 2004 refinancing is attached hereto and labeled Exhibit W.

131.    The Wakefields have been unable to afford the payments on the January 15, 2004 loan.

132.    At the time this complaint was filed, the Wakefields were seven months in arrears on their monthly mortgage payments to Ameriquest.

133.    On October 21, 2004, Ameriquest, through its attorneys Korde & Associates, P.C., sent the Wakefields a Deficiency Notice to notify them of Ameriquest's intention to foreclose on or about December 13, 2004.

134.    A true and correct copy of the October 21, 2004 Deficiency Notice is attached hereto and labeled Exhibit X.

135.    The CCCDA requires creditors to provide borrowers with accurate information regarding the effects of rescinding a loan transaction. G.L. c. 140D § 10; 209 C.M.R. 32.23(2). Since canceling an initial transaction and canceling a refinancing transaction have different effects, the creditor must provide the borrower with notice that accurately reflects that difference. Specifically, a creditor must provide the borrower with a notice that conforms with the model forms provided in Appendix H to 12 C.F.R. § 226.23, or substantially similar notice. G.L. c. 140D §§ 10, 18; 209 C.M.R. 32.23(2)(b).

136.    Since the Wakefields were refinancing Ameriquest loans with Ameriquest in both the January 15, 2004 and April 2, 2004 loan transactions, they should have received a disclosure that described the effects of canceling a refinance transaction. *See* 12 C.F.R. § 226.23(b)(2), Appendix H, Model Form H-9.

17

137.    A true and correct copy of the Notice of Right to Cancel provided to the Wakefields in connection with the January 15, 2004 refinancing is attached hereto and labeled Exhibit Y.

138.    A true and correct copy of the Notice of Right to Cancel provided to the Wakefields in connection with the April 2, 2004 refinancing is attached hereto and labeled Exhibit Z.

139.    Instead, in both loan transactions, Ameriquest provided the Wakefields with a form that explained their right to cancel an initial transaction. See 12 C.F.R. § 226.23(b)(2), Appendix H, Model Form H-8.

140.    As a result, Ameriquest failed to accurately disclose to the Wakefields the actual effect that such a cancellation would have on that transaction.

141.    On October 27, 2004 the Wakefields rescinded the refinance loan as was their right pursuant to G.L. c. 140D, §10 and the regulation promulgated thereunder, 209 C.M.R. 32.23.

142.    A true and correct copy of the Wakefields' October 27, 2004 notice of rescission is attached hereto and labeled Exhibit AA.

143.    The Wakefields would like to refinance with another lender on better terms, but have been unable to do so because of the prepayment penalty associated with the January 15, 2004 loan.

144.    The Wakefields also now understand that the thousands of dollars in points and closing costs that they paid in connection with prior loans have acted or could act as an additional *de facto* prepayment penalty. They understand that since the points and closing costs are treated as earned when the loan is made, they drive up the effective rate on the original loan if the loan is repaid in a shorter period that its expected term. In addition, by refinancing the points paid in earlier loans, the Wakefields have been required to pay interest on the points in connection with the refinanced loan.

## GENERAL ALLEGATIONS

145.    Ameriquest regularly uses bait and switch sales tactics to induce Massachusetts homeowners to finance their residences with Ameriquest on unfavorable terms.

146.    Ameriquest's home loans in Massachusetts are fully secured by homeowners' equity and are therefore made with little or no financial risk to Ameriquest.

147.    Ameriquest regularly fails to provide homeowners with timely and accurate written disclosures of loan terms as mandated by law.

148.    Ameriquest regularly fails to provide homeowners with timely and accurate written change in terms notices as mandated by law.

149.    Ameriquest regularly fails to provide homeowners who are refinancing Ameriquest loans with accurate notice of their right to cancel the transaction.

150.    When a homeowner complains that he or she is not being given a loan on promised terms, Ameriquest's loan officers routinely promise early refinancing on better terms.

151.    Ameriquest regularly charges so-called "discount points" without providing a discount therefor.

152.    Ameriquest regularly fails to offer consumers an alternative loan without "discount points" so that consumers can meaningfully evaluate whether the supposed rate discount is sufficient to offset the cost of the "discount points."

153.    Ameriquest routinely imposes prepayment penalties in the maximum amount allowed by law and then uses the fact of the penalty as a sales technique designed to discourage borrowers from seeking or obtaining better loan terms available from other lenders.

154.    Ameriquest routinely encourages early refinancing of its own loans in order to capitalize points paid on the previous loan and to create an opportunity to charge a new set of points and closing costs.

155.    Ameriquest understands the financial benefit to it of early refinancing of loans containing significant points and fees and hides the financial disadvantage of those refinance loans to its customers.

156.    Ameriquest routinely includes confusing variable rate terms in its loans that are designed to protect Ameriquest if interest rates increase without allowing its customers to benefit if interest rates decline below the rate in effect at the time the loan is made.

157.    An effect of Ameriquest's practices is to trap borrowers into a pattern of financing and refinancing with Ameriquest on terms that are highly financially advantageous to Ameriquest and highly disadvantageous to its customers.

158.    By its practices, Ameriquest strips equity that would otherwise belong to Massachusetts homeowners.

## V.    CLASS DEFINITIONS AND CLASS ISSUES

159.    Plaintiffs bring this action on behalf of themselves and two classes of all other persons similarly situated, pursuant to Mass. R. Civ. P. 23.

160.    Class I (the "deceptive loan terms" class) is represented by all Plaintiffs and consists of all residents of Massachusetts:

  a.  who entered into non-purchase money mortgage loan agreements with Ameriquest, on or after November 3, 2000; and

  i.  who were offered one interest rate in preliminary disclosures but received another rate at closing; and/or

  ii.  who paid fees itemized by Ameriquest as "loan discount fees."

161.    Class II (the CCCDA Notice of Right to Cancel class) is represented by the Wakefields and Ms. Gay, and consists of all residents of Massachusetts:

  a.  who, on or after November 3, 2000, refinanced an Ameriquest non-purchase money mortgage loan with Ameriquest; and

b.  who received a notice of right to cancel which inaccurately described the nature of the right to cancel a refinanced transaction.

162.  There are questions of law and fact which are common to all members of each class, which questions predominate over any question affecting only individual class members. The principal common issues are:

*with respect to Class I:*

a.  Whether Ameriquest offered borrowers mortgages on terms which it could not or did not intend to provide at closing in order to switch borrowers from the mortgage product first offered to a different, higher cost mortgage loan, in violation of 940 C.M.R. §§ 8.04(4) and 8.06(1) and c. 93A;

b.  Whether Ameriquest violated 940 C.M.R. § 8.06(1) and c. 93A by using promises of prompt refinancings at more favorable terms to induce borrowers to close loans;

c.  Whether Ameriquest charged borrowers "loan discount fees" without providing discounts for such payment in violation of 940 C.M.R. §§ 3.04, 3.05, and 3.13 and c. 93A;

d.  Whether Ameriquest failed to provide borrowers with necessary information to evaluate whether payments of "discount" points would be financially advantageous in violation of 940 C.M.R. §§ 3.05, 3.13, and 6.05 and c. 93A § 2;

e.  Whether Ameriquest failed to disclose the "loan discount fees" in violation of G.L. c. 183 § 63;

f.  Whether Ameriquest failed to offer borrowers an alternative loan without the "loan discount fees" for the purposes of allowing borrowers to make an informed decision about whether the payment of discount points would be cost effective in violation of 940 C.M.R. §§ 3.04, 3.05, 3.13, 6.05 and c. 93A;

g.  Whether Ameriquest failed to make the preliminary mortgage lender disclosures required by the Attorney General's Consumer Protection regulations at 940 C.M.R. § 8.05(2) within the time required by 940 C.M.R. § 8.05(6) or, in the alternative as mandated by G.L. c. 184 § 17D

which requires disclosure of settlement costs and related
information in the manner mandated by 209 C.M.R. 38.04;

h.  Whether Ameriquest failed to make disclosures mandated
by 209 C.M.R. §§ 32.18; and

i.  Whether Ameriquest failed to make disclosures mandated
by 209 C.M.R. §§ 32.19(2).

*with respect to Class II:*

a.  Whether Ameriquest violated the CCCDA by failing to provide
proper notice of Class Members' right of rescission;

b.  Whether Class Members have a right to actual and statutory
damages, pursuant to the CCCDA, c. 140D § 32 based on the
misdisclosures; and

c.  Whether Class Members have a right to cancel their transactions
on the basis of the misdisclosure.

163.  The only individual questions concern the identification of members of each class

and the computation of relief to be afforded each class member and can be determined by

a ministerial examination of the relevant files, including, without limitation,

computerized databases. Notice can be provided to the class by various means of

communication, as identified in the Defendant's computerized databases of customers.

164.  Plaintiffs' claims are typical of the claims of class members. All are based on the

same legal and remedial theories.

165.  Plaintiffs will fairly and adequately protect the interests of all class members in

the prosecution of this action and in the administration of all matters relating to claims

stated herein. They are similarly situated with, and have suffered similar injuries as, the

members of the class they seek to represent. Plaintiffs have retained counsel experienced

in handling class action suits involving unfair business practices and consumer law.

Neither the named Plaintiffs nor their counsel have any interest which might cause them not to vigorously pursue this action.

166.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, in that:

a.    the losses suffered by the class members are such that prosecution of individual actions is impractical or economically unfeasible;

b.    by contrast, the illegal profits obtained by the Defendant as a result of their unlawful practices are substantial;

c.    the form of proof required is such that prosecution of individual actions is impractical or economically infeasible;

d.    in the absence of the class action device, Plaintiffs and Class Members would be left without a remedy for the wrongful acts alleged, and the Defendants would be unjustly enriched;

e.    the prosecution of separate lawsuits by individual members of the class would create the risk of inconsistent adjudications with respect to individual class members, which would establish incompatible standards of conduct for the Defendants, making concentration of the litigation concerning this matter in this Court desirable;

f.    the claims of the representative Plaintiffs are typical of the claims of the class; and

g.    no unusual difficulties are likely to be encountered in the management of this action as a class action.

The class is so numerous as to make it impracticable to join all members of the class as plaintiffs. Based upon the investigation of counsel, the number of class members of each class is estimated to be in excess of 500 persons.

## VI.    CAUSES OF ACTION

## COUNT I: RESCISSION OR REFORMATION BASED ON ILLEGALITY OR UNCONSCIONABILITY ON BEHALF OF ALL NAMED PLAINTIFFS AND CLASS I

167.    Plaintiffs repeat and reallege all paragraphs above as if set forth fully herein.

168.    Ameriquest has violated G.L. c. 93A § 2 with respect to each Plaintiff and each class member by utilizing terms and practices that were unfair, deceptive, and/or unconscionable. The violations the Defendant engaged in included, without limitation:

a.      Employing a bait and switch strategy by offering borrowers mortgages on favorable terms prior to closing and then offering a different mortgage loan product at closing in violation of 940 C.M.R. §§ 8.04(4) and 8.06(1) and c. 93A § 2;

b.      Promising to refinance borrowers' mortgages on more favorable terms to induce them to close loans in violation of 940 C.M.R. § 8.06(1) and c. 93A § 2;

c.      Implying that borrowers are being given a loan "discount" but failing to provide any such discount in violation of 940 C.M.R. §§ 3.04, 3.05, 3.13, and 6.05 and c. 93A § 2;

d.      Failing to provide borrowers with necessary information to evaluate whether payments of "discount" points would be financially advantageous in violation of 940 C.M.R. §§ 3.05, 3.13, and 6.05 and c. 93A § 2;

e.      Making loans on terms that were unfair and deceptive in light of their hidden advantages to the Defendant and their hidden costs to the Plaintiffs, including, without limitation, using unjustified and undisclosed points and closing charges as a means to create a hidden advantage in refinancing the loan in violation of 940

24

C.M.R. §§ 3.04, 3.05, 3.13, and 6.05, M.G.L. c. 183 § 63 and c. 93A § 2.

f.    Using prepayment penalties to trap borrowers into foregoing better loan terms from other lenders and/or to encourage borrowers to refinance on disadvantageous terms with Ameriquest;

g.    Providing confusing variable rate provisions in its loans designed to protect Ameriquest if rates increase from those in place when the loan is made without providing a benefit to borrowers when rates decline;

h.    Failing to make disclosures that comply with 940 C.M.R. §8.05(2);

i.    Failing to make disclosures that comply with and 209 C.M.R. § 32.18; and

j.    Failing to make disclosures that comply with and 209 C.M.R. § 32.19(2).

169.    The Defendant's conduct is illegal and/or unconscionable under statutory and regulatory provisions as aforesaid and under the common law.

170.    The Plaintiffs and other similarly situated individuals are entitled to rescission or reformation of their loan contracts to expunge the illegal terms.

171.    The Plaintiffs and each member of Class I are entitled to equitable relief and damages for illegality and unconscionability.

## COUNT II: CLAIMS FOR UNCONSCIONABILITY AND/OR ILLEGALITY ON BEHALF OF ALL NAMED PLAINTIFFS AND MEMBERS OF CLASS I

172.    Plaintiffs repeat and reallege all paragraphs above as if set forth fully herein.

173.    Contract terms that violate the Division of Banks regulations, 209 C.M.R. 32.00, *et seq.*, and/or the Attorney General's regulation, 940 C.M.R. § 3.01 *et seq.*, 6.01 *et seq.*, 8.01 *et seq.* are void or voidable for illegality and unenforceable.

174.    Contract terms that violate the Division of Banks regulations and/or the Attorney General's regulations are unconscionable and unenforceable.

175.    Said contract terms are void or voidable as a matter of public policy.

176.    The Plaintiffs and each member of Class I are entitled to relief from unconscionable and/or illegal contract terms including but not limited to cancellation and/or refund of unjustified points and cancellation/and or refund of prepayment penalties.

## COUNT III: BREACH OF CONTRACT ON BEHALF OF ALL NAMED PLAINTIFFS AND MEMBERS OF CLASS I

177.    Plaintiffs repeat and reallege all paragraphs above as if set forth fully herein.

178.    The Defendant engaged in a pattern or practice of offering the Plaintiffs and class members different terms in its oral and written preliminary disclosures than the ones it offered at closing.

179.    To the extent that Defendant offered terms to the Plaintiffs and class members prior to closing, the Defendant formed contracts with the Plaintiffs and class members to provide those promised terms.

180.    Promised terms included, without limitation: lower interest rates, lower monthly payments, lower settlement costs, and no prepayment penalty.

181.    By delivering different terms at closing than the ones initially promised, the Defendant breached its contracts with the Plaintiffs and class members.

182.    The Defendant's conduct caused the Plaintiffs and members of Class I irreparable harm including, without limitation, increasing the amount of monthly payments owed to unaffordable levels thereby putting them at imminent risk of foreclosure, as well as by discouraging them from refinancing at more affordable rates through its imposition of undisclosed/unjustified loan discount fees in conjunction with prepayment penalties.

183.   The Defendant's conduct increased the cost of the loan to each Plaintiff and the members of Class I.

184.   Each Plaintiff and each member of Class I is entitled to damages and equitable remedies for the Defendant's breach of contract.

### COUNT IV: BREACH OF CONTRACT ON BEHALF OF DAVID AND JANET WAKEFIELD, INDIVIDUALLY

185.   Plaintiffs repeat and reallege all paragraphs above as if set forth fully herein.

186.   The Wakefields entered into a loan transaction with Ameriquest on April 2, 2004.

187.   Under the terms of April 2, 2004 loan transaction, Ameriquest was to pay off the January 15, 2004 loan, the Wakefields' property taxes, and debts the Wakefields had with several other creditors.

188.   Under the terms April 2, 2004 loan, the Wakefields' Annual Percentage Rate and monthly payment would have been significantly reduced by comparison with the January 15, 2004 loan.

189.   Under the terms of the April 2, 2004 loan, the Wakefields would not have had to make a monthly payment to Ameriquest until June 2004.

190.   Ameriquest purports to have "cancelled" the April 2, 2004 after loan documents were executed.

191.   Said "cancellation" was without legal cause or excuse.

192.   Ameriquest's cancellation of the April 2, 2004 caused the Wakefields irreparable harm because it had the effect of reinstating the January 15, 2004 loan, the terms of which the Wakefields could not and cannot afford. By increasing the monthly payment amounts as well as the arrears owed, Ameriquest's cancellation of the April 2, 2004 drastically increased the likelihood that the Wakefields' family home would be foreclosed upon.

193.   Furthermore, because the January 15, 2004 loan contains a prepayment penalty, the Wakefields cannot afford to refinance with another lender.

194.    The Wakefields are therefore entitled to damages and equitable remedies for the Defendant's breach of the April 2, 2004 loan contract.

## COUNT V: INTENTIONAL MISREPRESENTATION ON BEHALF OF ALL NAMED PLAINTIFFS AND MEMBERS OF CLASS I

195.    Plaintiffs repeat and reallege all paragraphs above as if set forth fully herein.

196.    Defendant made misrepresentations to the Plaintiffs and members of Class I, which the Plaintiffs and members of Class I relied upon to their detriment.

197.    Defendant's misrepresentations included, without limitation:

      a.    making preliminary oral and written disclosures pertaining to the interest rate, monthly payments, settlement charges and other loan terms which differed significantly from the final loan terms offered;

      b.    promising a discounted rate in connection with payment of "discount points" without providing said discount; and

      c.    making assurances of prompt refinancing at better terms.

198.    Defendant made these misrepresentations to induce Plaintiffs and Members of Class I to enter into loans with it.

199.    Plaintiffs and Members of Class I were induced to enter into loans with the Defendant and suffered damages as a result.

200.    The Defendant's practices caused the Plaintiffs and members of Class I economic harm.

201.    Each Plaintiff and each member of Class I is entitled to damages and equitable remedies for intentional misrepresentation.

## COUNT VI: UNJUST ENRICHMENT ON BEHALF OF ALL NAMED PLAINTIFFS AND MEMBERS OF CLASS I

202.    Plaintiffs repeat and reallege all paragraphs above as if set forth fully herein.

203.    The Defendant has been unjustly enriched at the expense of each Plaintiff and each member of Class I.

204.    Each Plaintiff and each member of Class I is therefore entitled to equitable remedies for unjust enrichment including, without limitation, restitution and reformation of contract.

## COUNT VII: DECLARATORY JUDGMENT ON BEHALF OF ALL NAMED PLAINTIFFS AND MEMBERS OF CLASS I

205.    Plaintiffs repeat and reallege all paragraphs above as if set forth fully herein.

206.    Ameriquest's actions have caused the Plaintiffs and the members of Class I actual prejudice. They ask this court to enter declaratory relief concerning the propriety of Defendant's practices relating to refinancing home mortgage loans.

## COUNT VIII: PRELIMINARY AND PERMANENT INJUNCTION ON BEHALF OF ALL NAMED PLAINTIFFS AND MEMBERS OF CLASS I

207.    Plaintiffs repeat and reallege all paragraphs above as if set forth fully herein.

208.    Ameriquest's improper practices, including, without limitation, it use of bait and switch tactics, and its failure to provide Plaintiffs and class members with adequate disclosures of loan and rescission terms have caused Plaintiffs and class members to enter into disadvantageous and unaffordable loans. Moreover, Defendant's imposition of undisclosed/unjustified points and prepayment penalties prevent the Plaintiffs and class members from refinancing loans with other lenders at more favorable terms.

209.    Ameriquest's improper refinancing practices cause irreparable harm including, without limitation:

    a.    Raising monthly payment amounts to unaffordable levels and thereby placing Plaintiffs and class members at risk of foreclosure;

    b.    Causing class members who do refinance their homes to pay interest on the unjustified points; and

c.    Causing class members who refinance with other lenders to pay excessive prepayment penalties.

210.    Absent injunctive relief, the Defendant may continue to violate the law and injure other persons who are seeking to refinance their home mortgage loans in the future.

## COUNT IX- CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES FOR FAILURE TO COMPLY WITH THE REQUIREMENTS OF THE CCCDA ON BEHALF OF LYNN GAY, THE WAKEFIELDS AND CLASS II

211.    Plaintiffs repeat and reallege all paragraphs above as if set forth fully herein.

212.    Class II is represented by Plaintiffs David and Janet Wakefield, and Lynn Gay.

213.    At all times relevant hereto Ameriquest was a creditor within the meaning of the CCCDA, M.G.L. c. 140D, §1.

214.    Because the transactions described herein are covered by the CCCDA, Ameriquest was required to provide the Plaintiffs and class members with accurate notice of their right to rescind their refinancing transactions. M.G.L. c. 140D § 10; 209 C.M.R. 32.23(2).

215.    To satisfy the right of rescission disclosure requirements of M.G.L. c. 140D § 10, the creditor must provide the borrower with notice that conforms with the model forms in Appendix H of Regulation Z, as appropriate, or substantially similar notice. M.G.L. c. 140D §§ 10, 18; 209 C.M.R. 32.23(2)(b).

216.    The notice of right of rescission that Ameriquest provided to the Plaintiffs was Model Form H-8, the General Rescission Model Form. See 12 C.F.R. § 226.23, App. H.

217.    Since the Plaintiffs were refinancing with the same creditor, Ameriquest should have provided them with Model Form H-9—the rescission notice required when the borrower is refinancing with the same creditor. See 12 C.F.R. § 226.23, App. H.

218.    The misdisclosures in connection with each transaction, as aforesaid, were material pursuant to the CCCDA, G.L. c. 140D §1 and 209 C.M.R. §32.23(2)(a)(4).

219.   By providing the incorrect notice of right of rescission to the Plaintiffs, Ameriquest misinformed the Wakefields, Lynn Gay and the members of Class II about the effects of rescission thereby violating the CCCDA. G.L. c. 140D §10; 209 C.M.R. 32.23(2)(a)(4).

220.   Each member of Class II is therefore entitled to a declaration that they have the right to rescind their transactions and to notice sufficient to exercise the right. G.L. c. 140D, §10 (a), (f); 209 C.M.R. 32.23(1).

221.   Each member of Class II is therefore entitled to a declaration that any Class Member who chooses to rescind is entitled to cancellation of finance charges in connection with their transaction and to a determination that the defendants' property interests in that class members' real estate is void pursuant to G.L. c. 140D § 10(b);

222.   Each member of Class II is therefore entitled to statutory and actual damages pursuant to G.L. c. 140D § 32;

## COUNT X: CLAIM FOR DECLARATORY AND INJUNCTVE RELIEF TO ENFORCE RESCISSION ON BEHALF OF LYNN GAY AND THE WAKEFIELDS, INDIVIDUALLY

223.   Plaintiffs repeat and reallege all paragraphs above as if set forth fully herein.

224.   Lynn Gay and the Wakefields refinanced Ameriquest loans with Ameriquest, and Ameriquest failed to provide them with notice of their right to cancel which accurately disclosed the effect of rescinding a refinance transaction, thereby violating the CCCDA. G.L. c. 140D §10(a); 209 C.M.R. 32.23(2)(a)(4).

225.   On October 27, 2004 and November 1, 2003, respectively, Lynn Gay  and the Wakefields notified Ameriquest that they were rescinding their transactions. [*See* Exhibits K and AA, respectively] .

226.   Lynn Gay and the Wakefields are therefore entitled to a declaration that their rescission of the their loans was valid, and, as a result that their mortgages  are void, and

31

that they are entitled to a refund or credit of all finance charges, pursuant to G.L. c. 140D §10(b); 209 C.M.R. 32.23(1)(c).

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court grant the following relief against Defendant Ameriquest:

*On behalf of Class I:*

a. equitable relief and damages for illegality and unconscionability;

b. relief from unconscionable and/or illegal contract terms including but not limited to cancellation and/or refund of unjustified points and cancellation/and or refund of prepayment penalties;

c. damages and equitable relief for the Defendant's breach of contract;

d. damages and equitable remedies for intentional misrepresentation;

e. damages and equitable remedies for unjust enrichment including, without limitation, restitution and reformation of contract;

f. a declaration that the Defendant's refinancing practices, including, without limitation, its use of bait and switch advertising, its imposition of undisclosed/unjustified "loan discount fees" in conjunction with prepayment penalties and its failure to provide Plaintiffs with adequate disclosures of loan and rescission terms are improper;

g. preliminary and permanent injunctive relief to prevent defendant from continuing to violate the law and injuring other persons who are seeking to refinance their home mortgage loans in the future;

h. an award of reasonable attorney's fee and costs; and

i. such other relief at law or equity as this Court may deem just and proper;

*On behalf of Class II:*

    j.   a declaration that members of Class II are entitled to rescind their transactions and notice sufficient to exercise the right, pursuant to G.L. c. 140D, §10 (a), (f) and 209 C.M.R. 32.23;

    k.   a declaration that any Class Member who chooses to rescind is entitled to cancellation of finance charges in connection with their transaction and to a determination that the defendant's' security interest in that class member's property is void pursuant to G.L. c. 140D § 10(b);

    l.   statutory and actual damages pursuant to G.L. c. 140D § 32; and

    m.  an award of reasonable attorney's fee and costs; and

    n.   such other relief at law or equity as this Court may deem just and proper;

*On behalf of Plaintiffs David and Janet Wakefield, individually:*

    o.   damages and equitable relief for the Defendant's breach of the April 2, 2004 loan contract;

    p.   an award of reasonable attorney's fee and costs; and

    q.   such other relief at law or equity as this Court may deem just and proper;

*On behalf of Plaintiffs Lynn Gay and David and Janet Wakefield, individually:*

    r.   a declaration that their rescission was valid;

    s.   a declaration that their mortgages are void as a result of the rescission;

    t.   a declaration that they are not liable for any finance or other charge associated with the rescinded loans; and

    u.  an award of reasonable attorney's fee and costs; and

v.  such other relief at law or equity as this Court may deem just and proper;

## JURY DEMAND

Plaintiffs demand trial by jury.

Respectfully Submitted,
Isabelle and David Murphy et al.
By their attorneys,

Dated this 3rd day of November 2004.

Gary Klein BBO # 560769
John Roddy BBO # 424240
Elizabeth Ryan BBO # 549632
Shennan Kavanagh BBO # 655174
Roddy, Klein & Ryan
727 Atlantic Ave., 2nd floor
Boston, MA  02111
Tel. 617-353-5500 x 15
Fax. 617- 353-5030

*EXHIBIT A*

# TRUTH-IN-LENDING DISCLOSURE STATEMENT    Ex. A
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Mortgage Lenders License - License Number ML0702
LENDER: Ameriquest Mortgage Company
   25 Braintree Hill Park, # 304
   Braintree, MA 02184
   (781)794-1601

☐ Preliminary    ☒ Final

Borrowers: David R Murphy    Isabelle M Murphy

Broker License:

Type of Loan: ADJUSTABLE RATE
Date: April 22, 2004

Address:    13 Crescent St.
City/State/Zip: PLYMPTON, MA 02367

Loan Number: 0076237486 - 5609

Property:   13 Crescent St, PLYMPTON, MA 02367

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 6.529 % | $ 318,883.99 | $ 246,836.94 | $ 565,720.93 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 24 | $1,497.92 | 06/01/2004 | | | |
| 335 | $1,576.70 | 06/01/2006 | | | |
| 1 | $1,576.35 | 05/01/2034 | | | |

**VARIABLE RATE FEATURE:**
☒ Your loan has a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:** You are giving a security interest in the property located at: 13 Crescent St, PLYMPTON, MA 02367

**ASSUMPTION:** Someone buying this property ☒ cannot assume the remaining balance due under original terms.
☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:** You may obtain property insurance from anyone you want that is acceptable to Ameriquest Mortgage Company

**LATE CHARGES:** If payment is late, you will be charged 3.000% of the overdue principal and interest payment.

**PREPAYMENT:** If you pay off your loan early, you
☒ may     ☐ will not     have to pay a penalty.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____ Date _____     _____ Date _____
Borrower David R Murphy                         Borrower Isabelle M Murphy

_____ Date _____     _____ Date _____
Borrower                                            Borrower

TIL1 (Rev. 7/01)

7777777070707000767652421717444400777170
5633546210733317414651056007660415377760
3001077424172725901001075564173327431007
0000076727346053876101

**BORROWER COPY**

04/22/2004 1:33:51 PM

**EXHIBIT B**

U.S. Department of Housing
and Urban Development

OMB Approval No. 2502-0791

**Settlement Statement**
**Optional Form for**
**Transactions without Sellers**

**Ex. B**

Name & Address of Borrower:
David R Murphy    Isabelle M Murphy

Crescent St   PLYMPTON,MA 02367

Property Location: (if different from above)
Crescent St PLYMPTON, MA 02367

Name & Address of Lender:
Ameriquest Mortgage Company
25 Braintree Hill Park, # 304
Braintree, MA 02184

Settlement Agent: BARRETT, NICHOLAS & ASSOCIATES

Place of Settlement: 25 BRAINTREE HILL PARK BRAINTREE, MA 02184

| L. Settlement Charges | | Loan Number: 0076237486 - 5609 | Settlement Date: Estimated 04/29/2004 |
|---|---|---|---|
| **800. Items Payable in Connection with Loan** | | | |
| 801. Loan origination fee   % to | | **M.   Disbursement to Others** | |
| 802. Loan discount 3.326  % to Ameriquest Mortgage Company | $8,537.18 | | |
| 803. Appraisal/Prop Val to | $0.00 | 1501. FLEET NATIONAL BANK (W) | $916.00 |
| 804. Credit report to | | | |
| 805. Inspection fee to | | 1502. ROCKLAND TRUST COMPA (W) | $1,470.00 |
| 806. | | | |
| 807. | | 1503. WELLS FARGO HOME MOR (W) | $227,743.55 |
| 808. Yield Spread Premium to | | | |
| 809. | | 1504. CBUSASEARS (W) | $1,277.00 |
| 810. Tax Related Service Fee to | | | |
| 811. Flood Search Fee to | | 1505. FLEET NTL BK (W) | $2,862.00 |
| 812. Lenders Processing Fee to Ameriquest Mortgage | $626.00 | | |
| 813. Admin to Ameriquest Mortgage Company | $238.00 | 1506. LOWES/MBGA (W) | $1,074.00 |
| 814. Doc. Prep. Fee to | | | |
| 815. Credit Report Fee to | | 1507. THD/CBUSA (W) | $845.00 |
| 816. Origination Fee   % to | | | |
| 817. Application Fee to Ameriquest Mortgage Company | $360.00 | 1508. BANK ONE-OHIO (W) | $6,254.00 |
| 818. Underwriting Fee to | | | |
| 819. Service Provider Fee to | | 1509. TOWN OF PLYMPTON (W) | $1,354.21 |
| 820. Processing Fee to | | | |
| 821. Underwriting Fee to | | 1510. QUINCY MUTUAL FIRE INSURANCE (W) | $409.00 |
| 822. Appraisal Fee to | | | |
| **900. Items Required by Lender to be Paid in Advance** | | 1511. | |
| 901. Interest from 04/29/2004 to 05/01/2004  @ $40.44 per day | $80.88 | | |
| 902. Mortgage Insurance premium for   months to | | 1512. | |
| 903. Hazard ins prem to | $0.00 | | |
| 904. Flood ins prem to | | 1513. | |
| **1000. Reserves Deposited with Lender** | | 1514. | |
| 1001. Hazard Insurance   months @ $   per month | | | |
| 1002. Mortgage Insurance   months @ $   per month | | 1515. | |
| 1003. Earthquake Ins   months @ $   per month | | | |
| 1004. County prop. taxes   months @ $   per month | | 1520. TOTAL DISBURSED (enter on line 1603) | $244,204.76 |
| 1005. Annual assess.   months @ $   per month | | | |
| 1006. Flood   months @ $   per month | | Total Wire:   $246,836.94 | |
| 1007. Windstorm Ins   months @ $   per month | | | |
| 1008. | | | |
| **1100. Title Charges** | | | |
| 1101. Settlement or closing fee to | | | |
| 1102. Abstract or title search to | | | |
| 1103. Title examination to | | | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to | | | |
| 1107. Attorney's fees to | | | |
| 1108. Title insurance to | | | |
| 1109. Lender's coverage | | | |
| 1110. Owner's coverage   $ | | | |
| 1111. Settlement/Disbursement fee to | | 7777777707070700076765242717744400767061 | |
| 1112. Escrow fee to | | 5633555620073331741465105600756041537760 | |
| **1200. Government Recording and Transfer Charges** | | 3001077424177756020107461400623244711107 | |
| 1201. Recording fees | | 02000072674603091 5060 | |
| 1202. City/county tax/stamps | | **N.   NET SETTLEMENT** | |
| 1203. State tax/ stamps | | | |
| 1204. State specific fee | | 1600. Loan Amount | 256,680.00 |
| 1205. State specific fee | | | |
| **1300. Additional Settlement Charges** | | 1601. Plus Cash/Check from Borrower | |
| 1301. Demand to | | | |
| 1302. Pest inspection to | | 1602. Minus Total Settlement Charges (line 1400) | $9,843.06 |
| 1303. Survey Fee | | | |
| 1304. Staff Appraiser Fee | | 1603. Minus Total Disbursements to Others (line 1520) | $244,204.76 |
| 1305. Reconveyance Fee to | | | |
| 1306. | | 1604. Equals Disbursements to Borrower (after expiration of any applicable rescission period) | $2,632.18 |
| 1307. Property Val Fee to | | | |
| 1308. Courier Fee | | | |
| **1400. Total Settlement Charges (enter on line 1602)** | $9,843.06 | | |

Borrower(s) Signature(s):

X _____

*EXHIBIT C*

Loan Number: 0076237486 - 5609

**Ex. C**

# ADJUSTABLE RATE NOTE
### (LIBOR Index • Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.**

April 22, 2004                                    Orange                           CA
[Date]                                            [City]                          [State]

13 Crescent St, PLYMPTON, MA  02367
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $256,680.00    (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is    Ameriquest Mortgage Company .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  5.750%. This interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on    June 1, 2004    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on    May 1, 2034 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make payments at: 505 City Parkway West, Suite 100, Orange, CA 92868

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $1,497.92.  This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of  May, 2006 , and on that day every  sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding  five  percentage point(s) ( 5.000  %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Initials:

77777777070707000767652427177444007776160
47225557300733317414651056007560415377760
30010774241737560100107772634302557331107

1 of 3

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)    _____ (Seal)
Borrower David R Murphy              Borrower Isabelle M Murphy


_____ (Seal)    _____ (Seal)
Borrower                             Borrower

Loan Number: 0076237486 - 5609

7777777707070700076765242177444400776160
472255573007333165046411561075604153776 0
300107742417775601001071560728231555321 07
000007623744803021 96903

810-3 (Rev 1/01)                Page 3 of 3                  04/22/2004 1:35:21 PM

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding five percentage points ( 5.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **7.750%** or **less than 5.750%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One( 1.000 %) from the rate of interest I have been paying for the preceding   six months. My interest rate will never be greater than 11.750)% or less than 5.750)%.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials_____

Loan Number;  0076237486 - 5609

7777777707070700076765242717744400776160
47225557300723206504751146007560415377760
3001077424173756010010746073622054433107
0000007623742480402156302

e10-2 (Rev 1/01)                    Page 2 of 3                    04/22/2004 1:35:21 PM

## ADJUSTABLE RATE RIDER

### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 22nd day of April , 2004   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

13 Crescent St, PLYMPTON, MA  02367
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of  5.750 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A) Change Dates**
The interest rate I will pay may change on the first day of  May, 2006  , and on that day every sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

   **(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.   The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as  published in the Wall Street Journal.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

Initials_____

Loan Number:  0076237486 - 5609

```
77777777070707000767652427177444400776160
47225557300733317414651056007560415377 60
3001077424173756910010757063733154432107
            000000076237486090215030T
```

Loan Number: 0076237486 - 5609

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. **WAIVERS**
I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

12. **GOVERNING LAW PROVISION**
This Note and the related Security Interest are governed by Federal and State law applicable to the jurisdiction of the Property.

Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
Borrower  David R Murphy                      Borrower  Isabelle M Murphy


_____ (Seal)        _____ (Seal)
Borrower                                      Borrower


77777777707070700076755242717744400776160
4722555730073331650464115610756041537760
30010774241737569100107163224421344733107
0560007623748520900449302

3 of 3

04/22/2004 1:35:21 PM

201-3MA (Rev. 7/03)

Loan Number: 0076237486 - 5609

(D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than 7.750 % or less than 5.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One percentage point(s) (1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 11.750 % or less than 5.750 %.

(E) Effective Date of Changes
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5. BORROWER'S RIGHT TO PREPAY

I may repay this loan at any time as provided in this paragraph. If I repay this loan within the first Three (3) year(s) of the date of the execution of this Note, I agree to pay a prepayment penalty, subject to the following conditions:

1) If I repay this loan within the first year by refinancing with another lender, I will pay a penalty equal to the sum of: (a) the lesser of three (3) months interest or the remainder of the first years interest; plus (b) three (3) months additional interest.
2) If I repay this loan within the first year by any other means, I will pay a penalty equal to the lesser of three (3) months interest or the remainder of the first years interest.

3) If I repay this loan within the second or third year by refinancing with another lender, I will pay a penalty equal to three (3) months interest.

6. LOAN CHARGES
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

7. BORROWER'S FAILURE TO PAY AS REQUIRED
(A) Late Charges for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 3.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver by Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. GIVING OF NOTICES
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

Initials:

77777777070707000767652427177444000776160
4722556730072320650475114600756041537760
30010774244777560120010766372520255633007
060006476227186036030307
201-2MA (Rev. 7/03)

2 of 3

04/22/2004 1:36:21 PM

Ex. [

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Mortgage Lenders License - License Number ML0702
LENDER: Ameriquest Mortgage Company
    25 Braintree Hill Park, # 304
    Braintree, MA 02184
    (781)794-1601

☐ Preliminary    ☒ Final

Broker License:

Borrowers: Lynn M Gay

Type of Loan: ADJUSTABLE RATE
Date: March 14, 2003

Address:    43 Oak St
City/State/Zip:    BRIDGEWATER, MA 02324

Loan Number: 0044563724 - 5609

Property:    43 Oak St, BRIDGEWATER, MA 02324

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 9.259   % | $ 491,804.98 | $ 249,354.26 | $ 741,159.24 |

**YOUR PAYMENT SCHEDULE WILL BE:**

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING |
|---|---|---|---|---|---|
| 359 | $2,058.80 | 05/01/2003 | | | |
| 1 | $2,050.04 | 04/01/2033 | | | |

**VARIABLE RATE FEATURE:**
☒  Your loan has a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:**    You are giving a security interest in the property located at: 43 Oak St, BRIDGEWATER, MA 02324

**ASSUMPTION:**  Someone buying this property  ☒ cannot assume the remaining balance due under original terms.
    ☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:**    You may obtain property insurance from anyone you want that is acceptable to Ameriquest Mortgage Company

**LATE CHARGES:**  If a payment is late, you will be charged 3.000% of the overdue principal and interest payment.

**PREPAYMENT:**  If you pay off your loan early, you
☒ may    ☐ will not    have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

| | |
|---|---|
| Borrower Lynn M Gay    Date | Borrower    Date |
| Borrower    Date | Borrower    Date |

Borrower Copy

**EXHIBIT E**

Ex. E

| Settlement Statement<br>Optional Form for<br>Transactions without Sellers | U.S. Department of Housing<br>and Urban Development | OMB Approval No. 2502-0491<br>WLI | | |
|---|---|---|---|---|

| Name & Address of Borrower:<br>Lynn M Gey<br><br>43 Oak St    BRIDGEWATER,MA 02324 | Name & Address of Lender:<br>Ameriquest Mortgage Company<br>25 Braintree Hill Park, # 304<br>Braintree, MA 02184 |
|---|---|

Property Location: (if different from above)

43 Oak St, BRIDGEWATER, MA  02324

Settlement Agent:

Place of Settlement:

## L.    Settlement Charges

| 800. Items Payable in Connection with Loan | | Loan Number:<br>0044563724 - 5609 | Settlement Date:Estimated<br>03/21/2003 | |
|---|---|---|---|---|
| 801. Loan origination fee        % to | | **M.    Disbursements to Others** | | |
| 802. Loan discount  3.800  %  to  Ameriquest Mortgage Company | $9,944.60 | | | |
| 803. Appraisal fee to  JAMES E SWIFT | $325.00 | 1501.<br>CHILDRENS PL/CBUSA NA | (W) | $1,156.00 |
| 804. Credit report to | | | | |
| 805. Inspection fee to | | 1502.<br>FINANCIAL RESOURCES FC | (W) | $7,229.00 |
| 806. | | | | |
| 807. | | 1503.<br>FIRST PREMIER BANK | (W) | $310.00 |
| 808. Yield Spread Premium to | | | | |
| 809. | | 1504.<br>FIRST PREMIER BANK | (W) | $375.00 |
| 810. Tax Related Service Fee to  Ameriquest Mortgage | $70.00 | | | |
| 811. Flood Search fee to  Ameriquest Mortgage Company | $16.00 | 1505.<br>MACYS EAST/FDSB | (W) | $687.00 |
| 812. Lenders Processing Fee to  Ameriquest Mortgage | $525.00 | | | |
| 813.Admin to Ameriquest Mortgage Company | $239.00 | 1506.<br>MACYS/GCCCC | (W) | $357.00 |
| 814. Doc. Prep. Fee to | | | | |
| 815. Credit Report Fee to | | 1507.<br>WASHINGTON MUTUAL FA | (W) | $225,930.21 |
| 816. Origination Fee      % to | | | | |
| 817. Application Fee to  Ameriquest Mortgage Company | $360.00 | 1508.<br>FIRST USA BANK N A | (W) | $2,559.00 |
| 818. Underwriting Fee to | | | | |
| 819. Service Provider Fee to | | 1509.<br>SEARS | (W) | $5,166.00 |
| 820. Processing Fee  to | | | | |
| 821. Underwriting Fee to | | 1510.<br>Town of Bridgewater | (W) | $3,276.81 |
| 822. Apprsl/Prop Eval Fee to | | | | |
| 900. Items Required by Lender to be Paid in Advance | | 1511. | | |
| 901. Interest from  03/21/2003  to  04/01/2003  @  $62.74  per day | $690.14 | | | |
| 902. Mortgage insurance premium for         months to | | 1512. | | |
| 903. Hazard ins prem to | | | | |
| 904. Flood Ins prem  to | | 1513. | | |
| 1000. Reserves Deposited with Lender | | | | |
| 1001. Hazard insurance  1  months @ $ 72.75  per month | $72.75 | 1514. | | |
| 1002. Mortgage insurance      months @ $     per month | | | | |
| 1003. City property taxes     months @ $     per month | | 1515. | | |
| 1004. County prop. taxes  2  months @ $  177.76  per month | $355.52 | | | |
| 1005. Annual assess.     months @ $     per month | | 1520. TOTAL DISBURSED (enter on line 1603) | | |
| 1006. Flood    months @ $     per month | | | | $247,046.02 |
| 1007.              months @ $        per month | | | | |
| 1008. | | | | |
| 1100. Title Charges | | | | |
| 1101. Settlement or closing fee to  Dc Notary | $350.00 | Total Wire:    $249,325.99 | | |
| 1102. Abstract or title search to | | | | |
| 1103. Title examination to  Law Offices of William A Snider | $545.00 | | | |
| 1104. Title insurance binder to | | | | |
| 1105. Document preparation to | | | | |
| 1106. Notary fees to | | | | |
| 1107. Attorney's fees to | | | | |
| 1108. Title insurance to  Law Offices of William A Snider | $718.37 | | | |
| 1109. Lender's coverage      $ | | | | |
| 1110. Owner's coverage      $ | | | | |
| 1111. Settlement/Disbursement fee to | | | | |
| 1112. Escrow Fee to | | | | |
| 1200. Government Recording and Transfer Charges | | | | |
| 1201. Recording fees | $250.00 | **N.  NET SETTLEMENT** | | |
| 1202. City/county tax/stamps | | | | |
| 1203. State tax/ stamps | | 1600. Loan Amount | | |
| 1204. State specific fee | | | | $261,700.00 |
| 1205. State specific fee | | 1601. Plus Cash/Check from Borrower | | |
| 1300. Additional Settlement Charges | | | | |
| 1301. Demand to | | 1602. Minus Total Settlement Charges<br>(line 1400) | | $14,612.36 |
| 1302. Pest Inspection to | | | | |
| 1303. Survey Fee to | | 1603. Minus Total Disbursements to Others<br>(line 1520) | | $247,046.02 |
| 1304. | | | | |
| 1305. Reconveyance Fee to | | | | |
| 1306. | | 1604. Equals Disbursements to Borrower<br>(after expiration of any applicable rescission<br>period) | | $41.60 |
| 1307. | | | | |
| 1308. Courier Fee | $50.00 | | | |
| 1400. Total Settlement Charges (enter on line 1692) | $14,612.38 | | | |

Borrower's Signature(s):

X

| Approved for Funding By: | Approved: | Branch:  Braintree, MA 02184 |
|---|---|---|

**EXHIBIT F**

Loan Number:  0044563724 - 5609

**Ex. F**

## ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.

| March 14, 2003 | Orange | CA |
|---|---|---|
| [Date] | [City] | [State] |

43 Oak St, BRIDGEWATER, MA  02324
[Property Address]

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $261,700.00     (this amount is called "principal"), plus interest, to the order of the Lender.  The Lender is   Ameriquest Mortgage Company .

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST

.Interest will be charged on unpaid principal until the full amount of principal has been paid.  I will pay interest at a yearly rate of  8.750%.  This interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3.  PAYMENTS

#### (A)  Time and Place of Payments

I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on    May 1, 2003   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  My monthly payments will be applied to interest before principal.  If, on    April 1, 2033
, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make payments at: 505 City Parkway West, Suite 100,  Orange, CA 92868

or at a different place if required by the Note Holder.

#### (B)  Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $2,058.80.  This amount may change.

#### (C)  Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

#### (A)  Change Dates

The interest rate I will pay may change on the first day of  April, 2005  , and on that day every sixth month thereafter.  Each date on which my interest rate could change is called a "Change Date."

#### (B)  The Index

Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal.  The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

#### (C)  Calculation of Changes

*Before each Change Date, the Note Holder will calculate my new interest rate by adding   six  percentage point(s) ( 6.000  %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percent (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.  The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.*

Initials:_____

03/14/2003 10:48:36 AM

Loan Number: 0044563724 - 5609

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **10.750 %** or less than **8.750 %**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) **(1.000 %)** from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **14.750 %** or less than **8.750 %**.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I may repay this loan at any time as provided in this paragraph. If I repay this loan within the first Three (3) year(s) of the date of the execution of this Note, I agree to pay a prepayment penalty, subject to the following conditions:

1) If I repay this loan within the first year by refinancing with another lender, I will pay a penalty equal to the sum of: (a) the lesser of three (3) months interest or the remainder of the first years interest; plus (b) three (3) months additional interest.
2) If I repay this loan within the first year by any other means, I will pay a penalty equal to the lesser of three (3) months interest or the remainder of the first years interest.
3) If I repay this loan within the second or third year by refinancing with another lender, I will pay a penalty equal to three (3) months interest.

**6. LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A) Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **3.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

Initials:_____

201-2MA (Rev. 9/00)                                                                03/14/2003 10:48:35 AM

Loan Number: 0044563724 - 5609

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.  WAIVERS**
I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**12.  GOVERNING LAW PROVISION**

This Note and the related Security Interest are governed by Federal and state law applicable to the jurisdiction of the Property.

Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the Instrument which secures this Note, must be in a signed writing to be legally enforceable.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)     _____ (Seal)
Borrower  Lynn M Gay                     Borrower

_____ (Seal)     _____ (Seal)
Borrower                                 Borrower

201-3MA (Rev. 8/00)                                        03/14/2003 10:48:36 AM

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 14th day of March , 2003    and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

43 Oak St, BRIDGEWATER, MA  02324
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of  8.750 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
  **(A) Change Dates**
The interest rate I will pay may change on the first day of April, 2005  , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

  **(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.   The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials_____

Loan Number: 0044563724 - 5609

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding six percentage points ( 6.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than 10.750% or less than 8.750%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one( 1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 14.750% or less than 8.750%.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials_____

Loan Number: 0044563724 - 5609

610-2 (Rev 1/01)                    Page 2 of 3

03/14/2003 10:48:36 AM

*EXHIBIT G*

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Ex. G

Mortgage Lenders License - License Number ML0702
LENDER: Ameriquest Mortgage Company
　　　　10600 White Rock Road, Suite 200-20
　　　　Rancho Cordova, CA 95670
　　　　(916)853-4720

☐ Preliminary　　☒ Final

Broker License:

Borrowers: LYNN M. GAY

Type of Loan: ADJUSTABLE RATE
Date: September 2, 2003

Address:　　43 OAK
City/State/Zip:　BRIDGEWATER, MA 02324

Loan Number: 0053225926 - 7403

Property:　43 OAK, BRIDGEWATER, MA  02324

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 9.012　% | $ 540,143.84 | $ 281,969.48 | $ 822,113.32 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $2,283.68 | 11/01/2003 | | | |
| 1 | $2,272.20 | 10/01/2033 | | | |

**VARIABLE RATE FEATURE:**
☒ Your loan has a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:**　You are giving a security interest in the property located at: 43 OAK, BRIDGEWATER, MA  02324

**ASSUMPTION:**　Someone buying this property ☒ cannot assume the remaining balance due under original terms.
　　　　　　　　　☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:**　You may obtain property insurance from anyone you want that is acceptable to
　　　　　　　　　　　Ameriquest Mortgage Company

**LATE CHARGES:**　If a payment is late, you will be charged  3.000%  of the overdue principal and interest payment .

**PREPAYMENT:**　If you pay off your loan early, you
☒ may　☐ will not　have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____
Borrower LYNN M. GAY　　　　　　Date

_____
Borrower　　　　　　　　　　　　Date

_____
Borrower　　　　　　　　　　　　Date

_____
Borrower　　　　　　　　　　　　Date

TIL1 (Rev. 7/01)　　　　　　**Original**

08/29/2003 4:26:41 PM

**EXHIBIT H**

**Ex. H**

Settlement Statement
Optional Form for
Transactions without Sellers

U.S. Department of Housing
and Urban Development

OMB Approval No. 2502-0491
WLI

| Name & Address of Borrower:<br>LYNN M. GAY | Name & Address of Lender:<br>Ameriquest Mortgage Company<br>10600 White Rock Road, Suite 200-20<br>Rancho Cordova, CA 95670 |
|---|---|

43 OAK    BRIDGEWATER,MA 02324

Property Location: (if different from above)

43 OAK, BRIDGEWATER, MA  02324

Settlement Agent:

Place of Settlement:

**L.   Settlement Charges**

| | | |
|---|---|---|
| **800.  Items Payable in Connection with Loan** | | Loan Number:<br>00S3225926 - 7403 | Settlement Date:Estimated<br>09/09/2003 |
| 801.  Loan origination fee    % to | | | |
| 802.  Loan discount  3.900 % to  Ameriquest Mortgage Company | $11,583.00 | **M.    Disbursement to Others** | |
| 803.  Apprai/Prop Val to                              * $388.00 | $0.00 | 1501.<br>AMERIQUEST | $16,774.61 |
| 804.  Credit report to | | | |
| 805.  Inspection fee to | | 1502.<br>HHLD BANK                            (W) | $880.00 |
| 806. | | | |
| 807. | | 1503.<br>CHLD/CBUSA                         (W) | $690.00 |
| 808.  Yield Spread Premium to | | | |
| 809. | | 1504.<br>WFNLIMITD                          (W) | $621.00 |
| 810.  Tax Related Service Fee to  Ameriquest Mortgage | $35.00 | | |
| 811.  Flood Search Fee to  Ameriquest Mortgage Company | $16.00 | 1505.<br>GMAC MTG                          (W) | $443.00 |
| 812.  Lenders Processing Fee to  Ameriquest Mortgage | $626.00 | | |
| 813.Admin to Ameriquest Mortgage Company | $239.00 | 1506.<br>FST PREMIER                        (W) | $414.00 |
| 814.  Doc. Prep. Fee to | | | |
| 815.  Credit Report Fee to | | 1507.<br>CAPITAL 1 BK                       (W) | $329.00 |
| 816.  Origination Fee    % to | | | |
| 817.  Application Fee to Ameriquest Mortgage Company | $360.00 | 1508.<br>FST PREMIER                        (W) | $315.00 |
| 818.  Underwriting Fee to | | | |
| 819.  Service Provider Fee to | | 1509.<br>MACYE/FDSB                        (W) | $163.00 |
| 820.  Processing Fee  to | | | |
| 821.  Underwriting Fee to | | 1510.<br>MACYS EAST/FDSB               (W) | $66.00 |
| 822.  Appraisal Fee to | | | |
| **900.  Items Required by Lender to be Paid in Advance** | | 1511.<br>Ameriquest Mortgage | $250,000.00 |
| 901.  Interest from 09/09/2003  to 10/01/2003  @  $69.16 per day | $1,521.52 | | |
| 902.  Mortgage insurance premium for         months to | | 1512. | |
| 903.  Hazard Ins prem  to | $0.00 | | |
| 904.  Flood Ins prem  to | | 1513. | |
| **1000.  Reserves Deposited with Lender** | | | |
| 1001.  Hazard Insurance    months @ $    per month | | 1514. | |
| 1002.  Mortgage insurance    months @ $    per month | | | |
| 1003.  Earthquake Ins    months @ $    per month | | 1515. | |
| 1004.  County prop. taxes    months @ $    per month | | | |
| 1005.  Annual assess.    months @ $    per month | | | |
| 1006.  Flood    months @ $    per month | | 1520.  TOTAL DISBURSED (enter on line 1603) | $270,695.61 |
| 1007.  Windstorm Ins    months @ $    per month | | | |
| 1008. | | | |
| **1100.  Title Charges** | | | |
| 1101.  Settlement or closing fee to  UDX | $125.00 | | |
| 1102.  Abstract or title search to  BRIDGESPAN | $150.00 | | |
| 1103.  Title examination to | | | |
| 1104.  Title insurance binder to | | | |
| 1105.  Document preparation to | | | |
| 1106.  Notary fees to | | | |
| 1107.  Attorney's fees to | | | |
| 1108.  Title insurance to  BRIDGESPAN | $742.50 | | |
| 1109.  Lender's coverage    $ | | Total Wire:    $15,719.87 | |
| 1110.  Owner's coverage    $ | | | |
| 1111.  Settlement/Disbursement fee to  BRIDGESPAN | $395.00 | * = Paid outside closing | |
| 1112.  Escrow Fee to BRIDGESPAN | $130.00 | | |
| **1200.  Government Recording and Transfer Charges** | | | |
| 1201.  Recording fees | | | |
| 1202.  City/county tax/stamps | $176.00 | **N.   NET SETTLEMENT** | |
| 1203.  State tax/ stamps | | | |
| 1204.  State specific fee | | 1600.  Loan Amount | $297,000.00 |
| 1205.  State specific fee | | | |
| **1300.  Additional Settlement Charges** | | 1601.  Plus Cash/Check from Borrower | |
| 1301.  Demand to | | | |
| 1302.  Pest inspection to | | 1602.  Minus Total Settlement Charges<br>(line 1400) | $16,136.52 |
| 1303.  Survey Fee | | | |
| 1304.  Staff Appraiser Fee | $37.50 | 1603.  Minus Total Disbursements to Others<br>(line 1520) | $270,695.61 |
| 1305.  Reconveyance Fee to | | | |
| 1306. | | 1604.  Equals Disbursements to Borrower<br>(after expiration of any applicable rescission<br>period) | $10,167.87 |
| 1307.  Property Val Fee to | | | |
| 1308.  Courier Fee to | | | |
| **1400.  Total Settlement Charges (enter on line 1602)** | $16,136.52 | | |

Borrower(s) Signature(s):

X

Approved for Funding By:                         Approved:                         Branch:  Rancho Cordova, CA 95670

**EXHIBIT I**

Loan Number:  0053225926 - 7403

**Ex. I**

# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.

September 2, 2003                          Orange                                    CA
[Date]                                      [City]                                  [State]
                           43 OAK, BRIDGEWATER, MA  02324
                                    [Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $297,000.00     (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is   Ameriquest Mortgage Company .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  8.500%. This interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

(A)  Time and Place of Payments

I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on   November 1, 2003   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on     October 1, 2033   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make payments at: 505 City Parkway West, Suite 100,  Orange, CA 92868

or at a different place if required by the Note Holder.

(B)  Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $2,283.68.  This amount may change.

(C)  Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A)  Change Dates

The interest rate I will pay may change on the first day of  October, 2005 , and on that day every  sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B)  The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C)  Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding  six percentage point(s) ( 6.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Initials:_____

08/29/2003 4:26:41 PM

201-1MA (Rev. 8/00)

Loan Number: 0053225926 - 7403

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.500 % or less than 8.500 %.** Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One  percentage point(s) **(1.000 %)** from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **14.500 %** or less than **8.500 %.**

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.  BORROWER'S RIGHT TO PREPAY**

I may repay this loan at any time as provided in this paragraph.  If I repay this loan within the first Three (3) year(s) of the date of the execution of this Note, I agree to pay a prepayment penalty, subject to the following conditions:

1) If I repay this loan within the first year by refinancing with another lender, I will pay a penalty equal to the sum of: (a) the lesser of three (3) months interest or the remainder of the first years interest; plus (b) three (3) months additional interest.

2) If I repay this loan within the first year by any other means, I will pay a penalty equal to the lesser of three (3) months interest or the remainder of the first years interest.

3) If I repay this loan within the second or third year by refinancing with another lender, I will pay a penalty equal to three (3) months interest.

**6.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)  Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of  fifteen   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **3.000 %** of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.  The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D)  No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

201-2MA (Rev. 9/00)



Initials:_____

08/29/2003 4:26:41 PM

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**12.  GOVERNING LAW PROVISION**

This Note and the related Security Interest are governed by Federal and State law applicable to the jurisdiction of the Property.

Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
Borrower  LYNN M. GAY                            Borrower

_____ (Seal)        _____ (Seal)
Borrower                                         Borrower

201-3MA (Rev. 6/00)                                      08/29/2003 4:26:41 PM

## ADJUSTABLE RATE RIDER
**(LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this 2nd day of September , 2003    and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

43 OAK, BRIDGEWATER, MA  02324

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of  8.500 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    **(A) Change Dates**
The interest rate I will pay may change on the first day of  October, 2005  , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

    **(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials_____

Loan Number:  0053225926 - 7403

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding six percentage points ( **6.000 %**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **10.500%** or less than **8.500%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One( **1.000 %**) from the rate of interest I have been paying for the preceding   six months. My interest rate will never be greater than **14.500**% or less than **8.500**)%.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials_____

Loan Number: 0053225926 - 7403

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)    _____ (Seal)
Borrower LYNN M. GAY                        Borrower

_____ (Seal)    _____ (Seal)
Borrower                                    Borrower

Loan Number:  0053225926 - 7403

08/29/2003 4:26:41 PM

**EXHIBIT J**

Ex. J

# NOTICE OF RIGHT TO CANCEL

LENDER:    Ameriquest Mortgage Company

BORROWER(S): LYNN M. GAY

ADDRESS:       43 OAK
CITY/STATE/ZIP:  BRIDGEWATER,MA 02324

PROPERTY:  43 OAK
           BRIDGEWATER, MA  02324

DATE:   September 2, 2003
LOAN NO.:   0053225926 - 7403
TYPE:   ADJUSTABLE RATE

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.  The date of the transaction, which is

| ENTER DOCUMENT SIGNING DATE |
| :---: |
| 9/2/03 |

; or

2.  The date you received your Truth in Lending disclosures; or
3.  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1100 Town and Country Road, Suite 200**
**Orange, CA 92868**

ATTN:  FUNDING
PHONE: (714)541-9960
FAX:   (714)245-0857

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
| :---: |
| 9/5/03 |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____          _____
SIGNATURE                         DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

| | | | |
| :--- | :--- | :--- | :--- |
| BORROWER/OWNER LYNN M. GAY | Date | BORROWER/OWNER | Date |
| | | | |
| BORROWER/OWNER | Date | BORROWER/OWNER | Date |

1064-NRC (Rev 6/99)

08/29/2003 4:26:41 PM

*EXHIBIT K*

**Ex. K**

RODDY KLEIN & RYAN

Attorneys at Law

———————

727 Atlantic Ave., 2nd Floor
Boston, Massachusetts 02111

Gary Klein

Tel. (617) 357-5500 x 15
Fax (617) 357-5030
klein@grantkleinroddy.com

November 1, 2004

*By Certified Mail, Return Receipt*
*Requested No. 7000 1670 0000 7575 3398*

Mr. Wayne Lee
Chief Executive Officer
Ameriquest Mortgage Company
1100 Town & Country Road
Orange, CA 92868

*By Certified Mail, Return Receipt*
*Requested No. 7000 1670 0000 7575 3404*

Ameriquest Mortgage Company
ATTN: Funding
1100 Town and Country Road, Suite 200
Orange, CA 92868

> RE: Ms. Lynn Gay
> 43 Oak Street
> Bridgewater, MA 02324
> Ameriquest Loan No.: 0053225926-7403
> Loan Date: September 2, 2003

Dear Mr. Lee:

I represent the above reference homeowner, who entered into a consumer loan transaction with Ameriquest Mortgage Company in September, 2003.

I have been authorized by my client to rescind this transaction and hereby exercise that right pursuant to the Massachusetts Consumer Credit Cost Disclosure Act, M.G.L. c. 140D, § 10 and the regulation promulgated thereunder, 209 CMR 32.23.

Ms. Gay retains a current right to rescind because the Notice of Right to Cancel Form provided in connection with the transaction failed to comply the requirements set forth in Appendix H of Regulation Z, § 226.23 as required by M.G.L. c. 140D § 10(a) and 209 CMR 32.23(2)(a). Ms. Gay was refinancing an Ameriquest home mortgage loan in the September 2, 2003 loan transaction. Therefore, Ameriquest should have provided her with an H-9 Notice of Right to Cancel form, which is specific to refinancings with the original creditor, rather than with the H-8 form she received.

Ameriquest Mortgage Co.
11/1/04
Page 2


Under the law, Ms. Gay's right to rescind the transaction continues once foreclosure has been initiated. *See* M.G.L. c. 140D § (10)(i)(1)(b), 209 C.M.R. § 32.23(8)(a)(2). Upon her rescission, the security interest held by Ameriquest as a result of this transaction is void pursuant to M.G.L. c. 140D § (10)(b), 209 C.M.R. § § 32.23(4). Pursuant to the state statute, your client has twenty days after receipt of this notice of rescission to return to Ms. Gay all monies paid and to take any action necessary and appropriate to reflect termination of the security interest. Upon completion of these responsibilities, Ms. Gay will perform all necessary actions required by M.G.L. c. 140D, § 10 and 209 CMR § 32.23, including tender of any amounts then due.

If your client fails to act in conformity with its statutory obligations, Ms. Gay will consider her options, including but not limited to a legal action seeking a declaratory judgment that the loan is rescinded together with claims for statutory and actual damages, attorneys fees and costs. In addition, any violation of the federal or state truth in lending laws is a *per se* violation of the Massachusetts unfair or deceptive acts or practices statute as well as regulations enacted thereunder (Mass. Gen. Laws Ann. ch.93A, 940 C.M.R. §1.01 et seq.).

Ms. Gay reserves the right to raise other bases upon which the loan at issue may be rescindable on statutory or common law grounds.

If you have any questions please do not hesitate to contact me.


Sincerely,

Gary Klein


cc: Lynn Gay

*EXHIBIT C*

Loan Number: 0076237486 - 5609

**Ex. C**

# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.

April 22, 2004                          Orange                                    CA
[Date]                                    [City]                                   [State]
                            13 Crescent St, PLYMPTON, MA 02367
                                    [Property Address]

### 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $256,680.00 (this amount is called "principal" interest, to the order of the Lender. The Lender is   Ameriquest Mortgage Company .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay intere yearly rate of  5.750%.  This interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and af default described in Section 7(B) of this Note.

### 3. PAYMENTS
#### (A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on   June 1, 2004   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I. may owe under this Note. My monthly payments will be applied to interest before principal. If, on   May 1, 2034 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make payments at: 505 City Parkway West, Suite 100,  Orange, CA 92868

or at a different place if required by the Note Holder.

#### (B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $1,497.92.  This amount may change.

#### (C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
#### (A) Change Dates
The interest rate I will pay may change on the first day of  May, 2006 , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

#### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

#### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding· five  percentage point(s) ( 5.000  %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Initials:

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.


_____ (Seal)          _____ (Seal)
Borrower David R Murphy                    Borrower Isabelle M Murphy



_____ (Seal)          _____ (Seal)
Borrower                                   Borrower



Loan Number: 0076237486 - 5609


77777777070707000767652427177444400776160
47225557300733316504641156107560415377760
30010774241757560100107560726231555532107
000000762074680921156003

610-3 (Rev 1/01)            Page 3 of 3                    04/22/2004 1:35:21 PM

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding five percentage points ( 5.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **7.750% or less than 5.750%.** Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One( 1.000 %) from the rate of interest I have been paying for the preceding   six months. My interest rate will never be greater than 11.750)% or less than 5.750)%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Loan Number;  0076237486 - 5609

Initials_____

7777777770707000767852421774400776160
4722555730072320650475114600756041537760
3001077424417375601001074607362205443310 7
000007623748039215030 2

810-2 (Rev 1/01)                                Page 2 of 3

# ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 22nd day of April , 2004  and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

13 Crescent St, PLYMPTON, MA  02367
            [Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of  5.750 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A) Change Dates**
The interest rate I will pay may change on the first day of  May, 2006  , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

   **(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

   If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials_____

Loan Number: 0076237486 - 5609

7777777707070700007676524271774440077616 0
4722555730073331741465105600756041537760
3001077424177255010610757053733154432107
0000007200746000015000

610-1 (Rev 1/01)                    Page 1 of 3                    04/22/2004 1:35:21 PM

Loan Number: 0076237486 - 5609

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. **WAIVERS**
I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

12. **GOVERNING LAW PROVISION**
This Note and the related Security Interest are governed by Federal and State law applicable to the jurisdiction of the Property.

**Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Borrower David R Murphy

_____ (Seal)
Borrower  Isabelle M Murphy

_____ (Seal)
Borrower

_____ (Seal)
Borrower

7777777707070700007676524271774400776160
47225557300733316504641156107560415377760
30010775541737560100107763234213447331073
0505007623746023034463033

3 of 3

04/22/2004 1:35:21 PM

201-3MA (Rev. 7/03)

Loan Number: 0076237486 - 5609

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **7.750 %** or less than **5.750 %**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) **(1.000 %)** from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **11.750** % or less than **5.750 %**.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.  BORROWER'S RIGHT TO PREPAY

I may repay this loan at any time as provided in this paragraph. If I repay this loan within the first Three (3) year(s) of the date of the execution of this Note, I agree to pay a prepayment penalty, subject to the following conditions:

1)  If I repay this loan within the first year by refinancing with another lender, I will pay a penalty equal to the sum of: (a) the lesser of three (3) months interest or the remainder of the first years interest; plus (b) three (3) months additional interest.

2)  If I repay this loan within the first year by any other means, I will pay a penalty equal to the lesser of three (3) months interest or the remainder of the first years interest.

3)  If I repay this loan within the second or third year by refinancing with another lender, I will pay a penalty equal to three (3) months interest.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits; then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

(A)  Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **3.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

Initials:

7777777770707070007676524271774440C776160
472255573007232205504751146007560415377S0
30010774244775755011001876637252025563300700060076237486030303603272

2 of 3

201-2MA (Rev. 7/03)

*EXHIBIT D*

Ex. D

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Mortgage Lenders License - License Number ML0702    ☐ Preliminary    ☒ Final
LENDER:Ameriquest Mortgage Company
25 Braintree Hill Park, # 304
Braintree, MA 02184
(781)794-1601

Broker License:

Borrowers:Lynn M Gay

Type of Loan:  ADJUSTABLE RATE
Date:  March 14, 2003

Address:        43 Oak St
City/State/Zip:  BRIDGEWATER,MA 02324

Loan Number:  0044563724 - 5609

Property:    43 Oak St, BRIDGEWATER, MA  02324

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 9.259 % | $ 491,804.98 | $ 249,354.26 | $ 741,159.24 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING |
|---|---|---|---|---|---|
| 359 | $2,058.80 | 05/01/2003 | | | |
| 1 | $2,050.04 | 04/01/2033 | | | |

VARIABLE RATE FEATURE:
☒  Your loan has a variable rate feature.  Disclosures about the variable rate feature have been provided to you earlier.

SECURITY:    You are giving a security interest in the property located at: 43 Oak St, BRIDGEWATER, MA  02324

ASSUMPTION:  Someone buying this property    ☒ cannot assume the remaining balance due under original terms.
☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

PROPERTY INSURANCE:    You may obtain property insurance from anyone you want that is acceptable to
Ameriquest Mortgage Company

LATE CHARGES:  If a payment is late, you will be charged  3.000%  of the overdue principal and interest payment .

PREPAYMENT:  If you pay off your loan early, you
☒ may    ☐ will not    have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____
Borrower Lynn M Gay                           Date

_____
Borrower                                      Date

_____
Borrower                                      Date

_____
Borrower                                      Date

Borrower Copy

*EXHIBIT E*

| Settlement Statement Optional Form for Transactions without Sellers | U.S. Department of Housing and Urban Development | OMB Approval No. 2502-0491 |
|---|---|---|

WLI

| Name & Address of Borrower: | Name & Address of Lender: |
|---|---|
| Lynn M Gay | Ameriquest Mortgage Company |
|  | 25 Braintree Hill Park, # 304 |
| 43 Oak St    BRIDGEWATER MA 02324 | Braintree, MA 02184 |
| Property Location: (if different from above) | Settlement Agent: |
| 43 Oak St, BRIDGEWATER, MA 02324 | Place of Settlement: |

| L.    Settlement Charges | | | | | |
|---|---|---|---|---|---|
| 800.  Items Payable in Connection with Loan | | Loan Number: 0044563724 - 5609 | Settlement Date: Estimated 03/21/2003 | | |
| 801. Loan origination fee      % to | | M.   Disbursement to Others | | | |
| 802. Loan discount  3.800  % to  Ameriquest Mortgage Company | $9,944.60 | | | | |
| 803. Appraisal fee to  JAMES E SWIFT | $325.00 | 1501. CHILDRENS PL/CBUSA NA | (W) | | $1,156.00 |
| 804. Credit report to | | | | | |
| 805. Inspection fee to | | 1502. FINANCIAL RESOURCES FC | (W) | | $7,229.00 |
| 806. | | | | | |
| 807. | | 1503. FIRST PREMIER BANK | (W) | | $310.00 |
| 808. Yield Spread Premium to | | | | | |
| 809. | | 1504. FIRST PREMIER BANK | (W) | | $375.00 |
| 810. Tax Related Service Fee to Ameriquest Mortgage | $70.00 | | | | |
| 811. Flood Search Fee to  Ameriquest Mortgage Company | $16.00 | 1505. MACYS EAST/FDSB | (W) | | $587.00 |
| 812. Lenders Processing Fee to Ameriquest Mortgage | $626.00 | | | | |
| 813. Admin to Ameriquest Mortgage Company | $238.00 | 1506. MACYS/GCCCC | (W) | | $357.00 |
| 814. Doc. Prep. Fee to | | | | | |
| 815. Credit Report Fee to | | 1507. WASHINGTON MUTUAL FA | (W) | | $225,930.21 |
| 816. Origination Fee    % to | | | | | |
| 817. Application Fee to  Ameriquest Mortgage Company | $360.00 | 1508. FIRST USA BANK N A | (W) | | $2,559.00 |
| 818. Underwriting Fee to | | | | | |
| 819. Service Provider Fee to | | 1509. SEARS | (W) | | $5,166.00 |
| 820. Processing Fee to | | | | | |
| 821. Underwriting Fee to | | 1510. Town of Bridgewater | (W) | | $3,276.81 |
| 822. Apprl/Prop Eval Fee to | | 1511. | | | |
| 900.  Items Required by Lender to be Paid in Advance | | | | | |
| 901. Interest from 03/21/2003  to  04/01/2003  @ $62.74  per day | $690.14 | 1512. | | | |
| 902. Mortgage insurance premium for          months to | | | | | |
| 903. Hazard ins prem  to | | 1513. | | | |
| 904. Flood Ins prem  to | | | | | |
| 1000. Reserves Deposited with Lender | | 1514. | | | |
| 1001. Hazard insurance  1  months @ $ 72.75  per month | $72.75 | | | | |
| 1002. Mortgage insurance   months @ $   per month | | 1515. | | | |
| 1003. City property taxes   months @ $   per month | | | | | |
| 1004. County prop. taxes  2  months @ $ 177.76  per month | $355.52 | | | | |
| 1005. Annual assess.   months @ $   per month | | 1520. TOTAL DISBURSED (enter on line 1603) | | | $247,046.02 |
| 1006. Flood   months @ $   per month | | | | | |
| 1007.          months @ $          per month | | | | | |
| 1008. | | | | | |
| 1100. Title Charges | | | | | |
| 1101. Settlement or closing fee to  Dc Notary | $350.00 | | | | |
| 1102. Abstract or title search to | | | | | |
| 1103. Title examination to  Law Offices of William A Snider | $545.00 | Total Wire:    $249,325.99 | | | |
| 1104. Title insurance binder to | | | | | |
| 1105. Document preparation to | | | | | |
| 1106. Notary fees to | | | | | |
| 1107. Attorney's fees to | | | | | |
| 1108. Title insurance to  Law Offices of William A Snider | $718.37 | | | | |
| 1109. Lender's coverage        $ | | | | | |
| 1110. Owner's coverage        $ | | | | | |
| 1111. Settlement/Disbursement fee to | | | | | |
| 1112. Escrow fee to | | | | | |
| 1200. Government Recording and Transfer Charges | | | | | |
| 1201. Recording fees | $250.00 | N.   NET SETTLEMENT | | | |
| 1202. City/county tax/stamps | | | | | |
| 1203. State tax/ stamps | | | | | |
| 1204. State specific fee | | 1600. Loan Amount | | | 261,700.00 |
| 1205. State specific fee | | | | | |
| 1300. Additional Settlement Charges | | 1601. Plus Cash/Check from Borrower | | | |
| 1301. Demand to | | | | | |
| 1302. Pest Inspection to | | 1602. Minus Total Settlement Charges (line 1400) | | | $14,612.38 |
| 1303. Survey Fee to | | | | | |
| 1304. | | 1603. Minus Total Disbursements to Others (line 1520) | | | $247,046.02 |
| 1305. Reconveyance Fee to | | | | | |
| 1306. | | 1604. Equals Disbursements to Borrower (after expiration of any applicable rescission period) | | | $41.60 |
| 1307. | | | | | |
| 1308. Courier Fee | $50.00 | | | | |
| 1400. Total Settlement Charges (enter on line 1602) | $14,612.38 | | | | |

Borrower(s) Signature(s):

X _____

| Approved for Funding By: | Approved: | Branch:  Braintree, MA 02184 |
|---|---|---|

*EXHIBIT F*

Loan Number: 0044563724 - 5609

**Ex. F**

# ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.

March 14, 2003                     Orange                          CA
[Date]                             [City]                          [State]

43 Oak St, BRIDGEWATER, MA 02324
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $261,700.00    (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is   Ameriquest Mortgage Company .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  8.750%. This interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on   May 1, 2003   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on   April 1, 2033 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make payments at: 505 City Parkway West, Suite 100, Orange, CA 92868

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $2,058.80. This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of   April, 2005  , and on that day every  sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding  six  percentage point(s) ( 6.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Initials:_____

201-1MA (Rev. 9/00)                                              03/14/2003 10:48:36 AM

Loan Number: 0044563724 - 5609

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.750 %** or less than **8.750 %**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) (**1.000 %**) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **14.750** % or less than **8.750 %**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.  BORROWER'S RIGHT TO PREPAY**

I may repay this loan at any time as provided in this paragraph. If I repay this loan within the first Three (3) year(s) of the date of the execution of this Note, I agree to pay a prepayment penalty, subject to the following conditions:

1) If I repay this loan within the first year by refinancing with another lender, I will pay a penalty equal to the sum of: (a) the lesser of three (3) months interest or the remainder of the first years interest; plus (b) three (3) months additional interest.

2) If I repay this loan within the first year by any other means, I will pay a penalty equal to the lesser of three (3) months interest or the remainder of the first years interest.

3) If I repay this loan within the second or third year by refinancing with another lender, I will pay a penalty equal to three (3) months interest.

**6.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)  Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **3.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D)  No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

Initials: _____

201-2MA (Rev. 8/00)

03/14/2003 10:48:36 AM

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**12.  GOVERNING LAW PROVISION**

This Note and the related Security Interest are governed by Federal and state law applicable to the jurisdiction of the Property.

Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the Instrument which secures this Note, must be in a signed writing to be legally enforceable.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)          _____(Seal)
Borrower  Lynn M Gay                             Borrower


_____(Seal)          _____(Seal)
Borrower                                         Borrower

201-3MA (Rev. 9/00)                                                         03/14/2003 10:48:36 AM

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 14th day of March , 2003  and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

43 Oak St, BRIDGEWATER, MA  02324
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of  8.750 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the first day of  April, 2005  , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials_____

Loan Number: 0044563724 - 5609

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding six percentage points ( 6.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **10.750%** or less than **8.750%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one( **1.000** %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **14.750%** or less than **8.750%**.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials_____

Loan Number:  0044563724 - 5609

**EXHIBIT G**

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

**Ex. G**

Mortgage Lenders License - License Number ML0702
LENDER:Ameriquest Mortgage Company
    10600 White Rock Road, Suite 200-20
    Rancho Cordova, CA 95670
    (916)853-4720

[ ] Preliminary    [X] Final

Broker License:

Borrowers:LYNN M. GAY

Type of Loan: ADJUSTABLE RATE
Date: September 2, 2003

Address:    43 OAK
City/State/Zip:  BRIDGEWATER,MA 02324

Loan Number: 0053225926 - 7403

Property:  43 OAK, BRIDGEWATER, MA 02324

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 9.012 % | $ 540,143.84 | $ 281,969.48 | $ 822,113.32 |

**YOUR PAYMENT SCHEDULE WILL BE:**

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $2,283.68 | 11/01/2003 | | | |
| 1 | $2,272.20 | 10/01/2033 | | | |

**VARIABLE RATE FEATURE:**
[X] Your loan has a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:**    You are giving a security interest in the property located at: 43 OAK, BRIDGEWATER, MA 02324

**ASSUMPTION:**  Someone buying this property
    [X] cannot assume the remaining balance due under original terms.
    [ ] may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:**    You may obtain property insurance from anyone you want that is acceptable to
    Ameriquest Mortgage Company

**LATE CHARGES:**  If a payment is late, you will be charged 3.000% of the overdue principal and interest payment.

**PREPAYMENT:** If you pay off your loan early, you
[X] may    [ ] will not    have to pay a penalty.
**See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.**

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____
Borrower LYNN M. GAY     Date

_____
Borrower     Date

_____
Borrower     Date

_____
Borrower     Date

**Original**

TIL1 (Rev. 7/01)

08/29/2003 4:26:41 PM

*EXHIBIT H*

Settlement Statement
Optional Form for
Transactions without Sellers

U.S. Department of Housing
and Urban Development

OMB Approval No. 2502-0491

WLI

Ex. H

Name & Address of Borrower:
LYNN M. GAY

Name & Address of Lender:
Ameriquest Mortgage Company
10600 White Rock Road, Suite 200-20
Rancho Cordova, CA 95670

43 OAK    BRIDGEWATER, MA 02324

Property Location: (if different from above)

Settlement Agent:

43 OAK, BRIDGEWATER, MA 02324

Place of Settlement:

**L.  Settlement Charges**

| 800.  Items Payable in Connection with Loan | | Loan Number:<br>0053225926 - 7403 | Settlement Date: Estimated<br>09/09/2003 | |
|---|---|---|---|---|
| 801. Loan origination fee    % to | | **M.  Disbursements to Others** | | |
| 802. Loan discount  3.900  % to Ameriquest Mortgage Company | $11,583.00 | | | |
| 803. Apprsl/Prop Val to | * $300.00  $0.00 | 1501.<br>AMERIQUEST | | $16,774.61 |
| 804. Credit report to | | | | |
| 805. Inspection fee to | | 1502.<br>HHLD BANK | (W) | $880.00 |
| 806. | | | | |
| 807. | | 1503.<br>CHLD/CBUSA | (W) | $690.00 |
| 808. Yield Spread Premium to | | | | |
| 809. | | 1504.<br>WFNA/LIMITD | (W) | $621.00 |
| 810. Tax Related Service fee to  Ameriquest Mortgage | $35.00 | | | |
| 811. Flood Search Fee to  Ameriquest Mortgage Company | $16.00 | 1505.<br>GMAC MTG | (W) | $443.00 |
| 812. Lenders Processing Fee to  Ameriquest Mortgage | $526.00 | | | |
| 813.Admin to Ameriquest Mortgage Company | $239.00 | 1506.<br>FST PREMIER | (W) | $414.00 |
| 814. Doc. Prep. Fee to | | | | |
| 815. Credit Report Fee to | | 1507.<br>CAPITAL 1 BK | (W) | $329.00 |
| 816. Origination Fee    % to | | | | |
| 817. Application Fee to Ameriquest Mortgage Company | $360.00 | 1508.<br>FST PREMIER | (W) | $315.00 |
| 818. Underwriting fee to | | | | |
| 819. Service Provider Fee to | | 1509.<br>MACYE/FDSB | (W) | $163.00 |
| 820. Processing Fee  to | | | | |
| 821. Underwriting Fee to | | 1510.<br>MACYS EAST/FDSB | (W) | $86.00 |
| 822. Appraisal Fee to | | | | |
| **900.  Items Required by Lender to be Paid in Advance** | | 1511.<br>Ameriquest Mortgage | | $250,000.00 |
| 901. Interest from 09/09/2003  to 10/01/2003  @  $69.16 per day | $1,521.52 | | | |
| 902. Mortgage insurance premium for    months to | | 1512. | | |
| 903. Hazard ins prem  to | $0.00 | | | |
| 904. Flood ins prem  to | | 1513. | | |
| **1000.  Reserves Deposited with Lender** | | | | |
| 1001. Hazard insurance    months @ $    per month | | 1514. | | — |
| 1002. Mortgage insurance    months @ $    per month | | | | |
| 1003. Earthquake ins    months @ $    per month | | 1515. | | |
| 1004. County prop. taxes    months @ $    per month | | | | |
| 1005. Annual assess.    months @ $    per month | | | | |
| 1006. Flood    months @ $    per month | | 1520. TOTAL DISBURSED (enter on line 1603) | | $270,695.61 |
| 1007. Windstorm ins    months @ $    per month | | | | |
| 1008. | | | | |
| **1100.  Title Charges** | | | | |
| 1101. Settlement or closing fee to  UDX | $125.00 | | | |
| 1102. Abstract or title search to  BRIDGESPAN | $150.00 | | | |
| 1103. Title examination to | | | | |
| 1104. Title insurance binder to | | | | |
| 1105. Document preparation to | | | | |
| 1106. Notary fees to | | | | |
| 1107. Attorney's fees to | | | | |
| 1108. Title insurance to  BRIDGESPAN | $742.50 | Total Wire:    $15,719.87 | | |
| 1109. Lender's coverage    $ | | | | |
| 1110. Owner's coverage    $ | | * = Paid outside closing | | |
| 1111. Settlement/Disbursement fee to  BRIDGESPAN | $395.00 | | | |
| 1112. Escrow Fee to BRIDGESPAN | $130.00 | | | |
| **1200. Government Recording and Transfer Charges** | | | | |
| 1201. Recording fees | $176.00 | | | |
| 1202. City/county tax/stamps | | **N.  NET SETTLEMENT** | | . |
| 1203. State tax/ stamps | | | | |
| 1204. State specific fee | | 1600. Loan Amount | | 297,000.00 |
| 1205. State specific fee | | | | |
| **1300. Additional Settlement Charges** | | 1601. Plus Cash/Check from Borrower | | |
| 1301. Demand to | | | | |
| 1302. Pest inspection to | | 1602. Minus Total Settlement Charges<br>(line 1400) | | $16,136.52 |
| 1303. Survey Fee | $37.50 | | | |
| 1304. Staff Appraiser Fee | | 1603. Minus Total Disbursements to Others<br>(line 1520) | | $270,695.61 |
| 1305. Reconveyance Fee to | | | | |
| 1306. | | 1604. Equals Disbursements to Borrower<br>(after expiration of any applicable rescission<br>period) | | $10,167.87 |
| 1307. Property Val Fee to | | | | |
| 1308. Courier Fee | | | | |
| **1400. Total Settlement Charges (enter on line 1602)** | $16,136.52 | | | |

Borrower(s) Signature(s):

X

| Approved for Funding By: | Approved: | Branch:  Rancho Cordova, CA 95670 |
|---|---|---|

***EXHIBIT I***

Loan Number:  0053225926 - 7403

**Ex. I**

## ADJUSTABLE RATE NOTE
### (LIBOR Index · Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.

September 2, 2003                           Orange                           CA
    [Date]                              [City]                    [State]
                         43 OAK, BRIDGEWATER, MA  02324
                                [Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $297,000.00    (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is    Ameriquest Mortgage Company .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  8.500%. This interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

**(A)  Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on    November 1, 2003    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on    October 1, 2033   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make payments at: 505 City Parkway West, Suite 100, Orange, CA 92868

or at a different place if required by the Note Holder.

**(B)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $2,283.68. This amount may change.

**(C)  Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A)  Change Dates**

The interest rate I will pay may change on the first day of    October, 2005   , and on that day every sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B)  The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C)  Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding   six  percentage point(s) ( 6.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

201-1MA (Rev. 8/00)

Initials:_____

08/29/2003 4:28:41 PM

Loan Number: 0053225926 - 7403

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **10.500 % or less than 8.500 %**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One percentage point(s) **(1.000 %)** from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **14.500 %** or less than **8.500 %**.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I may repay this loan at any time as provided in this paragraph. If I repay this loan within the first Three (3) year(s) of the date of the execution of this Note, I agree to pay a prepayment penalty, subject to the following conditions:

1) If I repay this loan within the first year by refinancing with another lender, I will pay a penalty equal to the sum of: (a) the lesser of three (3) months interest or the remainder of the first years interest; plus (b) three (3) months additional interest.

2) If I repay this loan within the first year by any other means, I will pay a penalty equal to the lesser of three (3) months interest or the remainder of the first years interest.

3) If I repay this loan within the second or third year by refinancing with another lender, I will pay a penalty equal to three (3) months interest.

**6. LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A) Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **3.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

201-2MA (Rev. 9/00)

Initials:_____

08/29/2003 4:26:41 PM

Loan Number: 0053225926 - 7403

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**12. GOVERNING LAW PROVISION**

This Note and the related Security Interest are governed by Federal and State law applicable to the jurisdiction of the Property.

Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Borrower  LYNN M. GAY

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____ (Seal)
Borrower

201-3MA (Rev. 8/00)    08/29/2003 4:26:41 PM

## ADJUSTABLE RATE RIDER
**(LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this 2nd day of September , 2003 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

43 OAK, BRIDGEWATER, MA  02324

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of  8.500 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The interest rate I will pay may change on the first day of October, 2005 , and on that day every sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

Initials_____

Loan Number:  0053225926 - 7403

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding six percentage points ( 6.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.500% or less than 8.500%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One( 1.000 %) from the rate of interest I have been paying for the preceding   six months. My interest rate will never be greater than 14.500)% or less than 8.500)%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials_____

Loan Number:  0053225926 - 7403

08/29/2003 4:26:41 PM

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)     _____ (Seal)
Borrower LYNN M. GAY                Borrower


_____ (Seal)     _____ (Seal)
Borrower                           Borrower


Loan Number: 0053225926 - 7403


810-3 (Rev 1/01)              Page 3 of 3

08/29/2003 4:26:41 PM

**EXHIBIT J**

Ex. J

## NOTICE OF RIGHT TO CANCEL

LENDER:   Ameriquest Mortgage Company

DATE:   September 2, 2003
LOAN NO.:   0053225926 - 7403
TYPE:   ADJUSTABLE RATE

BORROWER(S): LYNN M. GAY

ADDRESS:       43 OAK
CITY/STATE/ZIP:   BRIDGEWATER,MA 02324

PROPERTY:   43 OAK
BRIDGEWATER,  MA  02324

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is

ENTER DOCUMENT SIGNING DATE

9/2/03                              ; or

2. The date you received your Truth in Lending disclosures; or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Ameriquest Mortgage Company        ATTN:  FUNDING
1100 Town and Country Road, Suite 200     PHONE:  (714)541-9960
Orange, CA 92868                FAX:    (714)245-0857

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

ENTER FINAL DATE TO CANCEL

9/5/03

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
I WISH TO CANCEL

SIGNATURE                                  DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

BORROWER/OWNER LYNN M. GAY          Date      BORROWER/OWNER                    Date

BORROWER/OWNER                    Date      BORROWER/OWNER                    Date

1064-NRC (Rev 6/99)          **LENDER COPY**                08/29/2003 4:26:41 PM

**EXHIBIT K**

Ex. K

## RODDY KLEIN & RYAN
Attorneys at Law

727 Atlantic Ave., 2nd Floor
Boston, Massachusetts 02111

Gary Klein

Tel. (617) 357-5500 x 15
Fax (617) 357-5030
klein@grantkleinroddy.com

November 1, 2004

*By Certified Mail, Return Receipt*
*Requested No. 7000 1670 0000 7575 3398*

Mr. Wayne Lee
Chief Executive Officer
Ameriquest Mortgage Company
1100 Town & Country Road
Orange, CA 92868

*By Certified Mail, Return Receipt*
*Requested No. 7000 1670 0000 7575 3404*

Ameriquest Mortgage Company
ATTN: Funding
1100 Town and Country Road, Suite 200
Orange, CA 92868

> RE: Ms. Lynn Gay
> 43 Oak Street
> Bridgewater, MA 02324
> Ameriquest Loan No.: 0053225926-7403
> Loan Date: September 2, 2003

Dear Mr. Lee:

I represent the above reference homeowner, who entered into a consumer loan transaction with Ameriquest Mortgage Company in September, 2003.

I have been authorized by my client to rescind this transaction and hereby exercise that right pursuant to the Massachusetts Consumer Credit Cost Disclosure Act, M.G.L. c. 140D, § 10 and the regulation promulgated thereunder, 209 CMR 32.23.

Ms. Gay retains a current right to rescind because the Notice of Right to Cancel Form provided in connection with the transaction failed to comply the requirements set forth in Appendix H of Regulation Z, § 226.23 as required by M.G.L. c. 140D § 10(a) and 209 CMR 32.23(2)(a). Ms. Gay was refinancing an Ameriquest home mortgage loan in the September 2, 2003 loan transaction. Therefore, Ameriquest should have provided her with an H-9 Notice of Right to Cancel form, which is specific to refinancings with the original creditor, rather than with the H-8 form she received.

Ameriquest Mortgage Co.
11/1/04
Page 2

Under the law, Ms. Gay's right to rescind the transaction continues once foreclosure has been initiated. *See* M.G.L. c. 140D § (10)(i)(1)(b), 209 C.M.R. § 32.23(8)(a)(2). Upon her rescission, the security interest held by Ameriquest as a result of this transaction is void pursuant to M.G.L. c. 140D § (10)(b), 209 C.M.R. § § 32.23(4). Pursuant to the state statute, your client has twenty days after receipt of this notice of rescission to return to Ms. Gay all monies paid and to take any action necessary and appropriate to reflect termination of the security interest. Upon completion of these responsibilities, Ms. Gay will perform all necessary actions required by M.G.L. c. 140D, § 10 and 209 CMR § 32.23, including tender of any amounts then due.

If your client fails to act in conformity with its statutory obligations, Ms. Gay will consider her options, including but not limited to a legal action seeking a declaratory judgment that the loan is rescinded together with claims for statutory and actual damages, attorneys fees and costs. In addition, any violation of the federal or state truth in lending laws is a *per se* violation of the Massachusetts unfair or deceptive acts or practices statute as well as regulations enacted thereunder (Mass. Gen. Laws Ann. ch.93A, 940 C.M.R. §1.01 et seq.).

Ms. Gay reserves the right to raise other bases upon which the loan at issue may be rescindable on statutory or common law grounds.

If you have any questions please do not hesitate to contact me.

Sincerely,

Gary Klein

cc: Lynn Gay

**EXHIBIT L**

## Settlement Statement

**Ex. L**

| | |
|---|---|
| A. | |
| B. Type of Loan | U.S. Department of Housing<br>and Urban Development    OMB No. 2502-0265 |

| 1. ☐FHA | 2. ☐FmHA | 3. ☒Conv. Unins. | 6. File Number<br>D03-7127DA | 7. Loan Number<br>0046273900 | 8. Mortgage Insurance Case Numbe |
|---|---|---|---|---|---|
| 4. ☐VA | 5. ☐Conv. Ins. | | | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals. WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

| D. NAME OF BORROWER: | David M. Wakefield |
|---|---|
| ADDRESS: | 303 Marion Road, Wareham, MA 02571 |
| E. NAME OF SELLER: | N/A |
| ADDRESS: | |
| F. NAME OF LENDER: | Argent Mortgage Company<br>Ins Binder: P.O. Box 11056    Orange, CA 92856 |
| ADDRESS: | 7 Skyline Drive, Hawthorne, NY 92856 |
| G. PROPERTY ADDRESS: | 303 Marion Road, Wareham, MA 02571 |
| H. SETTLEMENT AGENT: | David B. Carroll, PC |
| PLACE OF SETTLEMENT: | 132 Central Street, Foxboro, MA 02035, Wakefield, MA |
| I. SETTLEMENT DATE: 04/17/2003 | DISBURSEMENT DATE:    04/22/2003 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER | | 400. GROSS AMOUNT DUE TO SELLER: | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 8,462.23 | 403. | |
| 104. Payoff:0004059648 | 161,661.28 | 404. | |
| Fairbanks Capital Corporation | | | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 109. 05/01/03 taxes | 408.29 | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 170,531.80 | 420. GROSS AMOUNT DUE TO SELLER: | |
| 200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER | |
| 201. Deposit or earnest money | | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loans | 191,250.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. | |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY/FOR BORROWER | 191,250.00 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | |
| 300. CASH AT SETTLEMENT FROM OR TO BORROWER | | 600. CASH AT SETTLEMENT TO OR FROM SELLER | |
| 301. Gross amount due from borrower (line 120) | 170,531.80 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 191,250.00 | 602. Less reduction amount due seller (line 520) | |
| 303. CASH TO BORROWER | 20,718.20 | 603. CASH TO SELLER | 0.00 |

REV. HUD-1 (3/86)

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
### SETTLEMENT STATEMENT

File Number: D03-7127

PAGE 2

| L. SETTLEMENT CHARGES | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $ @ 0.000 = | | | |
| Division of commission (line 700) as follows: | | | |
| 701. $ | to | | |
| 702. $ | to | | |
| 703. Commission paid at Settlement | | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | | |
| 801. Loan Origination Fee | 2.000 %Allied Mortgage | | |
| 802. Loan Discount | % | 3,825.00 | |
| 803. Appraisal Fee | to Allied Mortgage | | |
| 804. Credit Report | (P.O.C.) 300.00 Buyer | | |
| 805. Admin Fee | to Argent Mortgage Company | | |
| 806. Underwriting Fee | to Argent Mortgage Company   LR | 175.00 | |
| 807. Tax service fee | to Argent Mortgage Company   LR | 375.00 | |
| 808. Flood Cert | to Argent Mortgage Company   LR | 70.00 | |
| 809. Processing | to Allied Mortgage   LR | 16.00 | |
| 810. Application Fee | to Allied Mortgage | 550.00 | |
| 811. Yield Spread Prem | to ABM by AMC 1912.50 POC | 450.00 | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | |
| 901. Interest From 04/22/2003 to 05/01/2003 @$ 40.8700 /day | 9 Days   LR | 367.83 | |
| 902. Mortgage Insurance Premium for | to | | |
| 903. Hazard Insurance Premium for | to Providence Mutual Fire | 456.00 | |
| 904. | | | |
| 905. | | | |
| 1000. RESERVES DEPOSITED WITH LENDER FOR | | 0.00 | 0.00 |
| 1001. Hazard Insurance | 6 mo. @$ 38.00 /mo | | |
| 1002. Mortgage Insurance | mo. @$ /mo   LR | 228.00 | |
| 1003. City Property Taxes | 2 mo. @$ 272.20 /mo | | |
| 1004. County Property Taxes | mo. @$ /mo   LR | 544.40 | |
| 1005. Annual Assessments | mo. @$ /mo | | |
| 1009. Aggregate Analysis Adjustment | | | |
| 1100. TITLE CHARGES | | | |
| 1101. Settlement or closing fee | to David B. Carroll, P.C. | | |
| 1102. Abstract or title search | | 625.00 | |
| 1103. Title examination | | | |
| 1104. Title Insurance binder | | | |
| 1105. Document Preparation | | | |
| 1106. Notary Fees | | | |
| 1107. Attorney's fees | | | |
| (includes above items No: | | | |
| 1108. Title Insurance | to Chicago Title Insurance Company ) | | |
| (includes above items No: | ) | 480.00 | |
| 1109. Lender's Policy | 191,250.00 - 480.00 | | |
| 1110. Owner's Policy | | | |
| 1111. Aff8.1, ResSur, SecMor | to Chicago Title Insurance Company | | |
| 1112. | | 50.00 | |
| 1113. David B. Carroll, PC retains $397.50 of title insurance premium. | | | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | |
| 1201. Recording Fees Deed $ : Mortgage $ 175.00 : Release $ 75.00 | | 250.00 | |
| 1202. MA Surcharge Fee Deed $ : Mortgage $ : Release $ | | | |
| 1203. State Tax/stamps | Deed $ : Mortgage $ | | |
| 1204. | | | |
| 1205. | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | |
| 1301. Survey | | | |
| 1302. Pest Inspection | | | |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| 1400. TOTAL SETTLEMENT CHARGES    (enter on lines 103, Section J and 502, Section K) | | 8,462.23 | |

MUD CERTIFICATION OF BUYER AND SELLER

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement. I agree to further adjustments in the event of errors or omissions and indemnify and hold harmless Settlement Agent against such error or omissions.

David M. Wakefield
011404585

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE TITLE 18: U.S. CODE SECTION 1001 AND SECTION 1010.

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

By: _____
DATE

REV. HUD-1 (3/86)

*EXHIBIT M*

**Ex. M**

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Mortgage Lenders License - License Number ML0702
LENDER: Ameriquest Mortgage Company
    10600 White Rock Road, Suite 200-07
    Rancho Cordova, CA 95670
    (916)853-4707

[X] Preliminary    [ ] Final

Broker License:

Borrowers: DAVID M WAKEFIELD     WAKEFIELD E JANET

Type of Loan: ADJUSTABLE RATE
Date: January 2, 2004

Address:     303 MARION RD
City/State/Zip:   WAREHAM, MA 02571

Loan Number: 0066656760 - 7374

Property:    303 MARION RD, WAREHAM, MA 02571

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| (e) 9.736 % | $ 441,213.26 (e) | $ 210,339.30 (e) | $ 651,552.56 (e) |

**YOUR PAYMENT SCHEDULE WILL BE:**

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | (e) $1,809.89 | 03/01/2004 | | | |
| 1 | (e) $1,802.05 | 02/01/2034 | | | |

**VARIABLE RATE FEATURE:**
[X] Your loan has a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:** You are giving a security interest in the property located at: 303 MARION RD, WAREHAM, MA 02571

**ASSUMPTION:** Someone buying this property [X] cannot assume the remaining balance due under original terms.
[ ] may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:** You may obtain property insurance from anyone you want that is acceptable to Ameriquest Mortgage Company

**LATE CHARGES:** If a payment is late, you will be charged 3.000% of the overdue principal and interest payment.

**PREPAYMENT:** If you pay off your loan early, you
[X] may [ ] will not have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

(e) = estimate

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____   _____
Borrower DAVID M WAKEFIELD     Date

_____   _____
Borrower WAKEFIELD E JANET     Date

_____   _____
Borrower     Date

_____   _____
Borrower     Date

TIL1 (Rev. 7/01)

**BORROWER COPY**

01/02/2004 9:52:46 AM

*EXHIBIT N*

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

**Ex. N**

Mortgage Lenders License - License Number ML0702
LENDER: Ameriquest Mortgage Company
 10600 White Rock Road, Suite 200-07
 Rancho Cordova, CA 95670
 (916)853-4707

☐ Preliminary   ☒ Final

Borrowers: DAVID M WAKEFIELD   WAKEFIELD JANET

Broker License:

Type of Loan: ADJUSTABLE RATE
Date: January 15, 2004

Address:   303 MARION RD
City/State/Zip:  WAREHAM, MA 02571

Loan Number: 0066656760 - 7374

Property:  303 MARION RD, WAREHAM, MA  02571

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 12.102   % | $ 645,328.26 | $ 235,315.38 | $ 880,643.64 |

**YOUR PAYMENT SCHEDULE WILL BE:**

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $2,446.27 | 03/01/2004 | | | |
| 1 | $2,432.71 | 02/01/2034 | | | |

**VARIABLE RATE FEATURE:**
☒ Your loan has a variable rate feature.  Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:**   You are giving a security interest in the property located at: 303 MARION RD, WAREHAM, MA  02571

**ASSUMPTION:**  Someone buying this property   ☒ cannot assume the remaining balance due under original terms.
☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:**   You may obtain property insurance from anyone you want that is acceptable to
Ameriquest Mortgage Company

**LATE CHARGES:**   If a payment is late, you will be charged  3.000%  of the overdue principal and interest payment. .

**PREPAYMENT:**  If you pay off your loan early, you
☒ may   ☐ will not   have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____   _____
Borrower DAVID M WAKEFIELD           Date

_____   _____
Borrower WAKEFIELD JANET            Date

_____   _____
Borrower                 Date

_____   _____
Borrower                 Date

TIL1 (Rev. 7/01)   
0000006656587600305750101

**ORIGINAL COPY**

01/15/2004 10:55:07 AM

***EXHIBIT O***

Ex. O



*EXHIBIT P*

Settlement Statement
Optional Form for
Transactions without Sellers

U.S. Department of Housing
and Urban Development

OMB Approval No. 2502-0491

WLI

**Ex. P**

| Name & Address of Borrower: | Name & Address of Lender: |
|---|---|
| DAVID M WAKEFIELD    WAKEFIELD JANET | Ameriquest Mortgage Company |
| | 10600 White Rock Road, Suite 200-07 |
| 303 MARION RD    WAREHAM,MA 02571 | Rancho Cordova, CA 95670 |
| Property Location: (if different from above) | Settlement Agent: LENDER'S FIRST CHOICE |
| 303 MARION RD, WAREHAM, MA 02571 | Place of Settlement: 3850 ROYAL AVE SIMI VALLEY, CA 93063 |

## L. Settlement Charges

| 800. Items Payable in Connection with Loan | | Loan Number: 0066656760 - 7374 | Settlement Date: Estimated 01/23/2004 |
|---|---|---|---|
| 801. Loan origination fee    % to | | | |
| 802. Loan discount    % to | | **M.  Disbursement to Others** | |
| 803. Apprsl/Prop Val to ALPHA APPRAISAL  *L $500.00 * $0.00 | $0.00 | 1501. Ameriquest Mortgage 0046273900 | $192,555.96 |
| 804. Credit report to | | | |
| 805. Inspection fee to | | 1502. DAIMLERCHRYSLERLLC            (W) | $10,187.00 |
| 806. | | | |
| 807. | | 1503. DAIMLERCHRYSLERLLC            (W) | $5,278.00 |
| 808. Yield Spread Premium to | | | |
| 809. | | 1504. UNITED STATES TREASURY        (W) | $2,065.07 |
| 810. Tax Related Service Fee to | $35.00 | | |
| 811. Flood Search Fee to  Ameriquest Mortgage Company | $16.00 | 1505. UNITED STATES TREASURY        (W) | $8,549.10 |
| 812. Lenders Processing Fee to  Ameriquest Mortgage | $626.00 | | |
| 813. Admin to Ameriquest Mortgage Company | $239.00 | 1506. UNITED STATES TREASURY        (W) | $10,856.33 |
| 814. Doc. Prep. Fee to | | | |
| 815. Credit Report Fee to | | 1507. TOWN OF WAREHAM TAXES DUE 2/1/04 | $422.01 |
| 816. Origination Fee    % to | | | |
| 817. Application Fee to  Ameriquest Mortgage Company | $360.00 | 1508. DAIMLERCHRYSLERLLC            (W) | $3,500.00 |
| 818. Underwriting Fee to | | | |
| 819. Service Provider Fee to | | 1509. | |
| 820. Processing Fee to | | | |
| 821. Underwriting Fee to | | 1510. | |
| 822. Appraisal Fee to | | | |
| **900. Items Required by Lender to be Paid in Advance** | | 1511. | |
| 901. Interest from 01/23/2004 to 02/01/2004 @ $78.18 per day | $703.62 | | |
| 902. Mortgage insurance premium for    months to | | 1512. | |
| 903. Hazard ins prem to | $0.00 | | |
| 904. Flood ins prem to | | 1513. | |
| **1000. Reserves Deposited with Lender** | | | |
| 1001. Hazard insurance    months @ $    per month | | 1514. | |
| 1002. Mortgage insurance    months @ $    per month | | | |
| 1003. Earthquake ins    months @ $    per month | | 1515. | |
| 1004. County prop. taxes    months @ $    per month | | | |
| 1005. Annual assess.    months @ $    per month | | | |
| 1006. Flood    months @ $    per month | | 1520. TOTAL DISBURSED (enter on line 1603) | $233,413.47 |
| 1007. Windstorm ins    months @ $    per month | | | |
| 1008. | | Total Wire:  $43,264.42 | |
| **1100. Title Charges** | | | |
| 1101. Settlement or closing fee to  LENDERS FIRST | $450.00 | L = Lender Paid | |
| 1102. Abstract or title search to  LENDERS FIRST CHOICE | $175.00 | | |
| 1103. Title examination to | | | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to  LENDERS FIRST CHOICE | | | |
| 1106. Notary fees to  LOAN CLOSERS | $50.00 | | |
| 1107. Attorney's fees to | $200.00 | | |
| 1108. Title insurance to  LENDERS FIRST CHOICE | $538.00 | | |
| 1109. Lender's coverage    $538.00 | | | |
| 1110. Owner's coverage    $ | | | |
| 1111. Settlement/Disbursement fee to  LENDERS FIRST | $30.00 | | |
| 1112. Escrow Fee to LENDERS FIRST CHOICE | $25.00 | | |
| **1200. Government Recording and Transfer Charges** | | | |
| 1201. Recording fee | | | |
| 1202. City/county tax/stamps | $175.00 | | |
| 1203. State tax/ stamps | | **N.  NET SETTLEMENT** | |
| 1204. State specific fee | | | |
| 1205. State specific fee | | 1600. Loan Amount | 238,000.00 |
| **1300. Additional Settlement Charges** | | | |
| 1301. Demand to | | 1601. Plus Cash/Check from Borrower | |
| 1302. Pest Inspection to | | | |
| 1303. Survey Fee | | 1602. Minus Total Settlement Charges (line 1400) | $3,622.62 |
| 1304. Staff Appraiser Fee | | | |
| 1305. Reconveyance Fee to | | 1603. Minus Total Disbursements to Others (line 1520) | $233,413.47 |
| 1306. | | | |
| 1307. Property Val Fee to | | 1604. Equals Disbursements to Borrower (after expiration of any applicable rescission period) | $963.91 |
| 1308. Courier Fee | | | |
| 1400. Total Settlement Charges (enter on line 1602) | $3,622.62 | | |

Borrower(s) Signature(s):

X ~David M Wakefield~

Approved for Funding By: _____    Approved: _____    Branch: Rancho Cordova, CA 95670

0000006665676003051702011

*EXHIBIT Q*

**Ex. Q**

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 15th day of January , 2004  and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

303 MARION RD, WAREHAM, MA  02571
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of  11.990 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The interest rate I will pay may change on the first day of  February, 2006  , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials_____

Loan Number:  0066656760 - 7374



0000006665676003021503001

610-1 (Rev 1/01)              · Page 1 of 3                          01/15/2004 10:55:07 AM

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding six percentage points ( 6.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 13.990% or less than 11.990%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One( 1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 17.990% or less than 11.990%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials_____

Loan Number:  0066656760 - 7374



0000006665676000302150302

610-2 (Rev 1/01)                               Page 2 of 3

01/15/2004 10:55:07 AM

*EXHIBIT R*

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Ex. R

Mortgage Lenders License - License Number ML0702
LENDER: Ameriquest Mortgage Company
        10600 White Rock Road, Suite 200-07
        Rancho Cordova, CA 95670
        (916)853-4707

[X] Preliminary    [ ] Final

Borrowers: Dave M Wakefield    Janet Wakefield

Broker License:

Type of Loan: ADJUSTABLE RATE
Date: February 24, 2004

Address:      303 Marion Rd.
City/State/Zip:   WAREHAM, MA 02571

Loan Number: 0072104763 - 7374

Property:    303 Marion Rd., WAREHAM, MA  02571

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| (e) 8.860 % | $ 384,009.39 (e) | $ 205,641.60 (e) | $ 589,650.99 (e) |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | (e) $1,637.96 | 04/01/2004 | | | |
| 1 | (e) $1,623.35 | 03/01/2034 | | | |

**VARIABLE RATE FEATURE:**
[X] Your loan has a variable rate feature . Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:**   You are giving a security interest in the property located at:  303 Marion Rd., WAREHAM, MA  02571

**ASSUMPTION:**   Someone buying this property   [X] cannot assume the remaining balance due under original terms.
                                                   [ ] may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:**    You may obtain property insurance from anyone you want that is acceptable to
                          Ameriquest Mortgage Company

**LATE CHARGES:**   If a payment is late, you will be charged  3.000%  of the overdue principal and interest payment .

**PREPAYMENT:**   If you pay off your loan early, you
[X] may   [ ] will not   have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.
    **(e) = estimate**

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

Borrower Dave M Wakefield _____ Date _____    Borrower Janet Wakefield _____ Date _____

Borrower _____ Date _____    Borrower _____ Date _____

TIL1 (Rev. 7/01)

7777777707070700076765242717744400777372
5613546621073331561645125400774241737560
1001077424173756010010748041732374631107
0000007210478303075510

**BORROWER COPY**

*EXHIBIT S*

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

**Ex. S**

Mortgage Lenders License - License Number ML0702
LENDER: Ameriquest Mortgage Company
    10600 White Rock Road, Suite 200-07
    Rancho Cordova, CA 95670
    (916)853-4707

[ ] Preliminary     [X] Final

Borrowers: Dave M Wakefield     Janet Wakefield

Broker License:

Type of Loan: ADJUSTABLE RATE
Date: April 2, 2004

Address:     303 Marion Rd.
City/State/Zip: WAREHAM, MA 02571

Loan Number: 0072104763 - 7374

Property:     303 Marion Rd., WAREHAM, MA 02571

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.755 % | $ 459,492.44 | $ 248,556.44 | $ 708,048.88 |

**YOUR PAYMENT SCHEDULE WILL BE:**

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $1,966.82 | 06/01/2004 | | | |
| 1 | $1,960.50 | 05/01/2034 | | | |

**VARIABLE RATE FEATURE:**
[X] Your loan has a variable rate feature . Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:** You are giving a security interest in the property located at: 303 Marion Rd., WAREHAM, MA 02571

**ASSUMPTION:** Someone buying this property [X] cannot assume the remaining balance due under original terms.
[ ] may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:** You may obtain property insurance from anyone you want that is acceptable to
Ameriquest Mortgage Company

**LATE CHARGES:** If a payment is late, you will be charged 3.000% of the overdue principal and interest payment .

**PREPAYMENT:** If you pay off your loan early, you
[X] may    [ ] will not    have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

Borrower Dave M Wakefield        Date        Borrower Janet Wakefield        Date

Borrower        Date        Borrower        Date

*EXHIBIT T*

Settlement Statement
Optional Form for
Transactions without Sellers

U.S. Department of Housing
and Urban Development

WLI

OMB Approval No. 2502-0491

**Ex. T**

Name & Address of Borrower:
Dave M Wakefield   Janet Wakefield

303 Marion Rd.,   WAREHAM,MA 02571

Property Location: (if different from above)

303 Marion Rd., WAREHAM, MA 02571

Name & Address of Lender:
Ameriquest Mortgage Company
10600 White Rock Road, Suite 200-07
Rancho Cordova, CA 95670

Settlement Agent:
LENDER'S FIRST CHOICE

Place of Settlement:3850 ROYAL AVE SIMI VALLEY, CA 93063

| L.   Settlement Charges | | Loan Number:<br>0072104763 - 7374 | | Settlement Date:Estimated<br>04/09/2004 |
|---|---|---|---|---|
| **800.  Items Payable in Connection with Loan** | | | | |
| 801. Loan origination fee    % to | | | | |
| 802. Loan discount  3.990  % to  Ameriquest Mortgage Company | $10,445.62 | **M.   Disbursement to Others** | | |
| 803. Apprsl/Prop Val to | $0.00 | | | |
| 804.  Credit report to | | 1501.<br>Ameriquest MortgageP/O 0066556760 | | $242,057.42 |
| 805.  inspection fee to | | | | |
| 806. | | 1502.<br>CROSS COUNTRY BANK | (W) | $2,000.00 |
| 807. | | 1503.<br>HHLD BANK | (W) | $2,100.00 |
| 808. Yield Spread Premium to | | | | |
| 809. | | 1504.<br>TOWN OF WAREHAM | (W) | $422.01 |
| 810. Tax Related Service Fee to  Ameriquest Mortgage             *L   $70.00 | | | | |
| 811. Flood Search Fee to  Ameriquest Mortgage Company | $16.00 | 1505. | | |
| 812. Lenders Processing Fee to  Ameriquest Mortgage | $626.00 | | | |
| 813.Admin to Ameriquest Mortgage Company | $239.00 | 1506. | | |
| 814. Doc. Prep. Fee to | | | | |
| 815. Credit Report Fee   % to | | 1507. | | |
| 816.  Origination Fee    % to | | | | |
| 817. Application Fee to  Ameriquest Mortgage Company | $360.00 | 1508. | | |
| 818. Underwriting Fee to | | | | |
| 819. Service Provider Fee to | | 1509. | | |
| 820. Processing Fee  to | | | | |
| 821. Underwriting Fee to | | 1510. | | |
| 822. Appraisal Fee to | | | | |
| **900.  Items Required by Lender to be Paid in Advance** | | 1511. | | |
| 901. Interest from 04/09/2004 to 05/01/2004 @ $59.17 per day | $1,301.74 | | | |
| 902. Mortgage insurance premium for         months to | | 1512. | | |
| 903. Hazard ins prem to | $0.00 | | | |
| 904. Flood ins prem to | | 1513. | | |
| **1000. Reserves Deposited with Lender** | | | | |
| 1001. Hazard insurance     months @ $     per month | | 1514. | | |
| 1002. Mortgage insurance    months @ $    per month | | | | |
| 1003. Earthquake ins     months @ $    per month | | 1515. | | |
| 1004. County prop. taxes     months @ $     per month | | | | |
| 1005. Annual assess.     months @ $     per month | | 1520. TOTAL DISBURSED (enter on line 1603) | | $246,579.43 |
| 1006. Flood    months @ $      per month | | | | |
| 1007. Windstorm Ins     months @ $     per month | | Total Wire:    $7,054.02 | | |
| 1008. | | | | |
| **1100. Title Charges** | | L = Lender Paid | | |
| 1101. Settlement or closing fee to  JOE CACI | $200.00 | | | |
| 1102. Abstract or title search to  LENDERS FIRST CHOICE | $450.00 | | | |
| 1103. Title examination to  LENDERS FIRST CHOICE | $175.00 | | | |
| 1104. Title insurance binder to | | | | |
| 1105. Document preparation to  LENDERS FIRST CHOICE | $50.00 | | | |
| 1106. Notary fees to | | | | |
| 1107. Attorney's fees to | | | | |
| 1108. Title insurance to  LENDER'S FIRST CHOICE       *L  $500.00 *   $0.00 | $88.00 | | | |
| 1109. Lender's coverage                            $88.00 | | | | |
| 1110. Owner's coverage          $ | | | | |
| 1111. Settlement/Disbursement fee to | | | | |
| 1112. Escrow Fee to | | | | |
| **1200. Government Recording and Transfer Charges** | | | | |
| 1201. Recording fees | $175.00 | | | |
| 1202. City/county tax/stamps | | **N.   NET SETTLEMENT** | | |
| 1203. State tax/ stamps | | | | |
| 1204. State specific fee | | 1600. Loan Amount | | 261,800.00 |
| 1205. State specific fee | | | | |
| **1300. Additional Settlement Charges** | | 1601. Plus Cash/Check from Borrower | | |
| 1301. Demand to | | | | |
| 1302. Pest inspection to | | 1602. Minus Total Settlement Charges<br>(line 1400) | | $14,181.56 |
| 1303. Survey Fee | | | | |
| 1304. Staff Appraiser Fee | | 1603. Minus Total Disbursements to Others<br>(line 1520) | | $246,579.43 |
| 1305. Reconveyance Fee to | | | | |
| 1306. | | 1604. Equals Disbursements to Borrower<br>(after expiration of any applicable rescission<br>period) | | $1,039.01 |
| 1307. Property Val Fee to | | | | |
| 1308. Courier Fee | $55.00 | | | |
| **1400. Total Settlement Charges (enter on line 1602)** | $14,181.56 | | | |

0000087210476303051702 01

Borrower(s) Signature(s):

X

| Approved for Funding By: | Approved: | Branch:  Rancho Cordova, CA 95670 |
|---|---|---|
| | | Mortgage Lenders License - License Number ML0702 |

*EXHIBIT U*

**Ex. U**

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 2nd day of  April , 2004   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

303 Marion Rd., WAREHAM, MA  02571
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of  8.250 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A) Change Dates**
The interest rate I will pay may change on the first day of  May, 2006  , and on that day every sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

   **(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as  published in the Wall Street Journal.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

   If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials_____

Loan Number:  0072104763 - 7374



000000721047630302150301

610-1 (Rev 1/01)                    Page 1 of 3                    04/01/2004 10:55:48 AM

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding six and one-half percentage points ( **6.500** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.250%** or less than **8.250%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One( **1.000** %) from the rate of interest I have been paying for the preceding  six months. My interest rate will never be greater than 14.250)% or less than 8.250)%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Loan Number:  0072104763 - 7374

Initials_____



000000721047630302150302

810-2 (Rev 1/01)

Page 2 of 3

04/01/2004 10:55:48 AM

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)     _____ (Seal)
Borrower Dave M Wakefield                    Borrower Janet Wakefield

_____ (Seal)     _____ (Seal)
Borrower                                     Borrower

Loan Number: 0072104763 - 7374


0000007210476303021503003

**EXHIBIT V**

# Ameriquest Mortgage Company

Ex. V

## STATEMENT OF CREDIT DENIAL

Loan No.   0072104763 - 7374                          Date:  April 15, 2004

Dave M Wakefield                          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
303 Marion Rd.
WAREHAM,MA 02571

Dear Applicant:

Thank you for your recent application.  Your request for mortgage credit was carefully considered, and we regret that we are unable to approve your application for credit at this time.

Your request for credit has been denied based on the following reason(s)

| | |
|---|---|
| ☐ Credit - Insufficient or Derogatory | ☒ We do not grant credit to any applicant on the term and conditions you have requested. |
| ☐ Ability to Repay - Excessive Obligations in Relation to Income | |
| ☐ Collateral - Value or Type of Property Insufficient | ☐ Denied by Government Agency |

**Use of Information Obtained from an Outside Source**

☐ Our credit decision was based in whole or in part on information obtained in a report from one or more of the consumer reporting agencies listed below. You have the right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. The reporting agency played no part in our decision and is unable to supply specific reasons why credit has been denied to you. You also have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you received is inaccurate, you have the right to dispute the matter with the reporting agency.

| EXPERIAN INFORMATION SERVICES | TRANS UNION CORPORATION | EQUIFAX CREDIT INFORMATION |
|---|---|---|
| P.O. BOX 2104 | P.O. BOX 2000 | SERVICES P.O. BOX 105873 |
| ALLEN, TX 75013-2104 | CHESTER, PA 19022 | ATLANTA, GA 30348 |
| Toll-Free (888) 397-3742 | Toll-Free (800) 888-4213 | Toll-Free (800) 685-1111 |

☐ Our credit decision was based in whole or in part on information obtained from an affiliate or from an outside source other than a consumer reporting agency. Under the Fair Credit Reporting Act, you have the right to make a request within 60 days after you receive this notice, for disclosure of the nature of this information. We will send you a written statement of reasons for the denial within 30 days of receipt of your request for the statement.

**Requesting Copy of Appraisal Report**

You have the right to a copy of the appraisal report used in connection with your application for credit. If you would like a copy, please write to us at the mailing address provided below. Your request must be received no later than 90 days after notification of the action taken on your credit application or you withdraw your request for credit.

If you have any questions, regarding this notice, please contact:   **Ameriquest Mortgage Company**
**10600 White Rock Road, Suite 200-07**
**Rancho Cordova, CA 95670**
**(916)853-4707**            **Attn: Branch Manager**

If you have any additional information which might assist us in evaluating your creditworthiness, please let us know. The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any rights under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the: FEDERAL TRADE COMMISSION, EQUAL CREDIT OPPORTUNITY, ROOM 4037, WASHINGTON DC, 20580.

SOCD (Rev. 1/01)

777777770707070007676524271774400777372
561354662107333156164512540077424173756 0
100107560437377601223075614072224551130 7
000000721047630405670101

**EXHIBIT W**

Ex. W



# AMERIQUEST MORTGAGE
## COMPANY

August 13, 2004

TO:    Lee M. Berger, Esq.
       Berger & Markir, P.C.
       One Cohasset Avenue
       Buzzards Bay, MA 02532

RE:    Loan Number 0072104763

Mr. Lee M. Berger,

This is to confirm the telephone conversations between your office and Ameriquest, including the telephone conversation with Ameriquest Counsel, Christopher K. Liffrig, Esq. on or about July 16, 2004, and in response to your letter dated June 30th 2004, with regard to the referenced loan and your client, David M. Wakefield.

As you know, your client's loan (Ameriquest Loan Number 0072104763) has been cancelled as a result of, what we perceive to be, false income information that was submitted in connection with the subject loan application. Consequently, Ameriquest Loan Number 0066656760 is still in effect and the terms, obligations and duties related thereto remain unchanged.

If your client believes that the income information submitted in connection with the subject loan was, and is, not false, please provide the undersigned with the following documentation so that we can reassess the matter: Mr. & Mrs. Wakefield's most recent pay stubs, which should include their year-to-date earnings; their last two years of W-2's; and their federal income tax (1040) returns from the last two years.

We sincerely appreciate you cooperation and understanding. If you have any questions in regards to this letter or your client's loan, please feel free to contact the undersigned.

Sincerely,

Donald Larkin
Customer Resolution
Ameriquest Mortgage Co.
1100 Town & Country Rd., Suite 900
Orange, CA 92868
Ph: 800-523-3964 #4718
Fax: 800-784-3034



*EXHIBIT X*

Ex. X

# KORDE & ASSOCIATES, P.C.

### Counsellors at Law

321 Billerica Road, Suite 210
Chelmsford, Massachusetts 01824-4100

SANFU S KORDE
AMY H MASERRKR
SHILA RANKER
ANGELA HANAN
VICTOR MANLIREGAN

KENNETH SHNGERI AND OF COUNSEL

**DEFICIENCY NOTICE**

Telephone (978) 256-1500
Telefax (978) 256-7615
Email: skorde@kordeassoc.com

October 21, 2004

FIRST CLASS MAIL &
CERTIFIED MAIL NO. 7003 3110 0001 4682 6307

David M. Wakefield
303 Marion Road
Wareham, MA  02571

RE:  PROPERTY:  303 Marion Road, Wareham, MA
MORTGAGE HELD BY:  Ameriquest Mortgage Company
MORTGAGE GIVEN TO:  Ameriquest Mortgage Company
DATE OF MORTGAGE:  January 15, 2004
ORIGINAL PRINCIPAL AMOUNT OF MORTGAGE: $238,000.00
MORTGAGE RECORDED WITH:        Plymouth County Registry of Deeds,
Book 27711, Page 141

Dear Mr. Wakefield:

You are hereby notified in accordance with the statutes of the Commonwealth of
Massachusetts of our intention on or about December 13, 2004 to foreclose by sale
under power of sale for breach of conditions, and by entry, the above captioned
mortgage given to secure a note for the above stated original principal amount for the
whole or part of which you may be liable to the above named holder of the mortgage in
the event of a deficiency in the proceeds of the foreclosure sale.

THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.

Sincerely,

Sanfo S. Korde

**EXHIBIT Y**

**Ex. Y**

## NOTICE OF RIGHT TO CANCEL

LENDER:  Ameriquest Mortgage Company

DATE:  January 15, 2004
LOAN NO.:  0066656760 - 7374
TYPE:  ADJUSTABLE RATE

BORROWER(S): DAVID M WAKEFIELD        WAKEFIELD JANET

ADDRESS:        303 MARION RD
CITY/STATE/ZIP:   WAREHAM,MA 02571

PROPERTY:  303 MARION RD
                WAREHAM,  MA  02571

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is

   ENTER DOCUMENT SIGNING DATE
   _1/15/04_

   or

2. The date you received your Truth in Lending disclosures;
   or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Ameriquest Mortgage Company
1100 Town and Country Road, Suite 200
Orange, CA 92868

ATTN:  FUNDING
PHONE: (714)541-9960
FAX:      (800)664-2256

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

ENTER FINAL DATE TO CANCEL
_1/20/04_

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
I WISH TO CANCEL

_____         _____
SIGNATURE                                              DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.



_David M. Wakefield_  2-15-04        _Janet Wakefield_  1-15-04
BORROWER/OWNER DAVID M WAKEFIELD    Date     BORROWER/OWNER WAKEFIELD JANET    Date

_____         _____
BORROWER/OWNER                    Date     BORROWER/OWNER                    Date

1064-NRC (Rev 11/03)

0000066656760040050101

**BORROWER COPY**

01/15/2004 10:55:07 AM

*EXHIBIT Z*

# NOTICE OF RIGHT TO CANCEL

**Ex. Z**

LENDER:    Ameriquest Mortgage Company

BORROWER(S): Dave M Wakefield    Janet Wakefield

ADDRESS:    303 Marion Rd.
CITY/STATE/ZIP:    WAREHAM,MA 02571

PROPERTY:    303 Marion Rd.
WAREHAM, MA  02571

DATE:  April 2, 2004
LOAN NO.:    0072104763 - 7374
TYPE:    ADJUSTABLE RATE

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.  The date of the transaction, which is

> ENTER DOCUMENT SIGNING DATE

. or
2.  The date you received your Truth in Lending disclosures;
    or
3.  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company
1100 Town and Country Road, Suite 200
Orange, CA 92868**

ATTN:  FUNDING
PHONE: (714)541-9960
FAX:    (800)664-2256

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must
send the notice no later than MIDNIGHT of

> ENTER FINAL DATE TO CANCEL

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

SIGNATURE _____

DATE _____

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

BORROWER/OWNER Dave M Wakefield _____  Date ___

BORROWER/OWNER Janet Wakefield _____  Date ___

BORROWER/OWNER _____  Date ___

BORROWER/OWNER _____  Date ___

1064-NRC (Rev 11/03)    00000072104763040005010 1

**BORROWER COPY**

04/01/2004 10:55:48 AM

**EXHIBIT AA**

Ex. AA

# RODDY KLEIN & RYAN

### Attorneys at Law

727 Atlantic Ave., 2nd Floor
Boston, Massachusetts 02111

Gary Klein

Tel. (617) 357-5500 x 15
Fax (617) 357-5030
klein@grantkleinroddy.com

October 27, 2004

*By Certified Mail, Return Receipt*
*Requested No. 7000 1670 0000 7574 4921*

Mr. Wayne Lee
Chief Executive Officer
Ameriquest Mortgage Company
1100 Town & Country Road
Orange, CA 92868

*By Certified Mail, Return Receipt*
*Requested No. 7000 1670 0000 7575 4425*

Ameriquest Mortgage Company
ATTN: Funding
1100 Town and Country Road, Suite 200
Orange, CA 92868

      RE:  David and Janet Wakefield
          303 Marion Road
          Wareham, MA 02571
          Ameriquest Loan Number: 0066656760-7374
          Loan Date: January 15, 2004

Dear Mr. Lee:

      I represent the above referenced homeowners, who entered into a consumer loan transaction with Ameriquest Mortgage Company in January, 2004.

      I have been authorized by my clients to rescind this transaction and hereby exercise that right pursuant to the Massachusetts Consumer Credit Cost Disclosure Act, M.G.L. c. 140D, § 10 and the regulation promulgated thereunder, 209 CMR 32.23.

10/27/04
Page 2

Mr. and Mrs. Wakefield retain a current right to rescind because the Notice of Right to Cancel Form provided in connection with the transaction failed to comply with the requirements set forth in Appendix H of Regulation Z, § 226.23 as required by M.G.L. c. 140D § 10(a) and 209 C.M.R. 32.23(2)(a). Mr. and Mrs. Wakefield were refinancing an Ameriquest home mortgage loan in the January 15, 2004 loan transaction. Therefore, Ameriquest should have provided them with an H-9 Notice of Right to Cancel form, which is specific to refinancings with the original creditor, rather than with the H-8 form they received.

Under the law, the Wakefields' right to rescind the transaction continues once foreclosure has been initiated. *See* M.G.L. c. 140D § (10)(i)(1)(b), 209 C.M.R. § 32.23(8)(a)(2). Upon their rescission, the security interest held by Ameriquest is void pursuant to the transaction is void pursuant to M.G.L. c. 140D § (10)(b) and 209 C.M.R. § 32.23(4). Pursuant to the state statute, your client has twenty days after receipt of this notice of rescission to return to Mr. and Mrs. Wakefield all monies paid and to take any action necessary and appropriate to reflect termination of the security interest. Upon completion of these responsibilities, Mr. and Mrs. Wakefield will perform all necessary actions required by M.G.L. c. 140D, § 10 and 209 CMR § 32.23, including tender of any amounts then due.

If your client fails to act in conformity with its statutory obligations, Mr. and Mrs. Wakefield will consider their options, including but not limited to a legal action seeking a declaratory judgment that the loan is rescinded together with claims for statutory and actual damages, attorneys fees and costs. In addition, any violation of the state truth in lending laws is a *per se* violation of the Massachusetts unfair or deceptive acts or practices statute as well as regulations enacted thereunder (Mass. Gen. Laws Ann. ch.93A, 940 C.M.R. §1.01 et seq.).

The Wakefields reserve the right to raise other bases upon which the loan at issue may be rescindable on statutory or common law grounds.

If you have any questions please do not hesitate to contact me.

Sincerely,

Gary Klein

cc:
David and Janet Wakefield
Sahjit S. Korde, Korde & Associates, P.C.

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss

SUPERIOR COURT
CIVIL ACTION

NO.   04-1898

ISABELLE M. MURPHY, DAVID R. ........ , *Plaintiff(s)*
MURPHY, LYNN GAY, DAVID M. WAKEFIELD and
JANET WAKEFIELD

v.

AMERIQUEST MORTGAGE COMPANY...., *Defendant(s)*

## SUMMONS AND ORDER OF NOTICE

To the above-named Defendant:

You are hereby summoned and required to serve upon ..Gary..Klein,..Esq. of RODDY, KLEIN & RYAN
727 Atlantic Avenue, 2nd Floor
plaintiff's attorney, whose address is .......Boston, MA  02111........................ , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Dedham either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

WE ALSO NOTIFY YOU that application has been made in said action, as appears in the complaint, for a preliminary injunction and that a hearing upon such application will be held at the court house — at said Dedham — at Boston in the county of Suffolk in the first session without jury of our said court on ....Tuesday................ the .........23rd................ day of .November......

A.D. 20.02.., at...2:00............ o'clock A.M./P.M. at which you may appear and show cause why such application should not be granted.

WITNESS, SUZANNE V. DELVECCHIO, Esquire, at .......Dedham........................ , the
BARBARA J. ROUSE, Esquire
.......17th.............. day of ..November............ , in the year of our Lord two thousand and ..four.......... .

_____ , Clerk

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

F-34

COMMONWEALTH OF MASSACHUSETTS

Norfolk, SS.                                    SUPERIOR COURT
                                               C.A. NO. 04-1898

---

ISABELLE M. MURPHY,                    )
DAVID R. MURPHY,                       )
LYNN GAY,                              )
DAVID M. WAKEFIELD, and                )
JANET WAKEFIELD                        )
                                       )
Individually and on behalf of all others )
Similarly situated                     )
                                       )
                                       )
              Plaintiffs,              )
                                       )
       v.                              )
                                       )
AMERIQUEST MORTGAGE                    )
COMPANY                                )
                                       )
              Defendant.               )
                                       )

---

## CERTIFICATION OF SERVICE OF DOCUMENTS RELATED TO THE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

I, Gary Klein, attorney for the plaintiff, hereby certify that I have this day, November 17, 2004 caused the Emergency Motion for Preliminary Injunction, Memorandum in Support of Emergency Motion for Preliminary Injunction, and Plaintiffs' Declarations in Support of their Motion along with their supporting documentation, as well as a copy of the complaint in the above-referenced action together with the summons, a Motion for a Short Order of Notice, a Motion for a Special Appointment to Serve Process, and a Proposed Order Granting Plaintiffs' Emergency Motion for Preliminary Injunction to be served upon the following parties by delivering them via Federal Express and fax to:

Ann Tran
Counsel
Ameriquest Mortgage Company
1100 Town & Country Road, Suite 900

Orange, CA 92868

Sahjit Korde
Korde & Associates, P.C.
321 Billerica Road, Suite 210
Chelmsford, MA 01824-4100

and by Special Process Server to Ameriquest's Registered Agent to:

National Registered Agents, Inc.
303 Congress Street, 2nd floor
Boston, MA 02110


Dated this 17th day of November 2004.

_____
Gary Klein BBO # 560769
John Roddy BBO # 424240
Elizabeth Ryan BBO # 549632
Shennan Kavanagh BBO # 655174
Roddy, Klein & Ryan
727 Atlantic Ave., 2nd floor
Boston, MA  02111
Tel. 617-353-5500 x 15
Fax. 617- 353-5030

2

## COMMONWEALTH OF MASSACHUSETTS

Norfolk, SS.                                      **SUPERIOR COURT**
                                                  **C.A. NO. 04-1898**

_____

ISABELLE M. MURPHY,                    )
DAVID R. MURPHY,                       )
LYNN GAY,                              )
DAVID M. WAKEFIELD, and                )
JANET WAKEFIELD                        )
                                       )
Individually and on behalf of all others )
Similarly situated                     )
                                       )
                                       )
                                       )
            Plaintiffs,                )
                                       )
      v.                               )
                                       )
AMERIQUEST MORTGAGE                    )
COMPANY                                )
                                       )
            Defendant.                 )
_____          )

## PROPOSED ORDER GRANTING PLAINTIFFS' EMERGENCY MOTION

## FOR PRELIMINARY INJUNCTION

This matter comes before the Court on the Plaintiffs' Emergency Motion for Preliminary Injunction, due notice having been served, the Court being duly advised in the premises, IT IS HEREBY ORDERED:

1.  The Plaintiffs' Emergency Motion for Preliminary Injunction is hereby granted.

2.  The Defendant is enjoined from foreclosing upon the properties at issue without further application to this Court.

DATE: _____      ENTER: _____

                                                  Judge

# COMMONWEALTH OF MASSACHUSETTS

Norfolk, SS.

**SUPERIOR COURT**
**C.A. NO. 04-1898**

ISABELLE M. MURPHY,  )
DAVID R. MURPHY,  )
LYNN GAY,  )
DAVID M. WAKEFIELD, and  )
JANET WAKEFIELD  )
   )
Individually and on behalf of all others  )
Similarly situated  )
   )
   )
   )
Plaintiffs,  )
   )
v.  )
   )
AMERIQUEST MORTGAGE  )
COMPANY  )
   )
Defendant.  )
   )

## PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs, Lynn Gay ("Ms. Gay") and David and Janet Wakefield ("the Wakefields"), respectfully request that a preliminary injunction be granted to: (1) temporarily prevent the Defendant, Ameriquest Mortgage Company ("Ameriquest"), from foreclosing on their homes; (2) preserve the status quo, and; (3) obtain a determination of their statutory rights under the Consumer Credit Cost Disclosure Act (hereinafter "CCCDA), G.L. c. 140D §10 together with that law's implementing regulations, 209 C.M.R. 32.1 *et seq*. Under the CCCDA, rescission is a defense to foreclosure. G.L. c. 140D §10(i).

*(handwritten in left margin, partially legible:)* On 11/96 issue returnable November 23 2004 at 2:00 PM (Burch-okam, J.) Adi. GKP. Pauls asst Clerk

At present, foreclosure on the Wakefields' home is scheduled for December 13, 2004. Foreclosure on Ms. Gay's home is not scheduled, but is believed to be imminent. Under Massachusetts law, foreclosure can occur on less than 30 days notice.

Prior to this motion, the Plaintiffs filed Civil Action No. 04-1898 alleging, in part, that their mortgages are **void** based on their statutory rights, <u>inter alia</u>, under M.G.L. c. 140D, § 10(a), § 10 (b). In support of the motion, Plaintiffs rely on the attached Declarations of Plaintiffs Lynn Gay and David and Janet Wakefield as well as the Memorandum in Support of Plaintiffs' Emergency Motion for Preliminary Injunction filed herewith.

Respectfully Submitted,
By their attorneys,

Dated this 17th day of November 2004.

Gary Klein BBO # 560769
John Roddy BBO # 424240
Elizabeth Ryan BBO # 549632
Shennan Kavanagh BBO # 655174
Roddy, Klein & Ryan
727 Atlantic Ave., 2nd floor
Boston, MA 02111
Tel. 617-353-5500 x 15
Fax. 617- 353-5030

# Commonwealth of Massachusetts
## County of Norfolk
## The Superior Court

Civil Docket **NOCV2004-01898**

RE:     Murphy et al v Ameriquest Mortgage Company


TO:     Robert Bruce Allensworth, Esquire
        Kirkpatrick & Lockhart
        75 State Street
        Boston, MA 02109-


## CLERK'S NOTICE

This is to notify you that in the above referenced case the Court's action on **12/02/2004**:

*RE: Plaintiffs' Emergency MOTION for Preliminary Injunction*

**is as follows:**

**MOTION (P#3.0) See Consent Order of this date (Barbara A. Dortch-Okara, Regional Administrative Justice).dated 11/23/04 Notices mailed December 02, 2004**

Dated at Dedham, Massachusetts this 2nd day of December, 2004.

                                        Walter F. Timilty,
                                        Clerk of the Courts
                            BY:

                                        Assistant Clerk

Telephone: (781) 326-1600

Copies mailed 12/02/2004

cvdresult_2.wpd 537514 mottext kenneyma

COMMONWEALTH OF MASSACHUSETTS

Norfolk, SS.

SUPERIOR COURT
C.A. NO. 04-1898

| | |
|---|---|
| ISABELLE M. MURPHY,<br>DAVID R. MURPHY,<br>LYNN GAY,<br>DAVID M. WAKEFIELD, and<br>JANET WAKEFIELD<br><br>**Individually and on behalf of all others<br>Similarly situated**<br><br><br><br>Plaintiffs,<br><br>v.<br><br>AMERIQUEST MORTGAGE<br>COMPANY<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**CONSENT ORDER**

And now this 23rd day of November, 2004, this matter having come before the Court on Plaintiffs' Emergency Motion for Preliminary Injunction and counsel for the parties having appeared, and said counsel having represented that their respective clients agree to this form or order to preserve the *status quo* pending further proceedings, and without making any findings as to the merits of this matter, the Court does hereby Order as follows:

1. Further proceedings on the motion shall be scheduled for January _17_, 2005 at _2:00_ p.m. in Courtroom Number _3_;

2. The foreclosure sale presently scheduled by the Defendant for December 13, 2004 on the property owned by Plaintiffs David and Janet Wakefield at 303 Marion Road, Wareham, Massachusetts shall not go forward as scheduled and shall be stayed for a period of sixty (60) days; and

3. The Defendant shall take no action will be taken with respect to foreclosure on the property owned by Plaintiff Lynn Gay at 43 Oak Street, Bridgewater, Massachusetts without thirty (30) days written notice to counsel for Ms. Gay.

BY THE COURT

Dated this 23rd day of November 2004.

**Appearances of Counsel**

For the Plaintiffs:

Gary Klein
BBO # 560769
Roddy, Klein & Ryan
727 Atlantic Ave., 2nd floor
Boston, MA 02111
Tel. 617-353-5500 x 15
Fax. 617- 353-5030

For the Defendant:

R. Bruce Allensworth
Kirkpatrick & Lockhart
75 State Street
Boston, MA 02119
Tel. 617-261-3100
Fax. 617-261-3175

**A TRUE COPY**
Attest: _Mary E. Kenney_
Deputy Assistant Clerk
12/2/04

*Rec'd 11/17/04*

# COMMONWEALTH OF MASSACHUSETTS

**Norfolk, SS.**

**SUPERIOR COURT**
**C.A. NO. 04-1898**

ISABELLE M. MURPHY,
DAVID R. MURPHY,
LYNN GAY,
DAVID M. WAKEFIELD, and
JANET WAKEFIELD

Individually and on behalf of all others
Similarly situated

         Plaintiffs,

    v.

AMERIQUEST MORTGAGE
COMPANY

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

*Nov. 17, 2004*
*Allowed.*
*(Dortch-Okara J.)*
*Att: [signature] Asst. Clerk*

## MOTION FOR SPECIAL APPOINTMENT TO SERVE PROCESS

       Pursuant to Mass. R. Civ. P. 4(c), Plaintiffs move for the appointment of Suvalle

Jodrey & Associates, One Devonshire Place, Boston, Massachusetts 02109 to serve

process in this action. Suvalle Jodrey & Associates is experienced in the service of

process and has no connection with any party in interest.

                                Respectfully Submitted,
                                By their attorneys,

Dated this 17th day of November 2004.

Gary Klein BBO # 560769
John Roddy BBO # 424240
Elizabeth Ryan BBO # 549632
Shennan Kavanagh BBO # 655174
Roddy, Klein & Ryan
727 Atlantic Ave., 2nd floor
Boston, MA  02111
Tel. 617-353-5500 x 15
Fax. 617- 353-5030

A TRUE COPY
Attest:
Deputy Assistant Clerk

04 12651 RWZ

# CIVIL COVER SHEET

JS 44 (Rev. 3/99)

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Isabelle M. Murphy, et al

**(b)** County of Residence of First Listed Plaintiff __Norfolk__
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Gary Klein, Esq.
Roddy, Klein & Ryan
727 Atlantic Avenue, 2nd Floor
Boston, MA 02111

## DEFENDANTS

Ameriquest Mortgage Company

County of Residence of First Listed
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)
Kirkpatrick & Lockhart LLP
75 State Street
Boston, MA 02109

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☐ 2  U.S. Government
Defendant

☐ 3  Federal Question
(U.S. Government Not a Party)

☒ 4  Diversity
(Indicate Citizenship of Parties
in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

|  | PLF | DEF |  | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug |  | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability   ☐ 365 Personal Injury — | of Property 21 USC | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &   Product Liability | ☐ 630 Liquor Laws |  | ☐ 460 Deportation |
| & Enforcement of | Slander   ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ Judgment Medicare Act | ☐ 330 Federal Employers'   Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability   Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine   **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product   ☐ 370 Other Fraud | ☐ 690 Other |  | Exchange |
| ☐ 153 Recovery of Overpayment | Liability   ☐ 371 Truth in Lending |  | **SOCIAL SECURITY** | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | 12 USC 3410 |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability   ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury   Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
|  |  |  | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting |  | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting   ☐ 510 Motions to Vacate | & Disclosure Act | **FEDERAL TAX SUITS** | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment   Sentence | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 900 Appeal of Fee |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/   Habeas Corpus: |  | or Defendant) | Determination Under Equal Access to |
| ☐ 240 Torts to Land | Accommodations   ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 871 IRS—Third Party | Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare   ☐ 535 Death Penalty |  | 26 USC 7609 | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights   ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. |  | State Statutes |
|  | ☐ 550 Civil Rights | Security Act |  | ☒ 890 Other Statutory Actions |
|  | ☐ 555 Prison Condition |  |  |  |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original
Proceeding

☒ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to
District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause.
Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. 1441(a) - Removal of State case to Federal Court

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $ Damages,
Injunctive Relief and
other equitable relief

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE 17 Dec 2004

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only)_____Isabelle M. Murphy, et al v. Ameriquest Mortgage Company

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

___  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

___  II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,       *Also complete AO 120 or AO 121
           740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

_X_  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
           315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
           380, 385, 450, 891.

___  IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
           690, 810, 861-865, 870, 871, 875, 900.

___  V.    150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   NA

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                                    YES ☐    NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

                                                                    YES ☐    NO ☒

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                                    YES ☐    NO ☒

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                                    YES ☐    NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                                                                    YES ☒    NO ☐

   1.  If yes, in which division do all of the non-governmental parties reside?

       Eastern Division ☒    Central Division ☐              Western Division ☐

   2.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

       Eastern Division ☐    Central Division ☐              Western Division ☐

8. If filing a Notice of Removal- are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

                                                                    YES ☒    NO ☐
                                                                    See attached sheet

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME   R. Bruce Allensworth
ADDRESS   Kirkpatrick & Lockhart LLP, 75 State St., Boston, MA 02109
TELEPHONE NO.   617-261-3100

(Coversheetlocal[1].wpd - 10/17/02)