# Kirkpatrick & Lockhart LLP

75 State Street
Boston, MA 02109-1808
617.261.3100
www.kl.com

December 27, 2004

Brian M. Forbes
617.261.3152
Fax: 617.261.3175
bforbes@kl.com

Clerk
United States District Court
District of Massachusetts
1 Courthouse Way
Boston, MA  02210

        Re:    Isabelle M. Murphy, et al v. Ameriquest Mortgage Company,
               C.A. No. 04-12651-RWZ

Dear Sir or Madam:

The defendant in this matter, Ameriquest Mortgage Company, removed the above case to the
United States District Court for the District of Massachusetts on Friday, December 17, 2004.
Pursuant to Local Rule 81.1 of the United States District Court for the District of Massachusetts,
enclosed for filing please find the certified copies of all records and proceedings in the state
court and a certified copy of all docket entries in the state court.

Thank you for your attention.

                                        Very truly yours,

                                        Brian M. Forbes

BMF/jo
Enclosures

cc:    Gary Klein, Esq. (w/encl. by mail)

BOS-714752 v1

BOSTON ▪ DALLAS ▪ HARRISBURG ▪ LOS ANGELES ▪ MIAMI ▪ NEWARK ▪ NEW YORK ▪ PITTSBURGH ▪ SAN FRANCISCO ▪ WASHINGTON

**Commonwealth of Massachusetts**
NORFOLK SUPERIOR COURT
Case Summary
Civil Docket

# NOCV2004-01898
## Murphy et al v Ameriquest Mortgage Company

| | | | |
|---|---|---|---|
| **File Date** | 11/05/2004 | **Status** | Disposed: transfered to other court (dtrans) |
| **Status Date** | 12/21/2004 | **Session** | B - Civil B |
| **Origin** | 1 | **Case Type** | E99 - Miscellaneous |
| **Lead Case** | | **Track** | X |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Service** | 02/03/2005 | **Answer** | 04/04/2005 | **Rule12/19/20** | | |
| **Rule 15** | | **Discovery** | | **Rule 56** | | |
| **Final PTC** | 05/04/2005 | **Disposition** | 06/03/2005 | **Jury Trial** | Yes | |

| PARTIES |
|---|

**Plaintiff**
Isabelle M Murphy
Active 11/05/2004

**Private Counsel 560769**
Gary Klein
RODDY, KLEIN & RYAN
727 Atlantic Avenue 2nd Floor
Boston, MA 02111
Phone: 617-357-5500
Fax: 617-357-5030
Active 11/05/2004 Notify

**Plaintiff**
David R Murphy
Active 11/05/2004

*** See Attorney Information Above ***

**Plaintiff**
Lynn Gay
Active 11/05/2004

*** See Attorney Information Above ***

**Plaintiff**
David M Wakefield
Active 11/05/2004

*** See Attorney Information Above ***

NORFOLK SUPERIOR COURT
Case Summary
Civil Docket

## NOCV2004-01898
## Murphy et al v Ameriquest Mortgage Company

| Plaintiff | *** See Attorney Information Above *** |
|---|---|
| Janet  Wakefield<br>Active 11/05/2004 | |

**Defendant**
Ameriquest Mortgage Company
Served: 11/18/2004
Served (answr pending) 11/18/2004

**Private Counsel 015820**
Robert Bruce Allensworth
Kirkpatrick & Lockhart
75 State Street
Boston, MA 02109-
Phone: 617-261-3100
Fax: 617-261-3175
Active 12/02/2004 Notify

**Private Counsel 644787**
Brian Forbes
Kirkpatrick & Lockhart
75 State Street
Boston, MA 02109
Phone: 617-261-3100
Fax: 617-261-3175
Active 12/21/2004 Notify

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 11/05/2004 | 1.0 | Complaint  entry fee $280 plff jury claim |
| 11/05/2004 | | Origin 1, Type E99, Track X. |
| 11/05/2004 | 2.0 | Civil action cover sheet filed |
| 11/05/2004 | | accelerated track notice sent to plff attorney |
| 11/15/2004 | | ONE TRIAL review by Clerk, Case is to remain in the Superior Court |
| 11/17/2004 | 3.0 | Plaintiffs' Emergency MOTION for Preliminary Injunction |
| 11/17/2004 | 3.1 | Memorandum in support of plffs' emergency motion for preliminary injunction |
| 11/17/2004 | 3.2 | Certificate of Service of documents |
| 11/17/2004 | 3.3 | Motion for short order of notice |
| 11/17/2004 | 4.0 | Motion for special appointment to serve process |
| 11/17/2004 | | MOTION (P#3.0) Order of Notice to issue returnable November 23, 2004 at 2:00 p.m. (Barbara A. Dortch-Okara, Regional Administrative Justice). Notices mailed November 17, 2004 |
| 11/17/2004 | | MOTION (P#4.0) ALLOWED (Barbara A. Dortch-Okara, Regional Administrative Justice) Notices mailed November 17, 2004 |
| 11/30/2004 | 5.0 | SERVICE RETURNED:  Ameriquest Mortgage Company(Defendant), in hand to Lisa Mogan, secretary for National Registered Agent, Inc. on 11/18/04 |
| 12/02/2004 | | MOTION (P#3.0) See Consent Order of this date  (Barbara A. Dortch-Okara, Regional Administrative Justice).dated 11/23/04 Notices mailed December 02, 2004 |

**Commonwealth of Massachusetts**
NORFOLK SUPERIOR COURT
Case Summary
Civil Docket

## NOCV2004-01898
### Murphy et al v Ameriquest Mortgage Company

| Date | Paper | Text |
|------|-------|------|
| 12/02/2004 | 6.0 | Consent Order (Dortch-Okara,Justice) dated 11/23/04  dated 11/23/04 certified copies mailed 12/2/04 |
| 12/08/2004 | 7.0 | Stipulation to extend time for Ameriquest Mortgage Company to move, file an answer/responsive pleading to the complaint to and including January 06, 2005 |
| 12/21/2004 | 8.0 | Notice of Removal -- Case REMOVED this date to US District Court of Massachusetts |

| | | | EVENTS | |
|---|---|---|---|---|

| Date | Session | Event | Result |
|------|---------|-------|--------|
| 11/23/2004 | Civil B | Motion/Hearing: prel inj | Event held as scheduled |
| 01/19/2005 | Civil B | Motion/Hearing: prel inj p.#3.0 | |

A TRUE COPY

Attest: _Virginia A Foster_

Deputy Assistant Clerk

5/21/04

## COMMONWEALTH OF MASSACHUSETTS

**Norfolk, SS.**

**SUPERIOR COURT**
**C.A. NO.**

04  01898

|  |  |
|---|---|
| ISABELLE M. MURPHY, <br> DAVID R. MURPHY, <br> LYNN GAY, <br> DAVID M. WAKEFIELD, and <br> JANET WAKEFIELD <br><br> **Individually and on behalf of all others <br> Similarly situated** <br><br><br> **Plaintiffs,** <br><br> **v.** <br><br> AMERIQUEST MORTGAGE <br> COMPANY <br><br> **Defendant.** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**COMPLAINT
SEEKING DAMAGES
AND EQUITABLE RELIEF
INCLUDING INJUNCTIVE
RELIEF TO PREVENT
FORECLOSURE**

## I. PRELIMINARY STATEMENT

1.      This is an action brought by Massachusetts homeowners against a lender, Ameriquest Mortgage Company ("Ameriquest"). Ameriquest used a pattern of deceit, misrepresentation and other stratagems to induce the Plaintiffs to enter into residential mortgage loans with unfair financial benefits to Ameriquest and hidden costs to the Plaintiffs. In doing so, Ameriquest violated the consumer protection statute G.L. c. 93A (hereinafter "c. 93A"), together with that law's implementing regulations, including 940 C.M.R. § 3.01 *et seq.*, 6.01 *et seq.*, 8.01 *et seq.*, and the common law.

2.     Each of the Plaintiffs entered into a loan with Ameriquest that is fully secured by equity in their residences. The loans are characterized by high points and fees or high interest rates. In each transaction, Ameriquest engaged in bait and switch tactics or similar deception, by which Ameriquest misrepresented or failed to fully disclose important aspects of the loan terms until closing. Each Plaintiff ultimately received a loan which, to their surprise, contained one or more of the following disadvantageous terms:

- A confusing variable interest rate structure in which the original note rate could only increase, but not decrease;
- A large number of "discount points" constituting thousands of dollars added to the principal of the loan even though Ameriquest provided no "discount" in the transactions;
- A prepayment penalty in the maximum amount allowed by law, thereby discouraging the Plaintiffs from refinancing on better terms with other lenders; and
- Other duplicative costs and closing fees in amounts designed to penalize borrowers who sought refinancing from Ameriquest or others on better terms.

3.     When Plaintiffs inquired about why they were not receiving their loans on promised terms, they were uniformly promised early refinancing on more favorable terms.

4.     The consequence of Ameriquest's practices, taken as a whole, is to allow Ameriquest to profit by leaving borrowers with a three-way Hobson's choice. Either the borrower can 1) choose to remain in a loan with unacceptable terms, 2) find another lender offering better terms and pay Ameriquest a substantial and unjustified prepayment penalty, or 3) refinance with Ameriquest and thereby provide Ameriquest with an

2

opportunity to capitalize the points and closing costs from the first loan while charging another set of points and/or closing costs in an equal or larger loan amount.

5.    In addition, Ameriquest violated Massachusetts' truth in lending act, the Consumer Credit Cost Disclosure Act (hereinafter "CCCDA"), G.L. c. 140D together with that law's implementing regulations, 209 C.M.R. § 32.1 *et seq* by failing to give Plaintiffs and others information required by G.L. c. 140D, §10 concerning the right to cancel a refinanced loan.

6.    Plaintiffs seek monetary, declaratory and injunctive relief on their own behalf and for a class of similarly situated Massachusetts homeowners.

## II.  JURISDICTION AND VENUE

7.    This court has jurisdiction over this matter and this Defendant pursuant to G.L. c. 223A, §3, c. 212, §4 and c. 214, §1.

8.    Venue lies in this county pursuant to G.L. c. 223, § 8.

## III. PARTIES

9.    Plaintiffs Isabelle M. Murphy and David R. Murphy ("the Murphys") are individuals who reside at 13 Crescent Street, Plympton, MA 02367 (the "Plympton residence").

10.    Plaintiff Lynn Gay ("Ms. Gay") is an individual who resides at 43 Oak Street, Bridgewater, MA 02324 (the "Bridgewater residence").

11.    Plaintiffs David M. Wakefield and Janet Wakefield ("the Wakefields") are individuals who reside at 303 Marion Road, Wareham, MA 02571 (the "Wareham residence").

12.    Defendant Ameriquest Mortgage Company ("Ameriquest") is a Delaware corporation whose principal place of business is at 1100 Town & Country Road, Orange, CA 92000.

13.     Ameriquest does business from various locations in Massachusetts, including, without limitation, 25 Braintree Hill Park, Suite 304, Braintree, MA 02184 in Norfolk County.

14.     Ameriquest's business includes making and refinancing consumer loans secured by residential property.

15.     At all times relevant to this complaint, Ameriquest regularly extended consumer credit payable by written agreement in more than four installments or for which a finance charge is imposed.

## IV.    FACTUAL ALLEGATIONS

### Facts Applicable to the Murphys' Loan Transaction

16.     The Murphys are unsophisticated consumers with little experience in mortgage financing.  They own a home at 13 Crescent Street, Plympton, MA 02367.

17.     The Murphys purchased their home in July 2003 for two hundred forty-two thousand dollars ($242,000) and live there with their 3 children, ages 8 months, 8 and 8. The Plympton residence has a current fair market value of at least two hundred eighty-six thousand dollars ($286,000).

18.     The Murphys' initial home mortgage loan was a 30-year, 5% fixed-rate loan with Wells Fargo (the "Wells Fargo" loan). The Murphys considered the Wells Fargo loan to be on advantageous terms.  They made all of the payments required by the Wells Fargo loan.

19.     The Murphys applied to Ameriquest to refinance the Wells Fargo loan in order to consolidate some of their other debts. Based on their discussions with Ameriquest, the Murphys understood that they were applying for a 5.75 % fixed rate loan with no points.

20.     When the Murphys asked their loan officer, Jason Kerr, why the estimated closing costs were so high, and, specifically, what the "loan discount fee" of over $8,000.00 represented, he assured them it was "just to make the numbers work."

21.     The final CCCDA disclosures given to the Murphys at the April 22, 2004 loan closing stated that the Annual Percentage Rate applicable to the loan would be 6.529% and that the monthly payments would be $1,497.92 for the first two years and $1,576.70 for the remaining 28 years.

22.     A true and correct copy of the CCCDA disclosures made to the Murphys in connection with the April 22, 2004 refinancing is attached hereto and labeled Exhibit A.

23.     The Murphys were unaware that the loan closing was to take place until they received a call from Mr. Kerr telling Ms. Murphy that he and an attorney, Nicholas Barrett, were on their way to the Plympton residence.

24.     The closing was completed in less than one hour.

25.     A true and correct copy of the Settlement Statement provided to the Murphys in connection with the April 22, 2004 refinancing is attached hereto and labeled Exhibit B.

26.     A true and correct copy of the loan note in the transaction is attached hereto and labeled Exhibit C.

27.     At the closing, the Murphys expressed concern over the fact that the loan was an adjustable rate loan rather than a fixed rate loan, and that the loan terms included a prepayment penalty.

28.     Mr. Kerr then assured the Murphys that they could refinance within four to six months of the closing and obtain a lower, fixed-rate mortgage. Mr. Kerr also stated that if

the Murphys refinanced with Ameriquest, they would not be subject to a prepayment penalty.

29.     Although the loan closing took place on April 22, 2004, the Settlement Statement indicates a closing date of April 29, 2004.

30.     The April 22, 2004 loan Settlement Statement shows that a "loan discount fee" of 3.326% ($8,537.18) was paid to Ameriquest Mortgage Company. [*See* Exhibit B: Line 802]

31.     The Murphys believe and therefore aver that they were not provided with a "discount" of any kind on the rate in the transaction.

32.     The Murphys were never offered an alternative loan with a higher rate that did not involve payment of discount points. Therefore, they had no opportunity to evaluate whether the "discount" would be advantageous to them.

33.     The loan contains a "one-way" variable rate provision under which the rate in the transaction could increase from the initial rate disclosed in the loan note, but could not decrease below that rate.

34.     The Murphys were not given sufficient information to understand the variable rate associated with their loan and did not understand the complex provisions for a variable rate until many months after their transaction.

35.     The Murphys are having significant problems affording the payments on April 22, 2004 loan. The Murphys would like to refinance with another lender on better terms, but have not explored that option because of the prepayment penalty associated with the Ameriquest loan.

36.     The Murphys also now understand that the thousands of dollars in points and closing costs that they paid in connection with the loan would act as an additional *de facto* prepayment penalty if they refinance early, even if that refinancing is with

6

Ameriquest. Since the points and closing costs are treated as earned when the loan is made, they drive up the effective rate on the original loan if the loan is repaid in a shorter period than its expected term. In addition, by refinancing the points, the Murphys would be required to pay interest on the points in connection with the refinanced loan.

### *Facts Applicable to Lynn Gay's Loan Transactions*

37.    Lynn Gay is an unsophisticated consumer with little experience in mortgage financing. She owns a home at 43 Oak Street, Bridgewater, MA 02324.

38.    Ms. Gay purchased her home in October 1999 for one hundred seventy-five thousand dollars ($175,000) and lives there with her husband and their four daughters, ages 9, 12, 15 and 15. She has refinanced her home mortgage loan twice and has made numerous repairs and improvements to the property. A recent appraisal indicates that the Bridgewater residence has a current fair market value of approximately three hundred eighty thousand dollars ($380,000).

39.    On March 14, 2003, Ms. Gay refinanced her home mortgage loan with Ameriquest. The Bridgewater residence was collateral for this loan ("March 14, 2003 loan").

40.    Ms. Gay completed the application for the March 14, 2003 loan over the phone.

41.    Based on her discussions with Ameriquest, Ms. Gay understood that she was applying for a loan with a rate of 7.5%.

42.    The final CCCDA disclosures given to Ms. Gay at the March 14, 2003 closing stated that the Annual Percentage Rate applicable to the loan would be 9.259% and that the monthly payments would be $2,058.80.

43.    A true and correct copy of the CCCDA disclosures provided to Ms. Gay in connection with the March 14, 2003 loan is attached hereto and labeled Exhibit D.

44.    The March 14, 2003 closing took place at Ms. Gay's workplace during business hours. Ms. Gay and a closing agent were present.

45.    The closing was completed in less than one hour.

46.    A true and correct copy of the Settlement Statement provided to Ms. Gay in connection with the March 14, 2003 refinancing is attached hereto and labeled Exhibit E.

47.    A true and correct copy of the loan note in the March 14, 2003 loan is attached hereto and labeled Exhibit F.

48.    At closing, Ms. Gay expressed concern regarding the change in terms from the preliminary discussions; the APR and monthly payment amount had both increased and the settlement charges had doubled.

49.    Ms. Gay was told by the closing agent that he was not a representative of Ameriquest and that he therefore could not answer questions about the loan terms.

50.    Although the loan closing took place on March 14, 2004, the Settlement Statement indicates a closing date of March 21, 2003.

51.    The March 14, 2003 loan Settlement Statement shows a loan discount fee of 3.800% ($9,944.60) to Ameriquest Mortgage Company. [See Exhibit E: Line 802]

52.    Ms. Gay believes and therefore avers that she was not provided with a "discount" of any kind on the rate in the transaction.

53.    Ms. Gay was never offered an alternative loan with a higher rate that did not involve payment of discount points. Therefore, she had no opportunity to evaluate whether the "discount" would be advantageous to her.

54.    The March 14, 2003 loan contains a "one-way" variable rate provision under which the rate in the transaction could increase from the initial rate disclosed in the loan note, but could not decrease below that rate.

55.    Ms. Gay was not given sufficient information to understand the variable rate associated with her loan and did not understand the complex provisions for a variable rate until many months after her transaction.

56.    Following consummation of the March 14, 2003 loan, Ms. Gay received a telephone call from an Ameriquest loan officer, during which he offered to refinance her home mortgage at a lower rate.

57.    Ms. Gay refinanced her home mortgage loan with Ameriquest again on September 2, 2003 ("September 2, 2003 loan").

58.    By refinancing with Ameriquest, Ms. Gay suffered significant hidden financial harm, including capitalization of points and closing costs and exposure to substantial new and additional closing costs. These hidden costs of refinancing were well known and highly profitable to Ameriquest.

59.    Ms. Gay completed the loan application for the September 2, 2003 loan over the phone. Based on her discussions with Ameriquest's loan officer, Ms. Gay understood that her refinancing loan would be at a rate of 7.25%.

60.    The final CCCDA disclosures given to Ms. Gay at the September 2, 2003 closing stated that the Annual Percentage Rate applicable to the loan would be 9.012% and that the monthly payments would be $2,283.68.

61.    A true and correct copy of the CCCDA disclosures provided to Ms. Gay in connection with the September 2, 2003 refinancing is attached hereto and labeled Exhibit G.

62.    The September 2, 2003 closing took place at Ms. Gay's workplace during business hours. Ms. Gay and a closing agent were present.

63.    The closing was completed in less than one hour.

64.    A true and correct copy of the Settlement Statement provided to Ms. Gay in connection with the September 2, 2003 refinancing is attached hereto and labeled Exhibit H.

65.    A true and correct copy of the loan note in the September 2, 2003 loan is attached hereto and labeled Exhibit I.

66.    At closing, Ms. Gay once again expressed concern, this time calling her Ameriquest loan officer, regarding the fact that the APR was greater than that orally disclosed prior to closing.

67.    Although the loan closing took place on September 2, 2003, the Settlement Statement indicates a closing date of September 9, 2003.

68.    The September 2, 2003 loan Settlement Statement shows a loan discount fee of 3.900% ($11,583.00) to Ameriquest Mortgage Company. [*See* Exhibit H: Line 802]

69.    Ms. Gay believes and therefore avers that she was not provided with a "discount" of any kind on the rate in the transaction.

70.    Ms. Gay was never offered an alternative loan with a higher rate that did not involve payment of discount points. Therefore, she had no opportunity to determine whether the "discount" would be advantageous to her.

71.    The September 2, 2003 loan contains a "one-way" variable rate provision under which the rate in the transaction could increase from the initial rate disclosed in the loan note, but could not decrease below that rate.

72.    Ms. Gay did not understand the complex provisions for a variable rate until many months after the September 2, 2003 loan transaction.

73.    The September 2, 2003 loan Settlement Statement shows that disbursements to Ameriquest were made to pay off the March 14, 2003 Ameriquest loan in the amounts of $16,774.61 and $150,000.00, respectively. [*See* Exhibit H: Lines 1501 and 1511]

74.    Ms. Gay is having significant problems affording the payments on the September 2, 2003 loan.

75.    At the time this complaint was filed, Ms. Gay was five months in arrears on her monthly mortgage payments to Ameriquest.

76.    Ms. Gay believes and therefore avers that acceleration of the debt and foreclosure to recover the amounts now due are imminent.

77.    The CCCDA requires creditors to provide borrowers with accurate information regarding the effects of rescinding a loan transaction. G.L. c. 140D § 10; 209 C.M.R. 32.23(2). Since canceling an initial transaction and canceling a refinancing transaction have different effects, the creditor must provide the borrower with notice that accurately reflects that difference. Specifically, a creditor must provide the borrower with a notice that conforms with the model forms provided in Appendix H to 12 C.F.R. § 226.23, or substantially similar notice. G.L. c. 140D §§ 10, 18; 209 C.M.R. 32.23(2)(b).

78.    Since Ms. Gay was refinancing an Ameriquest loan with Ameriquest in the September 2, 2003 transaction, she should have received a disclosure that described the effects of canceling a refinance transaction. See 12 C.F.R. § 226.23(b)(2), Appendix H, Model Form H-9.

79.    Instead Ameriquest provided Ms. Gay with a form that explained her right to cancel an initial transaction. *See* 12 C.F.R. § 226.23(b)(2), Appendix H, Model Form H-8.

80.    A true and correct copy of the Notice of Right to Cancel provided to Ms. Gay in connection with the September 2, 2003 refinancing is attached hereto and labeled Exhibit J.

81.    As a result, Ameriquest failed to accurately disclose to Ms. Gay the effect that canceling the refinance transaction would have on her home mortgage.

82.    On November 1, 2004 Ms. Gay rescinded the refinance loan as was her right pursuant to G.L. c. 140D, §10 and the regulation promulgated thereunder, 209 C.M.R. 32.23.

83.    A true and correct copy of Ms. Gay's November 1, 2004 notice of rescission related to the refinance loan is attached hereto and labeled Exhibit K.

84.    Ms. Gay would like to refinance with another lender on better terms, but has not fully explored that option because of the prepayment penalty associated with her Ameriquest loan.

85.    Ms. Gay also now understands that the thousands of dollars in points and closing costs that she paid in connection with each loan has acted or could act as an additional *de facto* prepayment penalty.  She understands that since the points and closing costs are treated as earned when the loan is made, they drive up the effective rate on the original loan if the loan is repaid in a shorter period than its expected term.  In addition, by refinancing the points on a previous occasion, Ms. Gay has been required to pay interest on the points in connection with the refinanced loan.

### Facts Applicable to the Wakefields' Loan Transactions

86.    The Wakefields are unsophisticated consumers with little experience in mortgage financing. They own a home at 303 Marion Road, Wareham, MA 02571.

87.    The Wakefields purchased their Wareham residence in June 1999 for an initial purchase price of approximately one hundred ten thousand dollars ($110,000). Since then, they have refinanced several times and have made numerous repairs and improvements to the property. A recent appraisal indicates that the Wareham residence has a current fair market value of approximately three hundred fifteen thousand dollars ($315,000).

88.    On April 17, 2003, the Wakefields refinanced their home mortgage loan with an entity known as Argent Mortgage Company ("Argent loan").

89.    A true and correct copy of the Settlement Statement provided to the Wakefields in connection with the Argent loan is attached hereto and labeled Exhibit L.

90.    On information and belief, Argent is the sister company of Ameriquest, both of which are subsidiaries of Ameriquest Capital Corporation.

91.    Under the terms of the Argent loan, the Wakefields paid a loan origination fee of 2.00% ($3,825.00). [*See* Exhibit L: Line 801]

92.    On January 15, 2004, the Wakefields refinanced their Argent loan with a loan from Ameriquest. The Wareham residence was collateral for this loan ("January 15, 2004 loan").

93.    By refinancing with Ameriquest, the Wakefields suffered significant hidden financial harm, including capitalization of points and closing costs and exposure to substantial new and additional closing costs. These costs of refinancing were well known and highly profitable to Ameriquest.

94.    The preliminary CCCDA disclosures given to the Wakefields and dated January 2, 2004, stated that the Annual Percentage Rate applicable to the loan would be 9.736% and that the monthly payments would be $1,809.89.

95.    A true and correct copy of the CCCDA preliminary disclosures made to the Wakefields in connection with the January 15, 2004 refinancing is attached hereto and labeled Exhibit M.

96.    Based on the preliminary disclosures, the Wakefields believed they were to receive a loan on those terms.

97.    The final CCCDA disclosures given to the Wakefields at the January 15, 2004 closing stated that the Annual Percentage Rate to the applicable loan would be 12.102% and that the monthly payments would be $2,446.27.

98.    A true and correct copy of the CCCDA final disclosures made to the Wakefields in connection with the January 15, 2004 refinancing is attached hereto and labeled Exhibit N.

99.    Upon learning of the change in terms, the Wakefields told their loan officer that they could not afford a $2,446.27 monthly payment.

100.    The loan officer assured them that they would only have to make one $2,446.27 payment on March 1, 2003, after which they could refinance at a lower rate to lower their monthly payments. The loan officer also stated that by refinancing with Ameriquest, the Wakefields would avoid paying a prepayment penalty.

101.    A true and correct copy of the Wakefield's February 23, 2004 payment of $2,446.27 is attached hereto and labeled Exhibit O.

102.    The January 15, 2004 loan closing took place at the Wakefields' home with the Wakefields and a closing agent present. The entire loan closing was completed in less than one hour.

103.    A true and correct copy of the Settlement Statement provided to the Wakefields in connection with the January 15, 2004 refinancing is attached hereto and labeled Exhibit P.

104.    A true and correct copy of the loan note in the January 15, 2004 loan is attached hereto and labeled Exhibit Q.

105.    Although the Wakefields closed the loan on January 15, 2004, the Settlement Statement indicates a closing date of January 23, 2004.

106.    The January 15, 2004 loan contains a one-way variable rate provision under which the rate in the transaction could increase from the initial rate disclosed in the loan note, but could not decrease below that rate.

107.    The Wakefields were not given sufficient information to understand the variable rate associated with their loan and did not understand the complex provisions for a variable rate until many months after their transaction.

108.    The January 15, 2004 loan Settlement Statement shows that a $192,555.96 disbursement was made to Ameriquest to pay off the Wakefield's prior loan. [See Exhibit P: Line 1501]

109.    On April 2, 2004, the Wakefields refinanced their January 15, 2004 Ameriquest loan with Ameriquest. The Wareham residence was collateral for this loan ("April 2, 2004 loan").

110.    The Wakefields completed the application for the April 2, 2004 loan by phone.

111. The preliminary CCCDA disclosures given to the Wakefields and dated February 24, 2004, stated that the Annual Percentage Rate applicable to the loan would be 8.860% and that the monthly payments would be $1,637.96.

112. A true and correct copy of the CCCDA preliminary disclosures made to the Wakefields in connection with the April 2, 2004 refinancing is attached hereto and labeled Exhibit R.

113. The final CCCDA disclosures given to the Wakefields at the April 2, 2004 closing stated that the Annual Percentage Rate to the applicable loan would be 8.75% and that the monthly payments would be $1,966.82.

114. A true and correct copy of the CCCDA final disclosures made to the Wakefields in connection with the April 2, 2004 refinancing is attached hereto and labeled Exhibit S.

115. The April 2, 2004 loan closing took place at the Wakefield's home with the Wakefields and a closing agent present. The loan closing was completed less in than one hour.

116. A true and correct copy of the Settlement Statement provided to the Wakefields in connection with the April 2, 2004 refinancing is attached hereto and labeled Exhibit T.

117. A true and correct copy of the loan note in the April 2, 2004 loan is attached hereto and labeled Exhibit U.

118. Although the Wakefields closed the loan on April 2, 2004, the HUD-1 Settlement Statement indicates a closing date of April 9, 2004.

119. The April 2, 2004 loan Settlement Statement shows that a loan discount fee of 3.990% ($10,445.82) was paid to Ameriquest Mortgage Company. [*See* Exhibit T: Line 802]

120. The Wakefields believe and therefore aver that they were not provided with a discount of any kind on the rate in the transaction.

121. The Wakefields were never offered an alternative loan with a higher rate that did not involve payment of discount points. Therefore, they never had an opportunity to evaluate whether the discount would be advantageous to them.

122. The April 2, 2004 loan contains a one-way variable rate provision under which the rate in the transaction could increase from the initial rate disclosed in the loan note, but could not decrease below that rate.

123. The April 2, 2004 loan Settlement Statement shows that a $242,057.42 disbursement was to be made to Ameriquest to pay off the January 15, 2004 Ameriquest loan. [*See* Exhibit T: Line 1501].

124. Following the loan closing, on April 15, 2004, Ameriquest sent the Wakefields a "Statement of Credit Denial," which stated : "We do not grant credit to any applicant on the terms and conditions you have requested."

125. A true and correct copy of the Statement of Credit Denial that Ameriquest sent to Wakefields on April 15, 2004 is attached hereto and labeled Exhibit V.

126. Upon receiving the "Statement of Credit Denial," Mr. Wakefield called his loan officer to inquire about the status of the April 2, 2004 loan. During that call, the loan officer told Mr. Wakefied that the April 2, 2004 loan had been cancelled because there had been "fraud in the application and the appraisal."

127. The information that the Wakefields submitted by telephone in connection with their April 2, 2004 loan application was accurate.

128. Following his conversation with the loan officer regarding the cancellation of the April 15, 2004 loan, the Wakefields retained an attorney, Lee Berger, to represent them in the matter of Ameriquest's cancellation of the April 2, 2004 loan.

129. In an August 13, 2004 letter to Mr. Berger, a representative of Ameriquest, Donald Larkin, wrote that the January 15, 2004 loan had been cancelled due to "what [Ameriquest] perceived to be, false income information that was submitted in connection with the subject loan information. Consequently, Ameriquest Loan Number 0066656760

[the January 15, 2004 loan] is still in effect and the terms, obligations and duties related thereto remain unchanged."

130.    A true and correct copy of the August 13, 2004 letter from Ameriquest representative, Donald Larkin, to the Wakefields' attorney Lee M. Berger confirming Ameriquest's cancellation of the April 2, 2004 refinancing is attached hereto and labeled Exhibit W.

131.    The Wakefields have been unable to afford the payments on the January 15, 2004 loan.

132.    At the time this complaint was filed, the Wakefields were seven months in arrears on their monthly mortgage payments to Ameriquest.

133.    On October 21, 2004, Ameriquest, through its attorneys Korde & Associates, P.C., sent the Wakefields a Deficiency Notice to notify them of Ameriquest's intention to foreclose on or about December 13, 2004.

134.    A true and correct copy of the October 21, 2004 Deficiency Notice is attached hereto and labeled Exhibit X.

135.    The CCCDA requires creditors to provide borrowers with accurate information regarding the effects of rescinding a loan transaction. G.L. c. 140D § 10; 209 C.M.R. 32.23(2). Since canceling an initial transaction and canceling a refinancing transaction have different effects, the creditor must provide the borrower with notice that accurately reflects that difference. Specifically, a creditor must provide the borrower with a notice that conforms with the model forms provided in Appendix H to 12 C.F.R. § 226.23, or substantially similar notice. G.L. c. 140D §§ 10, 18; 209 C.M.R. 32.23(2)(b).

136.    Since the Wakefields were refinancing Ameriquest loans with Ameriquest in both the January 15, 2004 and April 2, 2004 loan transactions, they should have received a disclosure that described the effects of canceling a refinance transaction. *See* 12 C.F.R. § 226.23(b)(2), Appendix H, Model Form H-9.

137.   A true and correct copy of the Notice of Right to Cancel provided to the Wakefields in connection with the January 15, 2004 refinancing is attached hereto and labeled Exhibit Y.

138.   A true and correct copy of the Notice of Right to Cancel provided to the Wakefields in connection with the April 2, 2004 refinancing is attached hereto and labeled Exhibit Z.

139.   Instead, in both loan transactions, Ameriquest provided the Wakefields with a form that explained their right to cancel an initial transaction. See 12 C.F.R. § 226.23(b)(2), Appendix H, Model Form H-8.

140.   As a result, Ameriquest failed to accurately disclose to the Wakefields the actual effect that such a cancellation would have on that transaction.

141.   On October 27, 2004 the Wakefields rescinded the refinance loan as was their right pursuant to G.L. c. 140D, §10 and the regulation promulgated thereunder, 209 C.M.R. 32.23.

142.   A true and correct copy of the Wakefields' October 27, 2004 notice of rescission is attached hereto and labeled Exhibit AA.

143.   The Wakefields would like to refinance with another lender on better terms, but have been unable to do so because of the prepayment penalty associated with the January 15, 2004 loan.

144.   The Wakefields also now understand that the thousands of dollars in points and closing costs that they paid in connection with prior loans have acted or could act as an additional *de facto* prepayment penalty. They understand that since the points and closing costs are treated as earned when the loan is made, they drive up the effective rate on the original loan if the loan is repaid in a shorter period that its expected term. In addition, by refinancing the points paid in earlier loans, the Wakefields have been required to pay interest on the points in connection with the refinanced loan.

## GENERAL ALLEGATIONS

145.    Ameriquest regularly uses bait and switch sales tactics to induce Massachusetts homeowners to finance their residences with Ameriquest on unfavorable terms.

146.    Ameriquest's home loans in Massachusetts are fully secured by homeowners' equity and are therefore made with little or no financial risk to Ameriquest.

147.    Ameriquest regularly fails to provide homeowners with timely and accurate written disclosures of loan terms as mandated by law.

148.    Ameriquest regularly fails to provide homeowners with timely and accurate written change in terms notices as mandated by law.

149.    Ameriquest regularly fails to provide homeowners who are refinancing Ameriquest loans with accurate notice of their right to cancel the transaction.

150.    When a homeowner complains that he or she is not being given a loan on promised terms, Ameriquest's loan officers routinely promise early refinancing on better terms.

151.    Ameriquest regularly charges so-called "discount points" without providing a discount therefor.

152.    Ameriquest regularly fails to offer consumers an alternative loan without "discount points" so that consumers can meaningfully evaluate whether the supposed rate discount is sufficient to offset the cost of the "discount points."

153.    Ameriquest routinely imposes prepayment penalties in the maximum amount allowed by law and then uses the fact of the penalty as a sales technique designed to discourage borrowers from seeking or obtaining better loan terms available from other lenders.

154.    Ameriquest routinely encourages early refinancing of its own loans in order to capitalize points paid on the previous loan and to create an opportunity to charge a new set of points and closing costs.

155.    Ameriquest understands the financial benefit to it of early refinancing of loans containing significant points and fees and hides the financial disadvantage of those refinance loans to its customers.

156.    Ameriquest routinely includes confusing variable rate terms in its loans that are designed to protect Ameriquest if interest rates increase without allowing its customers to benefit if interest rates decline below the rate in effect at the time the loan is made.

157.    An effect of Ameriquest's practices is to trap borrowers into a pattern of financing and refinancing with Ameriquest on terms that are highly financially advantageous to Ameriquest and highly disadvantageous to its customers.

158.    By its practices, Ameriquest strips equity that would otherwise belong to Massachusetts homeowners.


## V.     CLASS DEFINITIONS AND CLASS ISSUES

159.    Plaintiffs bring this action on behalf of themselves and two classes of all other persons similarly situated, pursuant to Mass. R. Civ. P. 23.

160.    Class I (the "deceptive loan terms" class) is represented by all Plaintiffs and consists of all residents of Massachusetts:

> a.   who entered into non-purchase money mortgage loan agreements with Ameriquest, on or after November 3, 2000; and
>
> > i.     who were offered one interest rate in preliminary disclosures but received another rate at closing; and/or
> >
> > ii.    who paid fees itemized by Ameriquest as "loan discount fees."

161.    Class II (the CCCDA Notice of Right to Cancel class) is represented by the Wakefields and Ms. Gay, and consists of all residents of Massachusetts:

> a.   who, on or after November 3, 2000, refinanced an Ameriquest non-purchase money mortgage loan with Ameriquest; and

b.  who received a notice of right to cancel which inaccurately described the nature of the right to cancel a refinanced transaction.

162.  There are questions of law and fact which are common to all members of each class, which questions predominate over any question affecting only individual class members. The principal common issues are:

*with respect to Class I:*

a.  Whether Ameriquest offered borrowers mortgages on terms which it could not or did not intend to provide at closing in order to switch borrowers from the mortgage product first offered to a different, higher cost mortgage loan, in violation of 940 C.M.R. §§ 8.04(4) and 8.06(1) and c. 93A;

b.  Whether Ameriquest violated 940 C.M.R. § 8.06(1) and c. 93A by using promises of prompt refinancings at more favorable terms to induce borrowers to close loans;

c.  Whether Ameriquest charged borrowers "loan discount fees" without providing discounts for such payment in violation of 940 C.M.R. §§ 3.04, 3.05, and 3.13 and c. 93A;

d.  Whether Ameriquest failed to provide borrowers with necessary information to evaluate whether payments of "discount" points would be financially advantageous in violation of 940 C.M.R. §§ 3.05, 3.13, and 6.05 and c. 93A § 2;

e.  Whether Ameriquest failed to disclose the "loan discount fees" in violation of G.L. c. 183 § 63;

f.  Whether Ameriquest failed to offer borrowers an alternative loan without the "loan discount fees" for the purposes of allowing borrowers to make an informed decision about whether the payment of discount points would be cost effective in violation of 940 C.M.R. §§ 3.04, 3.05, 3.13, 6.05 and c. 93A;

g.  Whether Ameriquest failed to make the preliminary mortgage lender disclosures required by the Attorney General's Consumer Protection regulations at 940 C.M.R. § 8.05(2) within the time required by 940 C.M.R. § 8.05(6) or, in the alternative as mandated by G.L. c. 184 § 17D

which requires disclosure of settlement costs and related information in the manner mandated by 209 C.M.R. 38.04;

h.   Whether Ameriquest failed to make disclosures mandated by 209 C.M.R. §§ 32.18; and

i.   Whether Ameriquest failed to make disclosures mandated by 209 C.M.R. §§ 32.19(2).

*with respect to Class II:*

a.   Whether Ameriquest violated the CCCDA by failing to provide proper notice of Class Members' right of rescission;

b.   Whether Class Members have a right to actual and statutory damages, pursuant to the CCCDA, c. 140D § 32 based on the misdisclosures; and

c.   Whether Class Members have a right to cancel their transactions on the basis of the misdisclosure.

163.   The only individual questions concern the identification of members of each class and the computation of relief to be afforded each class member and can be determined by a ministerial examination of the relevant files, including, without limitation, computerized databases. Notice can be provided to the class by various means of communication, as identified in the Defendant's computerized databases of customers.

164.   Plaintiffs' claims are typical of the claims of class members. All are based on the same legal and remedial theories.

165.   Plaintiffs will fairly and adequately protect the interests of all class members in the prosecution of this action and in the administration of all matters relating to claims stated herein. They are similarly situated with, and have suffered similar injuries as, the members of the class they seek to represent. Plaintiffs have retained counsel experienced in handling class action suits involving unfair business practices and consumer law.

Neither the named Plaintiffs nor their counsel have any interest which might cause them not to vigorously pursue this action.

166.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, in that:

> a.    the losses suffered by the class members are such that prosecution of individual actions is impractical or economically unfeasible;

> b.    by contrast, the illegal profits obtained by the Defendant as a result of their unlawful practices are substantial;

> c.    the form of proof required is such that prosecution of individual actions is impractical or economically infeasible;

> d.    in the absence of the class action device, Plaintiffs and Class Members would be left without a remedy for the wrongful acts alleged, and the Defendants would be unjustly enriched;

> e.    the prosecution of separate lawsuits by individual members of the class would create the risk of inconsistent adjudications with respect to individual class members, which would establish incompatible standards of conduct for the Defendants, making concentration of the litigation concerning this matter in this Court desirable;

> f.    the claims of the representative Plaintiffs are typical of the claims of the class; and

> g.    no unusual difficulties are likely to be encountered in the management of this action as a class action.

The class is so numerous as to make it impracticable to join all members of the class as plaintiffs. Based upon the investigation of counsel, the number of class members of each class is estimated to be in excess of 500 persons.

## VI.    CAUSES OF ACTION

## COUNT I: RESCISSION OR REFORMATION BASED ON ILLEGALITY OR UNCONSCIONABILITY ON BEHALF OF ALL NAMED PLAINTIFFS AND CLASS I

167.    Plaintiffs repeat and reallege all paragraphs above as if set forth fully herein.

168.    Ameriquest has violated G.L. c. 93A § 2 with respect to each Plaintiff and each class member by utilizing terms and practices that were unfair, deceptive, and/or unconscionable. The violations the Defendant engaged in included, without limitation:

    a.    Employing a bait and switch strategy by offering borrowers mortgages on favorable terms prior to closing and then offering a different mortgage loan product at closing in violation of 940 C.M.R. §§ 8.04(4) and 8.06(1) and c. 93A § 2;

    b.    Promising to refinance borrowers' mortgages on more favorable terms to induce them to close loans in violation of 940 C.M.R. § 8.06(1) and c. 93A § 2;

    c.    Implying that borrowers are being given a loan "discount" but failing to provide any such discount in violation of 940 C.M.R. §§ 3.04, 3.05, 3.13, and 6.05 and c. 93A § 2;

    d.    Failing to provide borrowers with necessary information to evaluate whether payments of "discount" points would be financially advantageous in violation of 940 C.M.R. §§ 3.05, 3.13, and 6.05 and c. 93A § 2;

    e.    Making loans on terms that were unfair and deceptive in light of their hidden advantages to the Defendant and their hidden costs to the Plaintiffs, including, without limitation, using unjustified and undisclosed points and closing charges as a means to create a hidden advantage in refinancing the loan in violation of 940

C.M.R. §§ 3.04, 3.05, 3.13, and 6.05, M.G.L. c. 183 § 63 and c. 93A § 2.

f.      Using prepayment penalties to trap borrowers into foregoing better loan terms from other lenders and/or to encourage borrowers to refinance on disadvantageous terms with Ameriquest;

g.      Providing confusing variable rate provisions in its loans designed to protect Ameriquest if rates increase from those in place when the loan is made without providing a benefit to borrowers when rates decline;

h.      Failing to make disclosures that comply with 940 C.M.R. §8.05(2);

i.      Failing to make disclosures that comply with and 209 C.M.R. § 32.18; and

j.      Failing to make disclosures that comply with and 209 C.M.R. § 32.19(2).

169.    The Defendant's conduct is illegal and/or unconscionable under statutory and regulatory provisions as aforesaid and under the common law.

170.    The Plaintiffs and other similarly situated individuals are entitled to rescission or reformation of their loan contracts to expunge the illegal terms.

171.    The Plaintiffs and each member of Class I are entitled to equitable relief and damages for illegality and unconscionability.

## COUNT II: CLAIMS FOR UNCONSCIONABILITY AND/OR ILLEGALITY ON BEHALF OF ALL NAMED PLAINTIFFS AND MEMBERS OF CLASS I

172.    Plaintiffs repeat and reallege all paragraphs above as if set forth fully herein.

173.    Contract terms that violate the Division of Banks regulations, 209 C.M.R. 32.00, *et seq.*, and/or the Attorney General's regulation, 940 C.M.R. § 3.01 *et seq.*, 6.01 *et seq.*, 8.01 *et seq.* are void or voidable for illegality and unenforceable.

25

174. Contract terms that violate the Division of Banks regulations and/or the Attorney General's regulations are unconscionable and unenforceable.

175. Said contract terms are void or voidable as a matter of public policy.

176. The Plaintiffs and each member of Class I are entitled to relief from unconscionable and/or illegal contract terms including but not limited to cancellation and/or refund of unjustified points and cancellation/and or refund of prepayment penalties.

## COUNT III: BREACH OF CONTRACT ON BEHALF OF ALL NAMED PLAINTIFFS AND MEMBERS OF CLASS I

177. Plaintiffs repeat and reallege all paragraphs above as if set forth fully herein.

178. The Defendant engaged in a pattern or practice of offering the Plaintiffs and class members different terms in its oral and written preliminary disclosures than the ones it offered at closing.

179. To the extent that Defendant offered terms to the Plaintiffs and class members prior to closing, the Defendant formed contracts with the Plaintiffs and class members to provide those promised terms.

180. Promised terms included, without limitation: lower interest rates, lower monthly payments, lower settlement costs, and no prepayment penalty.

181. By delivering different terms at closing than the ones initially promised, the Defendant breached its contracts with the Plaintiffs and class members.

182. The Defendant's conduct caused the Plaintiffs and members of Class I irreparable harm including, without limitation, increasing the amount of monthly payments owed to unaffordable levels thereby putting them at imminent risk of foreclosure, as well as by discouraging them from refinancing at more affordable rates through its imposition of undisclosed/unjustified loan discount fees in conjunction with prepayment penalties.

183.    The Defendant's conduct increased the cost of the loan to each Plaintiff and the members of Class I.

184.    Each Plaintiff and each member of Class I is entitled to damages and equitable remedies for the Defendant's breach of contract.

## COUNT IV: BREACH OF CONTRACT ON BEHALF OF DAVID AND JANET WAKEFIELD, INDIVIDUALLY

185.    Plaintiffs repeat and reallege all paragraphs above as if set forth fully herein.

186.    The Wakefields entered into a loan transaction with Ameriquest on April 2, 2004.

187.    Under the terms of April 2, 2004 loan transaction, Ameriquest was to pay off the January 15, 2004 loan, the Wakefields' property taxes, and debts the Wakefields had with several other creditors.

188.    Under the terms April 2, 2004 loan, the Wakefields' Annual Percentage Rate and monthly payment would have been significantly reduced by comparison with the January 15, 2004 loan.

189.    Under the terms of the April 2, 2004 loan, the Wakefields would not have had to make a monthly payment to Ameriquest until June 2004.

190.    Ameriquest purports to have "cancelled" the April 2, 2004 after loan documents were executed.

191.    Said "cancellation" was without legal cause or excuse.

192.    Ameriquest's cancellation of the April 2, 2004 caused the Wakefields irreparable harm because it had the effect of reinstating the January 15, 2004 loan, the terms of which the Wakefields could not and cannot afford. By increasing the monthly payment amounts as well as the arrears owed, Ameriquest's cancellation of the April 2, 2004 drastically increased the likelihood that the Wakefields' family home would be foreclosed upon.

193.    Furthermore, because the January 15, 2004 loan contains a prepayment penalty, the Wakefields cannot afford to refinance with another lender.

194.    The Wakefields are therefore entitled to damages and equitable remedies for the Defendant's breach of the April 2, 2004 loan contract.

## COUNT V: INTENTIONAL MISREPRESENTATION ON BEHALF OF ALL NAMED PLAINTIFFS AND MEMBERS OF CLASS I

195.    Plaintiffs repeat and reallege all paragraphs above as if set forth fully herein.

196.    Defendant made misrepresentations to the Plaintiffs and members of Class I, which the Plaintiffs and members of Class I relied upon to their detriment.

197.    Defendant's misrepresentations included, without limitation:

      a.    making preliminary oral and written disclosures pertaining to the interest rate, monthly payments, settlement charges and other loan terms which differed significantly from the final loan terms offered;

      b.    promising a discounted rate in connection with payment of "discount points" without providing said discount; and

      c.    making assurances of prompt refinancing at better terms.

198.    Defendant made these misrepresentations to induce Plaintiffs and Members of Class I to enter into loans with it.

199.    Plaintiffs and Members of Class I were induced to enter into loans with the Defendant and suffered damages as a result.

200.    The Defendant's practices caused the Plaintiffs and members of Class I economic harm.

201.    Each Plaintiff and each member of Class I is entitled to damages and equitable remedies for intentional misrepresentation.

## COUNT VI: UNJUST ENRICHMENT ON BEHALF OF ALL NAMED PLAINTIFFS AND MEMBERS OF CLASS I

202.    Plaintiffs repeat and reallege all paragraphs above as if set forth fully herein.

203.    The Defendant has been unjustly enriched at the expense of each Plaintiff and each member of Class I.

204.    Each Plaintiff and each member of Class I is therefore entitled to equitable remedies for unjust enrichment including, without limitation, restitution and reformation of contract.

## COUNT VII: DECLARATORY JUDGMENT ON BEHALF OF ALL NAMED PLAINTIFFS AND MEMBERS OF CLASS I

205.    Plaintiffs repeat and reallege all paragraphs above as if set forth fully herein.

206.    Ameriquest's actions have caused the Plaintiffs and the members of Class I actual prejudice. They ask this court to enter declaratory relief concerning the propriety of Defendant's practices relating to refinancing home mortgage loans.

## COUNT VIII: PRELIMINARY AND PERMANENT INJUNCTION ON BEHALF OF ALL NAMED PLAINTIFFS AND MEMBERS OF CLASS I

207.    Plaintiffs repeat and reallege all paragraphs above as if set forth fully herein.

208.    Ameriquest's improper practices, including, without limitation, it use of bait and switch tactics, and its failure to provide Plaintiffs and class members with adequate disclosures of loan and rescission terms have caused Plaintiffs and class members to enter into disadvantageous and unaffordable loans. Moreover, Defendant's imposition of undisclosed/unjustified points and prepayment penalties prevent the Plaintiffs and class members from refinancing loans with other lenders at more favorable terms.

209.    Ameriquest's improper refinancing practices cause irreparable harm including, without limitation:

   a.    Raising monthly payment amounts to unaffordable levels and thereby placing Plaintiffs and class members at risk of foreclosure;

   b.    Causing class members who do refinance their homes to pay interest on the unjustified points; and

c.     Causing class members who refinance with other lenders to pay excessive prepayment penalties.

210.    Absent injunctive relief, the Defendant may continue to violate the law and injure other persons who are seeking to refinance their home mortgage loans in the future.

## COUNT IX- CLAIM FOR DECLARATORYAND INJUNCTIVE RELIEF AND DAMAGES FOR FAILURE TO COMPLY WITH THE REQUIREMENTS OF THE CCCDA ON BEHALF OF LYNN GAY, THE WAKEFIELDS AND CLASS II

211.    Plaintiffs repeat and reallege all paragraphs above as if set forth fully herein.

212.    Class II is represented by Plaintiffs David and Janet Wakefield, and Lynn Gay.

213.    At all times relevant hereto Ameriquest was a creditor within the meaning of the CCCDA, M.G.L. c. 140D, §1.

214.    Because the transactions described herein are covered by the CCCDA, Ameriquest was required to provide the Plaintiffs and class members with accurate notice of their right to rescind their refinancing transactions. M.G.L. c. 140D § 10; 209 C.M.R. 32.23(2).

215.    To satisfy the right of rescission disclosure requirements of M.G.L. c. 140D § 10, the creditor must provide the borrower with notice that conforms with the model forms in Appendix H of Regulation Z, as appropriate, or substantially similar notice. M.G.L. c. 140D §§ 10, 18; 209 C.M.R. 32.23(2)(b).

216.    The notice of right of rescission that Ameriquest provided to the Plaintiffs was Model Form H-8, the General Rescission Model Form. See 12 C.F.R. § 226.23, App. H.

217.    Since the Plaintiffs were refinancing with the same creditor, Ameriquest should have provided them with Model Form H-9—the rescission notice required when the borrower is refinancing with the same creditor. *See* 12 C.F.R. § 226.23, App. H.

218.    The misdisclosures in connection with each transaction, as aforesaid, were material pursuant to the CCCDA, G.L. c. 140D §1 and 209 C.M.R. §32.23(2)(a)(4).

219.    By providing the incorrect notice of right of rescission to the Plaintiffs, Ameriquest misinformed the Wakefields, Lynn Gay and the members of Class II about the effects of rescission thereby violating the CCCDA. G.L. c. 140D §10; 209 C.M.R. 32.23(2)(a)(4).

220.    Each member of Class II is therefore entitled to a declaration that they have the right to rescind their transactions and to notice sufficient to exercise the right. G.L. c. 140D, §10 (a), (f); 209 C.M.R. 32.23(1).

221.    Each member of Class II is therefore entitled to a declaration that any Class Member who chooses to rescind is entitled to cancellation of finance charges in connection with their transaction and to a determination that the defendants' property interests in that class members' real estate is void pursuant to G.L. c. 140D § 10(b);

222.    Each member of Class II is therefore entitled to statutory and actual damages pursuant to G.L. c. 140D § 32;

### COUNT X: CLAIM FOR DECLARATORY AND INJUNCTVE RELIEF TO ENFORCE RESCISSION ON BEHALF OF LYNN GAY AND THE WAKEFIELDS, INDIVIDUALLY

223.    Plaintiffs repeat and reallege all paragraphs above as if set forth fully herein.

224.    Lynn Gay and the Wakefields refinanced Ameriquest loans with Ameriquest, and Ameriquest failed to provide them with notice of their right to cancel which accurately disclosed the effect of rescinding a refinance transaction, thereby violating the CCCDA. G.L. c. 140D §10(a); 209 C.M.R. 32.23(2)(a)(4).

225.    On October 27, 2004 and November 1, 2003, respectively, Lynn Gay and the Wakefields notified Ameriquest that they were rescinding their transactions. [See Exhibits K and AA, respectively]

226.    Lynn Gay and the Wakefields are therefore entitled to a declaration that their rescission of the their loans was valid, and, as a result that their mortgages are void, and

that they are entitled to a refund or credit of all finance charges, pursuant to G.L. c. 140D §10(b); 209 C.M.R. 32.23(1)(c).

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court grant the following relief against Defendant Ameriquest:

*On behalf of Class I:*

    a.  equitable relief and damages for illegality and unconscionability;

    b.  relief from unconscionable and/or illegal contract terms including but not limited to cancellation and/or refund of unjustified points and cancellation/and or refund of prepayment penalties;

    c.  damages and equitable relief for the Defendant's breach of contract;

    d.  damages and equitable remedies for intentional misrepresentation;

    e.  damages and equitable remedies for unjust enrichment including, without limitation, restitution and reformation of contract;

    f.  a declaration that the Defendant's refinancing practices, including, without limitation, its use of bait and switch advertising, its imposition of undisclosed/unjustified "loan discount fees" in conjunction with prepayment penalties and its failure to provide Plaintiffs with adequate disclosures of loan and rescission terms are improper;

    g.  preliminary and permanent injunctive relief to prevent defendant from continuing to violate the law and injuring other persons who are seeking to refinance their home mortgage loans in the future;

    h.  an award of reasonable attorney's fee and costs; and

    i.  such other relief at law or equity as this Court may deem just and proper;

*On behalf of Class II:*

j.  a declaration that members of Class II are entitled to rescind their transactions and notice sufficient to exercise the right, pursuant to G.L. c. 140D, §10 (a), (f) and 209 C.M.R. 32.23;

k.  a declaration that any Class Member who chooses to rescind is entitled to cancellation of finance charges in connection with their transaction and to a determination that the defendant's' security interest in that class member's property is void pursuant to G.L. c. 140D § 10(b);

l.  statutory and actual damages pursuant to G.L. c. 140D § 32; and

m.  an award of reasonable attorney's fee and costs; and

n.  such other relief at law or equity as this Court may deem just and proper;

*On behalf of Plaintiffs David and Janet Wakefield, individually:*

o.  damages and equitable relief for the Defendant's breach of the April 2, 2004 loan contract;

p.  an award of reasonable attorney's fee and costs; and

q.  such other relief at law or equity as this Court may deem just and proper;

*On behalf of Plaintiffs Lynn Gay and David and Janet Wakefield, individually:*

r.  a declaration that their rescission was valid;

s.  a declaration that their mortgages are void as a result of the rescission;

t.  a declaration that they are not liable for any finance or other charge associated with the rescinded loans; and

u.  an award of reasonable attorney's fee and costs; and

v.  such other relief at law or equity as this Court may deem just and proper;

## JURY DEMAND

Plaintiffs demand trial by jury.

Respectfully Submitted,
Isabelle and David Murphy et al.
By their attorneys,

Dated this 3rd day of November 2004.

Gary Klein BBO # 560769
John Roddy BBO # 424240
Elizabeth Ryan BBO # 549632
Shennan Kavanagh BBO # 655174
Roddy, Klein & Ryan
727 Atlantic Ave., 2nd floor
Boston, MA  02111
Tel. 617-353-5500 x 15
Fax. 617- 353-5030

A TRUE COPY
Attest: _____
Deputy Assistant Clerk
12/21/04

34

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Mortgage Lenders License - License Number ML0702     ☐ Preliminary    ☒ Final

LENDER: Ameriquest Mortgage Company
    25 Braintree Hill Park, # 304
    Braintree, MA 02184
    (781)794-1601

Broker License:

Borrowers: David R Murphy    Isabelle M Murphy

Type of Loan: ADJUSTABLE RATE
Date: April 22, 2004

Address:     13 Crescent St
City/State/Zip:   PLYMPTON, MA 02367

Loan Number: 0076237486 - 5609

Property:    13 Crescent St, PLYMPTON, MA 02367

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 6.529 % | $ 318,883.99 | $ 246,836.94 | $ 565,720.93 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 24 | $1,497.92 | 06/01/2004 | | | |
| 335 | $1,576.70 | 06/01/2006 | | | |
| 1 | $1,576.35 | 05/01/2034 | | | |

**VARIABLE RATE FEATURE:**
☒ Your loan has a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:** You are giving a security interest in the property located at: 13 Crescent St, PLYMPTON, MA 02367

**ASSUMPTION:** Someone buying this property   ☒ cannot assume the remaining balance due under original terms.
     ☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:** You may obtain property insurance from anyone you want that is acceptable to Ameriquest Mortgage Company

**LATE CHARGES:** If a payment is late, you will be charged 3.000% of the overdue principal and interest payment.

**PREPAYMENT:** If you pay off your loan early, you
☒ may    ☐ will not    have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

Borrower David R Murphy     Date     Borrower Isabelle M Murphy     Date

Borrower     Date     Borrower     Date

TIL1 (Rev. 7/01)

**BORROWER COPY**

04/22/2004 1:33:51 PM

U.S. Department of Housing
and Urban Development

OMB Approval No. 2502-0491

**Settlement Statement**
Optional Form for
**Transactions without Sellers**

Name & Address of Borrower:
David R Murphy      Isabelle M Murphy

33 Crescent St    PLYMPTON, MA 02367

Property Location: (if different from above)
33 Crescent St, PLYMPTON, MA 02367

Name & Address of Lender:
Ameriquest Mortgage Company
25 Braintree Hill Park, # 304
Braintree, MA 02184

Settlement Agent:
BARRETT, NICHOLAS & ASSOCIATES

Place of Settlement: 25 BRAINTREE HILL PARK BRAINTREE, MA 02184

| Loan Number: 0076237486 - 5609 | Settlement Date: Estimated 04/29/2004 |
|---|---|

| L. | Settlement Charges | | M. | Disbursement to Others | | |
|---|---|---|---|---|---|---|
| 800. | Items Payable in Connection with Loan | | | | | |
| 801. | Loan origination fee    % to | | 1501. | | | |
| 802. | Loan discount  3.326  % to  Ameriquest Mortgage Company | $8,537.18 | | FLEET NATIONAL BANK | (W) | $916.00 |
| 803. | Apprsl/Prop Val to | $0.00 | 1502. | ROCKLAND TRUST COMPA | (W) | $1,470.00 |
| 804. | Credit report to | | | | | |
| 805. | Inspection fee to | | 1503. | WELLS FARGO HOME MOR | (W) | $227,743.55 |
| 806. | | | | | | |
| 807. | | | 1504. | CBUSASEARS | (W) | $1,277.00 |
| 808. | Yield Spread Premium to | | | | | |
| 809. | | | 1505. | FLEET NTL BK | (W) | $2,862.00 |
| 810. | Tax Related Service Fee to | | | | | |
| 811. | Flood Search Fee to | $626.00 | 1506. | LOWES/MBGA | (W) | $1,074.00 |
| 812. | Lenders Processing Fee to  Ameriquest Mortgage | $239.00 | | | | |
| 813. | Admin to  Ameriquest Mortgage Company | | 1507. | THD/CBUSA | (W) | $845.00 |
| 814. | Doc. Prep. Fee to | | | | | |
| 815. | Credit Report Fee to | | 1508. | BANK ONE-OHIO | (W) | $6,254.00 |
| 816. | Origination Fee    % to | $360.00 | | | | |
| 817. | Application Fee to  Ameriquest Mortgage Company | | 1509. | TOWN OF PLYMPTON | (W) | $1,354.21 |
| 818. | Underwriting Fee to | | | | | |
| 819. | Service Provider Fee to | | 1510. | QUINCY MUTUAL FIRE INSURANCE | (W) | $409.00 |
| 820. | Processing Fee to | | | | | |
| 821. | Underwriting Fee to | | 1511. | | | |
| 822. | Appraisal Fee to | | | | | |
| 900. | Items Required by Lender to be Paid in Advance | | 1512. | | | |
| 901. | Interest from 04/29/2004  to  05/01/2004  @ $40.44 per day | $80.88 | | | | |
| 902. | Mortgage Insurance premium for         months to | | 1513. | | | |
| 903. | Hazard ins prem  to | $0.00 | | | | |
| 904. | Flood ins prem  to | | 1514. | | | |
| 1000. | Reserves Deposited with Lender | | | | | |
| 1001. | Hazard insurance      months @ $      per month | | 1515. | | | |
| 1002. | Mortgage insurance     months @ $      per month | | | | | |
| 1003. | Earthquake ins      months @ $      per month | | 1520. | TOTAL DISBURSED (enter on line 1603) | | $244,204.76 |
| 1004. | County prop. taxes     months @ $      per month | | | | | |
| 1005. | Annual assess.     months @ $      per month | | Total Wire:    $246,836.94 | | | |
| 1006. | Flood     months @ $      per month | | | | | |
| 1007. | Windstorm ins     months @ $      per month | | | | | |
| 1008. | | | | | | |
| 1100. | Title Charges | | | | | |
| 1101. | Settlement or closing fee to | | | | | |
| 1102. | Abstract or title search to | | | | | |
| 1103. | Title examination to | | | | | |
| 1104. | Title insurance binder to | | | | | |
| 1105. | Document preparation to | | | | | |
| 1106. | Notary fees to | | | | | |
| 1107. | Attorney's fees to | | | | | |
| 1108. | Title insurance to | | | | | |
| 1109. | Lender's coverage | | | | | |
| 1110. | Owner's coverage    $ | | | | | |
| 1111. | Settlement/Disbursement fee to | | | | | |
| 1112. | Escrow Fee to | | | | | |
| 1200. | Government Recording and Transfer Charges | | | | | |
| 1201. | Recording fees | | N. | NET SETTLEMENT | | |
| 1202. | City/county tax/stamps | | | | | |
| 1203. | State tax/ stamps | | 1600. | Loan Amount | | 256,680.00 |
| 1204. | State specific fee | | | | | |
| 1205. | State specific fee | | 1601. | Plus Cash/Check from Borrower | | |
| 1300. | Additional Settlement Charges | | | | | |
| 1301. | Demand to | | 1602. | Minus Total Settlement Charges (line 1400) | | $9,843.06 |
| 1302. | Pest Inspection to | | | | | |
| 1303. | Survey Fee | | 1603. | Minus Total Disbursements to Others (line 1520) | | $244,204.76 |
| 1304. | Staff Appraiser Fee | | | | | |
| 1305. | Reconveyance Fee to | | 1604. | Equals Disbursements to Borrower (after expiration of any applicable rescission period) | | $2,632.18 |
| 1306. | | | | | | |
| 1307. | Property Val Fee to | | | | | |
| 1308. | Courier Fee | | | | | |
| 1400. | Total Settlement Charges (enter on line 1602) | $9,843.06 | | | | |

777777770707070007676524271774440076706156335556200733317414651056007560415377603001077124173756010010746160623244711107020076237486000791001

Borrower(s) Signature(s):

X _____

Loan Number:  0076237486 - 5609

# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.

| April 22, 2004 | Orange | CA |
|---|---|---|
| [Date] | [City] | [State] |

13 Crescent St, PLYMPTON, MA  02367
[Property Address]

### 1.  BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $256,680.00     (this amount is called "principal" interest, to the order of the Lender.  The Lender is   Ameriquest Mortgage Company .

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST
Interest will be charged on unpaid principal until the full amount of principal has been paid.  I will pay intere yearly rate of  5.750%.  This interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and af default described in Section 7(B) of this Note.

### 3.  PAYMENTS
#### (A)  Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on    June 1, 2004    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  My monthly payments will be applied to interest before principal.  If, on    May 1, 2034 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make payments at: 505 City Parkway West, Suite 100, Orange, CA 92868

or at a different place if required by the Note Holder.

#### (B)  Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $1,497.92.  This amount may change.

#### (C)  Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
#### (A)  Change Dates
The interest rate I will pay may change on the first day of   May, 2006  , and on that day every  sixth  month thereafter.  Each date on which my interest rate could change is called a "Change Date."

#### (B)  The Index
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of Interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal.  The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

#### (C)  Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding  five  percentage point(s) ( 5.000 %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.  The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

Initials:

7777777707070700076765242717744400776160
4722555730073331714146510560075600163776 0
3001077424177756910010777263430255733107
000076237486030044030

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)    _____ (Seal)
Borrower David R Murphy              Borrower Isabelle M Murphy

_____ (Seal)    _____ (Seal)
Borrower                             Borrower

Loan Number: 0076237486 - 5609

7777777770707070007676524271774440077616
4722555730073331650464115610756041537760
3001077424173756010010756072623155532107
00000762374460502190303

610-3 (Rev 1/01)

Page 3 of 3

04/22/2004 1:35:21 PM

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding five percentage points ( **5.000** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **7.750%** or **less than 5.750%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One( **1.000 %**) from the rate of interest I have been paying for the preceding  six months. My interest rate will never be greater than 11.750%) or less than 5.750)%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials_____

Loan Number: 0076237486 - 5609

7777777707070700076765242717744400776160
4722555730072320650475114600756041537760
3001077424173756010010748073622054433107
0000076237486050215030?

610-2 (Rev 1/01)                                   Page 2 of 3                           04/22/2004 1:35:21 PM

# ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published In the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 22nd day of April , 2004   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

13 Crescent St, PLYMPTON, MA  02367
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of   5.750 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
**(A) Change Dates**
The interest rate I will pay may change on the first day of  May, 2006  , and on that day every sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials_____

Loan Number: 0076237486 - 5609

```
7777777770707070007676524271774440077616 0
47225557300733317414651056007560041531776 0
3001077424173756910010767063733154432107
006000762374860021503 1
```

610-1 (Rev 1/01)

04/22/2004 1:35:21 PM

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. **WAIVERS**
I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

12. **GOVERNING LAW PROVISION**
This Note and the related Security Interest are governed by Federal and State law applicable to the jurisdiction of the Property.

**Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the Instrument which secures this Note, must be in a signed writing to be legally enforceable.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)       _____(Seal)
Borrower  David R Murphy                      Borrower  Isabelle M Murphy

_____(Seal)       _____(Seal)
Borrower                                      Borrower

7777777707070700076765242717744400776160
4722555730073331650464115610756041537760
3001077424173759010010776372421344733107
766000776237486019034635543

3 of 3

04/22/2004 1:35:21 PM

201-3MA (Rev. 7/03)

Loan Number: 0076237486 - 5609

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **7.750** % or less than **5.750**
%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than
**One** percentage point(s) **(1.000 %)** from the rate of interest I have been paying for the preceding six months.
My interest rate will never be greater than **11.750** % or less than **5.750 %**.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly
payment beginning on the first monthly payment date after the Change Date until the amount of my monthly
payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly
payment before the effective date of any change. The notice will include information required by law to be given me
and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I may repay this loan at any time as provided in this paragraph. If I repay this loan within the first Three (3) year(s) of
the date of the execution of this Note, I agree to pay a prepayment penalty, subject to the following conditions:

1) If I repay this loan within the first year by refinancing with another lender, I will pay a penalty equal to the sum of: (a
the lesser of three (3) months interest or the remainder of the first years interest; plus (b) three (3) months additiona
interest.
2) If I repay this loan within the first year by any other means, I will pay a penalty equal to the lesser of three (3) month
interest or the remainder of the first years interest.
3) If I repay this loan within the second or third year by refinancing with another lender, I will pay a penalty equal t
three (3) months interest.

**6. LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or
other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any
such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any
sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose
to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund
reduces the principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A) Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days
after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **3.000 %** of my
overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amoun
by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has no
been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which
the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as describec
above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the
right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by
applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given b
delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give th
Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to th
Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that differen
address.

Initials:

7777777707070700076765242717744400776160
4722565730072320850475114600756041637760
3001077424173756910510766302520255633007
0020007622744603046302

2 of 3

04/22/2004 1:35:21 PM

201-2MA (Rev. 7/03)

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Mortgage Lenders License - License Number ML0702
LENDER:Ameriquest Mortgage Company
 25 Braintree Hill Park, # 304
 Braintree, MA 02184
 (781)794-1601

☐ Preliminary  ☒ Final

       Broker License:

Borrowers:Lynn M Gay

  Type of Loan: ADJUSTABLE RATE
  Date: March 14, 2003

Address: 43 Oak St
City/State/Zip: BRIDGEWATER,MA 02324

  Loan Number: 0044563724 - 5609

Property: 43 Oak St, BRIDGEWATER, MA 02324

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 9.259 % | $ 491,804.98 | $ 249,354.26 | $ 741,159.24 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING |
|---|---|---|---|---|---|
| 359 | $2,058.80 | 05/01/2003 | | | |
| 1 | $2,050.04 | 04/01/2033 | | | |

**VARIABLE RATE FEATURE:**
☒ Your loan has a variable rate feature . Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:** You are giving a security interest in the property located at: 43 Oak St, BRIDGEWATER, MA 02324

**ASSUMPTION:** Someone buying this property ☒ cannot assume the remaining balance due under original terms.
          ☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:** You may obtain property insurance from anyone you want that is acceptable to
        Ameriquest Mortgage Company

**LATE CHARGES:** If a payment is late, you will be charged  3.000%  of the overdue principal and interest payment .

**PREPAYMENT:** If you pay off your loan early, you
☒ may  ☐ will not  have to pay a penalty.
**See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.**

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____ _____ _____ _____
Borrower Lynn M Gay     Date Borrower       Date

_____ _____ _____ _____
Borrower        Date Borrower       Date

Settlement Statement
Optional Form for
Transactions without Sellers

U.S. Department of Housing
and Urban Development

OMB Approval No. 2502-0491

WLI

Name & Address of Borrower:
Lynn M Gay

43 Oak St    BRIDGEWATER, MA 02324

Property Location: (if different from above)

43 Oak St, BRIDGEWATER, MA 02324

Name & Address of Lender:
Ameriquest Mortgage Company
25 Braintree Hill Park, # 304
Braintree, MA 02184

Settlement Agent:

Place of Settlement:

| L.   Settlement Charges | | Loan Number: 0044563724 - 5609 | Settlement Date: Estimated 03/21/2003 |
|---|---|---|---|
| 800.  Items Payable in Connection with Loan | | | |
| 801. Loan origination fee      % to | | | |
| 802. Loan discount  3.800 % to  Ameriquest Mortgage Company | $9,944.60 | M.   Disbursement to Others | |
| 803. Appraisal fee to  JAMES E SWIFT | $325.00 | 1501. CHILDRENS PL/CBUSA NA  (W) | $1,156.00 |
| 804.  Credit report to | | | |
| 805. Inspection fee to | | 1502. FINANCIAL RESOURCES FC  (W) | $7,229.00 |
| 806. | | | |
| 807. | | 1503. FIRST PREMIER BANK  (W) | $310.00 |
| 808. Yield Spread Premium to | | | |
| 809. | | 1504. FIRST PREMIER BANK  (W) | $375.00 |
| 810. Tax Related Service Fee to  Ameriquest Mortgage | $70.00 | | |
| 811. Flood Search Fee to  Ameriquest Mortgage Company | $16.00 | 1505. MACYS EAST/FDSB  (W) | $687.00 |
| 812. Lenders Processing Fee to  Ameriquest Mortgage Company | $626.00 | | |
| 813. Admin to Ameriquest Mortgage Company | $239.00 | 1506. MACYS/GCCCC  (W) | $357.00 |
| 814. Doc. Prep. Fee to | | | |
| 815. Credit Report Fee to | | 1507. WASHINGTON MUTUAL FA  (W) | $225,930.21 |
| 816. Origination Fee      % to | | | |
| 817. Application Fee to  Ameriquest Mortgage Company | $360.00 | 1508. FIRST USA BANK N A  (W) | $2,559.00 |
| 818. Underwriting Fee to | | | |
| 819. Service Provider Fee to | | 1509. SEARS  (W) | $5,166.00 |
| 820. Processing Fee  to | | | |
| 821. Underwriting Fee to | | 1510. Town of Bridgewater  (W) | $3,276.81 |
| 822. Apprsl/Prop Eval Fee to | | 1511. | |
| 900.  Items Required by Lender to be Paid in Advance | | | |
| 901. Interest from 03/21/2003  to  04/01/2003  @  $62.74  per day | $690.14 | 1512. | |
| 902. Mortgage insurance premium for        months to | | | |
| 903. Hazard ins prem  to | | 1513. | |
| 904. Flood ins prem  to | | | |
| 1000. Reserves Deposited with Lender | | 1514. | |
| 1001. Hazard insurance  1  months @ $ 72.75  per month | $72.75 | | |
| 1002. Mortgage insurance     months @ $     per month | | 1515. | |
| 1003. City property taxes      months @ $     per month | | | |
| 1004. County prop. taxes  2  months @ $ 177.76 per month | $355.52 | | |
| 1005. Annual assess.      months @ $     per month | | 1520. TOTAL DISBURSED (enter on line 1603) | $247,046.02 |
| 1006. Flood      months @ $     per month | | | |
| 1007.                       months @ $     per month | | | |
| 1008. | | | |
| 1100. Title Charges | | | |
| 1101. Settlement or closing fee to  Dc Notary | $350.00 | | |
| 1102. Abstract or title search to | | | |
| 1103. Title examination to  Law Offices of William A Snider | $545.00 | | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to | | Total Wire:    $249,325.99 | |
| 1106. Notary fees to | | | |
| 1107. Attorney's fees to | | | |
| 1108. Title insurance to  Law Offices of William A Snider | $718.37 | | |
| 1109. Lender's coverage       $ | | | |
| 1110. Owner's coverage        $ | | | |
| 1111. Settlement/Disbursement fee to | | | |
| 1112. Escrow Fee to | | | |
| 1200. Government Recording and Transfer Charges | | | |
| 1201. Recording fees | $250.00 | N.   NET SETTLEMENT | |
| 1202. City/county tax/stamps | | | |
| 1203. State tax/ stamps | | 1600. Loan Amount | 261,700.00 |
| 1204. State specific fee | | | |
| 1205. State specific fee | | 1601. Plus Cash/Check from Borrower | |
| 1300. Additional Settlement Charges | | | |
| 1301. Demand to | | 1602. Minus Total Settlement Charges (line 1400) | $14,612.38 |
| 1302.  Pest Inspection to | | | |
| 1303. Survey Fee | | 1603. Minus Total Disbursements to Others (line 1520) | $247,046.02 |
| 1304. | | | |
| 1305. Reconveyance Fee to | | 1604. Equals Disbursements to Borrower (after expiration of any applicable rescission period) | $41.60 |
| 1306. | | | |
| 1307. | | | |
| 1308. Courier Fee | $50.00 | | |
| 1400. Total Settlement Charges (enter on line 1602) | $14,612.38 | | |

Borrower(s) Signature(s):

X _____

Approved for Funding By:                    Approved:                    Branch:  Braintree, MA 02184

Loan Number:  0044563724 - 5609

## ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.**

| | | |
|---|---|---|
| March 14, 2003 | Orange | CA |
| [Date] | [City] | [State] |

43 Oak St, BRIDGEWATER, MA  02324
[Property Address]

**1.  BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $261,700.00      (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is   Ameriquest Mortgage Company .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  **8.750%**. This interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.  PAYMENTS**
**(A)  Time and Place of Payments**
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on   **May 1, 2003**    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on    **April 1, 2033**
, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make payments at: 505 City Parkway West, Suite 100,  Orange, CA 92868

or at a different place if required by the Note Holder.

**(B)  Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. **$2,058.80**.  This amount may change.

**(C)  Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A)  Change Dates**
The interest rate I will pay may change on the first day of  **April, 2005** , and on that day every  sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B)  The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent index figure available as of the date 45 days before the Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C)  Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding  **six**  percentage point(s) ( **6.000 %**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Initials:_____

03/14/2003 10:48:36 AM

Loan Number: 0044563724 - 5609

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **10.750 %** or less than **8.750 %**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) **(1.000 %)** from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **14.750** % or less than **8.750 %**.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I may repay this loan at any time as provided in this paragraph. If I repay this loan within the first Three (3) year(s) of the date of the execution of this Note, I agree to pay a prepayment penalty, subject to the following conditions:

1) If I repay this loan within the first year by refinancing with another lender, I will pay a penalty equal to the sum of: (a) the lesser of three (3) months interest or the remainder of the first years interest; plus (b) three (3) months additional interest.

2) If I repay this loan within the first year by any other means, I will pay a penalty equal to the lesser of three (3) months interest or the remainder of the first years interest.

3) If I repay this loan within the second or third year by refinancing with another lender, I will pay a penalty equal to three (3) months interest.

**6. LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**
    **(A)   Late Charges for Overdue Payments**
    If the Note Holder has not received the full amount of any monthly payment by the end of   **fifteen**   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **3.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

    **(B) Default**
    If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

    **(C) Notice of Default**
    If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

    **(D) No Waiver by Note Holder**
    Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

    **(E) Payment of Note Holder's Costs and Expenses**
    If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

Initials:_____

03/14/2003 10:48:36 AM

201-2MA (Rev. 8/00)

Loan Number: 0044563724 - 5609

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**12. GOVERNING LAW PROVISION**

This Note and the related Security Interest are governed by Federal and state law applicable to the jurisdiction of the Property.

Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the Instrument which secures this Note, must be in a signed writing to be legally enforceable.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)          _____(Seal)
Borrower  Lynn M Gay                             Borrower


_____(Seal)          _____(Seal)
Borrower                                         Borrower

03/14/2003 10:48:36 AM

201-3MA (Rev. 8/00)

## ADJUSTABLE RATE RIDER
**(LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this 14th day of March , 2003    and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

43 Oak St, BRIDGEWATER, MA  02324
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of  8.750 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
  **(A) Change Dates**
The interest rate I will pay may change on the first day of  April, 2005  , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

  **(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials_____

Loan Number: 0044563724 - 5609

610-1 (Rev 1/01)                      Page 1 of 3

                                                    03/14/2003 10:48:36 AM

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding six percentage points ( **6.000** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.750%** or less than **8.750%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one( **1.000 %**) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **14.750%** or less than **8.750%**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials_____

Loan Number: 0044563724 - 5609

610-2 (Rev 1/01)                    Page 2 of 3

03/14/2003 10:48:36 AM

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
Borrower Lynn M Gay                       Borrower


_____ (Seal)          _____ (Seal)
Borrower                                 Borrower


Loan Number: 0044563724 - 5609

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Mortgage Lenders License - License Number ML0702
LENDER: Ameriquest Mortgage Company
 10600 White Rock Road, Suite 200-20
 Rancho Cordova, CA 95670
 (916)853-4720

☐ Preliminary    ☒ Final

Broker License:

Borrowers: LYNN M. GAY

Type of Loan:  ADJUSTABLE RATE
Date:  September 2, 2003

Address:     43 OAK
City/State/Zip:  BRIDGEWATER, MA 02324

Loan Number:  0053225926 - 7403

Property:   43 OAK, BRIDGEWATER, MA 02324

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 9.012 % | $ 540,143.84 | $ 281,969.48 | $ 822,113.32 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $2,283.68 | 11/01/2003 | | | |
| 1 | $2,272.20 | 10/01/2033 | | | |

**VARIABLE RATE FEATURE:**
 ☒ Your loan has a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:**     You are giving a security interest in the property located at: 43 OAK, BRIDGEWATER, MA 02324

**ASSUMPTION:**  Someone buying this property  ☒ cannot assume the remaining balance due under original terms.
 ☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:**     You may obtain property insurance from anyone you want that is acceptable to Ameriquest Mortgage Company

**LATE CHARGES:**   If a payment is late, you will be charged  3.000%  of the overdue principal and interest payment .

**PREPAYMENT:**  If you pay off your loan early, you
 ☒ may  ☐ will not     have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____  _____
Borrower LYNN M. GAY          Date

_____  _____
Borrower                      Date

_____  _____
Borrower                      Date

_____  _____
Borrower                      Date

**Original**

TIL1 (Rev. 7/01)

08/29/2003 4:26:41 PM

Statement **Statement**
**Optional Form for**
**Transactions without Sellers**

U.S. Department of Housing
and Urban Development

OMB Approval No. 2502-0491
**WLI**

**Name & Address of Borrower:**
LYNN M. GAY

**Name & Address of Lender:**
Ameriquest Mortgage Company
10600 White Rock Road, Suite 200-20
Rancho Cordova, CA 95670

43 OAK    BRIDGEWATER,MA 02324

**Settlement Agent:**

**Property Location:** (if different from above)
43 OAK, BRIDGEWATER, MA 02324

**Place of Settlement:**

| L. Settlement Charges | | Loan Number: | Settlement Date: Estimated |
|---|---|---|---|
| 800. Items Payable in Connection with Loan | | 0053225926 - 7403 | 09/09/2003 |

| 800. Items Payable in Connection with Loan | | M. Disbursement to Others | |
|---|---|---|---|
| 801. Loan origination fee     % to | | | |
| 802. Loan discount  3.900  % to  Ameriquest Mortgage Company | $11,583.00 | 1501. AMERIQUEST | $16,774.61 |
| 803. Apprsl/Prop Val to                                    * $360.00 | $0.00 | | |
| 804. Credit report to | | 1502. HHLD BANK                      (W) | $880.00 |
| 805. Inspection fee to | | | |
| 806. | | 1503. CHLD/CBUSA                    (W) | $690.00 |
| 807. | | | |
| 808. Yield Spread Premium to | | 1504. WFM/LIMITD                     (W) | $621.00 |
| 809. | | | |
| 810. Tax Related Service Fee to  Ameriquest Mortgage | $35.00 | 1505. GMAC MTG                       (W) | $443.00 |
| 811. Flood Search Fee to  Ameriquest Mortgage Company | $16.00 | | |
| 812. Lenders Processing Fee to  Ameriquest Mortgage | $626.00 | 1506. FST PREMIER                    (W) | $414.00 |
| 813. Admin to Ameriquest Mortgage Company | $239.00 | | |
| 814. Doc. Prep. Fee to | | 1507. CAPITAL 1 BK                   (W) | $329.00 |
| 815. Credit Report Fee to | | | |
| 816. Origination Fee     % to | | 1508. FST PREMIER                    (W) | $315.00 |
| 817. Application Fee to  Ameriquest Mortgage Company | $360.00 | | |
| 818. Underwriting Fee to | | 1509. MACYE/FDSB                     (W) | $163.00 |
| 819. Service Provider Fee to | | | |
| 820. Processing Fee  to | | 1510. MACYS EAST/FDSB               (W) | $66.00 |
| 821. Underwriting Fee to | | | |
| 822. Appraisal Fee to | | 1511. Ameriquest Mortgage | $250,000.00 |
| 900. Items Required by Lender to be Paid in Advance | | | |
| 901. Interest from  09/09/2003  to  10/01/2003  @  $69.16 per day | $1,521.52 | 1512. | |
| 902. Mortgage insurance premium for          months to | | | |
| 903. Hazard ins prem  to | $0.00 | 1513. | |
| 904. Flood ins prem  to | | | |
| 1000. Reserves Deposited with Lender | | 1514. | |
| 1001. Hazard insurance    months @ $    per month | | | |
| 1002. Mortgage insurance    months @ $    per month | | 1515. | |
| 1003. Earthquake ins    months @ $    per month | | | |
| 1004. County prop. taxes    months @ $    per month | | | |
| 1005. Annual assess.    months @ $    per month | | 1520. TOTAL DISBURSED (enter on line 1603) | $270,695.61 |
| 1006. Flood    months @ $    per month | | | |
| 1007. Windstorm ins    months @ $    per month | | | |
| 1008. | | | |
| 1100. Title Charges | | | |
| 1101. Settlement or closing fee to  UDX | $125.00 | | |
| 1102. Abstract or title search to  BRIDGESPAN | $150.00 | | |
| 1103. Title examination to | | | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to | | | |
| 1107. Attorney's fees to | | | |
| 1108. Title insurance to  BRIDGESPAN | $742.50 | Total Wire:     $15,719.87 | |
| 1109. Lender's coverage         $ | | | |
| 1110. Owner's coverage         $ | | * = Paid outside closing | |
| 1111. Settlement/Disbursement fee to  BRIDGESPAN | $395.00 | | |
| 1112. Escrow fee to  BRIDGESPAN | $130.00 | | |
| 1200. Government Recording and Transfer Charges | | | |
| 1201. Recording fees | $176.00 | | |
| 1202. City/county tax/ stamps | | N. NET SETTLEMENT | |
| 1203. State tax/ stamps | | | |
| 1204. State specific fee | | 1600. Loan Amount | 297,000.00 |
| 1205. State specific fee | | | |
| 1300. Additional Settlement Charges | | 1601. Plus Cash/Check from Borrower | |
| 1301. Demand to | | | |
| 1302. Pest inspection to | | 1602. Minus Total Settlement Charges (line 1400) | $16,136.52 |
| 1303. Survey Fee | $37.50 | | |
| 1304. Staff Appraiser Fee | | 1603. Minus Total Disbursements to Others (line 1520) | $270,695.61 |
| 1305. Reconveyance Fee to | | | |
| 1306. | | 1604. Equals Disbursements to Borrower (after expiration of any applicable rescission period) | $10,167.87 |
| 1307. Property Val Fee to | | | |
| 1308. Courier Fee | | | |
| 1400. Total Settlement Charges (enter on line 1602) | $16,136.52 | | |

Borrower(s) Signature(s):

X

| Approved for Funding By: | Approved: | Branch:  Rancho Cordova, CA 95670 |
|---|---|---|
| | | Mortgage Lender License - License Number MC3793 |

Loan Number:  0053225926 - 7403

## ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.**

September 2, 2003                    Orange                              CA
[Date]                             [City]                          [State]
                        43 OAK, BRIDGEWATER, MA 02324
                              [Property Address]

### 1.  BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. **$297,000.00**      (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is   Ameriquest Mortgage Company .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  **8.500%**. This interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3.  PAYMENTS
#### (A)  Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on   **November 1, 2003**   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on       **October 1, 2033**     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make payments at: 505 City Parkway West, Suite 100, Orange, CA 92868

or at a different place if required by the Note Holder.

#### (B)  Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. **$2,283.68**. This amount may change.

#### (C)  Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

#### (A)  Change Dates
The interest rate I will pay may change on the first day of  **October, 2005** , and on that day every  sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

#### (B)  The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

#### (C)  Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding   six  percentage point(s) ( **6.000 %**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Initials:_____

08/29/2003 4:26:41 PM

201-1MA (Rev. 9/00)

Loan Number: 0053225926 - 7403

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **10.500 % or less than 8.500 %.** Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One percentage point(s) **(1.000 %)** from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **14.500 %** or less than **8.500 %.**

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I may repay this loan at any time as provided in this paragraph. If I repay this loan within the first Three (3) year(s) of the date of the execution of this Note, I agree to pay a prepayment penalty, subject to the following conditions:

1) If I repay this loan within the first year by refinancing with another lender, I will pay a penalty equal to the sum of: (a) the lesser of three (3) months interest or the remainder of the first years interest; plus (b) three (3) months additional interest.
2) If I repay this loan within the first year by any other means, I will pay a penalty equal to the lesser of three (3) months interest or the remainder of the first years interest.

3) If I repay this loan within the second or third year by refinancing with another lender, I will pay a penalty equal to three (3) months interest.

**6. LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A) Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **3.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

Initials:_____
08/29/2003 4:28:41 PM

201-2MA (Rev. 9/00)

Loan Number: 0053225926 - 7403

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. **WAIVERS**
I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

12. **GOVERNING LAW PROVISION**
This Note and the related Security Interest are governed by Federal and State law applicable to the Jurisdiction of the Property.

**Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which sec[ ]es this Note, must be in a signed writing to be legally enforceable.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Borrower  LYNN M. GAY

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____ (Seal)
Borrower

3 of 3

201-3MA (Rev. 9/00)

08/29/2003 4:26:41 PM

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 2nd day of September , 2003 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

43 OAK, BRIDGEWATER, MA  02324
#### [Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of  8.500 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A) Change Dates**
The interest rate I will pay may change on the first day of October, 2005 , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

   **(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials_____

Loan Number:  0053225926 - 7403

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding six percentage points ( **6.000** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **10.500%** or less than **8.500%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One( **1.000 %**) from the rate of interest I have been paying for the preceding   six months. My interest rate will never be greater than 14.500% or less than 8.500%.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice. ✓

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials_____

Loan Number: 0053225926 - 7403

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)     _____ (Seal)
Borrower LYNN M. GAY                  Borrower

_____ (Seal)     _____ (Seal)
Borrower                             Borrower

Loan Number: 0053225926 - 7403

# NOTICE OF RIGHT TO CANCEL

LENDER:   Ameriquest Mortgage Company

DATE:   September 2, 2003
LOAN NO.:   0053225926 - 7403
TYPE:   ADJUSTABLE RATE

BORROWER(S): LYNN M. GAY

ADDRESS:      43 OAK
CITY/STATE/ZIP:   BRIDGEWATER,MA 02324

PROPERTY:   43 OAK
             BRIDGEWATER, MA  02324

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.  The date of the transaction, which is

| ENTER DOCUMENT SIGNING DATE |
| --- |
| 9/2/03 |

; or

2.  The date you received your Truth in Lending disclosures; or
3.  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**
If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1100 Town and Country Road, Suite 200**
**Orange, CA 92868**

ATTN:   **FUNDING**
PHONE: (714)541-9960
FAX:    (714)245-0857

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
| --- |
| 9/5/03 |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____         _____
SIGNATURE                                DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____         _____         _____         _____
BORROWER/OWNER LYNN M. GAY                 Date          BORROWER/OWNER                             Date

_____         _____         _____         _____
BORROWER/OWNER                             Date          BORROWER/OWNER                             Date

RODDY KLEIN & RYAN

Attorneys at Law

727 Atlantic Ave., 2nd Floor
Boston, Massachusetts 02111

Gary Klein

Tel. (617) 357-5500 x 15
Fax (617) 357-5030
klein@grantkleinroddy.com

November 1, 2004

*By Certified Mail, Return Receipt*
*Requested No. 7000 1670 0000 7575 3398*

Mr. Wayne Lee
Chief Executive Officer
Ameriquest Mortgage Company
1100 Town & Country Road
Orange, CA 92868

*By Certified Mail, Return Receipt*
*Requested No. 7000 1670 0000 7575 3404*

Ameriquest Mortgage Company
ATTN: Funding
1100 Town and Country Road, Suite 200
Orange, CA 92868

> **RE:** Ms. Lynn Gay
> 43 Oak Street
> Bridgewater, MA 02324
> Ameriquest Loan No.: 0053225926-7403
> Loan Date: September 2, 2003

Dear Mr. Lee:

I represent the above reference homeowner, who entered into a consumer loan transaction with Ameriquest Mortgage Company in September, 2003.

I have been authorized by my client to rescind this transaction and hereby exercise that right pursuant to the Massachusetts Consumer Credit Cost Disclosure Act, M.G.L. c. 140D, § 10 and the regulation promulgated thereunder, 209 CMR 32.23.

Ms. Gay retains a current right to rescind because the Notice of Right to Cancel Form provided in connection with the transaction failed to comply the requirements set forth in Appendix H of Regulation Z, § 226.23 as required by M.G.L. c. 140D § 10(a) and 209 CMR 32.23(2)(a). Ms. Gay was refinancing an Ameriquest home mortgage loan in the September 2, 2003 loan transaction. Therefore, Ameriquest should have provided her with an H-9 Notice of Right to Cancel form, which is specific to refinancings with the original creditor, rather than with the H-8 form she received.

Ameriquest Mortgage Co.
11/1/04
Page 2

     Under the law, Ms. Gay's right to rescind the transaction continues once foreclosure has been initiated. *See* M.G.L. c. 140D § (10)(i)(1)(b), 209 C.M.R. § 32.23(8)(a)(2). Upon her rescission, the security interest held by Ameriquest as a result of this transaction is void pursuant to M.G.L. c. 140D § (10)(b), 209 C.M.R. § § 32.23(4). Pursuant to the state statute, your client has twenty days after receipt of this notice of rescission to return to Ms. Gay all monies paid and to take any action necessary and appropriate to reflect termination of the security interest. Upon completion of these responsibilities, Ms. Gay will perform all necessary actions required by M.G.L. c. 140D, § 10 and 209 CMR § 32.23, including tender of any amounts then due.

     If your client fails to act in conformity with its statutory obligations, Ms. Gay will consider her options, including but not limited to a legal action seeking a declaratory judgment that the loan is rescinded together with claims for statutory and actual damages, attorneys fees and costs. In addition, any violation of the federal or state truth in lending laws is a *per se* violation of the Massachusetts unfair or deceptive acts or practices statute as well as regulations enacted thereunder (Mass. Gen. Laws Ann. ch.93A, 940 C.M.R. §1.01 et seq.).

     Ms. Gay reserves the right to raise other bases upon which the loan at issue may be rescindable on statutory or common law grounds.

     If you have any questions please do not hesitate to contact me.

Sincerely,

Gary Klein

cc: Lynn Gay

# A. Settlement Statement

**B. Type of Loan**

U.S. Department of Housing and Urban Development    OMB No. 2502-0265

| 1. ☐ FHA | 2. ☐ FmHA | 3. ☒ Conv. Unins. | 6. File Number D03-7127DA | 7. Loan Number 0046273900 | 8. Mortgage Insurance Case Number |
|---|---|---|---|---|---|
| 4. ☐ VA | 5. ☐ Conv. Ins. | | | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.
WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

**D. NAME OF BORROWER:** David M. Wakefield
**ADDRESS:** 303 Marion Road, Wareham, MA 02571

**E. NAME OF SELLER:** N/A
**ADDRESS:**

**F. NAME OF LENDER:** Argent Mortgage Company
Ins Binder: P.O. Box 11056    Orange, CA 92856
**ADDRESS:** 7 Skyline Drive, Hawthorne, NY 92856

**G. PROPERTY ADDRESS:** 303 Marion Road, Wareham, MA 02571

**H. SETTLEMENT AGENT:** David B. Carroll, PC
**PLACE OF SETTLEMENT:** 132 Central Street, Foxboro, MA 02035, Wakefield, MA

**I. SETTLEMENT DATE:** 04/17/2003    **DISBURSEMENT DATE:** 04/22/2003

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 8,462.23 | 403. | |
| 104. Payoff 0004059843 | 161,661.28 | 404. | |
| 105. Fairbanks Capital Corporation | | 405. | |
| *Adjustments for items paid by seller in advance* | | *Adjustments for items paid by seller in advance* | |
| 109. 05/01/03 taxes | 408.29 | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 170,531.80 | **420. GROSS AMOUNT DUE TO SELLER:** | |
| **200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loan | 191,250.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. | |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments for items unpaid by seller* | | *Adjustments for items unpaid by seller* | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 191,250.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | |
| **300. CASH AT SETTLEMENT FROM OR TO BORROWER** | | **600. CASH AT SETTLEMENT TO OR FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 170,531.80 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 191,250.00 | 602. Less reduction amount due seller (line 520) | |
| **303. CASH TO BORROWER** | 20,718.20 | **603. CASH TO SELLER** | 0.00 |

TitleExpress Settlement System  Printed 04/17/2003 at 12:06

REV. HUD-1 (3/86)

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
SETTLEMENT STATEMENT

File Number: D03-7127
PAGE 2

| L.   SETTLEMENT CHARGES | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700.  TOTAL SALES/BROKER'S COMMISSION based on price $  @  0.000 = | | | |
| Division of commission (line 700) as follows: | | | |
| 701.  $                              to | | | |
| 702.  $                              to | | | |
| 703.  Commission paid at Settlement | | | |
| 800.  ITEMS PAYABLE IN CONNECTION WITH LOAN | | | |
| 801.  Loan Origination Fee   2.000 %Allied Mortgage | | 3,825.00 | |
| 802.  Loan Discount   % | | | |
| 803.  Appraisal Fee   to Allied Mortgage   (P.O.C.) 300.00 Buyer | | | |
| 804.  Credit Report | | | |
| 805.  Admin Fee   to Argent Mortgage Company   LR | | 175.00 | |
| 806.  Underwriting Fee   to Argent Mortgage Company   LR | | 375.00 | |
| 807.  Tax service fee   to Argent Mortgage Company   LR | | 70.00 | |
| 808.  Flood Cert   to Argent Mortgage Company   LR | | 16.00 | |
| 809.  Processing   to Allied Mortgage | | 550.00 | |
| 810.  Application Fee   to Allied Mortgage | | 450.00 | |
| 811.  Yield Spread Prem   to AMC by AMC 1912.50 POC | | | |
| 900.  ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | |
| 901.  Interest From  04/22/2003 to 05/01/2003   @$  40.8700 /day   9 Days   LR | | 367.83 | |
| 902.  Mortgage Insurance Premium for   to | | | |
| 903.  Hazard Insurance Premium for   to Providence Mutual Fire | | 456.00 | |
| 904. | | | |
| 905. | | | |
| 1000.  RESERVES DEPOSITED WITH LENDER FOR | | | |
| 1001.  Hazard Insurance   6 mo. @ $  38.00 /mo   LR | | 228.00 | |
| 1002.  Mortgage Insurance   mo. @ $  /mo | | | |
| 1003.  City Property Taxes   2 mo. @ $  272.20 /mo   LR | | 544.40 | |
| 1004.  County Property Taxes   mo. @ $  /mo | | | |
| 1005.  Annual Assessments   mo. @ $  /mo | | | |
| 1009.  Aggregate Analysis Adjustment | | 0.00 | 0.00 |
| 1100.  TITLE CHARGES | | | |
| 1101.  Settlement or closing fee   to David B. Carroll, P.C. | | 625.00 | |
| 1102.  Abstract or title search | | | |
| 1103.  Title examination | | | |
| 1104.  Title Insurance binder | | | |
| 1105.  Document Preparation | | | |
| 1106.  Notary Fees | | | |
| 1107.  Attorney's fees | | | |
| (Includes above items No: | | | ) |
| 1108.  Title Insurance   to Chicago Title Insurance Company | | 480.00 | |
| (Includes above items No: | | | ) |
| 1109.  Lender's Policy   191,250.00   -   480.00 | | | |
| 1110.  Owner's Policy | | | |
| 1111.  Alt9.1, ResSur, SecMor   to Chicago Title Insurance Company | | 50.00 | |
| 1112. | | | |
| 1113.  David B. Carroll, PC retains $397.50 of title insurance premium. | | | |
| 1200.  GOVERNMENT RECORDING AND TRANSFER CHARGES | | | |
| 1201.  Recording Fees Deed $  ; Mortgage $ 175.00  : Release $ 75.00 | | 250.00 | |
| 1202.  MA Surcharge Fee Deed $  ; Mortgage $  ; Release $ | | | |
| 1203.  State Tax/stamps   Deed $  ; Mortgage $ | | | |
| 1204. | | | |
| 1205. | | | |
| 1300.  ADDITIONAL SETTLEMENT CHARGES | | | |
| 1301.  Survey | | | |
| 1302.  Pest Inspection | | | |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| 1400.  TOTAL SETTLEMENT CHARGES   (enter on lines 103, Section J and 502, Section K) | | 8,462.23 | |

HUD CERTIFICATION OF BUYER AND SELLER

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement. I agree to further adjustments in the event of errors or omissions, and indemnify and hold harmless Settlement Agent against such error or omissions.

David M. Wakefield
011404585

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE TITLE 18: U.S. CODE SECTION 1001 AND SECTION 1010.

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of the transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

TitleExpress Settlement System  Printed 04/17/2003 at 12:06          By: _____
                                                                         DATE

REV. HUD-1 (3/86)

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Mortgage Lenders License - License Number ML0702    [X] Preliminary    [ ] Final
LENDER: Ameriquest Mortgage Company
    10600 White Rock Road, Suite 200-07
    Rancho Cordova, CA 95670
    (916)853-4707

                            Broker License:

Borrowers: DAVID M WAKEFIELD    WAKEFIELD E JANET
                        Type of Loan:  ADJUSTABLE RATE
                              Date:  January 2, 2004

Address:    303 MARION RD
City/State/Zip:    WAREHAM, MA 02571    Loan Number:  0066656760 - 7374

Property:    303 MARION RD, WAREHAM, MA  02571

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| (e) 9.736  % | $ 441,213.26 (e) | $ 210,339.30 (e) | $ 651,552.56 (e) |

**YOUR PAYMENT SCHEDULE WILL BE:**

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | (e) $1,809.89 | 03/01/2004 | | | |
| 1 | (e) $1,802.05 | 02/01/2034 | | | |

**VARIABLE RATE FEATURE:**
[X]  Your loan has a variable rate feature.  Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:**    You are giving a security interest in the property located at:  303 MARION RD, WAREHAM, MA  02571

**ASSUMPTION:**    Someone buying this property    [X]  cannot assume the remaining balance due under original terms.
                             [ ]  may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:**    You may obtain property insurance from anyone you want that is acceptable to
           Ameriquest Mortgage Company

**LATE CHARGES:**    If a payment is late, you will be charged  3.000%  of the overdue principal and interest payment.

**PREPAYMENT:**    If you pay off your loan early, you
[X]  may    [ ]  will not    have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.
**(e) = estimate**

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____    ____    ____    _____
Borrower DAVID M WAKEFIELD    Date    Borrower WAKEFIELD E JANET    Date

_____    _____
Borrower    Date    Borrower    Date

TIL1 (Rev. 7/61)    7777777707070700076765242717744400757150
7833544403073331561645125400776281717562
100107742417375501001075250433377123007

**BORROWER COPY**    01/02/2004 9:52:46 AM

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Mortgage Lenders License - License Number ML0702
LENDER: Ameriquest Mortgage Company
　　　10600 White Rock Road, Suite 200-07
　　　Rancho Cordova, CA 95670
　　　(916)853-4707

☐ Preliminary　　☒ Final

Broker License:

Borrowers: DAVID M WAKEFIELD　　　WAKEFIELD JANET

Type of Loan: ADJUSTABLE RATE
Date: January 15, 2004

Address:　　303 MARION RD
City/State/Zip:　WAREHAM, MA 02571

Loan Number: 0066656760 - 7374

Property:　　303 MARION RD, WAREHAM, MA 02571

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 12.102　% | $ 645,328.26 | $ 235,315.38 | $ 880,643.64 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $2,446.27 | 03/01/2004 | | | |
| 1 | $2,432.71 | 02/01/2034 | | | |

**VARIABLE RATE FEATURE:**
☒ Your loan has a variable rate feature . Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:**　You are giving a security interest in the property located at: 303 MARION RD, WAREHAM, MA 02571

**ASSUMPTION:**　Someone buying this property　☒ cannot assume the remaining balance due under original terms.
　　　　　　　　　　　　　　　　　　　☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:**　You may obtain property insurance from anyone you want that is acceptable to
　　　　　　　　　　　　Ameriquest Mortgage Company

**LATE CHARGES:**　If a payment is late, you will be charged　3.000%　of the overdue principal and interest payment. .

**PREPAYMENT:**　If you pay off your loan early, you
☒ may　☐ will not　have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

Borrower DAVID M WAKEFIELD _____　Date _____

Borrower WAKEFIELD JANET _____　Date _____

Borrower _____　Date _____

Borrower _____　Date _____



TIL1 (Rev. 7/01)

**ORIGINAL COPY**

01/15/2004 10:55:07 AM



**Settlement Statement**
Optional Form for
Transactions without Sellers

**U.S. Department of Housing and Urban Development**

OMB Approval No. 2502-0491
**WLI**

| Name & Address of Borrower: | Name & Address of Lender: |
|---|---|
| DAVID M WAKEFIELD    WAKEFIELD JANET | Ameriquest Mortgage Company |
| | 10600 White Rock Road, Suite 200-07 |
| 303 MARION RD    WAREHAM, MA 02571 | Rancho Cordova, CA 95670 |
| Property Location: (if different from above) | Settlement Agent: LENDER'S FIRST CHOICE |
| 303 MARION RD, WAREHAM, MA  02571 | Place of Settlement: 3850 ROYAL AVE  SIMI VALLEY, CA  93063 |

## L.    Settlement Charges

| 800.  Items Payable in Connection with Loan | | Loan Number: 0066656760 - 7374 | Settlement Date: Estimated 01/23/2004 |
|---|---|---|---|
| 801.  Loan origination    %  to | | | |
| 802.  Loan discount    %  to | | **M.   Disbursement to Others** | |
| 803.  Apprsl/Prop Val to ALPHA APPRAISAL    *L $500.00 *    $0.00 | $0.00 | 1501. Ameriquest Mortgage  0046273900 | $192,555.96 |
| 804.  Credit report to | | | |
| 805.  Inspection fee to | | 1502. DAIMLERCHRYSLERLLC    (W) | $10,187.00 |
| 806. | | | |
| 807. | | 1503. DAIMLERCHRYSLERLLC    (W) | $5,278.00 |
| 808.  Yield Spread Premium to | | | |
| 809. | | 1504. UNITED STATES TREASURY    (W) | $2,085.07 |
| 810.  Tax Related Service Fee to | $35.00 | | |
| 811.  Flood Search Fee to  Ameriquest Mortgage Company | $16.00 | 1505. UNITED STATES TREASURY    (W) | $8,549.10 |
| 812.  Lenders Processing Fee to  Ameriquest Mortgage | $626.00 | | |
| 813.Admin to Ameriquest Mortgage Company | $238.00 | 1506. UNITED STATES TREASURY    (W) | $10,856.33 |
| 814.  Doc. Prep. Fee to | | | |
| 815.  Credit Report Fee to | | 1507. TOWN OF WAREHAM TAXES DUE 2/1/04 | $422.01 |
| 816.  Origination Fee    %  to | | | |
| 817.  Application Fee to  Ameriquest Mortgage Company | $360.00 | 1508. DAIMLERCHRYSLERLLC    (W) | $3,500.00 |
| 818.  Underwriting Fee to | | | |
| 819.  Service Provider Fee to | | 1509. | |
| 820.  Processing Fee  to | | | |
| 821.  Underwriting Fee to | | 1510. | |
| 822.  Appraisal Fee to | | | |
| **900.  Items Required by Lender to be Paid in Advance** | | 1511. | |
| 901.  Interest from 01/23/2004  to 02/01/2004  @  $78.18  per day | $703.62 | | |
| 902.  Mortgage insurance premium for    months to | | 1512. | |
| 903.  Hazard Ins prem  to | $0.00 | | |
| 904.  Flood Ins prem  to | | 1513. | |
| **1000.  Reserves Deposited with Lender** | | | |
| 1001. Hazard insurance    months @ $    per month | | 1514. | |
| 1002. Mortgage insurance    months @ $    per month | | | |
| 1003. Earthquake ins    months @ $    per month | | 1515. | |
| 1004. County prop. taxes    months @ $    per month | | | |
| 1005. Annual assess.    months @ $    per month | | 1520. TOTAL DISBURSED (enter on line 1603) | $233,413.47 |
| 1006. Flood    months @ $    per month | | | |
| 1007. Windstorm ins    months @ $    per month | | Total Wire:    $43,264.42 | |
| 1008. | | | |
| **1100.  Title Charges** | | L = Lender Paid | |
| 1101. Settlement or closing fee to  LENDERS FIRST | $450.00 | | |
| 1102. Abstract or title search to  LENDERS FIRST CHOICE | $175.00 | | |
| 1103. Title examination to | | | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to  LENDERS FIRST CHOICE | $50.00 | | |
| 1106. Notary fees to  LOAN CLOSERS | $200.00 | | |
| 1107. Attorney's fees to | | | |
| 1108. Title insurance to  LENDERS FIRST CHOICE | $538.00 | | |
| 1109. Lender's coverage    $538.00 | | | |
| 1110. Owner's coverage    $ | | | |
| 1111. Settlement/Disbursement fee to  LENDERS FIRST | $30.00 | | |
| 1112. Escrow Fee to LENDERS FIRST CHOICE | $25.00 | | |
| **1200.  Government Recording and Transfer Charges** | | | |
| 1201. Recording fees | $175.00 | | |
| 1202. City/county tax/stamps | | **N.   NET SETTLEMENT** | |
| 1203. State tax/ stamps | | | |
| 1204. State specific fee | | | |
| 1205. State specific fee | | 1600. Loan Amount | 238,000.00 |
| **1300.  Additional Settlement Charges** | | 1601. Plus Cash/Check from Borrower | |
| 1301. Demand to | | | |
| 1302. Pest inspection to | | 1602. Minus Total Settlement Charges (line 1400) | $3,622.62 |
| 1303. Survey Fee | | | |
| 1304. Staff Appraiser Fee | | 1603. Minus Total Disbursements to Others (line 1520) | $233,413.47 |
| 1305. Reconveyance Fee to | | | |
| 1306. | | 1604. Equals Disbursements to Borrower (after expiration of any applicable rescission period) | |
| 1307. Property Val Fee to | | | |
| 1308. Courier Fee | | | $963.91 |
| **1400. Total Settlement Charges (enter on line 1602)** | $3,622.62 | | |

Borrower(s) Signature(s):

X _David M Wakefield_

Approved for Funding By: _____    Approved: _____    Branch:  Rancho Cordova, CA 95670



## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 15th day of January , 2004  and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

303 MARION RD, WAREHAM, MA  02571
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of  11.990 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A) Change Dates**
The interest rate I will pay may change on the first day of  February, 2006  , and on that day every sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

   **(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.   The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials_____

Loan Number: 0066656760 - 7374


0000006665676003021503 01

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding **six** percentage points ( **6.000** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **13.990%** **or less than 11.990%.** Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One( **1.000 %**) from the rate of interest I have been paying for the preceding   six months. My interest rate will never be greater than 17.990)% or less than 11.990)%.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials_____

Loan Number:  0066656760 - 7374


0000006665676003021 50302

610-2 (Rev 1/01)                          Page 2 of 3

01/15/2004 10:55:07 AM

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Mortgage Lenders License - License Number ML0702
LENDER: Ameriquest Mortgage Company
10600 White Rock Road, Suite 200-07
Rancho Cordova, CA 95670
(916)853-4707

[X] Preliminary        [ ] Final

Broker License:

Borrowers: Dave M Wakefield    Janet Wakefield

Type of Loan:  ADJUSTABLE RATE
Date:  February 24, 2004

Address:       303 Marion Rd.
City/State/Zip:  WAREHAM, MA 02571

Loan Number:  0072104763 - 7374

Property:    303 Marion Rd., WAREHAM, MA 02571

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| (e) 8.860   % | $ 384,009.39 (e) | $ 205,641.60 (e) | $ 589,650.99 (e) |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | (e)  $1,637.96 | 04/01/2004 | | | |
| 1 | (e)  $1,623.35 | 03/01/2034 | | | |

**VARIABLE RATE FEATURE:**
[X]  Your loan has a variable rate feature . Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:**     You are giving a security interest in the property located at: 303 Marion Rd., WAREHAM, MA 02571

**ASSUMPTION:**  Someone buying this property      [X]  cannot assume the remaining balance due under original terms.
[ ]  may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:**     You may obtain property insurance from anyone you want that is acceptable to Ameriquest Mortgage Company

**LATE CHARGES:**   If a payment is late, you will be charged  **3.000%**  of the overdue principal and interest payment .

**PREPAYMENT:**   If you pay off your loan early, you
[X]  may    [ ]  will not     have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.
**(e) = estimate**

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

Borrower Dave M Wakefield _____  Date _____    Borrower Janet Wakefield _____  Date _____

Borrower _____  Date _____    Borrower _____  Date _____

TIL1 (Rev. 7/01)
7777777770707070007678524271774440077737 2
5613546621073331561845125400774241737580 1001077424173758001001074604173237463110 7

## BORROWER COPY

02/24/2004 5:51:18 PM

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Mortgage Lenders License - License Number ML0702
LENDER:Ameriquest Mortgage Company
    10600 White Rock Road, Suite 200-07
    Rancho Cordova, CA 95670
    (916)853-4707

Preliminary ☐    Final ☒

Broker License:

Borrowers:Dave M Wakefield   Janet Wakefield

Type of Loan: ADJUSTABLE RATE
Date:  April 2, 2004

Address:   303 Marion Rd.
City/State/Zip:  WAREHAM,MA 02571

Loan Number:  0072104763 - 7374

Property:  303 Marion Rd., WAREHAM, MA  02571

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.755     % | $ 459,492.44 | $ 248,556.44 | $ 708,048.88 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $1,966.82 | 06/01/2004 | | | |
| 1 | $1,960.50 | 05/01/2034 | | | |

**VARIABLE RATE FEATURE:**
   ☒  Your loan has a variable rate feature .  Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:**   You are giving a security interest in the property located at: 303 Marion Rd., WAREHAM, MA  02571

**ASSUMPTION:**  Someone buying this property   ☒  cannot assume the remaining balance due under original terms.
    ☐  may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:**   You may obtain property insurance from anyone you want that is acceptable to
      Ameriquest Mortgage Company

**LATE CHARGES:**  If a payment is late, you will be charged  3.000%  of the overdue principal and interest payment .

**PREPAYMENT:**  If you pay off your loan early, you
   ☒  may   ☐  will not   have to pay a penalty.
**See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.**

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____    _____
BorrowerDave M Wakefield      Date

_____    _____
BorrowerJanet Wakefield     Date

_____    _____
Borrower      Date

_____    _____
Borrower      Date

TIL1 (Rev. 7/01)


0000007210476303057501 01

**ORIGINAL COPY**

04/01/2004 10:55:46 AM

**Settlement Statement**
**Optional Form for**
**Transactions without Sellers**

U.S. Department of Housing
and Urban Development

OMB Approval No. 2502-0491

**WLI**

Name & Address of Borrower:
Dave M Wakefield    Janet Wakefield

Name & Address of Lender:
Ameriquest Mortgage Company
10600 White Rock Road, Suite 200-07
Rancho Cordova, CA 95670

303 Marion Rd.,    WAREHAM,MA 02571
Property Location: (if different from above)

Settlement Agent:    LENDER'S FIRST CHOICE

303 Marion Rd., WAREHAM, MA  02571

Place of Settlement: 3850 ROYAL AVE SIMI VALLEY, CA 93063

| L.    Settlement Charges | | Loan Number:<br>0072104763 - 7374 | Settlement Date:Estimated<br>04/09/2004 | |
|---|---|---|---|---|
| **800. Items Payable in Connection with Loan** | | **M.    Disbursement to Others** | | |
| 801. Loan origination fee    % to | | | | |
| 802. Loan discount  3.890  % to  Ameriquest Mortgage Company | $10,445.82 | 1501. | | |
| 803. Apprsl/Prop Val to | $0.00 | Ameriquest MortgageP/O 0066656760 | | $242,057.42 |
| 804. Credit report to | | 1502. | | |
| 805. Inspection fee to | | CROSS COUNTRY BANK | (W) | $2,000.00 |
| 806. | | 1503. | | |
| 807. | | HHLD BANK | (W) | $2,100.00 |
| 808. Yield Spread Premium to | | 1504. | | |
| 809. | | TOWN OF WAREHAM | (W) | $422.01 |
| 810. Tax Related Service Fee to  Ameriquest Mortgage        *L    $70.00 | | 1505. | | |
| 811. Flood Search Fee to  Ameriquest Mortgage Company | $16.00 | | | |
| 812. Lenders Processing Fee to  Ameriquest Mortgage | $626.00 | 1506. | | |
| 813.Admin to Ameriquest Mortgage Company | $239.00 | | | |
| 814. Doc. Prep. Fee to | | 1507. | | |
| 815. Credit Report Fee to | | | | |
| 816. Origination Fee    % to | | 1508. | | |
| 817. Application Fee to  Ameriquest Mortgage Company | $360.00 | | | |
| 818. Underwriting Fee to | | 1509. | | |
| 819. Service Provider Fee to | | | | |
| 820. Processing Fee  to | | 1510. | | |
| 821. Underwriting Fee to | | | | |
| 822. Appraisal Fee to | | 1511. | | |
| **900. Items Required by Lender to be Paid in Advance** | | 1512. | | |
| 901. Interest from  04/09/2004  to  05/01/2004  @  $59.17  per day | $1,301.74 | | | |
| 902. Mortgage insurance premium for        months to | | 1513. | | |
| 903. Hazard ins prem  to | $0.00 | | | |
| 904. Flood ins prem  to | | 1514. | | |
| **1000. Reserves Deposited with Lender** | | | | |
| 1001. Hazard insurance    months @ $    per month | | 1515. | | |
| 1002. Mortgage insurance    months @ $    per month | | | | |
| 1003. Earthquake ins    months @ $    per month | | 1520. TOTAL DISBURSED (enter on line 1603) | | $246,579.43 |
| 1004. County prop. taxes    months @ $    per month | | | | |
| 1005. Annual assess.    months @ $    per month | | Total Wire:        $7,054.02 | | |
| 1006. Flood    months @ $    per month | | | | |
| 1007. Windstorm Ins    months @ $    per month | | L = Lender Paid | | |
| 1008. | | | | |
| **1100. Title Charges** | | | | |
| 1101. Settlement or closing fee to  JOE CACI | $200.00 | | | |
| 1102. Abstract or title search to  LENDERS FIRST CHOICE | $450.00 | | | |
| 1103. Title examination to  LENDERS FIRST CHOICE | $175.00 | | | |
| 1104. Title insurance binder to | | | | |
| 1105. Document preparation to  LENDERS FIRST CHOICE | $50.00 | | | |
| 1106. Notary fees to | | | | |
| 1107. Attorney's fees to | | | | |
| 1108. Title insurance to  LENDER'S FIRST CHOICE      *L  $500.00 *  $0.00 | $88.00 | | | |
| 1109. Lender's coverage              $88.00 | | | | |
| 1110. Owner's coverage        $ | | | | |
| 1111. Settlement/Disbursement fee to | | | | |
| 1112. Escrow Fee to | | | | |
| **1200. Government Recording and Transfer Charges** | | | | |
| 1201. Recording fees | $175.00 | | | |
| 1202. City/county tax/stamps | | **N.  NET SETTLEMENT** | | |
| 1203. State tax/ stamps | | | | |
| 1204. State specific fee | | 1600. Loan Amount | | 261,800.00 |
| 1205. State specific fee | | | | |
| **1300. Additional Settlement Charges** | | 1601. Plus Cash/Check from Borrower | | |
| 1301. Demand to | | | | |
| 1302. Pest Inspection to | | 1602. Minus Total Settlement Charges<br>(line 1400) | | $14,181.56 |
| 1303. Survey Fee | | | | |
| 1304. Staff Appraiser Fee | | 1603. Minus Total Disbursements to Others<br>(line 1520) | | $246,579.43 |
| 1305. Reconveyance Fee to | | | | |
| 1306. | | 1604. Equals Disbursements to Borrower<br>(after expiration of any applicable rescission<br>period) | | $1,039.01 |
| 1307. Property Val Fee to | | | | |
| 1308. Courier Fee | $55.00 | | | |
| **1400. Total Settlement Charges (enter on line 1602)** | $14,181.56 | | | |

Borrower(s) Signature(s):

X

Approved for Funding By:        Approved:        Branch:  Rancho Cordova, CA 95670

Mortgage Lenders License - License Number ML0702

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published In the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 2nd day of April , 2004   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

303 Marion Rd., WAREHAM, MA  02571

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of  8.250 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A) Change Dates**
The interest rate I will pay may change on the first day of  May, 2006  , and on that day every sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

   **(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

   If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials_____

Loan Number:  0072104763 - 7374


0000007210476303302150301

610-1 (Rev 1/01)                              Page 1 of 3                          04/01/2004 10:55:48 AM

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding **six and one-half** percentage points ( **6.500 %**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **10.250% or less than 8.250%.** Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One( **1.000 %**) from the rate of interest I have been paying for the preceding   six months. My interest rate will never be greater than 14.250)% or less than 8.250)%.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Loan Number:  0072104763 - 7374

Initials_____


0000007210476303021150302

610-2 (Rev 1/01)

Page 2 of 3

04/01/2004 10:55:48 AM

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)    _____ (Seal)
Borrower Dave M Wakefield          Borrower Janet Wakefield


_____ (Seal)    _____ (Seal)
Borrower                           Borrower


Loan Number: 0072104763 - 7374


0000007210476303021503003

# Ameriquest Mortgage Company

## STATEMENT OF CREDIT DENIAL

Loan No.   0072104763 - 7374                              Date:  April 15, 2004

Dave M Wakefield                              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
303 Marion Rd.
WAREHAM, MA 02571

Dear Applicant:

Thank you for your recent application.  Your request for mortgage credit was carefully considered, and we regret that we are unable to approve your application for credit at this time.

Your request for credit has been denied based on the following reason(s)

- [ ] Credit - Insufficient or Derogatory
- [ ] Ability to Repay - Excessive Obligations in Relation to Income
- [ ] Collateral - Value or Type of Property Insufficient

- [X] We do not grant credit to any applicant on the term and conditions you have requested.
- [ ] Denied by Government Agency

### Use of Information Obtained from an Outside Source

- [ ] Our credit decision was based in whole or in part on information obtained in a report from one or more of the consumer reporting agencies listed below.  You have the right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency.  The reporting agency played no part in our decision and is unable to supply specific reasons why credit has been denied to you.  You also have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice.  In addition, if you find that any information contained in the report you received is inaccurate, you have the right to dispute the matter with the reporting agency.

| EXPERIAN INFORMATION SERVICES | TRANS UNION CORPORATION | EQUIFAX CREDIT INFORMATION |
|---|---|---|
| P.O. BOX 2104 | P.O. BOX 2000 | SERVICES P.O. BOX 105873 |
| ALLEN, TX 75013-2104 | CHESTER, PA 19022 | ATLANTA, GA 30348 |
| Toll-Free (888) 397-3742 | Toll-Free (800) 888-4213 | Toll-Free (800) 685-1111 |

- [ ] Our credit decision was based in whole or in part on information obtained from an affiliate or from an outside source other than a consumer reporting agency.  Under the Fair Credit Reporting Act, you have the right to make a request within 60 days after you receive this notice, for disclosure of the nature of this information.  We will send you a written statement of reasons for the denial within 30 days of receipt of your request for the statement.

### Requesting Copy of Appraisal Report

You have the right to a copy of the appraisal report used in connection with your application for credit.  If you would like a copy, please write to us at the mailing address provided below.  Your request must be received no later than 90 days after notification of the action taken on your credit application or you withdraw your request for credit.

If you have any questions, regarding this notice, please contact:   **Ameriquest Mortgage Company**
**10600 White Rock Road, Suite 200-07**
**Rancho Cordova, CA 95670**
**(916)853-4707**        **Attn: Branch Manager**

If you have any additional information which might assist us in evaluating your creditworthiness, please let us know.
The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any rights under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the: FEDERAL TRADE COMMISSION, EQUAL CREDIT OPPORTUNITY, ROOM 4037, WASHINGTON DC, 20580.

77777777070707000767652427177444007773725613546621073331561645125400774241737560
10010756043737760122307561407222455113070000007210476304056670101

SOCD (Rev. 1/01)



**AMERIQUEST MORTGAGE** C O M P A N Y

August 13, 2004

TO:     Lee M. Berger, Esq.
        Berger & Markir, P.C.
        One Cohasset Avenue
        Buzzards Bay, MA 02532

RE:     Loan Number 0072104763

Mr. Lee M. Berger,

        This is to confirm the telephone conversations between your office and
Ameriquest, including the telephone conversation with Ameriquest Counsel, Christopher
K. Liffrig, Esq. on or about July 16, 2004, and in response to your letter dated June 30th
2004, with regard to the referenced loan and your client, David M. Wakefield.

        As you know, your client's loan (Ameriquest Loan Number 0072104763) has
been cancelled as a result of, what we perceive to be, false income information that was
submitted in connection with the subject loan application.  Consequently, Ameriquest
Loan Number 0066656760 is still in effect and the terms, obligations and duties related
thereto remain unchanged.

        If your client believes that the income information submitted in connection with
the subject loan was, and is, not false, please provide the undersigned with the following
documentation so that we can reassess the matter: Mr. & Mrs. Wakefield's most recent
pay stubs, which should include their year-to-date earnings; their last two years of W-2's;
and their federal income tax (1040) returns from the last two years.

        We sincerely appreciate you cooperation and understanding.  If you have any
questions in regards to this letter or your client's loan, please feel free to contact the
undersigned.

Sincerely,

Donald Larkin
Customer Resolution
Ameriquest Mortgage Co.
1100 Town & Country Rd., Suite 900
Orange, CA 92868
Ph: 800-523-3964 #4718
Fax: 800-784-3034

1100 Town & Country Road, Suite 1100, Orange, CA 92868 • Phone (714) 541-9960 • Fax (714) 245-0198

# KORDE & ASSOCIATES, P.C.

Counsellors at Law

321 Billerica Road, Suite 210
Chelmsford, Massachusetts 01824-4100

SANJEEV KORDE
AMY H MASEERBER
JILL A. XANIER
ANSUR HANAN
VICTOR MANCHICAN

JOHN H. SUNGERTAND OF COUNSE

Telephone (978) 256-1500
Telefax (978) 256-7615
Email: skorde@kordeassoc.com

## DEFICIENCY NOTICE

October 21, 2004

FIRST CLASS MAIL &
CERTIFIED MAIL NO. 7003 3110 0001 4682 6307

David M. Wakefield
303 Marion Road
Wareham, MA  02571

RE:   PROPERTY:  303 Marion Road, Wareham, MA
MORTGAGE HELD BY:  Ameriquest Mortgage Company
MORTGAGE GIVEN TO:  Ameriquest Mortgage Company
DATE OF MORTGAGE:   January 15, 2004
ORIGINAL PRINCIPAL AMOUNT OF MORTGAGE: $238,000.00
MORTGAGE RECORDED WITH:      Plymouth County Registry of Deeds,
Book 27711, Page 141

Dear Mr. Wakefield:

You are hereby notified in accordance with the statutes of the Commonwealth of
Massachusetts of our intention on or about December 13, 2004 to foreclose by sale
under power of sale for breach of conditions, and by entry, the above captioned
mortgage given to secure a note for the above stated original principal amount for the
whole or part of which you may be liable to the above named holder of the mortgage in
the event of a deficiency in the proceeds of the foreclosure sale.

THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.

Sincerely,

Sanjit S. Korde

## NOTICE OF RIGHT TO CANCEL

LENDER:  Ameriquest Mortgage Company

DATE:  January 15, 2004
LOAN NO.:  0066656760 - 7374
TYPE:  ADJUSTABLE RATE

BORROWER(S): DAVID M WAKEFIELD       WAKEFIELD JANET

ADDRESS:        303 MARION RD
CITY/STATE/ZIP:   WAREHAM, MA 02571

PROPERTY:  303 MARION RD
           WAREHAM, MA  02571

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.  The date of the transaction, which is

| ENTER DOCUMENT SIGNING DATE |
|---|
| _1/15/04_ |

;

or

2.  The date you received your Truth in Lending disclosures;
    or
3.  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Ameriquest Mortgage Company           ATTN:  FUNDING
1100 Town and Country Road, Suite 200    PHONE: (714)541-9960
Orange, CA 92868                        FAX:     (800)664-2256

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
|---|
| _1/20/04_ |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

SIGNATURE                                      DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_David M. Wakefield_  1-15-04         _Janet Wakefield_        1-15-04
BORROWER/OWNER DAVID M WAKEFIELD   Date    BORROWER/OWNER WAKEFIELD JANET    Date


BORROWER/OWNER                      Date    BORROWER/OWNER                    Date

1064-NRC (Rev 11/03)

**BORROWER COPY**

01/15/2004 10:55:07 AM

## NOTICE OF RIGHT TO CANCEL

.ENDER:   Ameriquest Mortgage Company

DATE:  April 2, 2004
LOAN NO.:   0072104763 - 7374
TYPE:   ADJUSTABLE RATE

3ORROWER(S): Dave M Wakefield        Janet Wakefield

\DDRESS:        303 Marion Rd.
CITY/STATE/ZIP:   WAREHAM,MA 02571

'ROPERTY:   303 Marion Rd.
        WAREHAM,  MA  02571

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal ight under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the ollowing events occurs last:

1.   The date of the transaction, which is

> ENTER DOCUMENT SIGNING DATE

. or
2.   The date you received your Truth in Lending disclosures;
    or
3.   The date you received this notice of your right to cancel.

f you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we 'eceive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your 1ome has been cancelled, and we must return to you any money or property you have given to us or anyone else in :onnection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must hen offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its 'easonable value. You may offer to return the property at your home or at the location of the property. Money must be 'eturned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your >ffer, you may keep it without further obligation.

### HOW TO CANCEL.

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1100 Town and Country Road, Suite 200**
**Orange, CA 92868**

ATTN:  **FUNDING**
PHONE: **(714)541-9960**
FAX:      **(800)664-2256**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must
send the notice no later than MIDNIGHT of

> ENTER FINAL DATE TO CANCEL

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

SIGNATURE                                                          DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

BORROWER/OWNER  Dave M Wakefield                Date        BORROWER/OWNER  Janet Wakefield                Date

BORROWER/OWNER                Date        BORROWER/OWNER                Date



1064-NRC (Rev 11/03)        0000007210476304000050101

**BORROWER COPY**

04/01/2004 10:55:48 AM

# RODDY KLEIN & RYAN

### Attorneys at Law

727 Atlantic Ave., 2nd Floor
Boston, Massachusetts 02111

Gary Klein

Tel. (617) 357-5500 x 15
Fax (617) 357-5030
klein@grantkleinroddy.com

October 27, 2004

*By Certified Mail, Return Receipt*
*Requested No.  7000  1670  0000  7574  4921*

Mr. Wayne Lee
Chief Executive Officer
Ameriquest Mortgage Company
1100 Town & Country Road
Orange, CA 92868

*By Certified Mail, Return Receipt*
*Requested No.  7000  1670  0000  7575  4425*

Ameriquest Mortgage Company
ATTN: Funding
1100 Town and Country Road, Suite 200
Orange, CA 92868

> **RE:**  David and Janet Wakefield
> 303 Marion Road
> Wareham, MA 02571
> Ameriquest Loan Number: 0066656760-7374
> Loan Date:  January 15, 2004

Dear Mr. Lee:

I represent the above referenced homeowners, who entered into a consumer loan transaction with Ameriquest Mortgage Company in January, 2004.

I have been authorized by my clients to rescind this transaction and hereby exercise that right pursuant to the Massachusetts Consumer Credit Cost Disclosure Act, M.G.L. c. 140D, § 10 and the regulation promulgated thereunder, 209 CMR 32.23.

10/27/04
Page 2

Mr. and Mrs. Wakefield retain a current right to rescind because the Notice of Right to Cancel Form provided in connection with the transaction failed to comply with the requirements set forth in Appendix H of Regulation Z, § 226.23 as required by M.G.L. c. 140D § 10(a) and 209 C.M.R. 32.23(2)(a). Mr. and Mrs. Wakefield were refinancing an Ameriquest home mortgage loan in the January 15, 2004 loan transaction. Therefore, Ameriquest should have provided them with an H-9 Notice of Right to Cancel form, which is specific to refinancings with the original creditor, rather than with the H-8 form they received.

Under the law, the Wakefields' right to rescind the transaction continues once foreclosure has been initiated. *See* M.G.L. c. 140D § (10)(i)(1)(b), 209 C.M.R. § 32.23(8)(a)(2). Upon their rescission, the security interest held by Ameriquest as a result of the transaction is void pursuant to M.G.L. c. 140D § (10)(b) and 209 C.M.R. § 32.23(4). Pursuant to the state statute, your client has twenty days after receipt of this notice of rescission to return to Mr. and Mrs. Wakefield all monies paid and to take any action necessary and appropriate to reflect termination of the security interest. Upon completion of these responsibilities, Mr. and Mrs. Wakefield will perform all necessary actions required by M.G.L. c. 140D, § 10 and 209 CMR § 32.23, including tender of any amounts then due.

If your client fails to act in conformity with its statutory obligations, Mr. and Mrs. Wakefield will consider their options, including but not limited to a legal action seeking a declaratory judgment that the loan is rescinded together with claims for statutory and actual damages, attorneys fees and costs. In addition, any violation of the state truth in lending laws is a *per se* violation of the Massachusetts unfair or deceptive acts or practices statute as well as regulations enacted thereunder (Mass. Gen. Laws Ann. ch.93A, 940 C.M.R. §1.01 et seq.).

The Wakefields reserve the right to raise other bases upon which the loan at issue may be rescindable on statutory or common law grounds.

If you have any questions please do not hesitate to contact me.

Sincerely,

Gary Klein

cc:
David and Janet Wakefield
Sahjit S. Korde, Korde & Associates, P.C.