## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ISABELLE M. MURPHY,** ) | |
| **DAVID R. MURPHY,** ) | |
| **LYNN GAY,** ) | |
| **DAVID M. WAKEFIELD, and** ) | |
| **JANET WAKEFIELD** ) | |
| ) | |
| **Individually and on behalf of all others** ) | |
| **Similarly situated** ) | |
| ) | |
| ) | **C.A. No. 04-cv-12651RWZ** |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **AMERIQUEST MORTGAGE** ) | |
| **COMPANY** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

### Memorandum In Support Of Motion To Compel Responses To Requests For Production Of Documents And Interrogatories, And To Make Witnesses Available For Depositions [LEAVE GRANTED]

### Introduction

In this case, the Plaintiffs allege that Ameriquest used a pattern of deceit and misrepresentation to induce the Plaintiffs to enter into residential mortgage loans with unfair financial benefits to Ameriquest and hidden costs to the Plaintiffs. In doing so, Ameriquest violated the Massachusetts consumer protection statute, G.L. c. 93A (hereinafter "c. 93A"), together with that law's implementing regulations, including 940 C.M.R. § 3.01 *et seq.*, 6.01 *et seq.* 8.01 *et seq.*, the federal Fair Credit Reporting Act, the Equal Credit Opportunity Act, and the common law. The Plaintiffs are seeking monetary,

declaratory and injunctive relief on behalf of themselves and a class of similarly situated

borrowers. [1]

Pursuant to this Court's March 14, 2005 Scheduling Order, the Plaintiffs posed

discovery aimed at the Defendant's lending practices, and issues of class certification.  In

response, Ameriquest raised multiple, overlapping objections to nearly every request.

Ameriquest has thus far refused to provide discovery relating to several critical

areas of inquiry:

- Ameriquest has refused to provide any discovery regarding borrowers

  other than the named Plaintiffs, even though the Court's scheduling order

  permits discovery as to class certification issues, and the law clearly

  allows Plaintiffs to conduct discovery for purposes of seeking class

  certification.

---

[1] The Plaintiffs brought this action behalf of themselves and three classes of all
other persons similarly situated:
Class I (the "deceptive loan terms" class) consists of all residents of
Massachusetts:
    a. who entered into non-purchase money mortgage loan agreements with
Ameriquest, on or after November 2, 2000; and
    b. who were offered one set of terms in preliminary disclosures but received
another rate at closing; and/or
    c. who paid fees itemized by Ameriquest as "loan discount fees."

Class II (the "Adverse Action" class) consists of all residents of Massachusetts:
    a. who, on or after November 2, 2002, submitted a completed credit
application to Ameriquest for a home mortgage;
    b. who were offered one interest rate in preliminary disclosures but who
received a higher rate at closing; and
    c. who were not issued a written notice of adverse action.

Class III (the "CCCDA Notice of Right to Cancel" class) consists of all
residents of Massachusetts:
    a. who, on or after November 2, 2000, refinanced an Ameriquest non-
purchase money mortgage loan with Ameriquest; and
    b. who received an incomplete or incorrect form of notice of right to cancel.

- Ameriquest has refused to produce most of the documents requested regarding its policies and practices, its employee training materials, and employee commissions paid in connection with loans.

The Plaintiffs allege that Ameriquest engaged in routine practices that included bait and switch tactics of offering borrowers certain loan terms, but then making the loans on less advantageous with little or no notice; promising early refinancing at better rates when questioned about the change in terms; encouraging costly refinancings; promising a discounted rate in exchange for the payment of "discount points," without actually providing a discount; and failing to accurately disclose key loan terms. Discovery as to policies, practices, trainings and compensation is necessary in order to establish these common practices, and that borrowers were treated similarly and were similarly affected.

Finally, the Plaintiffs noticed seven depositions of Ameriquest employees. Subsequently, Ameriquest's counsel informed Plaintiffs' counsel that he would not be able to produce the witnesses on the scheduled deposition dates due to conflicts. Ameriquest's counsel has since failed to provide alternative dates, despite several requests.

In compliance with the Local Rules, the Plaintiffs scheduled and held a discovery conference in an attempt to resolve or narrow the parties' differences. *See* Declaration of Gary Klein, ¶14. Prior to the conference, Plaintiffs' counsel sent counsel for Ameriquest a detailed letter explaining their position on discovery and their responses to Ameriquest's objections. The discovery conference was adjourned or continued on several occasions by request of Defendant's counsel to allow him an opportunity to consult with his client. Klein Declaration at ¶¶8-11, 20. Despite ample opportunity and

time, Ameriquest never provided anything that would help narrow the unresolved issues.

Klein Declaration at ¶¶23-24.

The disputed discovery is set forth below.  Because Ameriquest has raised

identical objections to many requests, the Plaintiffs have grouped overlapping objections

and responses together, in an effort to reduce unnecessary repetition.

### Legal Standards

The Plaintiffs are entitled to discovery as to ''any matter that bears on, or that

reasonably could lead to other matter that could bear on, any issue that is or may be in the

case [including] a variety of fact-oriented issues [which] may arise during litigation that

are not related to the merits.'' *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351

(1978). It is the defendant's burden to persuade the Court that the information it has

refused to provide is outside the broad scope of discovery. *Compagnie Francaise

D'Assurance v. Phillips Petroleum*, 105 F.R.D. 16 (S.D.N.Y. 1984); *White v. Beloginis*,

53 F.R.D. 480 (S.D.N.Y. 1971); *Elgin FCUv. Carter, Fitzgerald Securities*, 91 F.R.D.

414 (N.D. Ga. 1981); *US v. 58.16 Acres of Land*, 66 F.R.D. 570 (1975). Boilerplate

objections are insufficient. *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982);

*Obiajulu v. City of Rochester*, 166 F.R.D. 293, 295 (W.D.N.Y. 1966) (boilerplate

objections inconsistent with federal rules); *Burus v. Imagine Films Entertainment, Inc.*,

164 F.R.D. 589, 593–94(W.D.N.Y. 1966) (blanket objections are insufficient). Denying a

party discovery as to issues in the case prejudices the plaintiff's ability to prosecute.

*Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980); *Matter*

*of Rassi*, 701 F.2d 627, 631 (7th Cir. 1983); *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) (abuse to fail to adhere to the liberal spirit of the rules).

## Specific Objections

### A.    Interrogatories 1 - 5

In Interrogatories 1 – 5, the Plaintiffs sought information regarding the identity of class members:

> Interrogatory No. 1.   Identify all persons who obtained a mortgage loan from Defendant in Massachusetts during the Relevant Time Period and provide the date of the loan.

> Interrogatory No. 2.   Identify all persons who obtained a mortgage loan from Defendant in Massachusetts during the Relevant Time Period who paid a fee denominated by the Defendant as "Discount Points" and state the dollar amount of said fee and the number of points paid.

> Interrogatory No. 3.   Identify all persons who obtained a mortgage loan from Defendant in Massachusetts during the Relevant Time Period whose loan includes a provision for a variable rate that can increase but cannot decrease from the interest rate in effect on the date of the transaction.

> Interrogatory No. 4.   Identify all persons who obtained a mortgage loan from Defendant in Massachusetts during the Relevant Time Period who did not receive a loan on the terms reflected in the initial credit application.

> Interrogatory No. 5.   Identify all persons who obtained a mortgage loan from Defendant in Massachusetts during the Relevant Time Period and then refinanced said mortgage loan with a new loan from Ameriquest.

### 1.    *Objection To Providing Information Regarding Putative Class Members.*

Ameriquest objected to Interrogatories 1-5 to the extent that they "seek to discover information pertaining to individual putative class members other than the named plaintiffs, or information concerning the concerning the merits of the putative action (as opposed to the named plaintiffs' individual claims) or concerning whether a

class should be certified in the first instance." Ameriquest provided responses to Interrogatories 1–5 as to the named plaintiffs only.

In the Joint Statement for Scheduling Conference dated March 2, 2005, now embodied in the court's March 14, 2005 Scheduling Order, the parties agreed that discovery will be conducted in two phases. Phase I, "should be directed to the issue of class certification and the merits of the named Plaintiffs' individual claims…so that the Court may determine as soon as practicable whether this action meets the standards under Rule 23 of the Federal Rules of Civil Procedure for class action treatment." (March 2, 2005 Joint Statement, p. 3). The court's Scheduling Order sets a deadline for October 31, 2005 for the completion of all discovery pertaining to class certification. (March 14, 2005 Scheduling Order, p. 1). At the request of the parties, that order has been extended so that the applicable class discovery deadline is now January 16, 2006.

Plaintiffs are entitled to discover information as to the identity and number of putative class members. Each of these elements is pertinent to class certification under Rule 23. *See Rodriguez v. Banco Central,* 102 F.R.D. 897, 903 (D.C.Puerto Rico, 1984) (discovery must be procured in order to determine whether the action may proceed as a class action); *Bessette v. Avco Financial Services, Inc.*, 279 B.R. 442, 452  (D.R.I. 2002) (allowing discovery to proceed before court determines certification); *Yaffe v. Powers,* 454 F.2d 1362 (1st Cir. 1972) ("To pronounce finally, prior to allowing any discovery, the non-existence of a class or set of subclasses, when their existence may depend on information wholly within defendants' ken, seems precipitate and contrary to the pragmatic spirit of Rule 23"); *Pittman v. E.I. duPont de Nemours & Co.,* 552 F.2d 149 (5th Cir. 1977) (discovery is essential in order to determine the class action issue and the

proper scope of the class action, and plaintiff is entitled to some leeway in attempting to define the proper parameters of his proposed class).

In Interrogatories 1-5, the Plaintiffs are seeking information that is relevant to the identity of class members and the size of the putative class. Size of the class is an essential factor in determining numerosity under Fed. R. Civ. P. 23(a)(1). These Interrogatories also seek information relating to whether putative class members share common facts and claims and whether Plaintiffs' claims are typical to those of the putative class as required by Fed. R. Civ. P. 23(a)(2) and (3).

### 2. *Objections Based on a Claim of Confidentiality.*

Ameriquest also objected to Interrogatories 1-5 on the grounds that they seek the "disclosure of confidential and proprietary business and financial information of Ameriquest" and "confidential private information concerning Ameriquest borrowers which may be protected by federal and state privacy laws." The parties have already stipulated, however, to a confidentiality order which was entered by this Court on July 15, 2005. The terms of this order protect against the disclosure of confidential and proprietary information.

As to confidential information about borrowers, Ameriquest is presumably referring to the Gramm-Leach Bliley Act, which prevents financial institutions from disclosing certain types of non-public information to third parties. The Act, however, contains exceptions for "judicial process," compliance with Federal rules and "other applicable legal requirements." 15 U.S.C. § 6802(e)(8). Courts have found this exception more than sufficient to permit discovery of names and addresses of class members to go forward in litigation. *E.g.; Choate v. State Farm Lloyds*, 2005 WL 1109432, *4

(N.D.Tex. May 05, 2005); *Marks v. Global Mortgage Group, Inc*. 218 F.R.D. 492

(S.D.W.Va. 2003).  Plainly, the law was never intended to shield financial institutions

from legitimate legal claims raised in a class action.  *Martino v. Barnett*, 595 S.E.2d 65,

72 (W.Va. Sup.Ct. 2004).

Second, the personal information about other borrowers being requested here is

not "non-public" information.  Ameriquest's mortgage borrowers are a matter of public

record, because their mortgages are recorded with the appropriate registry of deeds.

These public records include the borrowers name, address, and the amount of the

mortgage.

### 3.    *Objection Based on Undue Burden.*

Ameriquest further objected to Interrogatories No. 2 - 5 on the grounds that they

"improperly call[] for an examination of the specific circumstances of each individual loan

transaction for each borrower in Massachusetts for whom Ameriquest has ever originated a

loan."

Essentially, Ameriquest is arguing that the request is unduly burdensome. Data

regarding borrowers who were charged "Discount Points," as requested in Interrogatory

2, for example, or who were charged a variable rate that could increase but not decrease

from the initial rate, as requested in Interrogatory No. 3, is presumably contained within

Ameriquest's electronic files, and would therefore be readily available.  Such information

is relevant both to the substantive claims and to class certification issues such as

numerosity and commonality (i.e. to what extent Plaintiffs' experience is similar to other

customers). *See* Fed.R.Civ.P. 23(a)(2). If the requested information is not contained in

readily accessible electronic records, the Plaintiffs have offered to discuss a modification

to these requests to obtain necessary information without imposing an undue burden on the Defendant. See, Letter of June 23, 2005, attached to Klein Declaration as Exhibit C.

In addition, an interrogatory is not objectionable simply because it seeks information which requires research and compilation of data. *Hall v. Harleysville Ins. Co.*, 164 F.R.D. 406 (E.D. Pa. 1996); *Naglak v. Pennsylvania State University*, 133 F.R.D. 18 (M.D.Pa. 1990); *American Oil Company v. Pennsylvania Petroleum Products Company*, 23 F.R.D. 680, 683 (D. R.I. 1959). A party asserting such an objection must show specifically how, "despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence revealing the nature of the burden." *Roesberg v. Johns-Manville Corp.* 85 F.R.D. 292, 296-97 (D.C.Pa., 1980), *citations omitted*. A burdensomeness objection "must show specifically how an interrogatory is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden." *Chubb Integrated Systems v. Nat'l Bank of Washington*, 103 F.R.D. 52, 59-60 (D.D.C. 1984). "[T]he mere statement by a party that [an] interrogatory was overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection to an interrogatory." *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982); *Obiajulu v. City of Rochester*, 166 F.R.D. 293, 295 (W.D.N.Y. 1966) (boilerplate objections inconsistent with federal rules). Moreover, if "interrogatories are relevant, the fact that they involve work, research and expense is not sufficient to render them objectionable. *U.S. v. Nysco Laboratories, Inc.* 26 F.R.D. 159, 161-62 (E.D.N.Y., 1960).

Ameriquest has not offered any explanation as to why this request would cause an undue burden. Its failure to articulate the basis for this objection is sufficient reason to reject it, particularly where the information requested is so highly relevant.

**B.    Interrogatories 6-9**

In Interrogatories 6-9[2], the Plaintiffs sought information regarding employees of Ameriquest with knowledge of Ameriquest's lending practices at issue in this case:

> Interrogatory No. 6.   Identify the three employees of Defendant with the most knowledge of the policies, criteria and guidelines that Defendant used in determining the terms (including but not limited to the interest rate and prepaid finance charge, discount points, origination fees, variable rates and underwriting criteria) of mortgage loans that Defendant made in Massachusetts during the Relevant Time Period.

> Interrogatory No. 7.   Identify the three employees of Defendant with the most knowledge of the policies, criteria and guidelines that Defendant used in marketing mortgage loans that Defendant made in Massachusetts during the Relevant Time Period.

> Interrogatory No. 8.   Identify the three employees of Defendant with the most knowledge of the databases used to record information about mortgage loans that Defendant made in Massachusetts during the Relevant Time Period.

> Interrogatory No. 9.   Identify the three employees of Defendant with the most knowledge of employee training programs covering mortgage lending issues utilized by the Defendant during the Relevant Time Period.

> Interrogatory No. 9A.   Identify the three employees of Defendant with the most knowledge of Defendant's policies, criteria and guidelines for complying with state or federal Truth-in-Lending laws.

**1.    *Objection To Providing Information Regarding Putative Class Members.***

Ameriquest initially objected to Interrogatories 6-9A on the grounds that they seek "information pertaining to individual putative class members other than the named

---

[2] Plaintiffs inadvertently included two interrogatories numbered 9. The second Interrogatory No. 9 shall be referred to as 9A.

plaintiffs or information concerning the merits of the putative action) (as opposed to the plaintiffs' individual claims) or concerning whether a class should be certified in the first instance." During the discovery conference Ameriquest's counsel stated that Ameriquest did not object generally to providing information relevant to class certification, and that the Plaintiffs could obtain the names of the appropriate employees by noticing and taking a Rule 30(b)(6) deposition.

Responses to these interrogatories are needed to identify potential deponents who have information regarding both the claims of the named Plaintiffs as well as whether putative class members were treated similarly to the Plaintiffs. This information is relevant to the issue of whether putative class members share common facts and claims and whether Plaintiffs' claims are typical to those of the putative class as required by Fed. R. Civ. P. 23(a)(2) and (3). *See also* cases cited in Section A1, *supra*. Obviously the identity of employees knowledgeable about the issues raised is known to Ameriquest, and can be easily provided. Ameriquest has offered no valid reason why it should not simply respond to these requests, rather than requiring the Plaintiffs to take a deposition to learn the employee's names. Moreover, the Plaintiffs have already attempted to take depositions, but Ameriquest has not cooperated in making the requested witnesses available.

### 2. *Other Objections.*

Ameriquest further objected to these interrogatories on the grounds that they are "overly broad, unduly burdensome, vague and ambiguous, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence," that they call for "disclosure of confidential and proprietary business and financial information of Ameriquest." These

objections are addressed in Sections A2 and A3, respectively, as should be overruled for the same reasons set forth in those sections.

Ameriquest also objected to Interrogatories No. 6 and 7 on the grounds that they "improperly call[] for an examination of the specific circumstances of each individual loan transaction for each borrower in Massachusetts for whom Ameriquest has ever originated a loan."  This objection, which is essentially a claim of undue burden, is addressed generally in Section A3, *supra.* The objection is even less valid in response to these interrogatories asking for the names of employees knowledgeable about policies and criteria used in setting loan terms. Presumably Ameriquest had standard policies in effect and did not set loan terms on a completely *ad hoc* basis. It is hard to imagine that there are not particular employees familiar with these policies, and that Ameriquest cannot identify them without looking through each loan file.

### C.    Interrogatories 11 - 13

Interrogatory 11 asks for lawsuits filed against Ameriquest; Interrogatories 12 and 13 seek information about Ameriquest's business practices for determining the terms of Plaintiffs' loan transactions, and the identity of employees familiar with these practices:

> Interrogatory No. 11.  Identify every lawsuit initiated against Defendant during the Relevant Time Period in any state or federal (including bankruptcy) court in the United States in which a claim or claims have been raised based on Defendant violating any state or federal law.

> Interrogatory No. 12. Describe the policies, criteria, and underwriting guidelines Defendant used in determining the terms (including but not limited to the interest rate and prepaid finance charge, discount points, origination fees, variable rates and prepayment penalties) of Plaintiffs' Transactions with Defendant.

Interrogatory No. 13. Identify all persons who implemented the policies, criteria and underwriting guidelines Defendant used in determining the terms (including but not limited to the interest rate and prepaid finance charge, discount points, origination fees, variable rates) in Plaintiffs' Transactions with Defendant

### 1. Objection Based on Attorney Work Product or Attorney Client Privilege.

Ameriquest objected to Interrogatories Nos. 11–13 on the grounds that each "seeks information that may be protected by the attorney work product doctrine, and/or the attorney client privilege." In Interrogatory No. 11, the Plaintiffs have only requested that Ameriquest identify lawsuits. Lawsuits are a matter of public record and therefore cannot conceivably be protected by attorney work product or attorney client privilege. Interrogatories 12 and 13 seek information about Ameriquest's business practices for determining the terms in Plaintiffs' transactions, which practices are at the core of Plaintiffs complaint. These requests do not seek information about communications between Ameriquest and its attorneys. For the same reasons discussed in Section D2, these objections should be overruled.

### 2. Objections Based on Characterization of "Policies, Criteria, and Underwriting Guidelines" as Determining the Terms of Plaintiffs' Loans.

Ameriquest objected to Interrogatories 12 and 13 on the grounds that they "characterize[s] Ameriquest's 'policies, criteria, and underwriting guidelines' as determining the terms of plaintiffs' loans." This objection is simply baffling. The Plaintiffs are seeking information about how their loan terms were determined. While Ameriquest did provide a set of general underwriting guidelines, these do not explain in any detail how loan terms, including interest rates are determined. It is inconceivable that Ameriquest can operate as a mortgage lending business without having some policies or

guidelines for setting interest rates or other loan terms, despite their apparent claim that they have none.

### 3.    Other Objections.

Ameriquest also objected to these interrogatories on the grounds that they are "overly broad, unduly burdensome, vague and ambiguous, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence," that they call for "disclosure of confidential and proprietary business and financial information of Ameriquest." For the same reasons discussed in Sections A2 and A3, these objections should be overruled.

### D.    Document Requests Nos. 2, 5, 10

These document requests seek information regarding payments of fees or commissions made to Ameriquest employees and others, in connection with the closing of the Plaintiffs' loans:

> <u>Document Request No. 2.</u> Each document that records, reflects, evidences, or relates to payment, fees, commissions, compensation or other remuneration Defendant paid to any person in connection with Plaintiffs' Transactions (including but not limited to cancelled checks that were issued at or after the loan closing).

> <u>Document Request No. 5.</u> Each document that records, reflects, evidences, or relates to any consideration (i.e., money, payment, compensation, fee, charge or any thing of value) paid to an employee in connection with or based on Plaintiffs' transactions.

> <u>Document Request No. 10.</u> Each document Defendant received from or provided to any employee that shows the basis on which Defendant paid commissions to its employees for closing loans or otherwise generating business in Massachusetts.

### 1.    Objections Based on Claim of Confidentiality

Ameriquest objected to these requests, on the grounds, *inter alia*, that the request calls for "disclosure of confidential and proprietary business and financial information of

Ameriquest"; and that the request for information pertaining to employee compensation "calls for confidential private information concerning Ameriquest employees and implicates employee privacy rights that may be protected by federal and state privacy laws."

There can be no dispute that the Plaintiffs are entitled to information regarding payments made from their loan proceeds, as these are the Plaintiffs' own funds.[3] To the extent that the payments were not from the loan proceeds, the information is relevant to the issue of whether Ameriquest employees, or other persons involved in the closing were paid fees or commissions and whether these payments affected the loan terms.

To the extent that the requests include any confidential and proprietary business information, or employee privacy rights, the parties have already subject to a confidentiality order which would protect against the disclosure of this information. Notably, the Plaintiffs are not seeking the total annual compensation to particular employees but rather are seeking only the basis for their compensation.

### 2. *Objection Based on Attorney Work Product or Attorney Client Privilege.*

Ameriquest additionally objected on the grounds that these requests seek "information that may be protected by the attorney work product doctrine, and/or the attorney client privilege." The attorney work product objection here is baseless; the documents requested (copies of cancelled checks, etc.) were not prepared in anticipation of litigation, but rather for purposes of closing the Plaintiffs' loans. *See, In re San Juan Dupont Plaza Hotel Fire Litigation,* 859 F.2d 1007, 1014 (1st Cir. 1988) (work product protects materials prepared with "an eye towards litigation"); Rule 26(b)(3).

---

[3] Ameriquest has provided some cancelled checks in connection with the Plaintiffs' settlements, but is apparently relying on its objections in declining to produce the rest.

With regard to Ameriquest's claim of attorney/client privilege, Ameriquest has failed to comply with the requirements of Rule 26(a)(5) for asserting a claim of privilege. Rule 26(a)(5) provides:

> (5) Claims of Privilege or Protection of Trial Preparation Materials.
>
> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Ameriquest did not describe the nature of the documents in any way, nor did it produce a privilege log, and it is therefore impossible to assess the applicability of the privilege. For this reason alone the objection should be overruled.

### 3. Objection To Providing Information Regarding Putative Class Members.

Ameriquest further objects to Document Request No. 10, on the grounds that it "seeks to discover information pertaining to individual putative class members other than the named plaintiffs, or information concerning the concerning the merits of the putative action (as opposed to the named plaintiffs' individual claims) or concerning whether a class should be certified in the first instance." This information is directly relevant to the issue of Ameriquest's regular practices regarding paying commissions in connection with loan closings, and whether putative class members were treated similarly to the Plaintiffs. This information is relevant to the issue of whether putative class members share common facts and claims and whether Plaintiffs' claims are typical to those of the putative class as required by Fed. R. Civ. P. 23(a)(2) and (3). This type of information is subject to discovery for the reasons set forth in Section A1.

### E.  Document Request No. 9

This request seeks information regarding the rate discount allegedly given to the Plaintiffs in their loan transactions:

> <u>Document Request No. 9</u>.  Each document the Defendant contends supports its position that a rate discount was provided to the Plaintiffs in their Transactions.

### *1. Objection Based On Claim That Request Is A Contention Request.*

Ameriquest objected to this request on the grounds, *inter alia*, that "Fed.R.Civ.P. 34 does not contemplate contention requests for documents. Moreover, Ameriquest objects to the characterization that Ameriquest has set forth the contention described in Request No. 9."  Ameriquest misunderstands the request.  The Plaintiffs are not seeking the basis for any contention made by Ameriquest in its pleadings. Rather, the Plaintiffs are asking for documents which show that the Plaintiffs were given an interest rate discount connected with their payment of "discount points."

### *2. Other Objections.*

Ameriquest further objected to this request on the grounds that it is "overly broad, unduly burdensome, vague and ambiguous, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence," that it calls for "disclosure of confidential and proprietary business and financial information of Ameriquest," and that it "may be protected by the attorney work product doctrine, and/or attorney client privilege." These objections are addressed in Sections A3, A2, and C2 respectively, and should be rejected for the same reasons set forth there.

**F.**    **Document Requests Nos. 8, 11-17, and 19-35.**

These document requests seek information regarding Ameriquest's lending

practices in Massachusetts, including underwriting practices, interest rates and loan terms

offered, loan closing practices, policy and procedures manuals, and employee training

materials:

Document Request No. 8. Each document that records, reflects, evidences or relates to Defendant's policy or practice during the Relevant Time Period of charging discount points to borrowers including, without limitation, rate sheets or other written information used by Defendant's employees to calculate rates and/or rate discounts.

Document Request No. 10. Each document Defendant received from or provided to any employee that shows the basis on which Defendant paid commissions to its employees for closing loans or otherwise generating business in Massachusetts.

Document Request No. 11. Each document Defendant received from or provided to any employee that shows any quota applicable to closing loans or otherwise generating business in Massachusetts.

Document Request No. 12. Each document used by Defendant as a form, guideline, or template for providing information to Massachusetts-based borrowers.

Document Request No. 13. Each document used by Defendant as a form, guideline, or template for receiving information from Massachusetts-based borrowers.

Document Request No. 14. Each document provided or issued to any employee or third party that contains instructions for underwriting loans in Massachusetts.

Document Request No. 15. Each document provided or issued to any employee or third party that contain instructions for closing loans in Massachusetts.

Document Request No. 16. Each document provided or issued to any employee or third party that contains instructions for distributing funds on loans closed in Massachusetts.

Document Request No. 17. Each document provided or issued to any employee or third party that contains instructions for charging points, closing costs or settlement fees on loans closed in Massachusetts.

Document Request No. 19. Each document that records, reflects, evidences, or relates to any policy, criteria, or underwriting guidelines that Defendant used during the Relevant Time Period in determining the terms offered to persons who made applications for loans.

Document Request No. 20. Each document that records, reflects, evidences, or relates to any policy that Defendant used during the Relevant Time Period in determining the scope or nature of the right of rescission under the state or federal Truth-in Lending Act.

Document Request No. 21. Each document (including, but not limited to, agreements, contracts, underwriting guidelines, rate sheets and pricing sheets) that records, reflects, evidences, or relates to any terms and conditions governing loans made in Massachusetts during the relevant time period.

Document Request No. 22. Each document that you received from or provided to any state or federal government official or agency relating to your compliance or alleged or possible noncompliance with state or federal law during the Relevant Time Period.

Document Request No. 23. Each document that records, reflects, evidences, or relates to any investigation conducted by any federal government official or agency to determine whether you had complied or were complying with state or federal law during the Relevant Time Period.

Document Request No. 24. Each document that records, reflects, evidences, or relates to any discussion of your business practices by a News Reporting Establishment.

Document Request No. 25. Copies of all of Defendant's data archive tapes backing up its database for mortgage loans (or any other database that includes the information listed in the subparts below) that were either made in Massachusetts during the Relevant Time Period or which cover Massachusetts accounts that were active during the Relevant Time Period.  The tapes must include the following information, to the extent that it is stored electronically:

  a.  the primary borrower's name and address;
  b.  the co-borrower's name and  address;
  c.  the loan number;
  d.  the source of the application and the terms on which the borrower applied for credit;
  e.  the credit score and credit tier assigned to the borrowers including any exception codes;

f.  the loan program applicable to the account;

g.  the individual terms applicable to the account, both at the start of the contract, and during the life of the loan including, without limitation, the number or amount of any points paid, the amount of any discount to the rate, the term of the loan, the "contract APR", the amount of finance charges, the amount financed, the amount of the monthly payment, the number of months the loan is to be paid, and the date of the first payment;

h.   the amount of Commissions paid to any employee;

i.  whether the loan was an initial advance by Ameriquest or the refinancing of an earlier Ameriquest loan;

j.  documents sufficient to identify the data fields in the electronic data tapes and their contents, along with their order in data tape, including without limitation, all documents explaining the abbreviations used for the data fields.

Document Request No. 26. For 250 randomly selected mortgage loans made in Massachusetts during the relevant time period, copies of the Truth in Lending disclosures, the note, the mortgage, notices of right to cancel, the settlement sheet, disclosure statements, notice of adverse action, and any other documents you contend were provided to the borrowers in said loans at the time of loan closing.

Document Request No. 27. Each document concerning any variable rate program offered by the Defendant during the Relevant Time Period.

Document Request No. 28. Each document concerning any program, process or underwriting guideline the Defendant uses to assign rates to borrowers based on their credit characteristics or credit score.

Document Request No. 29. Each document concerning any policy, program, or practice with respect to marketing of Ameriquest loans to its existing customers.

Document Request No. 30. Each document, video tape or computer program used by the Defendant to train its Massachusetts-based on employees on their responsibilities in connection with mortgage loans made in Massachusetts.

Document Request No. 31. Each document, video tape or computer program used by the Defendant to train its employees in connection with marketing of Ameriquest loans to its existing customers.

Document Request No. 32. All policy and procedure manuals or other compilations used to administer Defendant's mortgage lending program.

Document Request No. 33. All advertisements, flyers or promotional materials used to market Defendant's mortgage lending program in Massachusetts.

Document Request No. 34. All training materials that any of your employees have received from any source concerning compliance with state or federal law during the Relevant Time Period.

Document Request No. 35. All documents identifying or discussing the types of data relating to Defendant's residential mortgage loan business stored, recorded, or maintained by Defendant in any electronic or computer databases.

### 1. Objection To Providing Information Regarding Putative Class Members.

Ameriquest objected to each of these requests on the grounds that they seek "to discover information pertaining to individual putative class members other than the named plaintiffs, or information concerning the concerning the merits of the putative action (as opposed to the named plaintiffs' individual claims) or concerning whether a class should be certified in the first instance." This objection is addressed *supra* at Section A1. The Plaintiffs are entitled to this information because it is relevant both to the claims of the named Plaintiffs as well as to the issue of whether putative class members were treated similarly to the Plaintiffs. This information is relevant to the issue of whether putative class members share common facts and claims and whether Plaintiffs' claims are typical to those of the putative class as required by Fed. R. Civ. P. 23(a)(2) and (3).

### 2. Objection Based on Undue Burden.

Ameriquest also objected to these requests on the grounds that the requests are "overly broad, unduly burdensome, vague and ambiguous, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence." For the same reasons set forth in Section A3, *supra,* this objection should be overruled. Each of the document

requests is directly relevant to the claims alleged in Plaintiffs' original and First Amended Complaints. Document Request 8, for example, asks for documents relating to Ameriquest's policy or practice of charging discount points to borrowers, which is one of several loan terms that Plaintiffs' allege Ameriquest failed to fully disclose. (Amended Complaint, ¶¶154, 155). Part of the class definition for the "deceptive loan terms" class (Class I) is all residents of Massachusetts "that paid fees itemized by Ameriquest as "loan discount fees." Thus, this request is relevant both to the merits of the named Plaintiffs' claims as well as to issues pertaining to class certification.  Ameriquest has provided no explanation as to the undue burden producing these documents would allegedly cause.

### 3. *Objections Based on Claim of Confidentiality.*

Ameriquest objected to each of these Document Requests on the grounds that they seek "the disclosure of confidential and proprietary business and financial information of Ameriquest." As discussed in Section A2, *supra,* the Confidentiality Order will protect disclosure of any confidential information in this case.

Ameriquest objected to Document Requests 22, 23, and 24, documents received from government agencies, investigations by government agencies, and news reports,  "to the extent that [they] call[] for confidential private information concerning Ameriquest employees and implicate[] employee privacy rights that may be protected by federal and state privacy laws."  The Confidentiality Order already in place would also protect this information.

Ameriquest also objected to Document requests 25, 26, and 28 "to the extent that [they] seek[] the disclosure of private borrower information that is protected by federal and state privacy laws."  For all of the same reasons discussed supra in Section A2, this

information is discoverable under the exception in Gramm Leach Bliley for judicial

process and other applicable legal requirements.

### 4.    *Objections Based on Attorney Work Product or Attorney Client Privilege.*

Ameriquest also raised attorney-client and/or work product privilege as an

objection to every on of these Document Requests. As above, the work product privilege

protects only documents prepared for litigation, which none of the requested documents

are.  *See*, Section D2, *supra*. And again, because Ameriquest has never produced a

privilege log there is no way for Plaintiffs to evaluate its claim of attorney client

privilege.

### 5.   *Failure to Produce Documents in Accordance with Responses.*

Finally, in response to Document Requests Nos. 30 and 34, Ameriquest agreed to

produce its training materials in connection with Massachusetts loans during the statute

of limitations applicable to this action.  As of this date, Ameriquest has not produced any

these training materials.

### G.    General Objections

### 1.  *Statute Of Limitations*

Ameriquest objected to Interrogatories 2-4, and 6-13 and virtually all of

Document Requests except 1-4, 6-7 and 9, on the grounds, *inter alia*, that they seek

information for a time period other than that which is within the applicable statute of

limitations.

Nothing in the Federal Rules of Civil Procedures imposes a limitation that

requires a party to seek information solely for a time period which encompasses the

statute of limitations for the claims raised in the complaint. The definition of the Relevant

Time Period contained in the discovery requests, as one which "begin[s] at the time that [Ameriquest] first began making mortgages secured by real estate in the Commonwealth of Massachusetts and shall continue up through the present," is appropriate as the Plaintiffs are entitled to information which shows Ameriquest's regular business practices.[4]

### 2. Vague And Ambiguous Terms

Ameriquest objected to requests which include terms and/or phrases that it claimed are not defined and are vague and ambiguous. These terms include: "any other person or entity, " [Request No. 4], "without limitation," [Request No. 8], "written information," [Request No. 8], "initial credit application," [Interrogatory No. 4], "determining the terms," [Interrogatories Nos. 6, 12, 13], "made," [Interrogatories Nos. 6, 7], "most knowledgeable," [Interrogatories Nos. 6, 7, 8, 9, 9A], "marketing mortgage loans," [Interrogatory No. 7], "used to record information," [Interrogatory No. 8], "circumstances of," [Interrogatory No. 10], "implemented," [Interrogatory No. 13], and "programs covering mortgage lending issues utilized by," [Interrogatory No. 9].

These terms and/or phrases should be given their ordinary meaning, which is self-explanatory given the context in which the terms are used. *See, Roesberg v. Johns-Manville Corp.* 85 F.R.D. 292, 298 (D.C.Pa., 1980) ("Since plaintiffs have not assigned a particular meaning to these phrases [used in discovery requests], the ordinary, everyday usage and meaning must have been intended"). *In re Mahoney Hawkes, LLP,* 289 B.R. 285, 299 (Bankr.D.Mass 2002) (*noting* that the Supreme Court and First Circuit use the ordinary meaning of terms in interpreting the Bankruptcy Code).

---

[4] Plaintiffs believe that Ameriquest has been doing business in Massachusetts for less than 10 years.

### 3. Objections on Grounds that Requests Seek Documents Not in Defendant's Possession or Control.

Ameriquest objects generally to all of Plaintiffs' document requests, and particularly to Requests Nos. 1–3, "to the extent that they seek the identification of documents that are not in the possession, custody, or control of Ameriquest."   In their requests, however, the Plaintiffs make clear that they are only seeking documents within the possession, custody, and control of Ameriquest. *See* Definition No. 4, "Document." In its responses, Ameriquest never identifies which requested documents may not be in its possession, custody, or control, and Ameriquest makes multiple objections along with this objection. Thus, it is impossible for the Plaintiffs to know whether Ameriquest does not have the requested documents, they do not exist, or Ameriquest has them and is objecting to producing them.  Without more information, it is impossible for Plaintiffs to respond.

### Failure to Make Witnesses Available for Depositions

On September 2, 2005, the Plaintiffs served seven notices of deposition for Ameriquest employees and pursuant to Fed. R. Civ. P. 30(b)(6).  Klein Declaration at ¶13. The depositions were scheduled for September 28-30. Klein Declaration at ¶13. At the September 20, 2005 discovery conference, Defendant's counsel first informed Plaintiffs that the witnesses could not be produced for deposition on the scheduled dates due to scheduling conflicts, but agreed to provide dates on which the noticed depositions could be held. Klein Declaration at ¶¶16, 18.

Based on this agreement, Plaintiffs agreed to reschedule the depositions for dates convenient to the Defendant and its counsel. Klein Declaration at ¶19. The September 20, 2005 discovery conference was continued to October 12, 2005. Klein Declaration at ¶22.

On October 12, 2005, Defendant's counsel asked to continue the discovery conference until October 26, 2005 based on his inability to confer with his client on discovery issues. Klein Declaration at ¶22. Plaintiffs agreed as an accommodation to Defendant's counsel and in light of a further agreement to jointly pursue a motion to extend the discovery period. Klein Declaration at ¶22.

On October 26, 2005, Defendant's counsel agreed to provide dates for depositions, as well as additional discovery, no later than October 31, 2005. Klein Declaration at ¶23. Defendant's counsel did not provide any dates for depositions or responses on or before October 31, 2005. Klein Declaration at ¶24.

Ameriquest has never asserted any reason why the Plaintiffs should not be allowed to depose the Ameriquest employees listed in the deposition notices, nor could there be any. Ameriquest has simply failed to make the witnesses available.

### Conclusion

For all of the foregoing reasons, Ameriquest's objections should be overruled and Plaintiff's Motion to Compel should be granted as to all of Plaintiff's requests.

> Respectfully Submitted,
> Isabelle and David Murphy et. al.
> By their attorneys,
>
>
>  /s/ Gary Klein
> Gary Klein BBO # 560769
> John Roddy BBO # 424240
> Elizabeth Ryan BBO # 549632
> Shennan Kavanagh BBO # 655174
> Roddy, Klein & Ryan
> 727 Atlantic Ave., 2nd floor
> Boston, MA  02111
> Tel. 617-357-5500 x 15
> Fax. 617-357-5030

Dated: December 8, 2005                klein@roddykleinryan.com