## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ISABELLE M. MURPHY, | ) |
| DAVID R. MURPHY, | ) |
| LYNN GAY, | ) |
| DAVID M. WAKEFIELD, and | ) |
| JANET WAKEFIELD, | ) |
| | ) |
| Individually and on behalf of all others | ) CIVIL ACTION NO. 04-12651-RWZ |
| similarly situated, | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| AMERIQUEST MORTGAGE COMPANY, | ) |
| Defendant. | ) |

### DEFENDANT AMERIQUEST MORTGAGE COMPANY'S
### MOTION TO ENLARGE PAGE LIMIT ON AMERIQUEST'S
### OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

Pursuant to Local Rule 7.1(B)(4) defendant Ameriquest Mortgage Company

("Ameriquest") respectfully requests that this Court enlarge the page limit on Ameriquest's

Memorandum in Opposition to Plaintiffs' Motion to Compel from twenty to twenty-seven pages.

As reasons therefore, Ameriquest states:

1.    On December 2, 2005 Ameriquest was served with plaintiffs' Motion to Compel

(Docket No. 26) (plaintiffs' "Motion").

2.    Prior to filing the Motion, the parties had discovery conferences in an attempt to

further narrow the disputed issues raised by plaintiffs' discovery requests.  Although the parties

have conferred, there remain eleven general categories in dispute, all of which require significant

briefing by Ameriquest.  Plaintiffs' Memorandum of Law in Support of Motion to Compel

details the comprehensive and sweeping discovery still being sought by the plaintiffs.

3.    Prior to the entry of the Motion to Compel and Memorandum in Support thereof,

the Court granted plaintiffs' Motion for Leave to File Memorandum In Support Of Motion To

Compel Exceeding Page Limits.  The Court granted plaintiffs' Motion for Leave to Exceed Page

Limits permitting plaintiffs to file a twenty-six page memorandum of law.

4.    According to Local Rule 7.1(B)(4), no party may file any memorandum which

exceeds twenty numbered pages without leave of Court.  In order to adequately respond to

plaintiffs' twenty-six page memorandum of law, Ameriquest requests a reasonable extension of

the page limit, from twenty pages to twenty-seven pages for its opposition brief, in order to

ensure that Ameriquest's memorandum in opposition will fully address the issues raised in

plaintiffs' Motion to Compel and Memorandum in support thereof.

5.    Plaintiffs will not be prejudiced by the enlargement requested by Ameriquest.

WHEREFORE, Defendant Ameriquest Mortgage Company respectfully requests that its

Motion to Enlarge the Page Limit be granted.

Respectfully submitted,

AMERIQUEST MORTGAGE COMPANY

By its attorneys,

/s/ *R. Bruce Allensworth*

R. Bruce Allensworth (BBO #015820)
    ballensworth@klng.com
Phoebe S. Winder (BBO #567103)
    pwinder@klng.com
Brian M. Forbes (BBO #644787)
    bforbes@klng.com
Ryan M. Tosi (BBO #661080)
    rtosi@klng.com
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
75 State Street
Boston, MA 02109
617-261-3100
617-261-3175 (fax)

Dated: December 16, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2005, I served a true copy of the foregoing document by electronic filing upon the following:

Gary Klein, Esq.
Elizabeth Ryan, Esq.
Shennan Kavanagh, Esq.
Roddy, Klein & Ryan
727 Atlantic Ave., 2nd Floor
Boston, MA 02111

/s/ *R. Bruce Allensworth*

_____

R. Bruce Allensworth

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ISABELLE M. MURPHY, | ) |
| DAVID R. MURPHY, | ) |
| LYNN GAY, | ) |
| DAVID M. WAKEFIELD, and | ) |
| JANET WAKEFIELD, | ) |
| | ) |
| Individually and on behalf of all others | ) CIVIL ACTION NO. 04-12651-RWZ |
| similarly situated, | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| AMERIQUEST MORTGAGE COMPANY, | ) |
| Defendant. | ) |

## DEFENDANT AMERIQUEST MORTGAGE COMPANY'S
## OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

Defendant Ameriquest Mortgage Company ("Ameriquest") respectfully submits this memorandum in opposition to plaintiffs' Motion to Compel Responses to Requests for Production of Documents and Interrogatories, and to Make Witnesses Available for Depositions (plaintiffs' "Motion"). For the reasons set forth below, the Motion should be denied.

### Summary and Factual Background

Plaintiffs Isabelle and David Murphy, Lynn Gay, David and Janet Wakefield,[1] and the class of individuals they seek to represent, allege that Ameriquest purportedly engaged in deceptive acts in connection with their mortgage transactions. Plaintiffs generally allege, among other things, that Ameriquest engaged in bait and switch tactics, failed to make timely and accurate written disclosures, failed to make timely and accurate written changes in loan terms, failed to provide Ameriquest homeowners refinancing Ameriquest loans with accurate notice of

---

[1] The pending Second Amended Complaint names Harriet Holder and Frank and Martha White as additional plaintiffs.

right to cancel forms, and charged discount points without providing a discount.  Ameriquest

denies plaintiffs' claims.  In the Court's Scheduling Order dated March 14, 2005 (Docket No.

13), the Court limited discovery to issues of class certification. To that end, Ameriquest has

already produced 4,400 pages of documents to plaintiffs and continues to produce additional

documents.  Plaintiffs, however, now move to compel on the entirety of its discovery requests,

which go well beyond any reasonable scope necessary to address class certification or the merits

of the named plaintiffs' individual claims.

On June 3, 2005, prior to the entry of a Stipulation and Confidentiality Order, Ameriquest

produced non-confidential documents from the named plaintiffs' loan files, Bates Numbered

AMC 00001 through AMC 01490.  On June 9, 2005, Ameriquest timely served Responses

Plaintiffs' First Set of Requests for the Production of Documents and its Responses to Plaintiffs'

First Set of Interrogatories.  Copies of Ameriquest's responses were attached to plaintiffs'

Motion to Compel as Exhibits A and B respectively.  On August 22, 2005, after the parties had

agreed upon the form of the Stipulation and Confidentiality Order, Ameriquest produced the

confidential documents from the named plaintiffs' loan files, along with underwriting materials

and sections of its policies and procedures manual concerning Massachusetts lending

requirements, the borrower's right to cancel, Ameriquest's "Best Practices" policy and

Ameriquest's policies and procedures manual regarding compliance with federal laws and

regulations with respect to loan origination, Bates Numbered AMC 01491 through AMC 03200.

On November 18, 2005, Ameriquest produced additional documents regarding the named

plaintiffs' loan transactions, Bates Numbered 003201 through 004418.[2]  Ameriquest is

continuing to gather information and documents responsive to plaintiffs' discovery requests and

---

[2]     Ameriquest has also produced the loan files for Harriet Holder and Frank and Martha
White, the individuals named as additional plaintiffs in the pending Second Amended Complaint.

unless subject to Ameriquest's objections, Ameriquest will continue to supplement its production. Significantly, Ameriquest has already produced documents that are most relevant to plaintiffs' claims, that is, each named plaintiffs' loan files and the disclosures made to each plaintiff.

On September 20, 2005, counsel for the parties had a lengthy discussion regarding Ameriquest's objections to plaintiffs' Document Requests and Interrogatories. See Allensworth Decl. at ¶ 3. In a continuing attempt to engage in a good faith effort to narrow the requested discovery, counsel for Ameriquest consulted with its client contacts in the legal department at Ameriquest with respect to plaintiffs' counsel's request for additional documents and for a sampling of loan files of putative class members, offering to entertain a proposal to produce specific documents for which plaintiffs' might identify a particular need. See Declaration of R. Bruce Allensworth dated December 16, 2005 at ¶ 3 (hereinafter "Allensworth Decl."). Nonetheless, counsel for Ameriquest alerted counsel for plaintiffs to the logistical difficulties inherent in responding fully to plaintiffs' requests, calling as it did for a huge volume of documents most of which were not reasonably calculated to lead to the discovery of admissible evidence in the case. See Allensworth Decl. at ¶ 4.

In light of the parties' continued attempt to resolve discovery issues, on October 28, 2005, the parties filed a Joint Motion To Further Extend the Case Scheduling Deadlines. See Docket No. 24. In the October 28 Joint Motion, the parties notified the Court that:

1.      The parties have been working diligently to resolve Defendant's objections to Plaintiffs' discovery requests. The parties have commenced, but not completed, a discovery conference to resolve their disputes and have made progress towards this end.

2.      The parties need additional time to complete discovery relating to class certification in order to prepare their motions and oppositions.

3.      The parties have been delayed due to complicated issues about confidentiality in the context of a class case.

4.      The parties are also awaiting a ruling on the Plaintiffs' Motion for Leave to File an Amended Complaint (Docket No. 17).  The result of that motion affects the scope of pending discovery.

5.      Due to scheduling conflicts, depositions have been noticed, but not completed.

6.      There is a proceeding pending before the Judicial Panel on Multi-District Litigation that may result in transfer and consolidation of this case with others pending in various jurisdictions.  The parties expect resolution of the MDL proceeding within thirty (30) days.[3]  The parties are concerned that transfer after the close of the class discovery period in this case may adversely affect scheduling options in the transferred proceeding and/or lead to unnecessary duplication of efforts.

See October 28, 2005 Joint Motion (Docket No. 24); Allensworth Decl. at ¶ 7.

After the filing of the Joint Motion to Further Extend Case Scheduling Deadlines, and after counsel for Ameriquest engaged in a number of discussions with Ameriquest personnel regarding discovery issues in this case, both the Ameriquest in-house lawyer in charge of this case and the Ameriquest paralegal in charge of collecting and coordinating information and documents left the employ of Ameriquest and Ameriquest was obliged to start anew with persons unfamiliar with the case and the issues presented.  See Allensworth Decl. at ¶ 8.  This temporarily delayed formulating discovery responses and gathering and production of documents to its counsel.  See Allensworth Decl. at ¶ 8.  Shortly thereafter, counsel for plaintiffs filed plaintiffs' motion to compel which, we note, shows no attempt to compromise in any of the discovery requests that they have promulgated.  Neither counsel for Ameriquest nor Ameriquest had any intent to cause delay or problems with discovery.  See Allensworth Decl. at ¶ 10.

Although some issues were resolved by counsel for the parties during their discovery

---

[3]      To date, Judicial Panel on Multi-District Litigation has not ruled on the pending motion to transfer and consolidate.

conference, several of plaintiffs' discovery requests, including those that are the subject of the Motion are simply not relevant to the "subject matter" of this action, i.e., the origination of the named individual plaintiffs' mortgage loans and issues directed to class certification. Plaintiffs' Motion seeks documents and information regarding eleven general categories: (1) identification and the production of documents of members of the putative class; (2) identification of Ameriquest employees with knowledge of the lending practices at issue in this case; (3) identification and the production of documents regarding employee and third party compensation policies; (4) documents regarding Ameriquest's lending policies and practices; (5) documents regarding Ameriquest as reported by "news reporting agencies"; (6) documents regarding Ameriquest's computer archiving and storage system; (7) documents regarding Ameriquest's marketing practices; (8) documents regarding Ameriquest's training practices; (9) documents regarding Ameriquest's "programs"; (10) the use of "general blanket objections"; and (11) the purported failure to provide dates for previously noticed depositions.

With respect to dates for depositions which plaintiffs seek to compel, plaintiffs had scheduled six individual depositions and a 30(b)(6) deposition covering ten general topics of examination. Counsel discussed those depositions shortly after the time that they were noticed. Ameriquest's counsel's understanding from those conversations that the depositions were noticed in anticipation of the then-current case management deadlines, that they were not going to go forward on those dates, that they would be rescheduled after discovery disputes over interrogatories and document requests were resolved and that counsel anticipated jointly asking the Court to enlarge the time periods in the case management order. Ameriquest did not refuse to go forward with depositions. See Allensworth Decl. at ¶ 6.

The discovery rules do not contemplate an order compelling discovery depositions where

those depositions have been put off by agreement.  If plaintiffs wish to agree on a  schedule for 30(b)(6) depositions prior to the resolution of other discovery disputes, Ameriquest will make a witness or witnesses available, but would object to having to produce those witnesses a second time after the disagreements over document requests and interrogatories are resolved.  Similarly, Ameriquest will attend the other depositions on a mutually-agreeable date, with the understanding that those depositions should not be repeated once the dispute over documents and interrogatories is resolved.

Ameriquest does not object to producing a privilege log.  Ameriquest does not object to producing its training materials regarding loan origination.  As stated above, counsel for Ameriquest was in the process of consulting with its client regarding these issues and preparing to produce the same prior to Ameriquest's restructuring.  Moreover, Ameriquest has already produced substantial documentation regarding plaintiffs' individual loan transactions.

A cursory reading of the remaining discovery requests subject to plaintiffs' Motion and the general categories of documents identified above as numbers 3, 5, 6, 7, 9 and 10, however, illustrates that plaintiffs are seeking massive disgorgement of information and documents not related to the individual loans at issue in this action and not within the scope of this Court's March 14, 2005 Scheduling Order nor within the parties' Joint Statement for Scheduling Conference.[4]  The information plaintiffs are seeking to discover from Ameriquest goes well

---

[4]  As stated in the Joint Statement for Scheduling Conference, "[f]or reasons of judicial economy and efficiency, the parties propose that discovery be conducted in two phases.  Phase I discovery should be directed to *the issue of class certification and the merits of the named Plaintiffs' individual claims*, including discovery concerning the named Plaintiffs' transactions with Ameriquest, so that the Court may determine as soon as practicable whether this action meets the standards under Rule 23 of the Federal Rules of Civil Procedure for class action treatment….Following resolution of the class certification issue, the parties request that a second scheduling conference be held to address what discovery, if any, remains in the second phase of

beyond the merits of the plaintiffs' individual claims and the issue of whether plaintiffs' claims are suitable for class treatment.

Many, if not all of the requests by plaintiffs call for *each and every* document that may have been distributed to *each and every* Ameriquest employee or *each and every* third party – such a request, by definition, is overly broad and unduly burdensome. By its nature, class certification looks at issues which satisfy elements of commonality, typicality and predominance and should not require the production of any document that might fit within a category that may have been produced to any person employed by Ameriquest or otherwise. To the extent that plaintiffs have requested the production of uniform policies and manuals concerning topics relevant to the instant litigation, Ameriquest has agreed to produce those documents. But, by and large, the requests by plaintiffs go well beyond these parameters and improperly so.

Thus, the remaining discovery that is the subject to plaintiffs' Motion seeks information that is (1) not "relevant" within the meaning of Fed. R. Civ. P. 26(b) to either parties' claims or defenses in this action; (2) will not help to establish the existence of any fact of "consequence to the determination of the action" within the meaning of Fed. R. Evid. 401; and (3) the production of the documents sought by plaintiffs concerning all of the individual Massachusetts borrowers not only is beyond the scope of the Court's case management order, but also will implicate privacy rights of individuals not parties to this action, whose rights may be violated if production is made. As discussed in more detail below, a threshold showing of the relevance is wholly absent from both the requests themselves and plaintiffs' Motion. For these reasons, and for the reasons discussed more fully below, plaintiffs' Motion should be denied.

## Argument

---

discovery….Phase II discovery would be directed at the *merits of Plaintiffs' class claims* and would only be conducted if the Court certifies a class under Rule 23" (emphasis added).

I.   **PLAINTIFFS HAVE NOT MADE A THRESHOLD SHOWING THAT THE REQUESTED DISCOVERY COVERED BY THE MOTION TO COMPEL IS RELEVANT TO PLAINTIFFS' CLAIMS IN THIS ACTION**

Plaintiffs attempt to justify the broad panoply of discovery being sought with the conclusory statement that "[d]iscovery as to policies, practices, trainings and compensation is necessary in order to establish [the alleged] common practices, and that borrowers were treated similarly and were similarly affected." Pls. Brief at 3. That plaintiffs "expect" discovery to reveal alleged evidence of common policies, practices and training, does not make the information or documents related to other Ameriquest customers any more relevant. Therefore, plaintiffs' Motion should be denied.

While Rule 26(b)(1) allows parties to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party," this Court may limit discovery if it determines that no relevant factual basis for the requested discovery exists, or where the burden or expense of the proposed discovery outweighs its likely benefit. See Fed. R. Civ. P. 26(b)(2); Pedraza v. Holiday Housewares, Inc., 203 F.R.D. 40, 42 (D. Mass. 2001) (denying motion to compel where discovery sought evidence of pattern of discrimination; request was in nature of "fishing expedition") (citing Joslin Dry Goods Co. v. EEOC, 483 F.2d 178, 183-84 (10th Cir. 1973) ("[a] vague possibility that loose and sweeping discovery might turn up something suggesting that the [defendant's actions were illegal] does not show particularized need and likely relevance that would require moving discovery beyond the natural focus of the inquiry")). "Discovery is not a 'fishing expedition'; parties must disclose some relevant factual basis for their claim before requested discovery will be allowed." Hoffman v. Reali, 973 F.2d 980, 987 (1st Cir. 1992) (citing Milazzo v. Sentry Ins., 856 F.2d 321, 322 (1st Cir. 1988)). Plaintiffs have failed to make the required threshold showing that any of the requests in dispute relate to the origination of the named plaintiffs' loans.

For example, plaintiffs allege that Ameriquest engages in "bait and switch tactics," which Ameriquest denies.  Plaintiffs claim that they need discovery of every loan originated by Ameriquest so that they can demonstrate that Ameriquest engaged in "bait and switch" tactics to all or some of these borrowers.  As argued below in more detail with respect to plaintiffs' requested sampling of loan files, if plaintiffs cannot establish that they have suffered from bait and switch tactics, they certainly cannot establish that the class suffered from such tactics by attempting to sift through the loan files of all other Massachusetts borrowers.  If plaintiff cannot make such a showing on the basis of their own transactions, they do not have standing to represent any purported "bait and switch" class and predominance cannot be established if plaintiffs' need an individualized loan-by-loan inquiry of absent class members' files to prove any of their claims.

## II.     ISSUES RELATED TO PLAINTIFFS' INTERROGATORIES

### A.     Information Regarding the Identity of Putative Class Members

Plaintiffs' Interrogatories seek detailed information regarding the name, home address and loan number of putative class members in Massachusetts who have ever obtained a mortgage loan from Ameriquest.  Specifically, plaintiffs made the following requests:

Interrogatory No. 1:  Identify all persons who obtained a mortgage loan from Defendant in Massachusetts during the Relevant Time Period and provide the date of the loan.

Interrogatory No. 2:  Identify all persons who obtained a mortgage loan from Defendant in Massachusetts during the Relevant Time Period who paid a fee denominated by the Defendant as "Discount Points" and state the dollar amount of said fee and the number of points paid.

Interrogatory No. 3:  Identify all persons who obtained a mortgage loan from Defendant in Massachusetts during the Relevant Time Period whose loan includes a provision for a variable rate that can increase but cannot decrease from the interest rate in effect on the date of the transaction.

<u>Interrogatory No. 4</u>:  Identify all persons who obtained a mortgage loan from Defendant in Massachusetts during the Relevant Time Period who did not receive a loan on the terms reflected in the initial credit application.

<u>Interrogatory No. 5</u>:  Identify all persons who obtained a mortgage loan from Defendant in Massachusetts during the Relevant Time Period and then refinanced said mortgage loan with a new loan from Ameriquest.

During the parties' Rule 37 conference, in an attempt to more narrowly tailor the overly broad requests, plaintiffs' counsel was asked what exactly they are looking for in connection with these Requests.  Plaintiffs' counsel responded that they are entitled to discover information regarding the number and identity of putative class members.  The parties' Joint Statement for Scheduling Conference and the Court's Scheduling Order, however, specifically precludes such requests.  Moreover, the broad nature of plaintiffs' requests suggests that they are not so narrowly tailored.  First, Ameriquest objects to each of these interrogatories on the grounds that each is overly broad and each seeks information that is neither relevant to plaintiffs' claims nor reasonably calculated to lead to the discovery of admissible evidence.  For Ameriquest to identify the persons requested would require a loan-by-loan search of all of the loans it has originated in Massachusetts, which would be incredibly burdensome, disruptive and expensive.

Second, Ameriquest objects to these requests on the grounds that they are premature to the extent that they seek to discover information pertaining to individual putative class members other than the named plaintiffs or information concerning the merits of the putative class action (as opposed to the named plaintiffs' individual claims) or concerning whether a class should be certified in the first instance.  At present, the issues that are pertinent to this case are (1) whether plaintiffs' claims are suitable for class certification; and (2) whether the plaintiffs' individual claims are meritorious.  The information sought by plaintiffs has no bearing on either of these issues.  For example, the information sought in each of these interrogatories is not necessary to

obtain a class list or to determine commonality, typicality or numerosity. Instead, the interrogatories seek the identification of all persons who obtained a mortgage from Ameriquest in Massachusetts since Ameriquest's inception. Not only are such requests overly broad and unduly burdensome, they seek information that would only be relevant to the merits of the claims of the putative class members. Such discovery is entirely premature. Consistent with this stage of the litigation, Ameriquest has produced the file and account history of the named plaintiffs and the plaintiffs identified in the pending Second Amended Complaint.

Third, plaintiffs have offered no compelling reason for needing to know the name, address and loan number of each Ameriquest borrower in Massachusetts that received a loan with a variable interest rate, a loan containing "discount points," a loan where the terms changed from the initial application or loans that were refinanced with Ameriquest. The identity of the mortgagors whose loans Ameriquest originated services is protected by federal, and possibly state, privacy laws. See e.g., 15 U.S.C. § 6802. Absent a Court order, Ameriquest is not at liberty to disclose the names and addresses of its borrowers. Any need that plaintiffs may have for the identity and addresses of mortgagors of a class that is not certified does not outweigh the privacy concerns or, indeed, that the information has no relevance to the litigation in its current stage. See Fed. R. Civ. P. 26(b) (discovery is limited to that which is relevant to the claim or defense of any party).

### B. Identification of Lawsuits Against Ameriquest and Information Regarding Ameriquest's Business Practices

Plaintiffs' Interrogatories seek detailed information regarding the identification of all lawsuits filed against Ameriquest and detailed information regarding Ameriquest's business practices. Specifically, plaintiffs made the following requests:

Interrogatory No. 11: Identify every lawsuit initiated against Defendant during the Relevant

Time Period in any state or federal (including bankruptcy) court in the United States in which a claim or claims have been raised based on Defendant violating any state or federal law.[5]

Plaintiffs argue that Ameriquest should be compelled to identify every lawsuit against Ameriquest throughout the federal courts of the United States where it has been sued under any state or federal law since Ameriquest began doing business. Those lawsuits are not brought by the same plaintiffs that have brought this lawsuit and they simply do not pertain to the plaintiffs' individual claims in this action. Significantly, plaintiffs' motion is completely devoid of a threshold showing that the information sought by this request is relevant to the pending litigation and simply states that they are entitled to know each time Ameriquest has been sued since it began doing business because "[l]awsuits are a matter of public record." Pls. Brief at 13. Other lawsuits are not relevant nor likely to lead to the discovery of admissible evidence. Interrogatory No. 11 represents nothing more than a fishing expedition that plaintiffs have made no attempt to justify the need for such information.

<u>Interrogatory No. 12</u>: Describe the policies, criteria, and underwriting guidelines Defendant used in determining the terms (including but not limited to the interest rate and prepaid finance charge, discount points, origination fees, variable rates and prepayment penalties) of Plaintiffs' Transactions with Defendant.

Ameriquest objects to this interrogatory document on the grounds that it is overly broad and seeks information that is neither relevant to plaintiffs' claims nor reasonably calculated to lead to the discovery of admissible evidence. Subject to this objections, Ameriquest has already produced documents responsive to this request such as sections from its policies and procedures

---

[5] Plaintiffs also seek to compel Ameriquest to produce "Each document that you received from or provided to any state or federal government official or agency relating to your compliance or alleged or possible noncompliance with state or federal law during the Relevant Time Period," <u>see</u> Request No. 22 and "Each document that records, reflects, evidences, or relates to any investigation conducted by any federal government official or agency to determine whether you had complied or were complying with state or federal law during the Relevant Time Period" <u>see</u> Request No. 23. In responding to Request Nos. 22 and 23, Ameriquest incorporates its Response to Interrogatory No. 11.

manual regarding the interest rate and regarding discount points which it used in Massachusetts

during the period encompassed by the statute of limitations applicable to the claims in this

action, at Bates numbers AMC 03026 and AMC 03028 through AMC 03029.

Interrogatory No. 13:  Identify all persons who implemented the policies, criteria and
underwriting guidelines Defendant used in determining the terms (including but not limited to the
interest rate and prepaid finance charge, discount points, origination fees, variable rates) in
Plaintiffs' Transactions with Defendant.

Subject to and without waiving the objections in its Responses to plaintiffs'

Interrogatories, Ameriquest will identify certain individuals responsive to this request.

## III.    ISSUES RELATED TO PLAINTIFFS' DOCUMENT REQUESTS

### A.    Documents and Information Regarding the Payment of Fees or Commissions to Ameriquest Employees or Third Parties

Plaintiffs' Document Requests seek detailed information regarding the payment of fees or

commissions to Ameriquest employees or to third parties in connection with plaintiffs'

transactions.  Specifically, plaintiffs made the following requests:

Request No. 2: Each document that records, reflects, evidences, or relates to payment, fees,
commissions, compensation or other remuneration Defendant paid to any person in connection with
Plaintiffs' Transactions (including but not limited to cancelled checks that were issued at or after the
loan closing).

As discussed in the parties' discovery conference, Ameriquest, as a general matter, does

not include "cancelled checks" in the borrowers' loan files.  Nevertheless, plaintiffs already have

in their possession all of the HUD-1 Settlement Statements for each of plaintiffs' loan

transactions which specifically detail all of the disbursements that were made at the time of

closing to third parties.  Moreover, Ameriquest routinely includes the wire information for the

title agent and a summary of debts and disbursements sheet in its loan files.  In addition,

Ameriquest routinely includes a "summary of debts and disbursement" sheet which also is

included in plaintiffs' loan files already produced to plaintiffs.  These wire instructions and

summary of debts and disbursement sheets documents bear, among other Bates numbers, Bates numbers AMC 01494, AMC 01592, AMC 01597, AMC 01910, AMC 01913, AMC 01992, AMC 02091, AMC 02188, AMC 02282, AMC 02390, AMC 02483, AMC 02644, AMC 02710, AMC 02834 and AMC 02937.  Further, Ameriquest produced the "Customer Account Activity Statements" for the named plaintiffs in this action.  These documents bear Bates numbers AMC 03005 through AMC 03025.  In addition, the screen shot documents relating to cancelled checks were produced bearing Bates numbers AMC 003202 through AMC 003204, AMC 003236 through AMC 003237, AMC 003516, AMC 004043 through AMC 004045 and AMC 004365.

Plaintiffs offer no explanation or argument why the their request directed to the compensation of Ameriquest employees is at all relevant to the instant litigation or that such information is reasonably calculated to lead to the discovery of admissible evidence.  "Mere speculation as to the content of documents is hardly a showing of relevance." United States v. Concemi, 957 F.2d 942, 949 (1st Cir. 1992).  At the same time, to the extent plaintiffs' Interrogatory Requests call for the disclosure of private and nonpublic personal information of Ameriquest employees, and Ameriquest should not be required to disclose such information absent a Court order.  Ameriquest should not be compelled to produce sensitive nonpublic personal information where plaintiffs have not demonstrated that information from any non-party Ameriquest employee is relevant or reasonably bears on the issues in this case.  Moreover, any need that plaintiffs may have for such information certainly does not outweigh the privacy concerns of these non-party employees.  Ameriquest further objects to Request No. 2 on the grounds that it is overly broad, unduly burdensome and seeks the disclosure of confidential and proprietary information.  Moreover, Ameriquest objects to Request No. 2 to the extent that it calls for confidential private information concerning Ameriquest employees and implicates

employee privacy rights that may be protected by federal and state privacy laws.

Request No. 5: Each document that records, reflects, evidences, or relates to any consideration (i.e., money, payment, compensation, fee, charge or any thing of value) paid to an employee in connection with or based on Plaintiffs' transactions.

This is a subset of Request No. 2 and again plaintiff offers no explanation or argument why private, non-public information concerning the compensation of any Ameriquest employee is relevant to the named plaintiffs' claims in this action. In responding to Request No. 5, Ameriquest incorporates its Response to No. 2 above.

Request No. 10: Each document Defendant received from or provided to any employee that shows the basis on which Defendant paid commissions to its employees for closing loans or otherwise generating business in Massachusetts.

This is another iteration of Request Nos. 2 and 5. In responding to Request No. 10, Ameriquest incorporates its Response to No. 2 and 5 above.

Request No. 11: Each document Defendant received from or provided to any employee that shows any quota applicable to closing loans or otherwise generating business in Massachusetts.

Request No. 11 is another variant of Requests Nos. 2, 5 and 10 and is flawed for the same reasons. In responding to Request No. 11, Ameriquest incorporates its Response to No. 2, 5 and 10 above.

**B.    Information Regarding the Identity of Putative Class Members**

Request No. 26: For 250 randomly selected mortgage loans made in Massachusetts during the relevant time period, copies of the Truth in Lending disclosures, the note, the mortgage, notices of right to cancel, the settlement sheet, disclosure statements, notice of adverse action, and any other documents you contend were provided to the borrowers in said loans at the time of loan closing.

Request No. 26 is merely a subset of Interrogatories Nos. 1 through 5 discussed in Section II(A) above. It is facially more reasonable in that it calls for any documents Ameriquest contends it provided to any of 250 random borrowers rather than for documents Ameriquest contends it provided to more than 20,000 Massachusetts borrowers. But the request is no less

flawed in terms of relevance to class certification.

The arguments set forth by Ameriquest in its Response in Section II(A) above apply equally here. As with their other requests, plaintiffs offer nothing more than the *ipse dixit* that they need this discovery to support their claim. Plaintiffs have advanced no grounds that would warrant the need for a sampling of random loan documents of individual absent Massachusetts borrowers. Plaintiffs do not suggest how the loan files of random Massachusetts borrowers would provide any information relevant to the named plaintiffs' claims or to the claims of any other absent class members, much less establish predominance required for class certification. The search of individual loan files in attempt identify putative class members only demonstrates that the determination of liability, if any, is transaction specific and not appropriate for class certification. To establish the class requirement of predominance, plaintiffs must show that the successful adjudication of the named plaintiffs' individual claims will establish a right of recovery for the absent class members. Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 340 (4th Cir. 1998). "[I]f proof of the representatives' claims would not necessarily prove all the proposed class members' claims, the representatives' claims are not typical of the proposed members' claims." Brooks v. Southern Bell Tel. & Tel. Co., 133 F.R.D. 54, 58 (S.D. Fla. 1990); Barboza v. Ford Consumer Finance, 1998 WL 148832, at *5 (D. Mass. 1998) (court denied class certification and held that "there is no 'typical' case, and it follows that the prerequisite established by Rule 23(a)(3) is not met").

The individualized examination of the transactions of absent class members is, for the most part, if not all together, irrelevant to the issue of class certification, at least from the point of view of the plaintiffs' burden of showing predominance. While the examination of the individual circumstances of each transaction may aid a defendant in showing a lack of

predominance, unless plaintiff can show that the resolution of their specific cases will establish a right of recovery in all class members, predominance is lacking and class certification must be denied. If plaintiffs cannot meet this burden on the basis of their own transactions, they will not be aided by the specifics of any absent class members' transactions. Thus, the requested sampling discovery should be denied.

### C.    Documents Regarding Ameriquest's Lending Practices

Plaintiffs' Document Requests seek detailed information regarding Ameriquest's lending practices in Massachusetts and elsewhere. Specifically, plaintiffs made the following requests:

<u>Request No. 8</u>: Each document that records, reflects, evidences or relates to Defendant's policy or practice during the Relevant Time Period of charging discount points to borrowers including, without limitation, rate sheets or other written information used by Defendant's employees to calculate rates and/or rate discounts.

Plaintiffs have not offered any reason why Ameriquest's practice of charging discount points to borrowers in Massachusetts is at all relevant to any claim in the Complaint. That Ameriquest may have charged other borrowers discount points in Massachusetts does not tend to prove any claim made by plaintiffs in this action. Further, as mentioned during the parties' discovery conferences, Ameriquest does not use rate sheets or any other specific documents to determine what interest rate a borrower may receive when "discount points" are paid. Ameriquest is in the process of determining what documents or information, if any, is responsive to this request. Ameriquest further refers to its Response to Interrogatory No. 12.

<u>Request No. 9</u>: Each document that Defendant contends supports its position that a rate discount was provided to the Plaintiffs in their Transactions.

In responding to Request No. 9, Ameriquest incorporates its Response to No. 8 above.

<u>Request No. 12</u>: Each document used by Defendant as a form, guideline, or template for providing information to Massachusetts-based borrowers.

Ameriquest utilizes state specific instructions and information for its mortgage loan

transactions. In fact, Ameriquest has already produced a number of policy and procedure

documents relating to this request such as Bates numbers AMC 03030 through AMC 03041. In

general, each loan file contains documents regarding a Massachusetts Uniform Mortgage Loan Cost

Worksheet (see, e.g., Bates numbers AMC 01575, AMC 01586, AMC 01896, AMC 02081, AMC

02324, AMC 02470 and AMC 02914), Massachusetts Loan Application Supplement (see, e.g.,

Bates numbers AMC 01576, AMC 01585, AMC 01897, AMC 02082, AMC 02471, AMC 02684,

AMC 02915) and Massachusetts Consumers' Guide to Obtaining a Home Mortgage (see, e.g.,

Bates numbers AMC 01577-84, AMC 01898-01901, AMC 02083-86, AMC 02325-28, AMC

02472-75, AMC 02685-87, AMC 02916-19). Ameriquest will timely supplement this response

with additional documents.

Request No. 13: Each document used by Defendant as a form, guideline, or template for
receiving information to Massachusetts-based borrowers.

In responding to Request No. 13, Ameriquest incorporates its Response to No. 12 above.

Request No. 14: Each document provided or issued to any employee or third party that
contains instructions for underwriting loans in Massachusetts.

Ameriquest has provided underwriting guidelines as described in Response to No. 19 below.

This request for each and any document provided to any employee or third party is over broad,

unduly burdensome and does not and cannot demonstrate any relevance to the issue of class

certification.

Request No. 15: Each document provided or issued to any employee or third party that
contain instructions for closing loans in Massachusetts.

Ameriquest objects to this document request on the grounds that it is overly broad and

seeks information that is neither relevant to plaintiffs' claims nor reasonably calculated to lead to

the discovery of admissible evidence. As a general matter, because Ameriquest is a retail lender,

it does not send a set of general training or policy and procedure materials to its closing agents,

nor does it typically send a specific set of closing instructions to its closing agents because such agents are not employed by Ameriquest. As such, no books or manuals exist. It does send, however, closing instructions to the closing agent for each individual loan transaction. These closing instructions were already produced and are contained in the loan files for each named plaintiffs' loan. Ameriquest will supplement its production to provide the closing instructions for the named plaintiffs' loans that are in Ameriquest's possession, custody, or control.

Request No. 16: Each document provided or issued to any employee or third party that contains instructions for distributing funds on loans closed in Massachusetts.

As stated above in Response No. 2, Ameriquest routinely includes the wire information for the title agent and a summary of debts and disbursements sheet in its loan files. In addition, Ameriquest routinely includes a "summary of debts and disbursement" sheet which also is included in plaintiffs' loan files already produced to plaintiffs. These wire instructions and summary of debts and disbursement sheets documents were already produced to plaintiffs and bear, among other Bates numbers, Bates numbers AMC 01494, AMC 01592, AMC 01597, AMC 01910, AMC 01913, AMC 01992, AMC 02091, AMC 02188, AMC 02282, AMC 02390, AMC 02483, AMC 02644, AMC 02710, AMC 02834 and AMC 02937. Beyond this response, plaintiffs' request is overbroad and unduly burdensome.

Request No. 17: Each document provided or issued to any employee or third party that contains instructions for charging points, closing costs or settlement fees on loans closed in Massachusetts.

Ameriquest objects to this document request on the grounds that it is overly broad and seeks information that is neither relevant to plaintiffs' claims nor reasonably calculated to lead to the discovery of admissible evidence. Ameriquest has already produced documents responsive to this request such as sections from its policies and procedures manual which it used in Massachusetts during the period encompassed by the statute of limitations applicable to the

claims in this action regarding maximum points at Bates Numbers AMC 03028 through AMC 03029.

Request No. 19:  Each document that records, reflects, evidences, or relates to any policy, criteria, or underwriting guidelines that Defendant used during the Relevant Time Period in determining the terms offered to persons who made applications for loans.

Ameriquest objects to this document request on the grounds that it is overly broad and seeks information that is neither relevant to plaintiffs' claims nor reasonably calculated to lead to the discovery of admissible evidence as well as vague and ambiguous.  Ameriquest has already produced documents responsive to this request such as its Underwriting Manual (Bates numbered AMC 03055 through AMC 03200) which it used in Massachusetts during the period encompassed by the statute of limitations applicable to the claims in this action.

Request No. 20:  Each document that records, reflects, evidences, or relates to any policy that Defendant used during the Relevant Time Period in determining the scope or nature of the right of rescission under the state or federal Truth-in-Lending Act.

Subject to and without waiving the foregoing objections, Ameriquest states that documents in its possession that are responsive to Request No. 20 were already produced at Bates numbers AMC 03030 through 03045.   Beyond this, the request is overbroad and unduly burdensome.

Request No. 21:  Each document (including, but not limited to, agreements, contracts, underwriting guidelines, rate sheets and pricing sheets) that records, reflects, evidences, or relates to any terms and conditions governing loans made in Massachusetts during the relevant time period.

Ameriquest has already produced documents responsive to this request such as its Underwriting Manual (Bates numbered AMC 03055 through AMC 03200) which it used in Massachusetts during the period encompassed by the statute of limitations applicable to the claims in this action.  Further responding, to Request No. 21, Ameriquest incorporates its Responses to Nos. 8 and 12 above.  Ameriquest objects to this document request on the grounds

that it is overly broad and seeks information that is neither relevant to plaintiffs' claims nor reasonably calculated to lead to the discovery of admissible evidence. Beyond that, the request for "each document" that relates to every term or condition governing loans in Massachusetts at any time is unreasonably broad and burdensome.

### D. Documents Regarding Discussion of Ameriquest in the News

Plaintiffs' Document Requests seek each document that relates to any discussion of its business practices by a "news reporting establishment." Specifically, plaintiffs made the following request:

Request No. 24: Each document that records, reflects, evidences, or relates to any discussion of your business practices by a News Reporting Establishment.

Plaintiffs have not and cannot offer any reason why documents relating to "any discussion" by a "news reporting establishment" is relevant to any claim in the Complaint, much less to class certification. Plaintiffs' motion is devoid of a threshold showing that the information sought in this request is relevant to the pending litigation. That a "news reporting establishment" may have discussed Ameriquest's business practices does not tend to prove any of plaintiffs' claims. See United States v. Concemi, 957 F.2d 942, 949 (1st Cir. 1992) ("[m]ere speculation as to the content of documents is hardly a showing of relevance"). Plaintiffs' Motion directed to Ameriquest should be denied on the grounds that it is overly broad, unduly burdensome, vague and ambiguous, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and fails to set forth the category of documents sought with reasonable particularity.

### E. Documents Regarding Ameriquest's Computer Archiving and Storage System

Plaintiffs' Document Requests seek copies of all of Ameriquest's data archive tapes and all documents identifying or discussing the types of data stored on Ameriquest's computer

databases.  Specifically, plaintiffs made the following requests:

Request No. 25:  Copies of all of Defendant's data archive tapes backing up its database for mortgage loans (or any other database that includes the information listed in the subparts below) that were either made in Massachusetts during the Relevant Time Period or which cover Massachusetts accounts that were active during the Relevant Time Period.  The tapes must include the following information, to the extent that it is stored electronically:

a. the primary borrower's name and address;
b. the co-borrower's name and address;
c. the loan number;
d. the source of the application and the terms on which the borrower applied for credit;
e. the credit score and credit tier assigned to the borrowers including any exception codes;
f. the loan program applicable to the account;
g. the individual terms applicable to the account, both at the start of the contract, and during the life of the loan including, without limitation, the number or amount of any points paid, the amount of any discount to the rate, the term of the loan, the "contract APR", the amount of finance charges, the amount financed, the amount of the monthly payment, the number of months the loan is to be paid, and the date of the first payment;
h. the amount of Commissions paid to any employee;
i. whether the loan was an initial advance by Ameriquest or the refinancing of an earlier Ameriquest loan;
j. documents sufficient to identify the data fields in the electronic data tapes and their contents, along with their order in data tape, including without limitation, all documents explaining the abbreviations used for the data fields.

Request No. 35:  All documents identifying or discussing the types of data relating to Defendant's residential mortgage loan business stored, recorded, or maintained by Defendant in any electronic or computer databases.

On their face, Request Nos. 25 and 35 are breathtakingly overbroad.  Plaintiff offers no explanation why this information is either relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Ameriquest refers to its objections of its earlier requests for all information concerning every Massachusetts borrower and to its arguments in Sections II(A) and III(B) above.

**F.    Documents Regarding Ameriquest's Marketing Practices**

Plaintiffs' Document Requests seek detailed information regarding Ameriquest's marketing practices.  Specifically, plaintiffs made the following requests:

Request No. 29:  Each document concerning any policy, program, or practice with respect to

marketing of Ameriquest loans to its existing customers.

Request No. 33:  All advertisements, flyers or promotional materials used to market Defendant's mortgage lending program in Massachusetts.

These document requests are overly broad and each seeks information that is neither relevant to plaintiffs' claims nor reasonably calculated to lead to the discovery of admissible evidence.  For Ameriquest to produce documents regarding the marketing of its loans to each of its customers would require a loan-by-loan search of all of the loans it has originated not only in Massachusetts, but across the country, which would be incredibly burdensome, disruptive and expensive.  Plaintiffs have offered no rationale why the marketing of Ameriquest loans throughout the country is at all relevant to the instant litigation in Massachusetts or that such information is reasonably calculated to lead to the discovery of admissible evidence much less that it bears on class certification.

### G.    Documents Regarding Ameriquest's Training Practices

Plaintiffs' Document Requests seek detailed information regarding Ameriquest's training practices.  Specifically, plaintiffs made the following requests:

Request No. 30:  Each document, video tape or computer program used by the Defendant to train its Massachusetts-based on employees on their responsibilities in connection with mortgage loans made in Massachusetts.

Request No. 31:  Each document, video tape or computer program used by the Defendant to train its employees in connection with marketing of Ameriquest loans to its existing customers.

Request No. 34:  All training materials that any of your employees have received from any source concerning compliance with state or federal law during the Relevant Time Period.

Subject to and without waiving the foregoing objections, Ameriquest has stated that it will produce certain of its training materials to the extent that may bear on issues reasonably related to the Complaint and is in the process of producing such materials.  But a request to produce each and every and any subject used to train its employees is again unreasonably broad and burdensome and

unrelated to the issues of class certification.

**H.    Documents Regarding Ameriquest's "Programs"**

Plaintiffs' Document Requests seek detailed information regarding certain of

Ameriquest's "programs."  Specifically, plaintiffs made the following requests:

Request No. 27:  Each document concerning any variable rate program offered by the
Defendant during the Relevant Time Period.

Request No. 28:  Each document concerning any program, process or underwriting
guideline the Defendant uses to assign rates to borrowers based on their credit characteristics or
credit score.

Request No. 32:  All policy and procedure manuals or other compilations used to administer
Defendant's mortgage lending program.

These document requests are again overly broad and seek information that is neither

relevant to plaintiffs' claims nor reasonably calculated to lead to the discovery of admissible

evidence and essentially encompasses any document that may be used to administer its

operations.  Beyond that, plaintiffs offer no explanation how this unreasonable fishing expedition

relates to the issue of class certification to which discovery is to be directed.  Nevertheless,

subject to these objections, Ameriquest has already produced its Underwriting Manual, Bates

numbered AMC 03055 through AMC 03200, and sections of its policy and procedures manual

Bates Numbered AMC 03026 through AMC 03054.  Subject to and without waiving the

foregoing objections, Ameriquest will produce additional relevant policy and procedure manuals

regarding its mortgage lending program.

**I.    The use of "General Blanket Objections"**

Ameriquest provided detailed general objections and specific objections in connection

with each individual interrogatory and document request.  Because plaintiffs have taken issue

with certain of Ameriquest's general objections, Ameriquest sets forth these general objections

below and addresses plaintiffs' subsequent response:

**General Objection: Ameriquest objects to plaintiffs' definition of the term "relevant time period" as overly broad, unduly burdensome, vague and ambiguous and fails to set forth the categories of information sought with reasonable particularity and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Ameriquest further objects to such definition to the extent that it seeks information for any time period other than that within the applicable statute of limitations.**

While plaintiffs claim that this General Objection is contrary to the Federal Rules of Civil Procedure, this objection is stated with specificity and has been timely raised. Moreover, plaintiffs' definition of the "relevant time period" encompasses the entire time Ameriquest has made loans in Massachusetts. Because plaintiffs' loans were all originated between March 2003 and April 2004, information outside of the statute of limitations period for the causes of action in the Complaint time period is not relevant to plaintiffs' claims or the claims of the putative class.

**General Objection: Ameriquest will assign to each word its everyday meaning and has construed the language of each request in light of the scope of discovery permitted by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts, or is inconsistent with the definitions provided by the Local Rules of the United States District Court for the District of Massachusetts.**

While plaintiffs claim that Ameriquest's use of "vague and ambiguous" objections are contrary to the Federal Rules of Civil Procedure, Ameriquest cannot be expected to decipher plaintiffs' unintelligible document requests and interrogatories and respond when it does not understand the terms even in the context in which such terms are used.

**General Objection: Ameriquest objects to Plaintiffs' Document Requests to the extent that they seek the identification of documents that are not in the possession, custody, or control of Ameriquest.**

While plaintiffs claim that this general objection makes it impossible for plaintiffs' to respond, this objection is stated with specificity and was timely raised. Furthermore, Ameriquest has made good faith efforts to comply with all of plaintiffs' discovery requests. While plaintiffs

contend that "Ameriquest never identifies which requested documents may not be in its possession, custody, or control" (Pls. Brief at 25), Ameriquest cannot be expected to identify documents that are in the possession, custody, or control of some third-party. The rule only requires Ameriquest to produce documents that are in its possession, custody or control, not to attempt to identify and produce documents not within its possession, custody or control.

**<u>Conclusion</u>**

For the reasons detailed above, defendant Ameriquest Mortgage Company respectfully requests that the Court deny plaintiffs' Motion to Compel.

Respectfully submitted,

AMERIQUEST MORTGAGE COMPANY

By its attorneys,

/s/ *R. Bruce Allensworth*

R. Bruce Allensworth (BBO #015820)
    ballensworth@klng.com
Phoebe S. Winder (BBO #567103)
    pwinder@klng.com
Brian M. Forbes (BBO #644787)
    bforbes@klng.com
Ryan M. Tosi (BBO #661080)
    rtosi@klng.com
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
75 State Street
Boston, MA 02109
617-261-3100
617-261-3175 (fax)

Dated: December 16, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2005, I served a true copy of the foregoing document by electronic filing upon the following:

Gary Klein, Esq.
Elizabeth Ryan, Esq.
Shennan Kavanagh, Esq.
Roddy, Klein & Ryan
727 Atlantic Ave., 2nd Floor
Boston, MA 02111

/s/ *R. Bruce Allensworth*

_____
R. Bruce Allensworth

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ISABELLE M. MURPHY, | ) |
| DAVID R. MURPHY, | ) |
| LYNN GAY, | ) |
| DAVID M. WAKEFIELD, and | ) |
| JANET WAKEFIELD, | ) |
| | ) |
| Individually and on behalf of all others | ) CIVIL ACTION NO. 04-12651-RWZ |
| similarly situated, | ) |
|               Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| AMERIQUEST MORTGAGE COMPANY, | ) |
|               Defendant. | ) |

**DECLARATION OF R. BRUCE ALLENSWORTH IN SUPPORT OF
DEFENDANT AMERIQUEST MORTGAGE COMPANY'S MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

I, R. Bruce Allensworth, Esq. declare and state as follows:

1.     I am counsel of record for defendant Ameriquest Mortgage Company ("Ameriquest"), in the above-captioned action.

2.     I submit this declaration in connection with Ameriquest's Memorandum in Opposition to Plaintiffs' Motion to Compel ("Ameriquest's Memorandum").

3.     On September 20, 2005, counsel for the parties had a lengthy meet and confer regarding the parties' disagreements over the scope, breadth and relevance of plaintiffs' Document Requests and Interrogatories. To narrow the dispute, I agreed to consult with my client, Ameriquest, with respect to a number of issues including the requested sampling of individual loan transactions of absent class members.

4.     I noted to counsel for plaintiffs that the sheer breadth of plaintiffs' requests would present logistical difficulties even if they were relevant, but that I did not believe the requests for

the most part were calculated to lead to the discovery of evidence bearing on the issue of class

certification, particularly those directed to individual absent class members.  It is my

understanding that Ameriquest has funded more than 21,000 loans in Massachusetts.

5.      I did what I represented that I would do, and engaged in a number of discussions

with Ameriquest with respect to plaintiffs' discovery requests in an attempt to bridge the parties'

differences over discovery.

6.      As to the depositions scheduled by plaintiffs, counsel for plaintiffs and I discussed

those shortly after the time that they were noticed.  It was my understanding from those

conversations that the depositions were noticed in anticipation of the then-current case

management deadlines, that they were not going to go forward on those dates, that we would

reschedule them after discovery disputes over interrogatories and document requests were

resolved and that we anticipated jointly asking the Court to enlarge the time periods in the case

management order.  We have not refused to go forward with depositions.

7.      On October 28, 2005, the parties filed a Joint Motion to Further Extend Case

Scheduling Deadlines, noting the obstacles that we were facing in meeting the then-effective

time schedule of which the parties' discovery disputes were a part.  We noted therein that the

parties had commenced but not completed a discovery conference to resolve their disputes and

had made progress towards this end and that they were working diligently to resolve the

discovery disputes.  See Joint Motion attached hereto as Exhibit A.

8.      The resolution of the open issues was slowed shortly thereafter by the fact that

both the in-house Ameriquest attorney in charge of this matter as well as the Ameriquest legal

assistant charged with the ongoing coordination and collection of documents and information

both left the employ of Ameriquest, and we obliged to start anew with new Ameriquest

personnel who had no previous involvement with this case and who were unfamiliar with the issues in this case.

9.    Shortly thereafter, on December 2, 2005, plaintiffs filed their motion to compel.  I note that plaintiffs' motion to compel shows no compromise in any of the discovery requests that they have promulgated.

10.    It was neither my intent nor that of Ameriquest to create delay or problems with discovery directed to class certification.  While the progress of attempting to narrow the discovery disputes may have been temporarily impeded by the unanticipated personnel losses in the Ameriquest legal department, I believe nonetheless that the objections initially posed to the discovery that is now the focus of plaintiffs' motion to compel were well taken, that the arguments set forth in the opposition to plaintiffs' motion to compel are well-founded and that the answers and responses to discovery previously given represented a good-faith response to plaintiff's discovery requests properly directed to class certification, including the 4,400-plus pages of documents that Ameriquest began producing in June, 2005 and continued to produce as recently as November, 2005 and that it continues to produce.

I HEREBY DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.  EXECUTED THIS /6__th DAY OF DECEMBER, 2005 AT BOSTON, MASSACHUSETTS.

R. Bruce Allensworth, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2005, I served a true copy of the foregoing document by electronic filing upon the following:

Gary Klein, Esq.
Elizabeth Ryan, Esq.
Shennan Kavanagh, Esq.
Roddy, Klein & Ryan
727 Atlantic Ave., 2nd Floor
Boston, MA 02111

R. Bruce Allensworth

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ISABELLE M. MURPHY,<br>DAVID R. MURPHY,<br>LYNN GAY,<br>DAVID M. WAKEFIELD, and<br>JANET WAKEFIELD<br><br>Individually and on behalf of all others<br>Similarly situated<br><br>              Plaintiffs,<br><br>      v.<br><br>AMERIQUEST MORTGAGE<br>COMPANY<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>C.A. No. 04-cv-12651RWZ |

**JOINT MOTION TO FURTHER EXTEND CASE SCHEDULING DEADLINES**

Plaintiffs, Isabelle M. and David R. Murphy, et al. ("Plaintiffs") and Defendant,

Ameriquest Mortgage Company, ("Defendant"), hereby jointly move to extend the case

scheduling deadlines set forth in the Court's March 14, 2005 scheduling order [Docket No. 13]

for discovery pertaining to class certification, motions, oppositions, and a hearing as follows:

      Class Discovery:     from October 31, 2005 to January 16, 2006.

      Class Motions:      from December 15, 2005 to February 28, 2006.

      Oppositions:        from January 15, 2006 to March 30, 2006.

      Hearing:           from January 25, 2006 to April 27, 2006.

As grounds for this motion, the parties state the following:

1.      The parties have been working diligently to resolve Defendant's objections to

          Plaintiffs' discovery requests. The parties have commenced, but not completed, a

discovery conference to resolve their disputes and have made progress towards this end.

2.    The parties need additional time to complete discovery relating to class certification in order to prepare their motions and oppositions.

3.    The parties have been delayed due to complicated issues about confidentiality in the context of a class case.

4.    The parties are also awaiting a ruling on the Plantiffs' Motion for Leave to File an Amended Complaint.  (Docket No. 17.)   The result of that motion affects the scope of the pending discovery.

5.    Due to scheduling conflicts, depositions have been noticed, but not completed.

6.    There is a proceeding pending before the Judicial Panel on Multi-District Litigation that may result in transfer and consolidation of this case with others pending in various jurisdictions.  The parties expect resolution of the MDL proceeding within thirty (30) days.  The parties are concerned that transfer after the close of the class discovery period in this case may adversely affect scheduling options in the transferred proceeding and/or lead to unnecessary duplication of efforts.

7.    The parties join in this motion.

WHEREFORE, the parties respectfully request that the Court grant this further extension

of the case scheduling deadlines. A proposed Order is attached to this motion.

<div style="margin-left: 50%;">

Respectfully Submitted,
For Plaintiffs,

/s/ Gary Klein
Gary Klein BBO # 560769
Elizabeth Ryan BBO # 549632
Shennan Kavanagh BBO # 655174
Roddy, Klein & Ryan
727 Atlantic Ave., 2nd floor
Boston, MA  02111
Tel. 617-357-5500 x 15
Fax. 617-357-5030
klein@roddykleinryan.com

</div>

For Defendant,

/s/Bruce Allensworth
R. Bruce Allensworth BBO # 015820
Brian M. Forbes BBO # 644787
Kirkpatrick & Lockhart
Nicholson Graham LLP
75 State Street
Boston, MA 02119
Tel. 617-261-3100
Fax. 617-261-3175
ballensworth@klng.com
bforbes@klng.com

3